# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| Gloria L. Franklin | San Francisco Bankruptcy Court | (415) 268-2300 |
|---|---|---|
| Clerk of Court | 235 Pine St. | |
| | P.O. Box 7341 | |
| | San Francisco, CA 94120-7341 | |



FILED

APR 2 2 2008

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Richard W. Wieking, Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

District Court  C08-01400

Re: Ramin Yeganeh
    05-30047 TC
    Judge Thomas E. Carlson

Re: Charles E. Sims v Coast Development
Trust
    05-3242 TC Judge Thomas E. Carlson

Dear Mr. Wieking:

[ ] Enclosed please find a conformed copy of the notice of appeal, election to district court document, appellant designation, appellee designation, statement of issues, designated items to form the record on appeal, a certified copy of the docket and order being appealed for assignment to a district court judge.

[ ] Enclosed please find the notice of appeal, certified copy of the docket and order being appealed and related papers from BAP and designated items to form the record on appeal for assignment to a district court judge.

[X ] Enclosed please find the record of Appellant's designated items and Appellee's  counter designation of record on appeal for an appeal that has been previously sent to the district court.

[ ] Enclosed please find a Bankruptcy Judge's Recommendation that Appeal Be Dismissed and the Notice of Appeal and associated documents filed with the Bankruptcy Court.

Please acknowledge receipt of this appeal by stamping the district court case number on a copy of this letter and return it to *United States Bankruptcy Court, San Francisco Division.*

Gloria L. Franklin, Clerk
United States Bankruptcy Court

Dated: April 22, 2008

By: ANNA CHO-WONG
               _____
               Deputy Clerk, Anna Cho-Wong

1 | Charles P. Maher, State Bar No. 124748
Jeffrey L. Fillerup, State Bar No. 120543
2 | Nhung Le, State Bar No. 209552
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3 | Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
4 | Telephone No.: 415.356.4600
Fax No.: 415.356.4610
5 |
Attorneys for Andrea A. Wirum,
6 | Successor-in-Interest to Charles E. Sims

7

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  In re RAMIN YEGANEH, | Case No. 05-30047 TEC Chapter 7 |
| 12 | |
| 13       Debtor. | |
| 14  CHARLES E. SIMS, Trustee, | Adversary Proceeding No. 05-3242 TC |
| 15       Plaintiff, | |
| 16  v. | |
| 17  COAST DEVELOPMENT TRUST and FARIN YEGANEH aka F. NAMDARAN aka | **APPELLEE'S COUNTER-DESIGNATION OF RECORD ON APPEAL** |
| 18  FRAN NAMDARAN aka FARIN NAMDARAN aka FRAN YEGANEH, | |
| 19 | |
| 20       Defendants. | |

21

22

23        Andrea A. Wirum, Trustee in Bankruptcy of the estate of the above Debtor and successor-

24 in-interest to Charles E. Sims in his capacity as Plaintiff in the above adversary proceeding and

25 Appellee in the above appeal, files this counter-designation of record in the appeal brought by the

26 Defendants of the Court's order denying the Defendants' motion for summary judgment.

/ / /

27 / / /

28

1

The Appellee designates the following documents from the docket in Adversary Proceeding No. 05-3242:

| Docket No. | Date of Entry | Title of Document |
|---|---|---|
| 25 | 06/08/05 | Amended Complaint for Avoidance and Recovery of Fraudulent Transfers |
| 38 | 08/03/05 | Order Granting Motion to Strike and Awarding Attorneys Fees |
| 54 | 08/11/06 | Motion for Summary Judgment Based on Actual Fraud and attachments identified in Docket No. 56 |
| 56 | 08/11/06 | Motion to Preclude Testimony and Exclude Evidence or in the Alternative Motion to Compel Discovery, including attachments identified in Docket No. 54 |
| 58 | 08/11/06 | Notice Regarding Lodgment of Documentary Evidence for Which Judicial Notice is Sought, and other Deposition and Documentary Evidence in Support of (1) Motion for Summary Judgment Based on Actual Fraud and (2) Motion to Preclude Testimony and Exclude Evidence or in the Alternative Motion to Compel Discovery (Part 1 – Exhibits 1-47) and attached documents identified in Docket No. 58 |
| 72 | 09/29/06 | Reply to Opposition to Trustee's Motion to Preclude Testimony and Exclude Evidence or in the Alternative Motion to Compel Discovery |
| 73 | 09/29/06 | Brief/Memorandum in Opposition to the Defendants' Motion to Preclude Testimony and Evidence or in the Alternative Motion to Compel and attachments identified in Docket No. 71 |
| 76 | 10/13/06 | Order re Cross Motions to Preclude or Compel |
| 83 | 11/01/06 | Brief/Memorandum in Opposition to the Defendants' Motion for Summary Judgment and attachments identified in Docket No. 90 |
| 85 | 11/10/06 | Reply to Defendants' Opposition to Motion for Summary Judgment Based on Actual Fraud and attachments identified in Docket No. 121 |
| 86 | 11/13/06 | Supplemental Reply Memorandum in Support of Trustee's Motion for Summary Judgment Based on Actual Fraud |

///
///

| 94 | 07/02/07 | Transcript Re: Appeal Motion to Preclude Testimony and Exclude Evidence or in the Alternative, Motion to Compel Discovery (Hearing 10/10/06) |

DATED: March 26, 2008

LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _Charles P. Maher_

Charles P. Maher
Counsel for Appellee Andrea A. Wirum, successor-in-interest to Charles E. Sims

301034307.1

3

1 | Charles P. Maher, State Bar No. 124748
Jeffrey L. Fillerup, State Bar No. 120543
2 | Nhung Le, State Bar No. 209552
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3 | Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
4 | Telephone No.: 415.356.4600
Fax No.: 415.356.4610
5 |
Attorneys for Andrea A. Wirum,
6 | Successor-in-Interest to Charles E. Sims

7

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

| | |
|---|---|
| 11 In re RAMIN YEGANEH, | Case No. 05-30047 TEC |
| 12 | Chapter 7 |
| 13 Debtor. | |
| 14 | |
| 15 CHARLES E. SIMS, Trustee, | Adversary Proceeding |
| 16 Plaintiff, | No. 05-3242 TC |
| 17 v. | |
| 18 COAST DEVELOPMENT TRUST and FARIN YEGANEH aka F. NAMDARAN aka | **CERTIFICATE OF SERVICE** |
| 19 FRAN NAMDARAN aka FARIN NAMDARAN aka FRAN YEGANEH, | |
| 20 Defendants. | |

21

22    I, Nelly M. Quintanilla, declare as follows:

23    1.    I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP,

24 whose address is Rincon Center II, 121 Spear Street, Suite 200, San Francisco, California 94105-

25 1582. I am over the age of eighteen years, and am not a party to this action.

26    2.    On March 26, 2008, I served the following:

27    ➢ **APPELLEE'S COUNTER-DESIGNATION OF RECORD ON APPEAL**

28

1   on the interested parties in this action by:

2   <u>XX</u>     **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for
3         each address named on the attached service list for collection and mailing on the below
indicated day following the ordinary business practices at Luce, Forward, Hamilton &
4         Scripps LLP. I certify I am familiar with the ordinary business practices of my place of
employment with regard to collection for mailing with the United States Postal Service.
5         I am aware that on motion of the party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of deposit or
6         mailing affidavit.

on the following parties:
7
William E. Gilg, Esq.
8   305 San Bruno Avenue West
San Bruno, CA 94066
9

10

11
     I declare under penalty of perjury that the foregoing is true and correct to the best of my
12
knowledge. Executed on March 26, 2008, in San Francisco, California.
13

14

15

16                  Nelly M. Quintanilla

17

18

19   301034554.1

20

21

22

23

24

25

26

27

28

                                2

1 | Charles P. Maher, State Bar No. 124748
Nhung Le, State Bar No. 209552
2 | LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
3 | San Francisco, California 94105-1582
Telephone No.: 415.356.4600
4 | Fax No.: 415.356.4610

5

Attorneys for Plaintiff Charles E. Sims
6 | Trustee in Bankruptcy

7

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10

11 | In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
            Debtor.
13

14 | _____

CHARLES E. SIMS, Trustee,                  Adversary Proceeding
15 |                                        No. 05-3242
            Plaintiff.
16
17 | vs.

COAST DEVELOPMENT TRUST and
18 | FARIN YEGANEH aka F. NAMDARAN aka
FRAN NAMDARAN aka FARIN
19 | NAMDARAN aka FRAN YEGANEH,

20 |            Defendants.

21 | _____

22 | **FIRST AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY OF**
**FRAUDULENT TRANSFERS**

23

24 |        Plaintiff Charles E. Sims, Trustee in bankruptcy of the estate of the above Debtor

25 | ("Plaintiff" or "Trustee"), alleges as follows:

26 |        1.    On January 7, 2005, Ramin Yeganeh filed a voluntary petition for relief under

27 | Chapter 13 of the Bankruptcy Code.

28 |        2.    The case was converted to a Chapter 7 proceeding by order dated January 21, 2005.

1    Plaintiff Charles E. Sims is Trustee in bankruptcy of the Debtor's estate.

2        3.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § § 151,

3   157(b)(2), and 1334, and under Rule 5011-1 of the Bankruptcy Local Rules for the Northern

4   District of California.

5        4.     This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A),

6   (H) and (O).

7        5.     Venue is proper under 28 U.S.C. § 1409.

8        6.     Based on information provided by the Debtor, Plaintiff is informed and believes

9   that Defendant Coast Development Trust is a trust created by the Debtor under the laws of

10   California.

11       7.     Plaintiff is informed and believes that Defendant Farin Yeganeh is an individual

12   who resides in California, is also known as Farin Namdaran, Fran Namdaran, F. Namdaran and

13   Fran Yeganeh, and is the Debtor's mother.

14       8.     Plaintiff is informed and believes that the Debtor made the following transfers of

15   real property to the Defendant Coast Development Trust:

16        (a)     718 E. 4th Avenue, San Mateo, California (APN 033-167-110) on July 31, 2001;

17        (b)     48 N. Grant Street, San Mateo, California (APN 033-144-020) on July 31, 2001;

18        (c)     627 Prospect Row, San Mateo, California (APN 032-141-060) on July 31, 2001.

19       9.     The transfers identified in paragraph 8 above and any other transfers that may be

20   proved are subsequently called the "Transfers."

21       10.     Plaintiff is informed and believes that, on or about February 22, 2005, Defendant

22   Coast Development Trust transferred the properties identified in paragraph 8 above to Defendant

23   Farin Yeganeh. These transfers and any other transfers that may be proved are subsequently

24   called the "Subsequent Transfers."

25       11.     Plaintiff is informed and believes that the Debtor consistently maintained in

26   pleadings in Court and under oath that Defendant Coast Development Trust had no relationship to

27   him, and that the Debtor and Defendants actively concealed that the Debtor had created Defendant

28   Coast Development Trust and that the Transfers were made for no value. This action is brought

1  within three years after discovery of the facts constituting the fraudulent nature of the Transfers.

**FIRST CLAIM FOR RELIEF**
**Avoidance of Fraudulent Transfers**
**(11 U.S.C. § 544(a); California Civil Code Sections 3934.04)**

4      12.    Plaintiff realleges the allegations set forth in paragraphs 1 through 11 above and
5  incorporates them by reference.

6      13.    Plaintiff alleges that the Transfers were transfers of interests of the Debtor in
7  property and were made within four years of the date on which the Debtor filed his bankruptcy
8  petition.

9      14.    Plaintiff alleges that the Debtor received less than a reasonably equivalent value in
10  exchange for the Transfers.

11      15.    Plaintiff alleges that the Debtor was insolvent on the dates the Transfers were made
12  or became insolvent as a result of the Transfers, or was engaged in a business or transaction or was
13  about to engage in a business or transaction for which any property remaining with the Debtor was
14  unreasonably small capital.

15      WHEREFORE Plaintiff requests judgment as set forth below.

**SECOND CLAIM FOR RELIEF**
**Avoidance of Fraudulent Transfers**
**(11 U.S.C. § 544(a); California Civil Code Section 3934.04)**

19      16.    Plaintiff realleges the allegations set forth in paragraphs 1 through 11 above and
20  incorporates them by reference.

21      17.    Plaintiff alleges that the Transfers were transfers of interests of the Debtor in
22  property and were made within four years of the date on which the Debtor filed his bankruptcy
23  petition.

24      18.    Plaintiff alleges that the Debtor made the Transfers and incurred obligations
25  relating to those transfers with actual intent to hinder, delay, or defraud any creditor of the Debtor.

26      WHEREFORE Plaintiff requests judgment as set forth below.

27  //

28

1

**REQUEST FOR RELIEF**

2        Plaintiff requests judgment as follows:

3        A.        On the first and second claims for relief, for a judgment against Defendant Coast

4  Development Trust avoiding the Transfers and any other transfer to the Defendant Coast

5  Development Trust that may be proved under 11 U.S.C. § § 544 and 550, and California Civil

6  Code Sections 3439 et seq., and preserving those transfers for the benefit of the estate under 11

7  U.S.C. § 551.

8        B.        On the first and second claims for relief, for a judgment against Defendant Farin

9  Yeganeh avoiding the Subsequent Transfers and any other transfer to Defendant Farin Yeganeh,

10  as  immediate transferee of Defendant Coast Development Trust, that may be proved under 11

11  U.S.C. § § 544 and 550, and California Civil Code Sections 3439 et seq., and preserving those

12  transfers for the benefit of the estate under 11 U.S.C. § 551.

13        C.        For prejudgment interest on any money judgment.

14        D.        For costs of suit.

15        E.        For other relief the Court deems appropriate.

16

17  Dated: June 8, 2005                    LUCE, FORWARD, HAMILTON & SCRIPPS, LLP

18

19                                        By:    /s/      Nhung Le
                                                Nhung Le
20                                              State Bar No. 209552
                                                Counsel for Charles E. Sims, Trustee
21

22  175449.2

23

24

25

26

27

28

1  FARIN YEGANEH
   Trustee of Coast Development Trust
2  Defendants in Pro Per
   331 W. 36th Avenue
3  San Mateo, CA 94403
   (650) 341-2565
4
   Defendants in Pro Per
5

**FILED**

JUL - 8 2005

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

6

7

8            IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                      )
12                                    )
           Debtor.                    ) Chapter 7
13                                    )
   _____)
14  CHARLES E. SIMS, Trustee,         ) Adversary Proceeding No. 05-3242
                                      )
15                                    )
           Plaintiff,                 )
16                                    )
                                      )
17      vs.                           )
                                      )
18  COAST DEVELOPMENT TRUST,          ) ANSWER TO FIRST-AMENDED
19  FARIN YEGANEH, ET AL,             ) COMPLAINT
                                      )
20                                    )
                                      )
21                                    )
                                      )
22         Defendant.                 )
   _____)
23

24      Comes now Defendants Coast Development Trust, Farin Yeganeh, et

25  al and in answer to Plaintiff Charles E. Sims, Trustee's first-amended

26  complaint on file herein, admit, deny, and allege as follows:

27

28

-1-

These answering defendants deny each and every, all and singular, generally and specifically, the material allegations of the first-amended complaint herein.

## AFFIRMATIVE DEFENSES COMMON TO ALL CAUSES OF ACTION

AS AND FOR A FIRST, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE to the first-amended complaint on file herein, these answering defendants allege that this first-amended complaint, and each cause of action thereof, fails to state facts sufficient to constitute a cause of action against these answering defendants.

AS AND FOR A SECOND, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE to the first-amended complaint on file herein, these answering defendants allege that plaintiff has failed and neglected to use reasonable care to minimize and mitigate the losses and damages complained of, if any there are.

AS AND FOR A THIRD, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE to the first-amended complaint on file herein, these answering defendants allege that this first-amended complaint, and each cause of action thereof, is barred by virtue of plaintiff's conduct and

-2-

1 negligence in causing the losses and damage, if any, alleged by plaintiff

2 under the Doctrine of Unclean Hands.

3

4     AS AND FOR A FOURTH, SEPARATE AND DISTINCT

5 AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

6

7 these answering defendants allege that they are informed and believe and

8 thereon allege that the first-amended complaint was brought without

9

10 reasonable cause and without justifiable controversy under the facts or the

11 law which warranted the filing of the complaint against this defendant.

12 Plaintiff should therefore be responsible for all of defendants' necessary and

13

14 reasonable defense costs, including reasonable attorney's fees and court

15 costs, as more particularly set forth in applicable law.

16

17     AS AND FOR A FIFTH, SEPARATE AND DISTINCT

18 AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

19

20 these answering defendants allege that they are informed and believe and

21 thereon allege that by plaintiff's acts and conduct, plaintiff has waived each

22 of the claims set forth in the first-amended complaint, and is therefore barred

23

24 from recovery.

25     AS AND FOR A SIXTH, SEPARATE AND DISTINCT

26 AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

27

28 these answering defendants allege that they are informed and believe and

-3-

1  thereon allege that by plaintiff's acts and conduct, plaintiff is estopped from

2
3  asserting each of the claims set forth in the first-amended complaint, and is

4  therefore barred from recovery.

5          AS AND FOR A SEVENTH, SEPARATE AND DISTINCT

6
7  AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

8  these answering defendants allege that all causes of action alleged in

9
10  plaintiff's first-amended complaint are barred by the applicable statutes of

11  limitation.

12          AS AND FOR AN EIGHTH, SEPARATE AND DISTINCT

13
14  AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

15  these answering defendants allege that all causes of action alleged in

16
17  plaintiff's first-amended complaint are barred by the doctrine of laches.

18          AS AND FOR A NINTH, SEPARATE AND DISTINCT

19
20  AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

21  these answering defendants allege if any alleged transfers were actually

22  made, they were made for reasonably equivalent values in that they were a

23
24  fair equivalent or not in an amount disproportionately small as compared to

25  the value of the properties transferred and were made in good faith.

26          AS AND FOR A TENTH, SEPARATE AND DISTINCT

27
28  AFFIRMATIVE DEFENSE to the first-amended complaint on file herein,

-4-

these answering defendants allege that the properties in question were defendants' properties to start with and that the purpose of the quitclaim deed which was recorded was to remove any interest the debtor, Ramin Yeganeh, may have had in those properties.

AS AND FOR ELEVENTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE to the first-amended complaint on file herein, these answering defendants allege that the debtor, Ramin Yeganeh, was not insolvent on the date the alleged transfers were made, if any were made, or that as a result of the alleged transfers said debtor did not became insolvent.

AS AND FOR A TWELFTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE to the first-amended complaint on file herein, these answering defendants allege that that the alleged transfers, if any were made, were not made to hinder, delay, or defraud any creditor of the debtor, Ramin Yeganeh.

AS AND FOR A THIRTEENTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE to the first-amended complaint on file herein, these answering defendants allege that they may have other, separate, and additional defenses of which they are not presently aware, and do hereby reserve the right to assert them by amendment to this answer as discovery progresses or is completed.

-5-

1
2          WHEREFORE, these answering defendants pray that plaintiff take
3
4   nothing by reason of its first-amended complaint on file herein; that these
5
    answering defendants be dismissed from this action with their costs of suit
6
7   paid by plaintiff himself and not from the debtor's estate; that these
8   answering defendants be awarded reasonable attorney's fees pursuant to
9
    applicable law paid by plaintiff himself and not from the debtor's estate; and
10
11  for such other and further relief as this court may deem proper.
12      Defendants hereby demand a jury trial in this matter
13
14
15  July 6, 2005
16                          FARIN YEGANEH, Defendant and
17                          Trustee of Coast Development Trust,
                            Defendants
18
19
20
21
22
23
24
25
26
27
28

-6-

## PROOF OF SERVICE

I, the undersigned, state that I am a citizen of the United States and employed in the City of San Mateo, that I am over the age of 18 and not a party to the within cause; that my business address is 305 San Bruno Avenue West, San Bruno, California; and that on the date set out below I deposited a true copy of the attached documents, listed below, on the parties to the action by one or more of the following methods:

    [XX]  First Class Mail

    [ ]  Fax via ( )

    []  Personal Service

    --by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Bruno, California;

Documents Served: <u>ANSWER TO FIRST-AMENDED COMPLAINT</u>

Party Served:  CHARLES P. MAHER, ESQ.
                Luce, Forward, Hamilton & Scripps, LLP
                Rincon Center II, 121 Spear St., Suite 200
                San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Bruno, California on July 8, 2005.

1

1   JONATHAN CHANCE
    Attorney at Law
2   205 East Third Ave., Suite 411
    San Mateo, CA 94401
3   (650) 342-6200

4   Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                      )
12          Debtor.                   ) Chapter 7
                                      )
13  _____   )
14  CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
                                      )  05-3240; 05-3241; 05-3242; and
15          Plaintiff,                )  05-3243
                                      )
16                                    )
17          vs.                       ) NOTICE OF MOTION AND
                                      ) MOTION FOR SUMMARY
18  FRAN YEGANEH, KEN                 ) JUDGMENT
19  YEGANEH, ET AL,                   )
                                      ) Date: November 15, 2006
20                                    ) Time: 9:30 AM
                                      ) Dept: 23
21                                    )
            Defendant.                )
22  _____

23

24  TO: PLAINTIFF/TRUSTEE AND HIS ATTORNEYS OF RECORD:

25          PLEASE TAKE NOTICE that on November 15, 2006 at 9:30 AM at

26  the United States Bankruptcy Court, 235 Pine Street, 23rd Floor, San

27

28  Francisco, California, before the Honorable Thomas E. Carlson, Defendants

Fran Yeganeh, Ken Yeganeh, et al, will move the Court for summary

judgment in their favor and against the plaintiff/trustee, pursuant to

Bankruptcy Rule 7056 and Federal Rule of Civil Procedure, Rule 56, on

plaintiff's four adversary complaints in this matter and on all causes of

action contained therein.  Said four adversary complaints seek to avoid the

alleged transfers of certain real properties (hereinafter "adversary

properties") on the grounds that said alleged transfers were fraudulent

transfers under California's Uniform Fraudulent Transfer Act (hereinafter

the "UFTA") contained in California Civil Code sections 3439, et seq.

These adversary properties are properties other than the debtor's,

Ramin Yeganeh's, properties listed on his Bankruptcy Schedule A, which

are now part of the bankruptcy estate and are controlled by the

plaintiff/trustee.

This summary judgment motion is based on the fact that the named

individual creditors in this action, the underlying 28 individual claimants in

the state civil case, have had their claims, totaling approximately $400,000,

completely paid off by the plaintiff/trustee when said plaintiff/trustee

liquidated five of the debtor's Schedule A properties.  Said sales proceeds

were more than sufficient to pay off all the individual creditors' claims.

Hence said individual creditors have suffered no affirmative harm by these

1   alleged transfers of adversary properties.  Consequently, according to well-
2
3   established California law and Federal law, these creditors have no standing
4   to bring any action under California's UFTA to avoid these transfers and,
5
6   therefore, neither does the plaintiff/trustee have standing to bring these
7   actions on their behalf.
8       This motion is based on this Notice of Motion and Motion as well as
9
10  the Memorandum of Points and Authorities filed in support thereof, the
11  Declaration of Debtor Ramin Yeganeh, the Declaration of William E. Gilg,
12
13  the Request for Judicial Notice, the attached Exhibits, and on such other and
14  further evidence and argument as may be offered in support of this motion.
15      PLEASE TAKE FURTHER NOTICE THAT under Rule 7007-1 of
16
17  the Bankruptcy Local Rules for the Northern District of California, any
18  opposition to the defendants' motion, including any legal memorandum and
19
20  any evidence in opposition to this motion, must be filed with the Court and
21  served on counsel for the defendants no later than 14 days before the
22
23  hearing.  The failure to timely file and serve opposition may be deemed a
24  waiver by the Court of the plaintiff/trustee's right to interpose an objection
25  or evidence in opposition to defendants' motion.
26
27  October 18, 2006          /S/ JONATHAN CHANCE, ESQ.
                              JONATHAN CHANCE,
28                            Attorney for Defendants

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8            IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,           ) Case No. 05-30047 TEC
                                   )
12          Debtor.                ) Chapter 7
                                   )
13  _____ )
                                   )
14  CHARLES E. SIMS, Trustee,      ) Adversary Proceeding Nos.
                                   )  05-3240; 05-3241; 05-3242; and
15          Plaintiff,             )  05-3243
                                   )
16                                 )
17     vs.                         ) MEMORANDUM OF POINTS
                                   ) AND AUTHORITIES IN
18  FRAN YEGANEH, KEN              ) SUPPORT OF DEFENDANTS'
19  YEGANEH, ET AL,                ) MOTION FOR SUMMARY
                                   ) JUDGMENT
20                                 )
21                                 ) Date: November 15, 2006
                                   ) Time: 9:30 AM
22                                 ) Dept: 23
23          Defendant.             )
    _____ )
24

25

26

27

28

Defendants' Motion for Summary Judgment        -1-

# TABLE OF CONTENTS

TOPIC                                                                        PAGE

TABLE OF AUTHORITIES                                                          ii

TABLE OF EXHIBITS                                                            v

MEMORANDUM OF POINTS AND AUTHORITIES                                         1

INTRODUCTION                                                                 1

STATEMENT OF FACTS                                                           3

ARGUMENT                                                                     8

I       THE LEGAL REQUIREMENTS RE SUMMARY                                   8
        JUDGMENT MOTIONS IN BANKRUPTCY COURT

II      THE TRUSTEE LACKS STANDING TO EVEN                                  11
        BRING THESE ADVERSARY PROCEEDINGS
        SINCE THE CREDITORS HAVE SUFFERED NO
        AFFIRMATIVE HARM AS A RESULT OF THESE
        ALLEGED FRAUDULENT TRANSFERS

        CONCLUSION                                                          19

# **TABLE OF AUTHORITIES**

| STATUTE | PAGE |
|---|---|
| B&P C } 17200 | 3 |
| | |
| CC }} 3439, et seq. | 2, 12, 19 |
| CC } 3439.04(a) | 9, 11-12, 15 |
| CC } 3439.04(a)(1) | 2 |
| CC } 3439.04(a)(2) | 2 |
| | |
| Evid C } 623 | 16 |
| | |
| 11 U.S.C. } 544(a) | 2, 10-11 |
| 11 U.S.C. } 544(b) | 10 |

| CASE | PAGE |
|---|---|
| Aguilar v. Lerner (2004)<br>32 Cal.3d 974 | 17-18 |
| Anderson v. Liberty Lobby, Inc. (1986)<br>477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 | 9 |

| CASE | PAGE |
|------|------|
| A/S Kredittfinans v. Cia Venetico De Navegacion, S.A. of Panama (E.D. Pa. 1983) 560 F.Supp. 705 | 12 |
| Bennett v. Paulson (1935) 7 Cal.App.2d 120 | 12 |
| Celotex Corp. v. Catrett (1986) 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 | 9 |
| Cities Service Oil Co. v. Dunlap (1939) 308 U.S. 208, 84 L.Ed. 196, 60 S.Ct. 201 | 16 |
| Flannery v. Prentice (2001) 26 Cal.4th 572 | 15 |
| Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668 | 15 |
| Haskins v. Certified Escrow & Mtge. Co. (1950) 96 Cal.App.2d 688 | 12 |
| In re Bennett Funding Group, Inc. (Bankr. N.D.N.Y. 1997) 220 B.R. 743 | 8 |
| In re Bridge (3rd Cir. 1994) 18 F.3d 195 | 2, 10-11 |
| In re Cardozzella & Richardson (Bankr. D.Conn. 2003) 302 B.R. 415 | 10 |
| In re Colombo (Bankr. W.D.N.Y. 2004) 316 B.R. 429 | 8 |
| Mehrtash v. Mehrtash (2001) 93 Cal.App.4th 75 | 3, 9, 11-13, 18-19 |

| CASE | PAGE |
|---|---|
| MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc. (2005) 36 Cal.4th 412 | 17-18 |
| Repp v. Weber (2nd Cir. 1997) 132 F.3d 882 | 8 |
| Scripps Clinic v. Superior Court (2003) 108 Cal.App.4th 917 | 17 |
| United States v. Wilson (N.D. Iowa 1977) 433 F.Supp. 57 | 16 |

| OTHER AUTHORITIES | PAGE |
|---|---|
| Federal Rules of Civil Procedure, Rule 50(a) | 9 |
| Federal Rules of Civil Procedure, Rule 56 | 8 |
| Federal Rules of Civil Procedure, Rule 56(c) | 8 |
| Federal Rules of Evidence, Rule 302 | 16 |
| Bankruptcy Rules of Procedure, Rule 7056 | 8 |
| Bankruptcy Rules of Procedure, Rule 9017 | 16 |
| Collier on Bankruptcy, Fifteenth Edition Revised, Vol. 5, } 544.02, p. 544-6 | 2, 10-11 |

# TABLE OF EXHIBITS

**EXHIBITS**   **DESCRIPTION OF EVIDENCE**

1          Debtor's Bankruptcy Schedule A

2          Notice of Trustee's Intent to Dismiss Appeals and
           Compromise with Creditors

3          Trustee's Memorandum in Reply to Objection to
           Compromise

4          Order Authorizing Compromise

5          Appellee's Brief of Charles E. Sims, Trustee in
           Bankruptcy

6          Order Authorizing Sale of Real Property
           (1611 Shoreview Avenue, San Mateo)

7          Order Authorizing Sale of Real Property
           (786 5th Avenue, Redwood City)

8          Order Authorizing Sale of Real Property
           (3912 Kent Way, South San Francisco)

9          Order Authorizing Sale of Real Property
           (150 Broadway, Redwood City)

10         Order Authorizing Sale of Real Property
           (182 Dublin Street, San Francisco)

11         See Exhibit 11 (Remaining Balance of All Mortgages
           on Properties Sold)

12         Order Approving First Application for Interim
           Compensation and Expense Reimbursement to
           Plaintiff's Attorneys (filed September 23, 2005)

13         Order Approving and Authorizing Compensation
           To Accountants (filed September 23, 2005)

<u>EXHIBITS</u>  <u>DESCRIPTION OF EVIDENCE</u>

14          Order Approving Second Application for Interim
            Compensation and Expense Reimbursement to
            Plaintiff's Attorneys (filed June 26, 2006)

15          Order Approving and Authorizing Compensation
            To Accountants (filed June 26, 2006)

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,            ) Case No. 05-30047 TEC
                                    )
12          Debtor.                 ) Chapter 7
                                    )
13  _____)
                                    )
14  CHARLES E. SIMS, Trustee,       ) Adversary Proceeding Nos.
                                    )  05-3240; 05-3241; 05-3242; and
15          Plaintiff,              )  05-3243
                                    )
16                                  )
17      vs.                         ) MEMORANDUM OF POINTS
                                    ) AND AUTHORITIES IN
18  FRAN YEGANEH, KEN               ) SUPPORT OF DEFENDANTS'
19  YEGANEH, ET AL,                 ) MOTION FOR SUMMARY
                                    ) JUDGMENT
20                                  )
21                                  ) Date: November 15, 2006
                                    ) Time: 9:30 AM
22                                  ) Dept: 23
23          Defendant.              )
    _____)
24

25                      INTRODUCTION

26

27      These matters are four adversary proceedings based upon alleged

28  fraudulent transfers of adversary properties to the defendants, the debtor's

    parents.  Plaintiff alleges in his adversary complaints that by "transfers" of

    _____
    Defendants' Motion for Summary Judgment        -1-

certain real properties (adversary properties) about three years before there was a judgment against the debtor, and about four years before this Chapter 7 bankruptcy, the debtor intended to hinder, delay, or defraud his creditors or became insolvent as a result of said transfers.

The plaintiff bases his allegations in all four adversary complaints on California's Uniform Fraudulent Transfer Act (hereinafter "UFTA") contained in Civil Code sections 3439, et al. (See CC { 3439.04(a)(1), (a)(2).) The plaintiff also relies in all four adversary complaints on Title 11 of the United States Code, section 544(a) as providing him with standing to avoid these transfers that could have been avoided by a creditor under local law, that is California's UFTA.

Section 544(a) confers standing on the plaintiff/trustee under federal law to bring these adversary proceedings on behalf of the individual creditors. However, the extent of the plaintiff/trustee's rights to pursue these adversary complaints is measured by the substantive law of the jurisdiction governing the properties in question. (In re Bridge (3rd Cir. 1994) 18 F.3d 195; see also Collier on Bankruptcy, Fifteenth Edition Revised, Vol. 5, { 544.02, p. 544-6 [citing numerous multi-jurisdictional authorities].) Here the substantive law is the law of California's UFTA.

Defendants now move for summary judgment as to each of the four adversary complaints and on all causes of action contained therein. The basis for this motion is that the individual creditors do not have standing to pursue these adversary complaints under the UFTA because their allowed claims have already been satisfied by the plaintiff/trustee, or should have been satisfied by now. That is the sales of the debtor's five real properties has generated more than enough funds to pay off these individual creditors. This Court has already ordered the plaintiff/trustee to use the money

liquidated from the sale of these properties to first pay off the secured creditors. (See "Order Authorizing Compromise" at Exhibit 4, pp. 2-3.) Hence these individual creditors have suffered no prejudice. They have suffered no affirmative harm as required by California law to pursue an avoidance action under the UFTA. (See Mehrtash v. Mehrtash (2001) 93 Cal.App.4[th] 75, 80 ["A transfer in fraud of creditors may be attacked only by one who is injured thereby."].) Consequently neither the creditors nor the plaintiff/trustee have standing to pursue these adversary actions. Summary judgment should be granted to the defendants.

## STATEMENT OF FACTS

On October 4, 1999, the debtor, Ramin Yeganeh, was sued by Plaintiff Ingram and Plaintiff Wobogo in the Superior Court of San Mateo County, Case No. 410586. Plaintiff Ingram sued on behalf of herself and her causes of action were all settled and dismissed back on April 25, 2001. Plaintiff Wobogo sued on behalf of the general public with a single cause of action under Business and Professions Code section 17200 for unfair business practices, although she admitted that she had never done any business with the debtor and had never suffered any loss or injury.

On June 3, 2004, a temporary judge issued a judgment against the debtor and in favor of Plaintiff Wobogo for $270,000. This $270,000 underlying judgment named certain individual claimants/creditors who had allegedly done business with the debtor in the past.

On September 9, 2004, the same temporary judge issued his "Order Re Award of Attorney's Fees, Costs, Prejudgment Interest, and Related Findings; Order for Entry of Judgment". In said order, the temporary judge

issued a judgment awarding $2.3 million with a 1.5 multiplier, or $3.5 million in attorney's fees, plus costs of approximately $32,000, and prejudgment interest totaling approximately $130,000 on the underlying $270,000 judgment.  The debtor timely filed his civil appeals to these judgments.

On January 7, 2005, the debtor filed a Chapter 13 Bankruptcy Petition in pro per.  The debtor filed his Chapter 13 to allow him time to prosecute his civil appeals to knock out or reduce the outrageous $3.5 million attorney's fees award.

On January 14, 2005, the Gray Cary attorneys (Wobogo's attorneys at DLA Piper, Rudnick, Gray Cary, LLP) brought a motion to convert the debtor's Chapter 13 to a Chapter 7.  On January 21, 2005, this Bankruptcy Court converted the debtor's Chapter 13 to a Chapter 7.  On February 18, 2005, the debtor's Motion for Reconsideration and Dismissal of the Chapter 7 was denied by this Court.   The debtor remains in Chapter 7.

On February 25, 2005 the debtor filed his bankruptcy schedules, including, Bankruptcy Schedule A, which is a list of his seven real properties.  (See Exhibit 1.)

On February 23, 2005, the plaintiff, the Chapter 7 trustee, filed his four adversary proceedings against the defendants, alleging that the debtor had fraudulently transferred the adversary properties, which are properties other than the debtor's Schedule A properties, to his parents, the defendants, some three years prior to the entry of the civil judgments against the debtor. The plaintiff/trustee alleges that said alleged transfers constituted fraudulent transfers under California's UFTA.

On November 8, 2005, this Court approved the debtor's Waiver of Discharge.

On February 17, 2006, the plaintiff/trustee filed his "Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors". (See Exhibit 2.) In this 'Notice' the plaintiff/trustee stated that he intended to move the Court to dismiss the debtor's pre-petition civil appeals and allow a $400,000 secured claim for the individual creditors, and some $3.6 million in attorneys' fees for the attorneys involved.

On March 9, 2006, the debtor filed an "Objection to Trustee's Notice of Intent to Compromise".

On March 24, 2006, the plaintiff/trustee filed a "Trustee's Memorandum in Reply to Objection to Compromise". (See Exhibit 3.) In this 'Memorandum in Reply' the plaintiff/trustee reiterated his position that the attorney's fees award did not belong to Plaintiff Wobogo or the individual creditors, but belonged solely to the attorneys at Gray Cary. (Exhibit 3, p. 6, lines 18-21.)

On April 8, 2006, this Court approved the plaintiff/trustee's compromise in its "Order Authorizing Compromise". (See Exhibit 4.) In doing so, this Court adopted the plaintiff/trustee's position that regardless of whether Proposition 64 was retroactive or not, the attorney's fees award belonged solely to the attorneys, not to Plaintiff Wobogo, who would be removed as plaintiff if Proposition 64 was ruled retroactive, and not to the individual creditors who had allegedly been harmed. (Exhibit 4, pp. 2-3.)

The debtor timely filed an appeal to the United States District Court from this Court's "Order Authorizing Compromise". On July 19, 2006, the debtor filed his "Appellant's Opening Brief". On August 7, 2006, the plaintiff/trustee filed his "Appellee's Brief". (See Exhibit 5.) Again the plaintiff/trustee took the position that "the attorney's are the equitable owners of the fee award", and as such "the court made the award payable

specifically to the attorneys". (See Exhibit 5, p. 13, lines 12-21.) The District Court has not yet rendered an opinion on the debtor's appeal.

As a result of the 'Compromise', the plaintiff/trustee has dismissed the debtor's pre-petition civil appeals. So far, the plaintiff/trustee has also liquidated five of the debtor's Schedule A properties: 1611 Shoreview Avenue, San Mateo, CA for $670,000 (see Exhibit 6); 786 5th Avenue, Redwood City, CA for $610,000 (see Exhibit 7); 3912 Kent Way, South San Francisco, CA for $651,000 (see Exhibit 8); 150 Broadway Street, Redwood City, CA for $710,000 (see Exhibit 9); and 182 Dublin Street, San Francisco, CA for $638,000 (see Exhibit 10). The total gross sales proceeds from these properties were $3,279,000.

There were three mortgages on three of these properties: a remaining mortgage balance of $289,558 on 1611 Shoreview Avenue, San Mateo, CA; a remaining mortgage balance of $284,811 on 786 5th Avenue, Redwood City, CA; and a remaining mortgage balance of $323,972 on 150 Broadway Street, Redwood City, CA. (See Exhibit 11.) Thus the remaining mortgage balances add up to $898,341. Therefore the net sales proceeds from the sale of the above-referenced five properties were approximately $2,380,000.

The plaintiff/trustee's attorneys and accountants have been given compensation by this Bankruptcy Court. On September 23, 2005, this Court awarded the plaintiff/trustee's attorneys at Luce Forward the amount of $152,431.50 in fees and $9,681.64 in expenses. (See Exhibit 12.) On that same date, September 23, 2005, this Court also awarded the plaintiff/trustee's accountants at Bachecki, Crom & Co. the amount of $11,306.00 in fees and $288.39 in expenses. (See Exhibit 13.) Additionally, on June 26, 2006, this Court awarded additional compensation to plaintiff's attorneys at Luce Forward in the amount of $216,216.50 in fees and

$6,937.83 in expenses. (See Exhibit 14.) Also on this same date, June 26, 2006, this Court awarded the plaintiff's accountants additional compensation of $6,119.50 in fees and $147.49 in expenses. (See Exhibit 15.) The total amount of compensation awarded to these attorneys and accountants to date is $403,128.85.

Therefore, after deducting the remaining mortgage balances of $898,341 and the amounts awarded to plaintiff's attorneys and accountants of $403,128.85 from the gross sales proceeds of the debtor's above-referenced five properties, the net sales proceeds remaining total approximately $1,976,871. Hence it would seem that this $1.9 million amount is more than sufficient to pay off the individual creditors' approximate $400,000 allowed claims and any post-judgment interest thereon.

The plaintiff/trustee asked this Bankruptcy Court to have the individual creditors' claims be allowed as a secured claim against this debtor's estate. This Bankruptcy Court concurred and authorized the plaintiff/trustee's compromise to proceed. (See Exhibit 4, pp. 2-3.) The plaintiff/trustee has now liquidated more than enough of the debtor' properties to pay off and satisfy all of the individual creditors' claims.

The remaining balance after the liquidation of all of the debtor's Schedule A properties will be applied to the unsecured attorney's fees award as provided by this Court's "Order Authorizing Compromise". (See Exhibit 4, pp. 2-3.) Since the debtor has waived his discharge the unpaid balance of the unsecured attorneys' fees award after the sale of all Schedule A properties shall remain unsecured against the debtor. That is what this Court's 'Order' provides.

1

## ARGUMENT

2

3

## I

4

## THE LEGAL REQUIREMENTS RE SUMMARY JUDGMENT MOTIONS IN BANKRUPTCY COURT

5

6

Rules of Bankruptcy Procedure, Rule 7056, incorporates the

7

requirements of Federal Rules of Civil Procedure, Rule 56, regarding

8

summary judgment motions in civil cases.  Rule 56

9

> provides that summary judgment shall be granted
> when there is no genuine issue as to any material
> fact and the moving party is entitled, as a matter of
> law, to a judgment in its favor.

10

11

12

13

(In re Bennett Funding Group, Inc. (Bankr. N.D.N.Y. 1997) 220 B.R. 743.)

14

The moving party has the initial burden of demonstrating that there is no

15

genuine issue of material fact for trial.  (In re Colombo (Bankr. W.D.N.Y.

16

2004) 316 B.R. 429, 431.)  Once the moving party has met its initial burden,

17

the non-movant must then come forward with sufficient evidence on the

18

elements essential to its case to support a verdict in its favor.  (Ibid.)

19

In deciding to grant or deny summary judgment, "the trial court must

20

resolve all ambiguities and draw inferences in favor of the party against

21

whom summary judgment is sought."  (In re Bennett Funding Group, Inc.,

22

supra, at 220 B.R. 751.)  However, the non-moving party "must do more

23

than simply show that there is some metaphysical doubt as to the material

24

facts."  (Repp v. Weber (2nd Cir. 1997) 132 F.3d 882, 889.)   The United

25

States Supreme Court has commented on the requirements for the entry of

26

summary judgment pursuant to Rule 56 of the Federal Rules of Civil

27

Procedure:

28

In our view, the plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time
for discovery and upon motion, against a party who
fails to make a showing sufficient to establish the
existence of an element essential to that party's case,
and on which that party will bear the burden of proof
at trial. In such a situation, there can be 'no genuine
issue as to any material fact,' since a complete failure
of proof concerning an essential element of the
nonmoving party's case necessarily renders all
other facts immaterial. <u>The moving party is
'entitled to a judgment as a matter of law' because
the nonmoving party has failed to make a sufficient
showing on an essential element of her case with
respect to which she has the burden of proof.</u> '[T]h[e]
standard [for granting summary judgment] mirrors the
standard for a directed verdict under Federal Rule of
Civil Procedure 50(a) ...'. (emphasis added)

(<u>Celotex Corp. v. Catrett</u> (1986) 477 U.S. 317, 322-323, 91 L.Ed.2d 265,
106 S.Ct. 2548; see also <u>Anderson v. Liberty Lobby, Inc.</u>(1986) 477 U.S.
242, 250, 91 L.Ed.2d 202, 106 S.Ct. 2505.)

In this matter summary judgment should be granted in favor of the
moving party defendants for the simple reason that the plaintiff cannot
establish an essential element of each cause of action contained in his four
adversary complaints brought pursuant to California's UFTA. That element
is the well-established requirement that a creditor must have suffered
affirmative harm before he or she has standing to bring an action under the
UFTA to avoid a transfer from the debtor to a third party. In legal parlance
the alleged transfer must be "fraudulent as to a creditor". (CC { 3439.04(a);
<u>Mehrtash v. Mehrtash</u> (2001) 93 Cal.App.4[th] 75, 80 ["A transfer in fraud of
creditors may be attacked only by one who is injured thereby."].) If the
named creditors in this bankruptcy proceeding do not have standing to bring
this action under California's UFTA then the plaintiff/trustee also does not

have standing to bring this action on their behalf. (11 U.S.C. { 544(a) [trustee to have "rights and powers of … a creditor …."]; see also In re Carrozzella & Richardson (Bankr. D.Conn. 2003) 302 B.R. 415, 420 [proceeding under 11 U.S.C. 544(b) and applying Connecticut law].)

Title 11 of the United States Code, section 544(a), confers standing on the plaintiff/trustee under federal law to bring these adversary proceedings on behalf of the individual creditors. However, the extent of the plaintiff/trustee's rights to pursue these adversary complaints is measured by the substantive law of the jurisdiction governing the property in question. (In re Bridge (3rd Cir. 1994) 18 F.3d 195; see also Collier on Bankruptcy, Fifteenth Edition Revised, Vol. 5, { 544.02, p. 544-6 [citing numerous multi-jurisdictional authorities].) Here the substantive law is the law of California's UFTA.

The reason why the plaintiff/trustee and the named individual creditors have not suffered any prejudice or affirmative harm and hence do not have standing to proceed under California's UFTA, is that said individual creditors' total claims amount to approximately $400,000.00, which were secured by the debtor's real properties. The plaintiff/trustee started selling the debtor's real properties to satisfy these allowed claims. So far five of the debtor's seven properties have been sold and these generated approximately $1.9 million in net cash proceeds to the plaintiff/trustee. (See Statement of Facts, supra.) This is more than enough to satisfy the individual creditors' claims of approximately $400,000, plus post-judgment interest thereon, as outlined in this Court's "Order Authorizing Compromise". (See Exhibit 4, pp. 2-3.)

As the following arguments highlight, the plaintiff cannot establish a triable issue of fact regarding the essential element of his causes of action under California's UFTA, that the individual creditors have suffered prejudice because of the alleged transfers of adversary properties. That is, the individual creditors have suffered no affirmative harm as a result of these alleged transfers of adversary properties, which are properties other than the debtor's Schedule A properties. (CC { 3439.04(a); <u>Mehrtash v. Mehrtash</u> (2001) 93 Cal.App.4th 75, 80 ["A transfer in fraud of creditors may be attacked only by one who is injured thereby."].)  The creditors have been paid off or will be paid off very soon.  The plaintiff/trustee has generated approximately $1.9 million to satisfy all the individual creditors who alleged that they have been harmed by the debtor.

## II

## THE TRUSTEE LACKS STANDING TO EVEN BRING THESE ADVERSARY PROCEEDINGS SINCE THE CREDITORS HAVE SUFFERED NO AFFIRMATIVE HARM AS A RESULT OF THESE ALLEGED FRAUDULENT TRANSFERS

Title 11 of the United States Code, section 544(a) provides that the trustee "shall have ..... the rights and powers of, or may avoid any transfer of property of the debtor ...... that is voidable by -- a creditor ....".  Section 544(a) confers standing on the plaintiff/trustee under federal law to bring these adversary proceedings on behalf of the individual creditors.  However, the extent of the plaintiff/trustee's rights to pursue these adversary complaints is measured by the substantive law of the jurisdiction governing the property in question.  (<u>In re Bridge</u> (3rd Cir. 1994) 18 F.3d 195; see also <u>Collier on Bankruptcy</u>, Fifteenth Edition Revised, Vol. 5, { 544.02, p. 544-6

[citing numerous multi-jurisdictional authorities].)  The applicable law upon which the plaintiff as trustee is proceeding in these matters, as alleged in the four adversary complaints, is California's UFTA contained in Civil Code sections 3439, et seq.  Under this applicable law, avoidance of these alleged fraudulent transfers is available to the plaintiff/trustee only if he has the status and rights of a creditor where said transfers are "fraudulent as to a creditor".  (See CC { 3439.04(a).)

It is well established under California law that a creditor bringing an avoidance action pursuant to Civil Code section 3439, et seq., must have suffered affirmative harm.  Civil Code section 3439.04(a) requires the transfer to be "fraudulent as to a creditor".  (Mehrtash v. Mehrtash (2001) 93 Cal.App.4th 75, 80.)

> A well established principal of the law of fraudulent transfers is, 'A transfer in fraud of creditors may be attacked only by one who is injured thereby.  Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively.  In other words, prejudice to the plaintiff is essential.  It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt'.  (emphasis added)

(Ibid; see also Bennett v. Paulson (1935) 7 Cal.App.2d 120, 123; Haskins v. Certified Escrow & Mtge. Co. (1950) 96 Cal.App.2d 688, 691; A/S Kreditt-Finans v. Cia Venetico De Navegacion, S.A. of Panama (E.D.Pa. 1983) 560 F.Supp. 705, 711, aff'd 729 F.2d 1446 (3rd Cir. 1984) ["numerous courts in other jurisdictions in which the issue has arisen have stated as though it were axiomatic the requirement that a creditor be injured by the conveyance it seeks to invalidate".]  This is a principal in equity.  A plaintiff/creditor

seeking the equitable relief of setting aside a transfer of property must show entitlement to relief and inadequacy of a remedy at law. This seldom needs restatement in case law "because ordinarily creditors do not bother to seek avoidance of debtor's conveyances without a clear prospect of profiting by the litigation." (Mehrtash, supra, at 93 Cal.App.4th 80.)

In other words, if the individual creditors in this bankruptcy proceeding who have submitted claims were not harmed or prejudiced as a result of the alleged transfers in question, they are not entitled to relief under California's UFTA. (Mehrtash, supra, at 93 Cal.App.4th 81.) These creditors' claims have been paid in full, or should have been paid in full by now. As explained above, the plaintiff/trustee has approximately $1.9 million in which to pay the approximate $400,000 or so to satisfy the individual creditors' claims in full.

Consequently, it is beyond dispute that if these creditors have not already been paid off, they certainly can be and will be from the amounts already obtained from the sale of the debtor's five properties. There can be no triable issue of fact in regards to whether the amount of money obtained from the sale of these properties is sufficient to pay off the individual creditors' claims.

Hence these individual creditors have suffered no affirmative harm as a result of the alleged transfers and have no standing to bring this action on their own. Likewise for the plaintiff/trustee.

So the remaining issue is 'what about the attorney's fees award'? The attorney's fees award totals, as outlined in this Court's "Order Authorizing Compromise", approximately $3.6 million, which has been split into two unsecured claims, one for $2,573,827 and another for $1,050,935. This Court ordered that both sums be directly payable to the attorneys. (See

Exhibit 4, pp 2-3.)  Who do these fees belong to?  The individual creditors?
Not according to the prior position of the plaintiff/trustee.  This is the same
position he has taken throughout this bankruptcy proceeding.  The
plaintiff/trustee has always maintained that these attorney's fees do not
belong to Plaintiff Wobogo, and hence cannot go out the window when and
if Proposition 64 became retroactive and deprived Wobogo of standing to
bring the underlying representative action on behalf of the general public,
without suffering any personal harm herself.  The plaintiff/trustee has always
maintained that these attorney's fees belong solely to the attorneys, not
Wobogo, and not the individual creditors who submitted their claims to this
Bankruptcy Court.  In his "Notice of Trustee's Intent to Dismiss Appeals
and Compromise with Creditors", the plaintiff/trustee stated that "the
Superior Court awarded [attorney's fees and costs] to two law firms for their
work" on the underlying civil case.  (See Exhibit 2, bottom of page 1.)
In his "Trustee's Memorandum in Reply to Objection to Compromise", filed
in this Court on March 24, 2006 (see Exhibit 3), the trustee took this
position:

> The Superior Court made the fee award under Section
> 1021.5 of the California Code of Civil Procedure; the
> fee award does not belong to Ms. Wobogo.  It belongs
> to the attorneys.  Ms. Wobogo's removal as a plaintiff
> will not result in loss by the attorney of the fee award.
> (emphasis added)

(Exhibit 3, page 6, lines 18-21.)  This Court adopted this position by the
plaintiff/trustee when it approved his proposed compromise in its "Order
Authorizing Compromise".  In this Order this Court ordered that the
"individual creditors shall have allowed claims in the total amount of
$399,946.08" and that the attorney's fees and costs portion of the civil

judgments, as "reduced by the compromise" would be paid "directly to DLA Piper Rudnick Gray Cary US LLP", the individual creditors' attorneys, not to the creditors.  (See Exhibit 4, pp. 2-3.)

The debtor appealed this Court's "Order Authorizing Compromise" to the United States District Court.   In this District Court appeal, the trustee submitted his "Appellee's Brief of Charles E. Sims, Trustee in Bankruptcy". (See Exhibit 5.)  In that brief the plaintiff/trustee again took the same position:

> The attorneys are the equitable owners of the fee award.  The California trial court awarded attorney's fees under Cal. Civ. Proc. Code { 1021.5, which allows such awards when an action has conferred a substantial benefit on a large class of people. (Dkt. 246, Ex. C.) The court made the award payable specifically to the attorneys who prosecuted the action: "and defendant is ordered to pay that amount to plaintiff's attorneys forthwith." (Id. at 4.)  This is standard California practice.  More than 20 years ago the California Supreme Court concluded it was "established that [section 1021.5] awards are properly made to plaintiffs' attorneys rather than to plaintiffs themselves." (Folsom v. Butte County Assn. of Governments, 32 Cal.3d 668, 682 & n. 26 (Cal. 1982) The attorney is the true owner of the fees awarded. (Flannery v. Prentice, 26 Cal.4th 572, 577, 582 (Cal. 2001). (emphasis added)

(Exhibit 5, page 13, lines 12 to 21.)

The germane question now is, can the trustee reverse its position and claim that the attorneys fees award belong to the individual creditors, thus satisfying the "affirmative harm" requirement of Civil Code section 3439.04(a) ["fraudulent as to a creditor"]?  The answer is simply, no.

1    The Rules of Bankruptcy Procedure, Rule 9017 provide that the

2  Federal Rules of Evidence "apply in cases under the Code".    Federal Rules

3  of Evidence, Rule 302 provides:

4            In civil actions and proceedings, the effect of a
5            presumption respecting a fact which is an element
             of a claim or defense as to which State law supplies
6            the rule of decision is determined in accordance with
7            state law.

8  Under Rule 302, where in a civil action or proceeding State law supplies the

9  rule of decision with respect to a claim or a defense, State law also

10  determines the effect of a presumption respecting a fact which is an element

11  of such a claim or defense.  (<u>United States v. Wilson</u> (N.D. Iowa 1977) 433

12
13  F.Supp. 57, 60, vacated on other grounds (8th Cir. 1978) 575 F.2d 620,

14  vacated on other grounds (1979) 442 U.S. 653, 61 L.Ed.2d 153, 99 S.Ct.

15  2529 and vacated on other grounds (1979) 443 U.S. 902, 61 L.Ed.2d 870, 99

16  S.Ct. 3092; see also <u>Cities Service Oil Co. v. Dunlap</u> (1939) 308 U.S. 208,

17  212, 84 L.Ed. 196, 60 S.Ct. 201.)  In this matter, the substantive law is

18  California's UFTA contained in California Civil Code sections 3439, et seq.

19  Hence California law provides the substantive requirements for a claim or

20  defense related thereto.  Under Division 5, Chapter 3, Article 2 of the

21  California Evidence Code, titled "Conclusive Presumptions", is Evidence

22  Code section 623.  It provides:

23            Whenever a party has, by his own statement or conduct,
24            intentionally and deliberately led another to believe a
             particular thing true and to act upon such belief, he is
25            not, in any litigation arising out of such statement or
26            conduct, permitted to contradict it.

27
28  Here the plaintiff/trustee has continually throughout this bankruptcy

   litigation and on appeal of same to the United States District Court, taken the

position that the attorney's fees award belongs solely to the attorneys, not to Plaintiff Wobogo, and not to the individual creditors.  This Court has adopted the plaintiff/trustee's position by ordering that the attorney's fees be paid directly to the attorneys, and not the individual creditors, in its "Order Authorizing Compromise". (See Exhibit 4, pp. 2-3.)  Under section 623 of the California Evidence Code the plaintiff/trustee and this Court are not permitted to reverse that position now that it suits them.  Not after this Court has approved the plaintiff/trustee's compromise and ordered that he dismiss the debtor's civil appeals, the debtor's only means of challenging the claims against him, not after said civil appeals have been dismissed, and not after the plaintiff/trustee has begun liquidating the debtor's properties.

The California Supreme Court is in accord.  In the recent High Court case of MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc. (2005) 36 Cal.4th 412, the Supreme Court expounded on the doctrine of judicial estoppel.

> Judicial estoppel precludes a party from gaining an
> advantage by taking one position, and then seeking
> a second advantage by taking an incompatible position.
> ............... The doctrine [most appropriately] applies
> when: (1) the same party has taken two positions;
> (2) the positions were taken in judicial or quasi-judicial
> administrative proceedings; (3) the party was successful
> in asserting the first position (i.e., the tribunal adopted
> the position or accepted it as true); (4) the two positions
> are totally inconsistent; and (5) the first position was not
> taken as a result of ignorance, fraud, or mistake.

(emphasis added)  (Id. at 36 Cal.4th 422; see also Aguilar v. Lerner (2004) 32 Cal.4th 974, 986-987; Scripps Clinic v. Superior Court (2003) 108 Cal.App.4th 917, 943.)  This doctrine of judicial estoppel "dual goals are to maintain the integrity of the judicial system and to protect parties from

1  opponents' unfair strategies. (MW Erectors, Inc., supra, at 36 Cal.4[th] 422;

2  Aguilar, supra, at 32 Cal.4[th] 986.)

3          Judicial estoppel should be applied in this matter to prevent the

4  plaintiff/trustee and this Court from now taking the position that the

5  individual creditors are entitled to the attorney's fee award.  The

6  plaintiff/trustee has always taken the position all through this bankruptcy

7  litigation and also in the appeal from same in the United States District

8  Court, that the attorneys' fees award belongs to the attorneys, not Plaintiff

9  Wobogo and not the individual creditors.  This Court agreed with the trustee

10  and approved the compromise ordering that the attorney's fees be paid

11  directly to the attorneys, not the individual creditors.  (See Exhibit 4, pp. 2-

12  3.)  This Court's approval of the trustee's compromise was appealed to the

13  United States District Court and said appeal has been fully briefed.  The

14  parties are currently awaiting a decision on same.  For the plaintiff/trustee or

15  this Court to now adopt the position that the individual creditors are entitled

16  to the attorneys' fees award would be totally incompatible with their

17  established position that said attorneys' fees award belongs solely to the

18  attorneys.

19          Consequently, the trustee should be judicially estopped from taking

20  any other position than the one he has always espoused, that the attorneys'

21  fees award belongs solely to the attorneys.  (MW Erectors, Inc., supra, at 36

22  Cal.4[th] 422; Aguilar, supra, at 32 Cal.4[th] 986-987.)  Likewise for this Court.

23  Otherwise, judicial integrity will be compromised and the plaintiff/trustee

24  will have taken an unfair strategy[1].  (Ibid.)

25

26

27  ————————————————

28  [1] The fact that the individual creditor's bankruptcy claims may contain a demand for attorney's fees is not
controlling here.  The issue is whether said creditors have suffered "affirmative harm" as a result of these
alleged transfers.  (Mehrtash v. Mehrtash (2001) 93 Cal.App.4[th] 75, 80.)  Obviously they have not.  They

Thus, the plaintiff/trustee does not have standing to bring these adversary proceedings on behalf of the individual creditors. The creditors have not suffered any "affirmative harm" as a result of these alleged transfers and hence have no standing to bring these actions under the California UFTA in Civil Code sections 3439, et seq. (Mehrtash v. Mehrtash (2001) 93 Cal.App.4th 75, 80.) Hence the defendants' motion for summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment should be granted. The individual creditors' claims have been paid in full. Therefore the individual creditors have suffered no affirmative harm as a result of these alleged transfers of adversary properties, which are properties other than the debtor's Schedule A properties. The individual creditors have not been prejudiced. Hence they have no standing to bring these adversary proceedings under California's UFTA and hence the plaintiff/trustee does not have standing to bring these actions on their behalf.

October 18, 2006          /S/ JONATHAN CHANCE, ESQ.
                          JONATHAN CHANCE,
                          Attorney for Defendants

---

have been paid their $400,000 or will be shortly. The debtor's properties can well produce this amount and more.

Defendants' Motion for Summary Judgment          -19-

1   JONATHAN CHANCE
    Attorney at Law
2   205 East Third Ave., Suite 411
    San Mateo, CA 94401
3   (650) 342-6200

4   Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,            ) Case No. 05-30047 TEC
                                    )
12          Debtor.                 )
                                    ) Chapter 7
13  _____)
                                    )
14  CHARLES E. SIMS, Trustee,       ) Adversary Proceeding Nos.
                                    ) 05-3240; 05-3241; 05-3242; and
15          Plaintiff,              ) 05-3243
                                    )
16                                  )
17          vs.                     ) DECLARATION OF WILLIAM
                                    ) E. GILG IN SUPPORT OF
18  FRAN YEGANEH, KEN               ) DEFENDANTS' MOTION FOR
19  YEGANEH, ET AL,                 ) SUMMARY JUDGMENT
                                    )
20                                  ) Date: November 15, 2006
21                                  ) Time: 9:30 AM
                                    ) Dept: 23
22          Defendant.              )
    _____)
23

24  I, WILLIAM E. GILG, declare as follows:

25  1. I am an attorney at law duly licensed and authorized to practice law
26
    before all the courts of the State of California and before the United States
27
    District Court for the Northern District of California.  I am assisting the
28
    defendants' counsel of record, Jonathan Chance, in this matter.  I was also

1   the debtor, Ramin Yeganeh's, civil attorney in the underlying state civil

2   case.

3   2.  These matters are four adversary proceedings based upon alleged

4   fraudulent transfers of adversary properties to the defendants, the debtor's

5   parents.  Plaintiff alleges in his adversary complaints that by "transfers" of

6   certain real properties (adversary properties) about three years before there

7   was a judgment against the debtor, and about four years before this Chapter

8   7 bankruptcy, the debtor intended to hinder, delay, or defraud his creditors or

9   became insolvent as a result of said transfers.

10  3.  The plaintiff bases his allegations in all four adversary complaints on

11  California's Uniform Fraudulent Transfer Act (hereinafter "UFTA")

12  contained in Civil Code sections 3439, et al.  (See CC { 3439.04(a)(1),

13  (a)(2).)  The plaintiff also relies in all four adversary complaints on Title 11

14  of the United States Code, section 544(a) as providing him with standing to

15  avoid these transfers that could have been avoided by a creditor under local

16  law, that is California's UFTA.

17  4.  On October 4, 1999, the debtor, Ramin Yeganeh, was sued by Plaintiff

18  Ingram and Plaintiff Wobogo in the Superior Court of San Mateo County,

19  Case No. 410586.  Plaintiff Ingram sued on behalf of herself and her causes

20  of action were all settled and dismissed back on April 25, 2001.  Plaintiff

21  Wobogo sued on behalf of the general public with a single cause of action

22  under Business and Professions Code section 17200 for unfair business

23  practices, although she admitted that she had never done any business with

24  the debtor and had never suffered any loss or injury.

25  5.  On June 3, 2004, a temporary judge issued a judgment against the debtor

26  and in favor of Plaintiff Wobogo for $270,000.  This $270,000 underlying

judgment named certain individual claimants/creditors who had allegedly done business with the debtor in the past.

6. On September 9, 2004, the same temporary judge issued his "Order Re Award of Attorney's Fees, Costs, Prejudgment Interest, and Related Findings; Order for Entry of Judgment". In said order, the temporary judge issued a judgment awarding $2.3 million with a 1.5 multiplier, or $3.5 million in attorney's fees, plus costs of approximately $32,000, and prejudgment interest totaling approximately $130,000 on the underlying $270,000 judgment. The debtor timely filed his civil appeals to these judgments.

7. On January 7, 2005, the debtor filed a Chapter 13 Bankruptcy Petition in pro per.

8. On January 14, 2005, the Gray Cary attorneys (Wobogo's attorneys at DLA Piper, Rudnick, Gray Cary, LLP) brought a motion to convert the debtor's Chapter 13 to a Chapter 7. On January 21, 2005, this Bankruptcy Court converted the debtor's Chapter 13 to a Chapter 7. On February 18, 2005, the debtor's Motion for Reconsideration and Dismissal of the Chapter 7 was denied by this Court. The debtor remains in Chapter 7.

9. On February 23, 2005, the plaintiff, the Chapter 7 trustee, filed his four adversary proceedings against the defendants, alleging that the debtor had fraudulently transferred the adversary properties, which are properties other than the debtor's Schedule A properties, to his parents, the defendants, some three years prior to the entry of the civil judgments against the debtor. The plaintiff/trustee alleges that said alleged transfers constituted fraudulent transfers under California's UFTA.

10. On February 17, 2006, the plaintiff/trustee filed his "Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors". A true and

correct copy of the "Notice" is attached hereto as Exhibit 2. In this 'Notice' the plaintiff/trustee stated that he intended to move the Court to dismiss the debtor's pre-petition civil appeals and allow a $400,000 secured claim for the individual creditors, and some $3.6 million in attorneys' fees for the attorneys involved.

11. On March 9, 2006, the debtor filed an "Objection to Trustee's Notice of Intent to Compromise".

12.. On March 24, 2006, the plaintiff/trustee filed a "Trustee's Memorandum in Reply to Objection to Compromise". A true and correct copy of this document is at Exhibit 3. In this 'Memorandum in Reply' the plaintiff/trustee reiterated his position that the attorney's fees award did not belong to Plaintiff Wobogo or the individual creditors, but belonged solely to the attorneys at Gray Cary. (Exhibit 3, p. 6, lines 18-21.)

13. On April 8, 2006, this Court approved the plaintiff/trustee's compromise in its "Order Authorizing Compromise". A true and correct copy of this document is attached hereto as Exhibit 4. In doing so, this Court adopted the plaintiff/trustee's position that regardless of whether Proposition 64 was retroactive or not, the attorney's fees award belonged solely to the attorneys, not to Plaintiff Wobogo, who would be removed as plaintiff if Proposition 64 was ruled retroactive, and not to the individual creditors who had allegedly been harmed. (Exhibit 4, pp. 2-3.)

14. The debtor timely filed an appeal to the United States District Court from this Court's "Order Authorizing Compromise". On July 19, 2006, the debtor filed his "Appellant's Opening Brief". On August 7, 2006, the plaintiff/trustee filed his "Appellee's Brief". A true and correct copy of this document is attached hereto as Exhibit 5. Again the plaintiff/trustee took the position that "the attorney's are the equitable owners of the fee award", and

as such "the court made the award payable specifically to the attorneys".

(See Exhibit 5, p. 13, lines 12-21.) The District Court has not yet rendered an opinion on the debtor's appeal.

15. As a result of the 'Compromise', the plaintiff/trustee has dismissed the debtor's pre-petition civil appeals. So far, the plaintiff/trustee has also liquidated five of the debtor's Schedule A properties: 1611 Shoreview Avenue, San Mateo, CA for $670,000 (see Exhibit 6); 786 5th Avenue, Redwood City, CA for $610,000 (see Exhibit 7); 3912 Kent Way, South San Francisco, CA for $651,000 (see Exhibit 8); 150 Broadway Street, Redwood City, CA for $710,000 (see Exhibit 9); and 182 Dublin Street, San Francisco, CA for $638,000 (see Exhibit 10). The total gross sales proceeds from these properties were $3,279,000. True and correct copies of these Orders Authorizing Sale of Real Properties are attached hereto as Exhibits 6, 7, 8, 9, and 10. I got these copies from this Court's PACER website.

16. The plaintiff/trustee's attorneys and accountants have been given compensation by this Bankruptcy Court. On September 23, 2005, this Court awarded the plaintiff/trustee's attorneys at Luce Forward the amount of $152,431.50 in fees and $9,681.64 in expenses. A true and correct copy of this document obtained from this Court's PACER website is attached hereto as Exhibit 12.

17. On that same date, September 23, 2005, this Court also awarded the plaintiff/trustee's accountants at Bachecki, Crom & Co. the amount of $11,306.00 in fees and $288.39 in expenses. A true and correct copy of this document obtained from this Court's PACER website is attached hereto as Exhibit 13.

18. Additionally, on June 26, 2006, this Court awarded additional compensation to plaintiff's attorneys at Luce Forward in the amount of

$216,216.50 in fees and $6,937.83 in expenses. A true and correct copy of this document obtained from this Court's PACER website is attached hereto as Exhibit 14.

19. Also on this same date, June 26, 2006, this Court awarded the plaintiff's accountants additional compensation of $6,119.50 in fees and $147.49 in expenses. A true and correct copy of this document obtained from this Court's PACER website is attached hereto as See Exhibit 15.

20. The total amount of compensation awarded to these attorneys and accountants to date is $403,128.85.

21. Therefore, after deducting the remaining mortgage balances of $898,341 and the amounts awarded to plaintiff's attorneys and accountants of $403,128.85 from the gross sales proceeds of the debtor's above-referenced five properties, the net sales proceeds remaining total approximately $1,976,871. Hence it would seem that this $1.9 million amount is more than sufficient to pay off the individual creditors' approximate $400,000 allowed claims and any post-judgment interest thereon.

22. The plaintiff/trustee has now liquidated more than enough of the debtor' properties to pay off and satisfy all of the individual creditors' claims.

23. Defendants now respectfully move for summary judgment in this matter.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed at San Bruno, California on October 18, 2006.


/S/ WILLIAM E. GILG
WILLIAM E. GILG
Attorney at Law

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8            IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                      )
12              Debtor.               )
                                      ) Chapter 7
13  _____ )
                                      )
14  CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
                                      )   05-3240; 05-3241; 05-3242; and
15              Plaintiff,            )   05-3243
                                      )
16                                    )
17      vs.                           ) DECLARATION OF DEBTOR
                                      ) IN SUPPORT OF DEFENDANTS
18  FRAN YEGANEH, KEN                 ) MOTION FOR SUMMARY
19  YEGANEH, ET AL,                   ) JUDGMENT
                                      )
20                                    ) Date: November 15, 2006
21                                    ) Time: 9:30 AM
                                      ) Dept: 23
22              Defendant.            )
    _____ )
23

24  I, RAMIN YEGANEH, declare as follows:

25  1.  I am the debtor in the above-entitled bankruptcy proceeding.  The

26  defendants, Ken and Fran Yeganeh, are my parents.

27  2.  These matters are four adversary proceedings based upon alleged

28  fraudulent transfers of adversary properties to the defendants, my parents.

1   Plaintiff, who is my Chapter 7 trustee, alleges in his adversary complaints
2   that by "transfers" of certain real properties (adversary properties) about
3   three years before there was a judgment against me, and about four years
4   before this Chapter 7 bankruptcy, that I intended to hinder, delay, or defraud
5   my creditors or became insolvent as a result of said transfers. These
6   allegations are not true.
7   3. On October 4, 1999, I was sued by Plaintiff Ingram and Plaintiff Wobogo
8   in the Superior Court of San Mateo County, Case No. 410586. Plaintiff
9   Ingram sued on behalf of herself and her causes of action were all settled
10  and dismissed back on April 25, 2001. Plaintiff Wobogo sued on behalf of
11  the general public with a single cause of action under Business and
12  Professions Code section 17200 for unfair business practices, although she
13  admitted that she had never done any business with me and had never
14  suffered any loss or injury.
15  4. On June 3, 2004, a temporary judge issued a judgment against me and in
16  favor of Plaintiff Wobogo for $270,000. This $270,000 underlying
17  judgment named certain individual claimants/creditors who had allegedly
18  done business with me in the past.
19  5. On September 9, 2004, the same temporary judge issued his "Order Re
20  Award of Attorney's Fees, Costs, Prejudgment Interest, and Related
21  Findings; Order for Entry of Judgment". In said order, the temporary judge
22  issued a judgment awarding $2.3 million with a 1.5 multiplier, or $3.5
23  million in attorney's fees, plus costs of approximately $32,000, and
24  prejudgment interest totaling approximately $130,000 on the underlying
25  $270,000 judgment. I timely filed my civil appeals to these judgments.
26
27
28

Declaration re Motion for Summary Judgment          -2-

6. On January 7, 2005, I filed a Chapter 13 Bankruptcy Petition in pro per. I filed this Chapter 13 to allow me time to prosecute my civil appeals to knock out or reduce the outrageous $3.5 million attorney's fees award.

7. On January 14, 2005, the Gray Cary attorneys (Wobogo's attorneys at DLA Piper, Rudnick, Gray Cary, LLP) brought a motion to convert my Chapter 13 to a Chapter 7. On January 21, 2005, this Bankruptcy Court converted my Chapter 13 to a Chapter 7. On February 18, 2005, my Motion for Reconsideration and Dismissal of the Chapter 7 was denied by this Court.   I remain in Chapter 7.

7. On February 25, 2005 I filed my bankruptcy schedules, including, Bankruptcy Schedule A, which is a list of my seven real properties.  A true and correct copy of these schedules is attached hereto as Exhibit 1.

8. On February 23, 2005, the plaintiff, the Chapter 7 trustee, filed his four adversary proceedings against the defendants, alleging that I had somehow fraudulently transferred the adversary properties, which are properties other than my Schedule A properties, to my parents, the defendants, some three years prior to the entry of the civil judgments against me.  The plaintiff/trustee alleges that said alleged transfers constituted fraudulent transfers under California's UFTA.

8. On November 8, 2005, this Court approved my Waiver of Discharge.

9. On February 17, 2006, the plaintiff/trustee filed his "Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors". (See Exhibit 2.) In this 'Notice' the plaintiff/trustee stated that he intended to move the Court to dismiss my pre-petition civil appeals and allow a $400,000 secured claim for the individual creditors, and some $3.6 million in attorneys' fees for the attorneys involved.

10. On March 9, 2006, I filed an "Objection to Trustee's Notice of Intent to Compromise".

11. On March 24, 2006, the plaintiff/trustee filed a "Trustee's Memorandum in Reply to Objection to Compromise". (See Exhibit 3.) In this 'Memorandum in Reply' the plaintiff/trustee reiterated his position that the attorney's fees award did not belong to Plaintiff Wobogo or the individual creditors, but belonged solely to the attorneys at Gray Cary. (Exhibit 3, p. 6, lines 18-21.)

12. On April 8, 2006, this Court approved the plaintiff/trustee's compromise in its "Order Authorizing Compromise". (See Exhibit 4.)

13. I timely filed an appeal to the United States District Court from this Court's "Order Authorizing Compromise". On July 19, 2006, I filed my "Appellant's Opening Brief". On August 7, 2006, the plaintiff/trustee filed his "Appellee's Brief". (See Exhibit 5.) The District Court has not yet rendered an opinion on my appeal.

14. As a result of the 'Compromise', the plaintiff/trustee has dismissed my pre-petition civil appeals. So far, the plaintiff/trustee has also liquidated five of my Schedule A properties: 1611 Shoreview Avenue, San Mateo, CA for $670,000 (see Exhibit 6); 786 5th Avenue, Redwood City, CA for $610,000 (see Exhibit 7); 3912 Kent Way, South San Francisco, CA for $651,000 (see Exhibit 8); 150 Broadway Street, Redwood City, CA for $710,000 (see Exhibit 9); and 182 Dublin Street, San Francisco, CA for $638,000 (see Exhibit 10). The total gross sales proceeds from these properties were $3,279,000.

15. There were three mortgages on three of these properties: a remaining mortgage balance of $289,558 on 1611 Shoreview Avenue, San Mateo, CA; a remaining mortgage balance of $284,811 on 786 5th Avenue, Redwood

City, CA; and a remaining mortgage balance of $323,972 on 150 Broadway Street, Redwood City, CA. A true and correct copy of the most recent mortgage statements are attached hereto as Exhibit 11. Thus the remaining mortgage balances add up to $898,341. Therefore the net sales proceeds from the sale of the above-referenced five properties were approximately $2,380,000.

16. The plaintiff/trustee's attorneys and accountants have been given compensation by this Bankruptcy Court. On September 23, 2005, this Court awarded the plaintiff/trustee's attorneys at Luce Forward the amount of $152,431.50 in fees and $9,681.64 in expenses. (See Exhibit 12.) On that same date, September 23, 2005, this Court also awarded the plaintiff/trustee's accountants at Bachecki, Crom & Co. the amount of $11,306.00 in fees and $288.39 in expenses. (See Exhibit 13.) Additionally, on June 26, 2006, this Court awarded additional compensation to plaintiff's attorneys at Luce Forward in the amount of $216,216.50 in fees and $6,937.83 in expenses. (See Exhibit 14.) Also on this same date, June 26, 2006, this Court awarded the plaintiff's accountants additional compensation of $6,119.50 in fees and $147.49 in expenses. (See Exhibit 15.) The total amount of compensation awarded to these attorneys and accountants to date is $403,128.85.

17. Therefore, after deducting the remaining mortgage balances of $898,341and the amounts awarded to plaintiff's attorneys and accountants of $403,128.85 from the gross sales proceeds of my above-referenced five properties, the net sales proceeds remaining total approximately $1,976,871. Hence it would seem that this $1.9 million amount is more than sufficient to pay off the individual creditors' approximate $400,000 allowed claims and any post-judgment interest thereon.

1   18.  The plaintiff/trustee has now liquidated more than enough of my

2   properties to pay off and satisfy all of the individual creditors' claims.

3          I declare under penalty of perjury under the laws of the State of

4   California and the United States of America that the foregoing is true and

5   correct. Executed at San Bruno, California on October 18, 2006

6

7

8          /S/ RAMIN YEGANEH
           RAMIN YEGANEH,
9          Debtor

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    JONATHAN CHANCE
     Attorney at Law
2    205 East Third Ave., Suite 411
     San Mateo, CA 94401
3    (650) 342-6200

4    Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                       )
12              Debtor.                ) Chapter 7
                                       )
13   _____)
                                       )
14   CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
                                       ) 05-3240; 05-3241; 05-3242; and
15              Plaintiff,             ) 05-3243
                                       )
16                                     )
17         vs.                         ) REQUEST FOR JUDICIAL
                                       ) NOTICE IN SUPPORT OF
18   FRAN YEGANEH, KEN                 ) DEFENDANTS' MOTION FOR
19   YEGANEH, ET AL,                   ) SUMMARY JUDGMENT
                                       )
20                                     ) Date: November 15, 2006
21                                     ) Time: 9:30 AM
                                       ) Dept: 23
22              Defendant.             )
23   _____)

24

25        Defendants Ken Yeganeh, Fran Yeganeh, et al, hereby respectfully

26   request that the Court take judicial notice of the following documents

27   attached to the Notice of Lodgment of Documentary Evidence for Which

28

Judicial Notice is Sought, and Other Documentary Evidence in Support of

Motion for Summary Judgment:

<u>EXHIBITS</u>  <u>DESCRIPTION OF EVIDENCE</u>

1          Debtor's Bankruptcy Schedule A

2          Notice of Trustee's Intent to Dismiss Appeals and
           Compromise with Creditors

3          Trustee's Memorandum in Reply to Objection to
           Compromise

4          Order Authorizing Compromise

5          Appellee's Brief of Charles E. Sims, Trustee in
           Bankruptcy

6          Order Authorizing Sale of Real Property
           (1611 Shoreview Avenue, San Mateo)

7          Order Authorizing Sale of Real Property
           (786 5th Avenue, Redwood City)

8          Order Authorizing Sale of Real Property
           (3912 Kent Way, South San Francisco)

9          Order Authorizing Sale of Real Property
           (150 Broadway, Redwood City)

10         Order Authorizing Sale of Real Property
           (182 Dublin Street, San Francisco)

11         See Exhibit 11 (Remaining Balance of All Mortgages
           on Properties Sold)

12         Order Approving First Application for Interim
           Compensation and Expense Reimbursement to
           Plaintiff's Attorneys (filed September 23, 2005)

1    13        Order Approving and Authorizing Compensation
2              To Accountants (filed September 23, 2005)

3    14        Order Approving Second Application for Interim
4              Compensation and Expense Reimbursement to
5              Plaintiff's Attorneys (filed June 26, 2006)

6    15        Order Approving and Authorizing Compensation
7              To Accountants (filed June 26, 2006)

8

9    <u>JUDICIAL NOTICE OF THESE DOCUMENTS IS APPROPRIATE</u>

10        Judicial notice of these documents is appropriate under Federal Rules

11   of Evidence, Rule 201.  These documents are not subject to reasonable

12   dispute because they are capable of accurate and ready determination by

13   resort to this Bankruptcy Court's records and file in this action, by resort to

14   this Bankruptcy Court's PACER website for this action, and by resort to the

15   United States District Court for the Northern District of California's PACER

16   website for Case No. C06-2788 CW, the appeal from this Court's "Order

17   Authorizing Compromise" in this matter.  (FRE, Rule 201(b).)  Court's

18   regularly take judicial notice of documents filed and orders or decisions

19   entered in federal and state courts.  (<u>Kramer v. Time Warner, Inc.</u> (2nd Cir.

20   1991) 937 F.2d 767, 774; <u>Wible v. Aetna Life Ins. Co.</u> (C.D.Cal. 2005) 375

21   F.Supp.2d 956, 965-966; <u>In re Homestore.com, Inc. Sec. Litig.</u> (C.D. Cal.

22   2004) 347 F.Supp.2d 814, 816; <u>Magnes v. Seattle-First Nat'l Bank</u> (5th Cir.

23   1994) 29 F.3d 1034, 1042.)

24        Furthermore, defendants have requested that the Court take judicial

25   notice of these documents and has provided the Court with the necessary

26   information to take judicial notice.  Accordingly, under Federal Rules of

27

28

1  Evidence, Rule 201(d), judicial notice of these documents is mandatory and
2  should be granted by the Court.  (FRE, Rule 201(d).)

3

4  October 18, 2006          /S/ JONATHAN CHANCE, ESQ.
5                            JOHATHAN CHANCE,
                             Attorney for Defendants
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   JONATHAN CHANCE
    Attorney at Law
2   205 East Third Ave., Suite 411
    San Mateo, CA 94401
3   (650) 342-6200

4   Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                      )
12           Debtor.                  )
                                      ) Chapter 7
13  _____ )
14  CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
                                      )  05-3240; 05-3241; 05-3242; and
15           Plaintiff,               )  05-3243
                                      )
16                                    )
17           vs.                      ) NOTICE OF LODGMENT OF
                                      ) DOCUMENTARY EVIDENCE
18  FRAN YEGANEH, KEN                 ) FOR WHICH JUDICIAL NOTICE
19  YEGANEH, ET AL,                   ) IS SOUGHT, AND OTHER
                                      ) DOCUMENTARY EVIDENCE
20                                    ) IN SUPPORT OF DEFENDANTS'
21                                    ) MOTION FOR SUMMARY
                                      ) JUDGMENT
22                                    )
23                                    ) Date: <u>November 15, 2006</u>
24                                    ) Time: <u>9:30 AM</u>
                                      ) Dept: <u>23</u>
25           Defendant.               )
    _____ )
26

27

28

PLEASE TAKE NOTICE that Defendants Ken Yeganeh, Fran

Yeganeh, et al, hereby lodges the following documentary evidence with the

Court in support of Defendant's Motion for Summary Judgment:


EXHIBITS  DESCRIPTION OF EVIDENCE

| | |
|---|---|
| 1 | Debtor's Bankruptcy Schedule A |
| 2 | Notice of Trustee's Intent to Dismiss Appeals and Compromise with Creditors |
| 3 | Trustee's Memorandum in Reply to Objection to Compromise |
| 4 | Order Authorizing Compromise |
| 5 | Appellee's Brief of Charles E. Sims, Trustee in Bankruptcy |
| 6 | Order Authorizing Sale of Real Property (1611 Shoreview Avenue, San Mateo) |
| 7 | Order Authorizing Sale of Real Property (786 5th Avenue, Redwood City) |
| 8 | Order Authorizing Sale of Real Property (3912 Kent Way, South San Francisco) |
| 9 | Order Authorizing Sale of Real Property (150 Broadway, Redwood City) |
| 10 | Order Authorizing Sale of Real Property (182 Dublin Street, San Francisco) |

EXHIBITS  DESCRIPTION OF EVIDENCE

11          The Most Recent Mortgage Statements Showing
            the Remaining Balances on Mortgages on the
            Debtor's Properties Sold by the Plaintiff/Trustee

12          Order Approving First Application for Interim
            Compensation and Expense Reimbursement to
            Plaintiff's Attorneys (filed September 23, 2005)

13          Order Approving and Authorizing Compensation
            To Accountants (filed September 23, 2005)

14          Order Approving Second Application for Interim
            Compensation and Expense Reimbursement to
            Plaintiff's Attorneys (filed June 26, 2006)

15          Order Approving and Authorizing Compensation
            To Accountants (filed June 26, 2006)

October 18, 2006        /S/ JONATHAN CHANCE, ESQ.
                        JOHATHAN CHANCE,
                        Attorney for Defendants

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8                IN THE UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                     )
12           Debtor.                 ) Chapter 7
                                     )
13 _____  )
                                     )
14 CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
                                     )  05-3240; 05-3241; 05-3242; and
15           Plaintiff,              )  05-3243
                                     )
16                                   )
17    vs.                            ) PROPOSED COURT ORDER RE
                                     ) DEFENDANTS' MOTION FOR
18 FRAN YEGANEH, KEN                 ) SUMMARY JUDGMENT
19 YEGANEH, ET AL,                   )
                                     )
20                                   )
                                     )
21                                   ) Date: November 15, 2006
                                     ) Time: 9:30 AM
22                                   ) Dept: 23
                                     )
23           Defendant.              )
   _____  )
24

25

26      The defendants, Ken Yeganeh, Fran Yeganeh, et al moved this Court

27 for summary judgment in their favor on November 15, 2006 at 9:30 AM.

28

Proposed Court Order re Motion for Summary Judgment  -1-

1  The defendants appeared through their attorney, Jonathan Chance.   The

2  plaintiff appeared through his attorney, Jeffrey Fillerup.   Having considered

3

4  the moving and opposing papers and the argument of counsel,

5       IT IS HEREBY ORDERED THAT the defendants' motion for

6

7  summary judgment is granted and these adversary proceedings are hereby

8  dismissed.

9

10

11      IT IS SO ORDERED.

12

13

14  Dated: _____     _____

15                              JUDGE OF THE UNITED STATES
                                BANKRUPTCY COURT
16

17

18

19

20

21

22

23

24

25

26

27

28

Proposed Court Order re Motion for Summary Judgment  -2-

# EXHIBIT 1

FORM B6A
(6/90)

In re:  **Ramin Yeganeh**                                            Case No.    **05-30047 TEC 7**
                 Debtor                                                                      (If known)

# SCHEDULE A - REAL PROPERTY

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 150 Broadway Street, Redwood City, CA  (Rental Property). | Fee Owner | | $ 750,000.00 | $ 330,000.00 |
| 1611 Shore View Avenue, San Mateo, CA (Rental Property). | Fee Owner | | $ 750,000.00 | $ 295,000.00 |
| 182 Dublin Street, San Francisco, CA (Vacant Rental Property). | Fee Owner | | $ 750,000.00 | $      0.00 |
| 3912 Kent Way, South San Francisco, CA (Rental Property) | Fee Owner | | $ 700,000.00 | $      0.00 |
| 786 5th Avenue, Redwood City, CA (Rental Property) | Fee Owner | | $ 600,000.00 | $ 290,000.00 |
| Debtor's residence at 724 East 4th Avenue, San Mateo, CA | Fee Owner | | $ 650,000.00 | $      0.00 |
| Vacant Lot | Fee Owner | | $ 300,000.00 | $      0.00 |

                                                           Total    ➤        **$4,500,000.00**
                                                                      (Report also on Summary of Schedules.)

## 18. Nature, location and name of business

None
☑

a.      If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the business, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the business, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NUMBER | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|
| | | | | |

b.      Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

None
☑

| NAME | ADDRESS |
|------|------|
| | |

* * * * * *

*[If completed by an individual or individual and spouse]*
I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  2/25/2005

Signature
of Debtor    s/ Ramin Yeganeh
             Ramin Yeganeh

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re RAMIN YEGANEH,

Debtor.

Case No. 05-30047 TEC
Chapter 7

## NOTICE OF TRUSTEE'S INTENT TO DISMISS APPEALS AND COMPROMISE WITH CREDITORS

TO CREDITORS, THE UNITED STATES TRUSTEE, AND OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT Charles E. Sims, Trustee in Bankruptcy of the estate of the above Debtor, has entered into an agreement with the plaintiffs (the "Individuals") in a state court proceeding and their attorneys (collectively the "Plaintiffs") whose claims together represent more than 80 percent of the claims against the estate. The claims are based on a judgment against the Debtor and a subsequent order on fees. The Debtor filed notices of appeal of the judgment and order. Under the terms of the agreement, the awards in favor of the Individuals themselves will be deemed secured by the judgment liens that were perfected more than 90 days before the Debtor filed his bankruptcy petition and will be paid in full with interest from sale of real property. The amount of that judgment debt in favor of the Individuals, excluding post-judgment interest, is approximately $400,000. The attorney fees portion of the Plaintiffs' claims will be reduced as described below. Upon approval of the compromise, the Trustee will dismiss all appeals commenced by the Debtor.

The Judgment in Favor of the Individuals

Subject to the Debtor's arguments on appeal, which are discussed below and which the Trustee is proposing to settle in this compromise, the actual awards to the Individuals (principal, prejudgment interest, and post-judgment interest) are secured claims against real property interests in the Debtor's name in San Mateo County. The aggregate principal amount of the awards is approximately $284,000. The Superior Court added prejudgment interest in the aggregate amount of approximately $116,000 bringing the total judgment to approximately $400,000. By operation of law, the judgment accrues interest at the annual rate of 10 percent; by agreement of the Plaintiffs, the accrual of post-judgment interest was tolled for a limited time. After the judgment was entered in June 2004, the Individuals recorded abstracts of judgment in San Mateo County in August 2004 to "perfect" a security interest in real property located in that county. The Trustee believes that there is a low probability that these awards would be overturned on appeal or would not be fully reinstated if the judgment were reversed and remanded to the state court for further proceedings. The Trustee proposes to allow the awards to the Individuals as secured claims and pay them in full from proceeds of sale of real property.

Attorney Fees and Costs

The largest part of the Plaintiffs' claim is for attorneys fees and costs. There are two separate components of the fee and costs claim: one for prejudgment fees and costs actually awarded by Superior Court order, and a second for post-judgment fees and costs.

In principal amount, the Superior Court awarded $2,301,869 in fees and $32,458 in costs to two law firms for their work through July 31, 2004, in prosecuting the complaint against the Debtor to judgment. The Superior Court also awarded a multiplier of 1.5 on the fees, bringing the total fee award to $3,452,804 (the "Pre-Judgment Fees").

1

In the Plaintiffs' proofs of claim, they have also requested fees and costs for services rendered between August 1, 2004, and January 7, 2005, the date on which the Debtor filed his bankruptcy petition. For that period of time, the fees were $800,342.75 (the "Post-Judgment Fees") and the costs were $39,157.50 for the two firms. The Plaintiffs assert that they are entitled to the multiplier on the Post-Judgment Fees, too. If the Plaintiffs are correct that the Post-Judgment Fees are both collectible and subject to the multiplier, the amount of the Post-Judgment Fees would be $1,200,514 which would bring the total claim for fees and expenses to approximately $4,725,000 plus the estimated $450,000 in compensatory damages and interest for the Individuals.

## The Negotiated Reduction in the Pre-Judgment Fees

When the Pre-Judgment Fees award was requested in the Superior Court, the Debtor challenged the propriety of any award; he also complained that certain charges should not have been included in the award either because they represented training time for attorneys or were excessive in some other way. The Plaintiffs disputed and continue to dispute the allegation that there was any excessive or inappropriate billing, and argue that the Debtor's previous arguments on the same points in the state court were rejected. However, the Trustee argued that, on appeal, some of the fees may be at risk. After months of negotiation (and without the Plaintiffs conceding that a single dollar's worth of time was excessive), the Plaintiffs have agreed to reduce the principal amount of the attorney fees award by $200,000 (almost 10 percent). There will be a corresponding reduction of $100,000 in the multiplier. The Trustee recognizes that the Debtor believes the entire fee award is at risk; the Trustee disagrees with the Debtor's assessment and is satisfied that he has negotiated an adequate reduction under the circumstances.

The Plaintiffs have argued that the Pre-Judgment Fees award (including the multiplier) is entitled to treatment as a secured claim that is enforceable against assets situated in the counties in which the Plaintiffs filed abstracts of judgment. The Trustee has argued that the timing of the recording of the abstracts of judgment securing the Pre-Judgment Fees and costs award makes the lien vulnerable to attack as a preferential transfer under Section 547(b) of the Bankruptcy Code. As part of the compromise, the Plaintiffs have agreed not to enforce their judgment liens for the Pre-Judgment Fees and costs against property while it is property of the bankruptcy estate.

The Plaintiffs have also agreed that for purposes of distribution of estate assets under Section 726(a) of the Bankruptcy Code, the multiplier will be entitled to distribution only after all general unsecured claims are paid in full. In other words, the principal amount of the fees, as reduced, will be treated as a general unsecured claim on a par with all other general unsecured claims and the multiplier claim will receive a distribution only after those general unsecured claims are paid in full.

## The Negotiated Reduction in the Post-Judgment Fees

The Plaintiffs also seek recovery of fees and costs incurred between July 31, 2004, the last day covered by the Superior Court's fee award, and January 7, 2005, the day on which the Debtor filed his bankruptcy petition. During that period, the Plaintiffs incurred an additional $800,342.75 in fees and $39,157.50 in expenses. The Plaintiffs assert that these Post-Judgment Fees are collectable in full, that the Superior Court would award them upon application and would apply the multiplier to them which would bring the total Post-Judgment Fees to $1,200,514. The Trustee has acknowledged that some of the additional fees might be awarded, but he argued that the full amount would not be awarded and the multiplier would not be applied to any award that was made. As part of a settlement, the Plaintiffs have agreed to reduce the principal amount of the Post-Judgment Fees by $400,000 (to $400,342.75) and not to assert the multiplier on this sum. The costs of $39,157.50 will be allowed in full.

## The Appeals

In exchange for the concessions by the Plaintiffs, the Trustee intends to dismiss the Debtor's appeals of the Superior Court's judgment and orders, thereby allowing them to become final, and to proceed with administration of the estate.

2

The Debtor has insisted from the outset of the bankruptcy case that his appeals will result in reversal of the Superior Court judgment and the subsequent orders. The Trustee has considered the arguments of the Debtor in support of the appeal, the arguments of the Plaintiffs in opposition to the appeal, and has conducted his own analysis of the merits of the appeals. The Trustee has considered the uncertainty surrounding the implications of the changes in Section 17200 of the Business and Professions Code effected by the passage of Proposition 64 on November 2, 2004. It is this uncertainty that has enabled the Trustee to negotiate the reductions described above, not concern on the part of the Plaintiffs that their arguments are weak. On the contrary, the Plaintiffs are as certain of victory as is the Debtor. The Trustee believes the Debtor's confidence is unjustified and has concluded that, in light of the large concessions by the Plaintiffs, it is in the best interest of the estate to dismiss the appeals and proceed with administration of the bankruptcy estate.

The Individuals' Secured Claims

The Debtor has asserted three fundamental arguments which he believes ensure him a victory on appeal as to the Individuals' secured claims:

(a)     The Superior Court violated the Debtor's due process rights because it failed to maintain a record of proceedings;

(b)     The Superior Court violated the Debtor's due process rights by not allowing him to conduct discovery; and

(c)     The passage of Proposition 64 in November 2004 amended Section 17200 of the California Business and Profession's Code to divest representative plaintiffs of standing to bring suit on behalf of others and, as a consequence, deprived the real victims of any claims they might have against the Debtor for his misconduct.

From an extensive review of the proceedings in the Superior Court, the Trustee is convinced that the alleged due process violations were "invited error" at best, and the appellate court would not reverse the judgment or any order based on the alleged violations.

With respect to the argument based on Proposition 64, there are numerous appellate level cases that have addressed Proposition 64's amendments to Section 17200 of the Business and Professions Code; a number of them have been accepted for review by the California Supreme Court, most notably *Californians for Disability Rights v. Mervyn, LLC* (Case No. S131798) and *Branick v. Downey Savings & Loan* (Case No. S132433). Both cases are fully briefed, but oral argument has not been set in either case as of the date of this notice.

The issue in *Branick* is the more pertinent to the Debtor's case: If the standing limitations of Proposition 64 apply to "17200 actions" that were pending on election day, may a plaintiff amend the complaint to substitute in or add a party that satisfies the new standing requirements and, if so, does the amended complaint relate back to the date of the initial complaint for purposes of the statute of limitations?

If the Supreme Court answers both questions in the affirmative, the legitimate basis for the Debtor's appeal will collapse and all ability to challenge the Plaintiffs' claims will likely be lost. If the Supreme Court answers the questions in the negative, the Plaintiffs could still prevail because, before election day, all of the Individuals were identified by name and given specific awards in the judgment, thereby becoming plaintiffs in effect if not in form. In addition, the Superior Court allowed the Individuals to formally intervene after election day, a ruling the Debtor challenges on jurisdictional grounds.

Most of the decisions thus far at the Court of Appeal level have remanded actions to the trial court to enable actual victims of misconduct to substitute themselves or another actual victim as plaintiff in place of representative plaintiffs and thereby correct what Proposition 64 has made a pleading deficiency. The Trustee believes the Supreme Court is likely to permit amendments and that on appeal the Individuals would not be deprived of their awards.

## Attorney Fees and Costs

The Debtor's attacks on the awards of fees and costs all invoke the deferential abuse-of-discretion standard of review. The California appellate courts are particularly reluctant to overturn attorney fee awards for abuse of discretion.

The first question is whether the amount of the Pre-Judgment Fees portion of the Plaintiffs' claims will result in a remand. The Debtor has argued that the Superior Court should have significantly reduced the principal amount of the fee award in part because the fees were so high and in part because the Debtor identified entries he believed were not appropriately charged in the first place. The Trustee acknowledges that the principal amount of the fee award ($2.3 million) is very high and that an ordinary person's first reaction to such a large award would be that the fees are too high. However, a review of the activity in the state court action makes it obvious that the Debtor's own actions made the fees he complains about necessary. This conclusion is borne out by the Trustee's own experience with the Debtor: since the Trustee's appointment, the Debtor has interfered numerous times with the Trustee's administration of the case making more legal work necessary than otherwise would have been the case. Although one's first impression might be that the fee award is too high, closer analysis of the Debtor's conduct leads one to the conclusion that in general the award was justified. Nevertheless, the Trustee believed there was some possibility that on appeal the appellate court might find the fee award too high. As a result, he required the Plaintiffs to reduce the principal amount of the award by $200,000, something they first refused to even consider.

With respect to the multiplier, the Trustee believes the trial court acted within its discretion to make the award. The Plaintiffs sought a 300 percent multiplier which, if granted, would have brought the total prejudgment fees to almost $7 million. In the exercise of its discretion, the trial court reduced the request and awarded a 150 percent multiplier only bringing the total award to $3,452,804. In light of the reduction in the multiplier, the Trustee believes an appellate court probably would not find that the trial court abused its discretion in awarding the multiplier.

## The Compromise

If approved by the Court, the Plaintiffs' claim will be allowed as follows:

(a)  secured claim of approximately $400,000 plus accrued post-judgment interest payable from sales of real property;
(b)  general unsecured claim for fees and costs in the amount of $2,573,827 payable as all general unsecured claims are paid; and
(c)  lower priority claim for the multiplier in the amount of $1,050,935 payable after general unsecured claims are paid in full.

Approval or rejection of a compromise is within the court's discretion. In considering the approval of a proposed compromise, the court must take into account the following factors:

(1) The probability of success in the litigation;
(2) The difficulty, if any, to be encountered in collection;
(3) The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;
(4) The paramount interest of creditors and a proper deference to their reasonable views.

*In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986).

4

Probability of Success

      The Trustee believes that the probability of success of the Debtor's arguments on appeal is low. First, he believes he would be unable to prevail on due process grounds because the Debtor's own conduct invited any error that might have been made. The only colorable issue on appeal in the Trustee's opinion is the Proposition 64 question. If the Supreme Court in the *Branick* case rules that actual victims can be substituted in or added to the complaint in that case and that the amended complaint relates back to the filing of the original complaint, the Trustee believes there will be no grounds left for prosecuting an appeal of the award to the victims. The only possible issue would be whether the Superior Court abused its discretion in approving attorneys fees and costs in the amount requested and awarding the reduced multiplier. The Trustee believes it is unlikely that the appellate court would find that the Superior Court materially abused its discretion in making the fee award.

      If the Supreme Court rules in the *Branick* case that a complaint cannot be amended on remand or that the amendment does not relate back to the original complaint, the Plaintiffs may still have viable arguments that (1) the Individuals are entitled to their awards because they were identified by name as judgment creditors in the judgment and specific awards were made to each five months before Proposition 64 passed and (2) that they corrected any pleading deficiency when the Superior Court allowed them to intervene after election day.

      If the Supreme Court issues a ruling favorable to the Plaintiffs or if they prevail on their other arguments, the Trustee would have no basis on which to seek a reduction in any part of the Plaintiffs' claims based on the judgment.

Difficulty in Collection

      The element of the *A&C Properties* test relating to collection is not relevant in the context of the proposed compromise.

Complexity, Expense, and Delay

      The appeal presents interesting but not overly complex issues. There will be a significant but not exorbitant expense in pursuing the appeals, and there is a high likelihood of delay. If the Supreme Court's ruling in *Branick* does not dispose of the issues in their entirety, the Debtor's appeals would have to be reactivated, a briefing schedule set, oral argument heard, and a decision rendered. The Trustee estimates that this process would take a minimum of nine months and probably more. If the ruling of the appellate court was unfavorable to the Debtor's position, the Trustee would expect the Debtor to demand that the Trustee file a petition for review by the California Supreme Court. Even if the petition were denied, at least another three months is likely to be consumed. If review were granted, the Trustee would assume at least another year would be necessary. If any kind of a remand for further proceedings at the trial court was ordered, resolution of the litigation would take years. The inevitable delay militates in favor of a compromise.

Paramount Interest of Creditors

      The last element of the *A&C Properties* test is the paramount interest of creditors. Representing more than 80 percent of the creditor body, the Plaintiffs clearly favor the compromise. The Trustee expects that the other creditors will voice their opinions about the compromise. The Trustee expects them to favor it as well.

The Compromise is in the Best Interest of the Estate

      The Trustee has concluded that it is unlikely that the Court of Appeal or the Supreme Court of California would deprive the real, identified individual victims of their awards against the Debtor after five years of litigation simply because the representative plaintiff would not have standing to bring that action after passage of Proposition 64.

The Trustee acknowledges that the Court of Appeal could reverse the judgment and remand it to the Superior Court for the purpose of substituting the real victims as plaintiffs in place of the representative. However, he does not believe the Court of Appeal will exonerate the Debtor. The likely result of the Trustee pursuing an appeal is that the estate would incur significant expense in prosecuting the appeal, and that if the appeal succeeded and the matter remanded to the Superior Court, the Superior Court would permit the amendment of pleadings and enter the same judgment in favor of the Individuals, including the attorneys fees award: after much expense and delay, the estate and the Plaintiffs would be in much the same situation as they are today, except that the Plaintiffs would likely have additional fees that might also be enforceable as claims against the estate, and possibly as administrative expenses. The Trustee believes that such an exercise would not be in the estate's best interests.

Based on all of the above, the Trustee believes the compromise is in the best interest of the estate and should be approved.

**PLEASE TAKE FURTHER NOTICE THAT** anyone who wishes to object to the proposed compromise must do so in conformity with Rule 9014-1 of the Bankruptcy Local Rules for the Northern District of California. Rule 9014-1 requires anyone who wishes to object to the proposed compromise to file a written objection with the Clerk, United States Bankruptcy Court, P.O. Box 7341, San Francisco, California 94120, and to serve a copy on counsel for the Trustee at the address noted below **no later than 20 days** from the date of this notice. Rule 9014-1 requires an objecting party file with its objection any legal memorandum and evidence (submitted by declaration) which it wants the Court to consider in support of its objection. If an objection is timely filed and served, the Trustee will obtain a hearing date and time and will provide the objecting party with at least 10 days notice of the hearing unless an order shortening time is obtained. If no objection is timely filed and served, the Trustee will request entry of an order authorizing him to proceed with the compromise without an actual hearing.

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, electronic filing became mandatory in the United States Bankruptcy Court for the Northern District of California. Those persons who may wish to object but are not qualified to file documents electronically with the Bankruptcy Court should check the Bankruptcy Court's website (www.canb.uscourts.gov) for guidance.

Dated: February 17, 2006                LUCE, FORWARD, HAMILTON & SCRIPPS, LLP

By: _____
                                        Charles P. Maher
                                        Counsel for Charles E. Sims, Trustee

Charles P. Maher, State Bar No. 124748
LUCE, FORWARD, HAMILTON & SCRIPPS, LLP
121 Spear Street, Suite 200
San Francisco, CA 94105
Telephone: (415) 356-4600
Facsimile: (415) 356-4610
186760.1

6

# EXHIBIT 3

1  Charles P. Maher, State Bar No. 124748
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
2  Rincon Center II, 121 Spear Street, Suite 200
   San Francisco, California 94105-1582
3  Telephone No.: 415.356.4600
   Fax No.: 415.356.4610
4
   Counsel for Charles E. Sims
5  Trustee in Bankruptcy

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
                                            Date:  March 31, 2006
13              Debtor.                      Time:  10:30 a.m.
                                            Place: 235 Pine Street, 23rd Floor,
14                                                  San Francisco
                                            Court: Hon. Thomas E. Carlson
15

16
       **TRUSTEE'S MEMORANDUM IN REPLY TO OBJECTION TO COMPROMISE**
17

18

19

20

21

22

23

24

25

26

27

28

                                                                            1

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

I.   INTRODUCTION ................................................................................. 2

II.  ARGUMENT ...................................................................................... 3
   A.  The Basis of the Debtor's Objection ................................................ 3
      1.  Timeliness of Intervention in the Superior Court..................... 4
      2.  The Individual Claimants Were Parties ................................. 5
      3.  Who Owns the Attorney Fee Award? ..................................... 5
      4.  The Debtor Relies on Uncertain Appellate Case Law on Proposition
         64 ................................................................................. 6
      5.  The Record on Appeal........................................................ 8
      6.  Interest on Restitution Awards is Permissible.......................... 9
      7.  Alleged Financial Self-Interest of Trustee and Counsel ............ 9
   B.  The Merits of the Trustee's Compromise ......................................... 10
      1.  The Awards to the Individual Claimants................................. 11
      2.  Attorney Fees and Costs..................................................... 13
      3.  The Standards for Approval of the Compromise ...................... 14
         a.  Probability of Success ............................................. 15
         b.  Difficulty in Collection ............................................ 16
         c.  Complexity, Expense, and Delay ............................... 16
         d.  Paramount Interest of Creditors ............................... 16

III. CONCLUSION ................................................................................... 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

**Page**

### CASES

2
*Allmerica Financial Life Insurance and Annuity Company v. Dalessio*, 2006 WL 408538
3  (N.D. Cal. 2006)........................................................................................... 9

4 *Benson v. Kwikset Corp.*, 126 Cal. App. 4th 887 (2005) ...................................... 6, 7

5 *Branick v. Downey Savings and Loan*, 126 Cal. App. 4th 828 (2005) ................. 6, 7, 12, 13, 15, 16

6 *Calhoun v. Hildebrandt*, 230 Cal. App. 2d. 70, 72 (1964).................................... 8

7 *Californians for Disability Rights v. Mervyn's, LLC*, 126 Cal. App. 4th 386 (Superior Court
8  Case No. S131798)................................................................................. 7, 13, 16

*Erickson v. Sullivan*, 81 Cal. App. 2d. 790, 791 (1947)...................................... 8
9
*Fallon v. Superior Court*, 33 Cal. App. 2d. 48, 50-51 (1939)............................. 4
10
*Flannery v. Prentice*, 26 Cal. 4th 572, 582 (2001)............................................. 6
11
*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal. 3d. 668, 682 and FN. 26 ........ 6
12
In re *A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986) ......................... 15, 16
13
*Mallick v. Superior Court*, 89 Cal. App. 3d. 434, 437 (1979) ........................... 4
14
*Marriage of Hall*, 87 Cal. App. 4th 313, 316 (2000)........................................ 9
15
*Owen v. Mascott*, 112 F. Supp. 937, 956 (N.D. Cal. 2000) .............................. 9
16
*People v. Perris Irr. Dist.* (1901) 132 Cal. 289............................................. 5
17
*Pony v. County of Los Angeles*, 433 F. 3d. 1138 (9th Cir. 2006)...................... 5, 6
18
*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v.*
19  *Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163-64 (1968) ........................ 15

### STATUTES
20
Code of Civil Procedure Section 387 ................................................................ 5
21
Code of Civil Procedure Section 916................................................................. 4
22
Code of Civil Procedure Section 1021.5 ............................................................ 6
23
Section 17200 of the California Business and Professions Code...................... 3, 5, 7, 9, 11, 13
24
11 U.S.C. § 521................................................................................................. 4
25
42 U.S.C. § 1988 ........................................................................................... 6
26

### OTHER AUTHORITIES
27
9 Witkin, California Procedure, *Appeal*, 562 (4th ed. 1996)............................... 8

28

1    Charles E. Sims, Trustee in Bankruptcy of the estate of the above Debtor, hereby replies to

2    the objection of the Debtor to the compromise the Trustee has proposed in his notice dated

3    February 17, 2006.

4    In support of this reply, the Trustee is filing the Declarations of Charles A. Bird and

5    Charles P. Maher.

6    **I.    INTRODUCTION**

7    On February 17, 2006, the Trustee served on creditors, the Debtor, and other interested

8    parties his Notice of Intent to Dismiss Appeals and Compromise with Creditors. An authentic

9    copy of the Notice is attached as Exhibit A to the declaration of Charles P. Maher filed in support

10    of the compromise. The notice describes the background of the litigation against the Debtor in

11    San Mateo Superior Court which resulted in a large judgment against him.

12    Hari and Krishna Chand, other similarly situated creditors, and the law firms of DLA Piper

13    Rudnick Gray Cary (successor-in-interest to Gray Cary Ware & Friedenrich) and the law office of

14    Renee Glover-Chantler filed claims totaling more than $4.5 million in the Debtor's case. Their

15    components are as follows:

16        (a)    $284,103.78 in restitution

17        (b)    $115,842.30 in pre-judgment interest

18        (c)    $2,301,869 in actual fees awarded by the Superior Court

19        (d)    $1,150,934.50 in fee multiple awarded by the Superior Court

20        (e)    $32,457.54 in allowed costs

21        (f)    $800,342.75 in post-judgment fees through the bankruptcy petition date

22        (g)    $39,157.75 in post-judgment costs to petition date

23    The restitution was awarded by judgment in June 2004. Maher Declaration Exhibit B.

24    The claimants perfected security interests in the Debtor's real property interests in San Mateo

25    County by recording abstracts of the judgment awarding restitution in August 2004. The fee and

26    cost awards were made later, in September 2004. Maher Declaration Exhibit C. Abstracts of

27    judgment on the fee and cost awards were recorded in San Mateo County and other counties

28    within the 90 days before the Debtor filed his bankruptcy petition.

1    The Trustee has negotiated a compromise with the claimants.  If approved, the individual

2  claimants will have secured claims against the Debtor's real property interests in San Mateo

3  County for the restitution awards, pre-judgment interest, and certain post-judgment interest; the

4  actual fee award will be reduced by $200,000 to $2,101,869 and will be allowed as a general

5  unsecured claim; the multiple will be reduced by $100,000 to $1,050,934.50 and will be allowed

6  but subordinated to general unsecured claims; the $32,457.54 cost award will be allowed in full;

7  the post-judgment fees will be reduced by $400,000 to $400,342.75; and the post-judgment costs

8  will be allowed in full.  The attorney fee and cost claims will be allowed as general unsecured

9  claims.

## II.    ARGUMENT

11    The Debtor has objected to the compromise.  For the reasons explained below, the Trustee

12  believes the objection should be overruled and the compromise approved.

### A.    The Basis of the Debtor's Objection

14    The Debtor's objection is based primarily on wishful thinking and a series of flawed

15  assumptions.  He predicts that a victory on appeal is a certainty and that victory can be had on a

16  number of grounds: (1) the effect on his case of Proposition 64's amendment of the standing

17  requirements for an action under Section 17200 of the California Business and Professions Code

18  and its effect on the underlying awards to individuals and the attorney fee award if representative

19  plaintiff Wobogo is substituted out; (2) alleged due process violations in discovery; (3) alleged

20  due process violations in the Superior Court's determination of the awards to individuals; and (4)

21  errors in the award of attorney fees and costs.

22    The Debtor was thoroughly defeated at the Superior Court level despite tactics of abuse,

23  delay, and contempt of court, yet the Debtor does not acknowledge one iota of uncertainty about

24  his prospects on appeal.  An appellant's burden to demonstrate error is always heavy.  In this

25  bankruptcy case, the burden may be unbearable.  The Debtor's confidence is unjustified.

26    The Debtor cloaks his arguments with the appearance of merit by false representations of

27  events in the Superior Court; shallow, incomplete, and misleading explication of case law on

28  various issues; ignoring contrary but controlling case law; and, least rational of all, characterizing

3

1    himself as a victim.

2    A careful analysis of the Debtor's real legal position reveals a great deal of uncertainty

3    about his ultimate prospects of success and demonstrates the necessity of negotiating a settlement

4    that will reduce the estate's economic exposure.  Throughout the bankruptcy case, the Debtor has

5    been unwilling to consider any settlement that adequately reflects the uncertainty of his position

6    and the risk that the Plaintiffs will prevail.  Instead he has antagonized the Trustee, violated his

7    duties under Section 521 of the Code, and has held out for a complete victory while enjoying the

8    peace of the automatic stay.

9    In opposing the compromise, the Debtor makes a number of statements of law and fact that

10    are without support.  If these underpinnings of the Debtor's arguments are shown to be illusory,

11    the overall uncertainty of his position becomes clear and the necessity of a compromise apparent.

12    1.    Timeliness of Intervention in the Superior Court

13    The Debtor states that the appeal by the Debtor of the judgment and attorney fee order

14    divested the Superior Court of jurisdiction to hear or grant the Plaintiffs' motion in intervention.

15    Opposition Memo, 8:22-24.  The statement is incorrect.  Intervention is possible at any time, even

16    after judgment.  In *Fallon v. Superior Court*, 33 Cal. App. 2d. 48, 50-51 (1939), the Court of

17    Appeal stated that intervention after judgment is possible, holding that class members may

18    intervene after judgment to protect their interest.  In *Mallick v. Superior Court*, 89 Cal. App. 3d.

19    434, 437 (1979), the Court of Appeal made the following statement about the jurisdiction of a trial

20    court after a notice of appeal is taken.

21    "Since the issue of intervention is not a matter 'embraced in or affected by the
      judgment' the trial court is not deprived of jurisdiction pursuant to the 'stay'
22    provisions of Code of Civil Procedure Section 916 when an appeal is perfected."

23    89 Cal. App. 3d. at 437.

24    The trial court retains jurisdiction to determine at any time that the named plaintiff is no

25    longer fit to represent the class.  Id.  Section 387 of the Code of Civil Procedure provides for a

26    substitution of parties in the event of disability.  Id.

27    The *Mallick* opinion was issued by the First District Court of Appeal which is where the

28    Debtor's appeals are pending.  The Debtor doesn't like the *Mallick* decision but provides no

4

1   authority to show that it is not good law or to otherwise support his position that the Superior

2   Court did not have jurisdiction to allow intervention or that intervention was otherwise improper.

3          Intervention was appropriate even after the notices of appeal had been filed.

4          2.    The Individual Claimants Were Parties

5          The Debtor argues that the individuals who were awarded judgment are not parties to the

6   action, that their claims arose in 1999 or earlier, and, if the appellate court were to remand the

7   action to the trial court for purposes of substituting the representative Wobogo with one of the

8   individuals who intervened, the statute of limitations would bar the claims of the individual

9   claimants.

10         When leave to intervene is granted, the intervenor becomes a party to the action, with the

11   same procedural rights and remedies as the original parties. *People v. Perris Irr. Dist.* (1901) 132

12   Cal. 289.    Intervention was permitted and the individual claimants were parties.    In addition,

13   unlike many or perhaps most actions under Section 17200, all of the individual claimants were

14   identified long before judgment was entered.    The Debtor was given the opportunity to challenge

15   every one of their claims, and each was identified and awarded a specific restitution sum in the 63-

16   page judgment issued in the proceeding.    The Debtor ignores this significant fact.

17         3.    Who Owns the Attorney Fee Award?

18         The Debtor argues that the Superior Court's attorney fee award to the Gray Cary firm and

19   the Law Office of Renee Glover-Chantler belongs to Ms. Wobogo, the representative plaintiff.

20   The Debtor cites a number of cases to support his arguments that Wobogo owns the award and

21   that the award will evaporate because Wobogo cannot remain as a plaintiff as a result of

22   Proposition 64.    However, the Debtor apparently does not comprehend the cases he cites.    In

23   addition, the Debtor either has not found or has ignored applicable and controlling authority that

24   contradicts his argument.

25         The Debtor confuses the right to seek attorneys fees with the award of attorneys fees.    He

26   relies on federal cases, ignoring settled law in California.    Even with the cases he has cited, he is

27   less than candid about their holdings and the extent to which they do not support his arguments.

28   For example, the Debtor cites, *Pony v. County of Los Angeles*, 433 F. 3d. 1138 (9th Cir. 2006).    In

5

1    that opinion, the Ninth Circuit did in fact state that "the right to seek attorneys fees is not

2    transferable in California." 433 F. 3d. at 1144.   However, the Ninth Circuit also made the

3    following statement that is directly contrary to the proposition for which the Debtor cites the case:

4        "Section 1988 [42 U.S.C. § 1988] jurisprudence ... holds that an attorney is free
         to collect statutory attorneys fees once a client has exercised his rights by
5        demanding them, but not before. [citations omitted]   Thus, while a plaintiff can
         transfer the right to *collect* attorneys fees, she may not transfer the right to seek or
6        waive them."

7    *Pony*, 433 at 1144-1145.

8        This statement by the Ninth Circuit in the *Pony* case is consistent with established

9    California law:

10       In 1982, upholding an attorney fee award under Code of Civil Procedure Section
         1021.5, which codifies the "private attorney general" fee doctrine, we [the
11       California Supreme Court] considered it "established that awards are properly
         made to plaintiffs' attorneys rather than to plaintiffs themselves." [citing *Folsom
12       v. Butte County Assn. of Governments* (1982) 32 Cal. 3d. 668, 682 and FN. 26]

13   *Flannery v. Prentice*, 26 Cal. 4th 572, 582 (2001).

14       [I]t seems evident that, in general, where attorney compensation has neither been
         paid nor forgiven and there is no contract assuring it, allowing a victorious litigant
15       to retain the proceeds of a fee award ... would confer an unjustified windfall.

16   Id. at 586.

17       The Debtor fails to distinguish between the right to seek fees and the right to an award that

18   has already been made.   The Superior Court made the fee award under Section 1021.5 of the

19   California Code of Civil Procedure; the fee award does not belong to Ms. Wobogo.   It belongs to

20   the attorneys.   Ms. Wobogo's removal as a plaintiff will not result in loss by the attorneys of the

21   fee award.

22           4.    The Debtor Relies on Uncertain Appellate Case Law on Proposition 64

23       The Debtor incorrectly asserts that the Trustee "relied" on the opinion of the Second

24   District Court of Appeal in *Branick v. Downey Savings and Loan*, 126 Cal. App. 4th 828 (2005),

25   when he framed the issues pending before the Supreme Court in the *Branick* case.   The Debtor

26   argues that "the better case to cite" on the issue of "amending the complaint to substitute in

27   plaintiffs who have suffered actual injury" is *Benson v. Kwikset Corp.*, 126 Cal. App. 4th 887

28   (2005).

6

1   The Trustee referred to the *Branick* case in the compromise notice to frame the issues as

2   they were identified on the Supreme Court's website, not to cite it as authority for any position.

3   Petition for review after the Court of Appeal reversed the judgment in a civil
    action. The court limited review to the following issue: if the standing limitations

4   of Proposition 64 apply to actions under the unfair competition law that were
    pending on November 3, 2004, may a plaintiff amend his or her complaint to

5   substitute in or add a party that satisfies the standing requirements of Business
    and Professions code Section 17200, as amended, and does such an amended

6   complaint relate back to the initial complaint for statute of limitations purposes?

7   Although the Supreme Court is not limited by the above description, the description at

8   least describes preliminarily the issues likely to be addressed when the Supreme Court does rule in

9   the *Branick* case.

10  *Benson* may be more to the Debtor's liking than *Branick* or other cases on Proposition 64,

11  but it can hardly be considered authority for any proposition under the circumstances. Both have

12  been accepted for review by the California Supreme Court. *Branick* has been fully briefed;

13  briefing in *Benson* has been deferred.

14  The Trustee is not relying on any of the opinions that have been issued by the appellate

15  courts on Proposition 64's amendments as support for the compromise, and no one can predict

16  with any accuracy what the California Supreme Court will do with the cases before it. In

17  negotiating the compromise, the Trustee negotiated on the assumption that the Supreme Court

18  would hold that Proposition 64's amendments are retroactive, a conservative approach consistent

19  with all but one of the appellate cases on Proposition 64's amendments. Those decisions

20  contemplate remand to the trial court to permit the plaintiff to move to amend the complaint to add

21  representative plaintiffs that had suffered actual injury or to add allegations demonstrating that the

22  existing representative plaintiff had suffered injury. The Trustee believes it is highly unlikely that

23  the Supreme Court will rule that leave to amend will not be granted to cure what has become a

24  pleading deficiency after the passage of Proposition 64.

25  The Trustee could have taken a less conservative approach; he could have assumed that the

26  Supreme Court would affirm the First District Court of Appeal decision in the *Mervyn's* case. In

27  *Mervyn's* the First District held that Proposition 64's amendments were not retroactive and could

28  not be applied in pending cases. The Debtor's appeals are at the First District Court of Appeal.

7

1     None of the appellate level cases is the "better" case. The circumstances are uncertain:

2    hence the opportunity for settlement presented itself.

3       5.   The Record on Appeal

4     In what the Debtor calls a statement of facts, he makes numerous allegations about

5    proceedings in the Superior Court. However, the record he or anyone taking his position must rely

6    on is extremely limited, cripplingly so, and by the Debtor's own choosing.

7     The Stipulation and Order Appointing Temporary Judge (which the Debtor has attached as

8    Exhibit B to the declaration of his civil attorney) contains the following provision:

9       Certified Shorthand Reporter: Either party may request the presence of a court
reporter. Upon any such request, a certified shorthand court reporter shall be

10     provided by the requesting party. The requesting party shall be responsible for
any and all fees incurred in relation to said court reporter. The fees of the reporter

11     shall be paid at the reporter's usual rate.

12   Declaration of Debtor's Civil Attorney, Exhibit B, 2:25-28.

13     There is no dispute that neither the Debtor nor the Plaintiffs retained a court reporter. As a

14    result, nearly all of the proceedings before the temporary judge were not recorded and the "record"

15    cannot be considered adequate to support the Debtor's statement of "facts" or his allegations of

16    error.

17     It is a matter of black letter law that the responsibility for preserving the record on appeal

18    lies with the appellant. The appellant must affirmatively show error by an adequate record. 9

19    Witkin, California Procedure, Appeal, 562 (4th ed. 1996). An inadequate or fragmentary record

20    may result in dismissal of an appeal. Erickson v. Sullivan, 81 Cal. App. 2d. 790, 791 (1947).

21     In Calhoun v. Hildebrandt, 230 Cal. App. 2d. 70, 72 (1964), the plaintiff asserted that

22    defense counsel was guilty of prejudicial misconduct in an argument disparaging her race.

23    However, this ground of the appeal was rejected because both counsel had agreed not to report the

24    arguments and the record failed to show the alleged error.

25     In the Debtor's case in the Superior Court, the Superior Court ordered that if either the

26    Debtor or the Plaintiff wanted to preserve a record, they were required to arrange for it themselves.

27    Neither chose to do so. "[I]t is presumed that the unreported trial testimony would demonstrate an

28    absence of error." Marriage of Hall, 87 Cal. App. 4th 313, 316 (2000).

1    If the Debtor cannot produce the record that demonstrates error by the temporary judge, his

2  appeal will fail on all alleged error; only his legal arguments involving Proposition 64 may survive

3  the Debtor's decision not to preserve the record.

4    6.    Interest on Restitution Awards is Permissible

5    The Debtor argues that assessing pre-judgment interest on a restitution award "is contrary

6  to law and fact," but provides no authority in the memorandum for such a statement.  Instead, the

7  Debtor refers to a 52-page memorandum filed as an exhibit to a declaration (a cute trick to evade

8  page limitations on briefs).

9    Even the cases cited in the exhibit do not support the position that the Debtor argues, i.e.,

10  that pre-judgment interest on restitution awards is not permissible.  It appears that the Debtor's

11  civil attorney has found cases with sentences that support fragments of his argument but no cases

12  that draw all these fragments together to form the conclusion he reaches.

13    There are cases to the contrary, however.  For example, in *Owen v. Mascott*, 112 F. Supp.

14  937, 956 (N.D. Cal. 2000), the District Court for the Northern District of California stated that pre-

15  judgment interest is also due on money paid as restitution.  Like the Debtor's case, *Owen v.*

16  *Mascott* involved California Business and Professions Code Section 17200.

17    The rationale is that plaintiffs were deprived of the use of any money they paid to
       CEA and should be made whole by being compensated for the interest they would
18     have been paid, in order to prevent unjust enrichment of CEA by its having the
       use of plaintiff's money.

19

20  Id.

21    In a more recent case from the Northern District, *Allmerica Financial Life Insurance and*

22  *Annuity Company v. Dalessio*, 2006 WL 408538 (N.D. Cal. 2006), Chief Judge Walker reached a

23  similar conclusion, i.e., that pre-judgment interest is due on money paid as restitution.

24    The assessment of pre-judgment interest on the restitution awards was necessary to restore

25  the claimants to the *status quo ante* and was not "contrary to law and fact."

26    7.    Alleged Financial Self-Interest of Trustee and Counsel

27    The Debtor accuses the Trustee and his counsel of negotiating the compromise purely out

28  of financial self-interest.  As the Court pointed out on December 5, 2005, when it denied the

9

1    Debtor's first motion for a stay of proceedings in the bankruptcy case, the Debtor's self-interest

2    offsets any self-interest of the Trustee and his attorney that may be inherent in a Chapter 7 case.

3        The Debtor must not understand that it would be more in the Trustee's financial self-

4    interest not to negotiate a reduction in the claims and to allow the Debtor to prosecute the appeals.

5    The Debtor may have been successful in delaying procedures but the ultimate result of his tactics

6    has been disastrous.  There is no reason to believe the outcome would be better at the appellate

7    level.

8        The Trustee believes that, in an appeal prosecuted by the Debtor, the Plaintiffs would

9    successfully defend the judgment and fee award on appeal.  The Trustee anticipates that the

10    Plaintiffs would request relief from the automatic stay to return to the Superior Court for a further

11    award of attorneys fees and would come back to the bankruptcy case with a larger and

12    unchallengeable claim far exceeding the amount currently on file.

13        Most of the fees of Trustee's counsel have been incurred in fighting with the Debtor.  The

14    Debtor has taken actions that have required a reaction by the Trustee to protect the estate.  The

15    litigation the Trustee commenced against the Debtor's parents was required to prevent further

16    transfer of assets the Debtor either fraudulently conveyed to them or in which he maintains a

17    concealed equitable ownership interest.  The Trustee is convinced that the money the Debtor's

18    parents would use to finance the appeals would be generated by undisclosed or fraudulently

19    conveyed assets of the Debtor.  What other source could there be?  The Debtor's parents are

20    already on record in four adversary proceedings stating that they were unable to pay $20,000 in

21    sanctions against them.

22        **B.**    **The Merits of the Trustee's Compromise**

23        The Debtor has been less than candid with the Court and less than candid with the Trustee

24    about the prospects of appeal.  From the first instance at which the Debtor explained to the Trustee

25    his position on the appeals, he has maintained supreme confidence in the merits of the appeals, not

26    giving even the tiniest shred of validity to the position of the Plaintiffs.  He ignores that the

27    Plaintiffs in fact prevailed in the Superior Court and were awarded restitution, attorneys fees and

28    costs, and that the individual claimants were permitted to intervene.

1    The Debtor has asserted three fundamental arguments which he believes ensure him a

2  victory on appeal as to the Individuals' secured claims:

3    (a)    The Superior Court violated the Debtor's due process rights because it

4            failed to maintain a record of proceedings;

5    (b)    The Superior Court violated the Debtor's due process rights by not

6            allowing him to conduct discovery; and

7    (c)    The passage of Proposition 64 in November 2004 amended Section 17200

8            of the California Business and Profession's Code to divest representative

9            plaintiffs of standing to bring suit on behalf of others and, as a

10           consequence, deprived the real victims of any claims they might have

11           against the Debtor for his misconduct.

12   From an extensive review of the proceedings in the Superior Court, the Trustee is

13 convinced that the alleged due process violations were "invited error" at best, and the appellate

14 court would not reverse the judgment or any order based on the alleged violations.

15   Although the Debtor succeeded in causing delay and enormous expense at the Superior

16 Court level, he did not prevail on the merits.  Yet now he wants the Bankruptcy Court and the

17 Trustee to believe there is little possibility that the Plaintiffs will prevail on appeal, despite all of

18 the infirmities identified above.

19                 1.    The Awards to the Individual Claimants

20   In stating the "facts," the Debtor alleges numerous "facts" that are at odds with the truth.

21 For example, the Debtor makes a number of references to a lack of evidence to support the awards

22 to the individuals: (a) the claims of the Plaintiffs have "actually never [been] verified and never

23 proven" (Opposition Memorandum, 18:7-8); (b) the individual claimants "have not proven by

24 competent evidence that they have suffered injury or loss at the hands of Yeganeh" (Opposition

25 Memorandum, 19:21-22); (c) "None of the claimant's claims were verified.  The evidence, if it

26 can be called that, in support of these manufactured claims, consisted of inadmissible hearsay"

27 (Opposition Memorandum, 6:5-7).

28   Judge Blackman's June 3, 2004, judgment is 63 pages long.  His findings demonstrate in

1    great detail that the claimants did establish their right to judgment. The Debtor has nothing to

2    show in the record that Judge Blackman's judgment was not valid in any respect. The Debtor

3    chose not to have a court reporter and cannot show that "none of the claimant's claims were

4    verified" or that the evidence "consisted of inadmissible hearsay."

5        The Debtor also alleges that his right to discovery was denied. Once again, this is not true.

6    The Debtor cannot show that it is true because there is no record indicating any denial of any of

7    his rights.

8        The Debtor alleges that he was not "given any time to respond to said claims until the

9    hearing dates" and the "temporary judge did not allow any form of discovery upon the claimants

10   by Yeganeh." Opposition Memorandum, 4:21-23. In a letter from the Debtor's "civil attorney,"

11   William Gilg, to the temporary judge, the Debtor promised to serve discovery requests. Maher

12   Declaration, Exhibit D, Page 5. He apparently changed his mind, however, and served no

13   discovery requests. The Debtor chose not to serve them; he was not prohibited from serving them.

14       The Trustee believes it is true that neither the Debtor nor his counsel were present for two

15   hearings at which the claims of two individuals were established. The Debtor did not appear

16   because he was in jail for contempt of court. His attorney did not appear because the Debtor fired

17   him so he would not have representation and the temporary judge would continue the hearings.

18   Judge Blackman's two orders (Maher Declaration, Exhibits E and F) make clear that Judge

19   Blackman knew precisely what the Debtor was attempting to accomplish. If there was error, it

20   was invited error.

21       Other than the arguments based on the passage of Proposition 64, the Trustee believes that

22   the grounds cited by the Debtor are extremely unlikely to result in reversal of the judgment or the

23   attorney fee award. The Debtor, or anyone acting in his place as appellant, simply cannot

24   demonstrate the error because the Debtor did not preserve a record.

25       For the Debtor's Proposition 64 argument to succeed, the Debtor will need an unbroken

26   string of victories both at the California Supreme Court, the Court of Appeal, and the Superior

27   Court to ultimately prevail.

28       The Debtor must know that a decision by the California Supreme Court in the *Branick* and

12

1   *Mervyn's* cases is not imminent. Nevertheless, he asserts with confidence that the Supreme Court
2   will soon decide these two cases. The cases have been briefed but no oral argument is set. A
3   lapse of one year between completion of briefing and oral argument is not unusual.

4   There are numerous appellate level cases that have addressed Proposition 64's
5   amendments to Section 17200 of the Business and Professions Code; a few of them have been
6   accepted for review by the California Supreme Court, most notably *Californians for Disability*
7   *Rights v. Mervyn's, LLC*, 126 Cal. App. 4th 386 (Superior Court Case No. S131798) and *Branick v.*
8   *Downey Savings & Loan* (Case No. S132433). Both cases are fully briefed, but oral argument has
9   not been set in either case as of the date of this memorandum.

10   The issue in *Branick* is the more pertinent to the Debtor's case: If the standing limitations
11   of Proposition 64 apply to "17200 actions" that were pending on election day, may a plaintiff
12   amend the complaint to substitute in or add a party that satisfies the new standing requirements
13   and, if so, does the amended complaint relate back to the date of the initial complaint for purposes
14   of the statute of limitations?

15   If the Supreme Court answers both questions in the affirmative, the Debtor's appeal will
16   collapse and all ability to challenge the Plaintiffs' claims will likely be lost. If the Supreme Court
17   answers the questions in the negative, the Plaintiffs could still prevail because, before election day,
18   all of the individual claimants were identified by name and given specific awards in the judgment,
19   thereby becoming plaintiffs in effect, if not in form. In addition, the Superior Court allowed the
20   individual claimants to formally intervene after election day, a ruling the Debtor challenges on
21   jurisdictional grounds.

22   Most of the decisions thus far at the Court of Appeal level have remanded actions to the
23   trial court to enable actual victims of misconduct to substitute themselves or another actual victim
24   as plaintiff in place of representative plaintiffs and thereby correct what Proposition 64 has made a
25   pleading deficiency. The Trustee believes the Supreme Court is likely to permit amendments and
26   that on appeal the individual claimants would not be deprived of their awards.

27   2.   Attorney Fees and Costs

28   The Debtor's attacks on the awards of fees and costs invoke the deferential abuse-of-

13

1 discretion standard of review. The California appellate courts are particularly reluctant to overturn

2 attorney fee awards for abuse of discretion.

3        The first question is whether the large amount of the pre-judgment fees portion of the

4 Plaintiffs' claims will be found to be excessive, resulting in a remand. The Debtor has argued that

5 the Superior Court should have significantly reduced the principal amount of the fee award in part

6 because the fees were so high and in part because the Debtor identified entries he believed were

7 not appropriately charged in the first place. The Trustee acknowledges that the principal amount

8 of the fee award ($2.3 million) is very high and that an ordinary person's first reaction to such a

9 large award would be that the amount is too high. However, a review of the activity in the state

10 court action makes it obvious that the Debtor's own actions made necessary the fees he complains

11 about. This conclusion is borne out by the Trustee's own experience with the Debtor: since the

12 Trustee's appointment, the Debtor has interfered numerous times with the Trustee's administration

13 of the case making more legal work necessary than otherwise would have been the case. An

14 analysis of the Debtor's conduct leads one to the conclusion that in general the fee award was

15 justified.     Nevertheless, the Trustee believed there was some possibility that on appeal the

16 appellate court might find the fee award too high. As a result, he required the Plaintiffs to reduce

17 the principal amount of the award by $200,000, something they first refused to even consider.

18        With respect to the multiplier, the Trustee believes the trial court acted within its discretion

19 to make the award. The Plaintiffs sought a 300 percent multiplier which, if granted, would have

20 brought the total prejudgment fees to almost $7 million. In the exercise of its discretion, the trial

21 court reduced the request and awarded a 150 percent multiplier only bringing the total award to

22 $3,452,804. In light of the reduction in the multiplier, the Trustee believes an appellate court

23 probably would not find that the trial court abused its discretion in awarding the multiplier.

24        3.     The Standards for Approval of the Compromise

25        Approval or rejection of a compromise is within the court's discretion. In considering the

26 approval of a proposed compromise, the court must take into account the following factors:

27        (1)     The probability of success in the litigation;

28        (2)     The difficulty, if any, to be encountered in collection;

14

1       (3)    The complexity of the litigation involved and the expense, inconvenience,

2             and delay necessarily attending it;

3       (4)    The paramount interest of creditors and a proper deference to their

4             reasonable views.

5 In re *A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).

6       In considering whether to approve a compromise, the Bankruptcy Court should apprise

7 itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate

8 success should the claim be litigated and should form an educated estimate of the complexity,

9 expense, and likely duration of such litigation, and all other factors relevant to a full and fair

10 assessment of the wisdom of the proposed compromise. *Protective Committee for Independent*

11 *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163-64

12 (1968).

13       a.    Probability of Success

14       The Trustee believes that the probability of ultimate success on the Debtor's part is low.

15 First, the Trustee believes he would be unable to prevail on due process grounds because the

16 Debtor's own conduct invited any error that might have been made and there is no record on

17 which to show otherwise. The only colorable issue on appeal, in the Trustee's opinion, is the

18 Proposition 64 question. If the Supreme Court in the *Branick* case rules that actual victims can be

19 substituted in or added to the complaint in that case and that the amended complaint relates back

20 to the filing of the original complaint, the Trustee believes there will be no grounds left for

21 prosecuting an appeal of the award to the victims. The only possible issue would be whether the

22 Superior Court abused its discretion in approving attorneys fees and costs in the amount requested

23 and awarding the reduced multiplier. The Trustee believes it is unlikely that the appellate court

24 would find that the Superior Court materially abused its discretion in making the fee award.

25       If the Supreme Court rules in the *Branick* case that a complaint cannot be amended on

26 remand or that the amendment does not relate back to the original complaint, the Plaintiffs may

27 still have viable arguments that (1) the individual claimants are entitled to their awards because

28 they were identified by name as judgment creditors in the judgment and specific awards were

1  made to each five months before Proposition 64 passed and (2) they corrected any pleading

2  deficiency when the Superior Court allowed them to intervene after election day.

3       If the Supreme Court issues a ruling in *Branick* or *Mervyn's* that is favorable to the

4  Plaintiffs, or if the Plaintiffs prevail on their other arguments, the Trustee would have little if any

5· leverage with which to seek a reduction in any part of the claims.

6            b.      Difficulty in Collection

7       The element of the *A&C Properties* test relating to collection is not relevant in the context

8  of the proposed compromise.

9            c.      Complexity, Expense, and Delay

10      The appeal presents interesting but not overly complex issues.  There will be a significant

11 but not exorbitant expense in pursuing the appeals, but there is a high likelihood of delay.  If the

12 Supreme Court's ruling in *Branick* does not dispose of the issues in their entirety, the Debtor's

13 appeals would have to be reactivated, a briefing schedule set, oral argument heard, and a decision

14 rendered.  The Trustee estimates that this process would take a minimum of nine months and

15 probably more.  If the ruling of the appellate court was unfavorable to the Debtor's position, the

16 Trustee would expect the Debtor to demand that the Trustee file a petition for review by the

17 California Supreme Court.  Even if the petition were denied, at least another three months is likely

18 to be consumed.  If review were granted, the Trustee assumes at least another year would be

19 necessary.  If any kind of a remand for further proceedings at the trial court was ordered,

20 resolution of the litigation could take years.  The inevitable delay militates in favor of a

21 compromise.

22           d.      Paramount Interest of Creditors

23      The last element of the *A&C Properties* test is the paramount interest of creditors.

24 Representing more than 80 percent of the creditor body, the Plaintiffs clearly favor the

25 compromise.  The Trustee expects that the other creditors will voice their opinions about the

26 compromise. The Trustee expects them to favor it as well.

27 ///

28 ///

16

### III.    CONCLUSION

The Trustee has concluded that it is unlikely that the Court of Appeal or the Supreme Court of California will deprive the real, identified individual victims of their awards against the Debtor after five years of litigation simply because the representative plaintiff would not have standing to bring that action after passage of Proposition 64.

The Trustee acknowledges that the Court of Appeal could reverse the judgment and remand it to the Superior Court for the purpose of substituting the real victims as plaintiffs in place of the representative.    However, he does not believe the Court of Appeal will exonerate the Debtor.    The likely result of the Trustee pursuing an appeal is that the estate would incur significant expense in prosecuting the appeal, and that if the appeal succeeded and the matter remanded to the Superior Court, the Superior Court would permit the amendment of pleadings and enter the same judgment in favor of the individual claimants, including the attorney fee award. After much expense and delay, the estate and the Plaintiffs would be in much the same situation as they are today, except that the Plaintiffs would likely have additional fees that might also be enforceable as claims against the estate, possibly as administrative expenses.    The Trustee believes that such an exercise would not be in the estate's best interest.

Based on all of the above, the Trustee believes the compromise is in the best interest of the estate and should be approved and the Debtor's objection overruled.

DATED: March 24, 2006          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____

CHARLES P. MAHER
Attorneys for Charles E. Sims, Trustee in Bankruptcy

195896.2

17

# EXHIBIT 4

Entered on Docket
April 10, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  Charles P. Maher, State Bar No. 124748
   LUCE, FORWARD, HAMILTON
2      & SCRIPPS LLP
   121 Spear Street, Suite 200
3  San Francisco, California 94105-1582
   Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610

5  Counsel for Charles E. Sims
   Trustee in Bankruptcy

6

7

Signed and Filed: April 08, 2006

THOMAS E. CARLSON
U.S. Bankruptcy Judge

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
                Debtor.
13                                          Date:   March 31, 2006
                                            Time:   10:30 a.m.
14                                          Place:  235 Pine Street, 23rd Floor,
                                                    San Francisco
15                                          Court:  Hon. Thomas E. Carlson

16
                    **ORDER AUTHORIZING COMPROMISE**
17

18       On March 31, 2006, a hearing was held on (a) the objection of Debtor Ramin Yeganeh to

19  the compromise the Trustee has proposed to enter with creditors Hari and Krishna Chand, and

20  other similarly situated creditors, described in the Trustee's February 17, 2006, notice; (b) the

21  Debtor's motion to compel the Trustee to abandon appeals of the judgment and order in favor of

22  the above creditors; and (c) the Debtor's objections to the claims of the above creditors.  Charles

23  A. Bird, Jeffrey L. Fillerup, and Charles P. Maher of Luce, Forward, Hamilton & Scripps, LLP,

24  appeared on behalf of the Trustee.  Jonathan G. Chance, William Gilg, and Charles Dell'Ario

25  appeared on behalf of the Debtor.  Jeffry A. Davis and Michael S. Tracy of DLA Piper Rudnick

26  Gray Cary US LLP appeared on behalf of the creditors.  The Court took the matters under

27  submission and scheduled a telephonic hearing for April 5, 2006, at 11:00 a.m. for the purpose of

28  stating its findings of fact and conclusions of law on the record.  Charles P. Maher and Jeffrey L.

1

1    Fillerup appeared on behalf of the Trustee. Jonathan G. Chance appeared on behalf of the Debtor.

2    Jeffry A. Davis appeared on behalf of the creditors.

3    The Court has considered the Trustee's notice of compromise, the pleadings filed in

4    support of and in opposition to the compromise, the Debtor's motion for an order compelling the

5    Trustee to abandon appeals and for a stay of the bankruptcy proceedings, the pleadings filed in

6    support of and in opposition to the Debtor's motion, the Debtor's objection to the claims of the

7    creditors, and the opposition filed by the creditors, and the statements of counsel on the record.

8    The Court stated its findings of fact and conclusions of law on the record on April 5, 2006,

9    and incorporates them by reference. Based on the Court's findings of fact and conclusions of law,

10   it is

11       ORDERED as follows:

12       1.    The Debtor's objection to the Trustee's proposed compromise with creditors Hari

13   and Krishna Chand, and other similarly situated creditors is overruled.

14       2.    The Debtor's motion for an order compelling the Trustee to abandon the appeals

15   described in the Trustee's February 17, 2006, notice is denied.

16       3.    The Debtor's objections to the claims of Hari and Krishna Chand and other

17   similarly situated creditors are overruled.

18       4.    The Trustee is authorized to enter into the compromise described in his February

19   17, 2006, Notice of Intent to Dismiss Appeals and Compromise with Creditors.

20       5.    The Trustee is authorized to dismiss the appeals perfected by the Debtor by the

21   filing of notices of appeal of the judgment and order in San Mateo Superior Court Case No.

22   410586.

23       6.    Pursuant to the compromise, the individual creditors shall have allowed claims in

24   the total amount of $399,946.08 secured by the Debtor's real property situated in San Mateo

25   County, California, and the claim shall accrue post-judgment interest at 10 percent per annum

26   from January 7, 2005, until paid.

27       7.    The creditors shall have a general unsecured claim in the amount of $2,573,827

28   representing the principal amount of the award of attorney fees and costs as reduced by the

1  compromise.  The Trustee is authorized to pay this sum directly to DLA Piper Rudnick Gray Cary

2  US LLP.

3          8.      The creditors shall have an additional unsecured claim in the amount of $1,050,935

4  that is subordinated as a multiple under 11 U.S.C. § 726(a)(4).

5          9.      The Trustee is authorized to execute those documents and take those steps he

6  deems necessary to complete the compromise consistent with his February 17, 2006, notice.

7                                   \*\* END OF ORDER \*\*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT SERVICE LIST

Charles P. Maher, CSBN 124748
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
121 Spear Street, Suite 200
San Francisco, California 94105

United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94105

Jonathan G. Chance, Esq.
JC Law Office
205 E. Third Avenue, Suite 411
San Mateo, CA 94401

Jeffry A. Davis, Esq.
DLA Piper Rudnick Gray Cary US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

197167.1

# EXHIBIT 5

ELECTRONICALLY FILED

AUG 0 7 2006

1  Charles P. Maher, State Bar No. 124748
   Charles A. Bird, State Bar No. 056566
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   Rincon Center II, 121 Spear Street, Suite 200
3  San Francisco, California 94105-1582
   Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610

5  Counsel for Appellant Charles E. Sims
   Trustee in Bankruptcy

6

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 | In re RAMIN YEGANEH,              | Bankruptcy Court Case No. 05-30047 TEC
                                         Chapter 7
12 |             Debtor.

13 |_____

14 | RAMIN YEGANEH,                    | District Court Case No. C-06-2788 CW
                                         Appeal
15 |             Appellant.

16 | v.                                | **APPELLEE'S BRIEF OF CHARLES E.
                                         SIMS, TRUSTEE IN BANKRUPTCY**
17 | CHARLES E. SIMS, Trustee in Bankruptcy,

18 |             Appellee.

19 |_____

20        This is the appellee's brief of bankruptcy trustee Charles E. Sims ("Trustee") on the appeal

21 of debtor Ramin Yeganeh ("Yeganeh") from the Order Authorizing Compromise ("Order") that

22 approved compromise of certain creditors' claims. Tables of contents and authorities follow this

23 page. The text of the brief begins on the first numbered page after the tables.

24

25

26

27

28

1

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................... 1

II. STATEMENT OF THE CASE ......................................................... 1

    A.    Undisputed Facts About the State Court Litigation ...................... 1

    B.    Specific Facts Concerning the Attorney's Fee Award ................... 4

    C.    Bankruptcy Proceedings .......................................................... 5

        1.    Preliminary Matters .................................................... 5

        2.    Proceedings on the Trustee's Notice of Intent To Compromise ................... 5

        3.    The Bankruptcy Court's Authorization of the Compromise; Appeal .......... 7

    D.    "Facts" in the Appellant's Opening Brief ................................... 8

III. LEGAL DISCUSSION ................................................................. 9

    A.    Probability of Success of Yeganeh's Appeal ............................... 9

        1.    Proposition 64 ........................................................... 9

        2.    The Attorney's Fee Award ......................................... 13

        3.    Miscellaneous Arguments .......................................... 15

            a)    The Stipulation Appointing the Temporary Judge ......... 15

            b)    Due Process Claims ......................................... 16

            c)    Other Issues ................................................. 17

        4.    Summary ................................................................ 17

    B.    Collection Difficulties ............................................................ 17

    C.    Delay and Expense ................................................................ 17

    D.    Paramount Interest of Creditors ............................................... 18

    E.    Add-On Arguments ............................................................... 18

IV. CONCLUSION ........................................................................... 19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Atkins v. Enterprise Rent-A-Car of San Francisco,*
     79 Cal.App.4th 1127 (Cal.Ct.App. 2000) ................................................... 14

5

6

*Branick v. Downey Savings & Loan Ass'n,*
     2006 Cal. LEXIS 8775 (Cal. July 24, 2006) ................................... 10, 11, 12

7

*Calhoun v. Hildebrandt,*
     230 Cal.App.2d 70 (Cal.Ct.App. 1964) ...................................................... 17

8

9

*Californians for Disability Rights v. Mervyn's, LLC,*
     2006 Cal. LEXIS 8774 Cal. July 24, 2006) .............................................. 9, 10

10

*Chalmers v. City of Los Angeles,*
     676 F. Supp. 1515 (C.D. Cal. 1987) ........................................................... 15

11

12

*Children's Hosp. & Med. Ctr. v. Bonta,*
     97 Cal.App.4th 740 (Cal.Ct.App. 2002) ..................................................... 14

13

*Crestview Cemetery Assn. v. Dieden*
     54 Cal.2d 744 (Cal. 1960) .......................................................................... 16

14

15

*Diliberti v. Stage Call Corp.,*
     4 Cal.App.4th 1468 (1992) .......................................................................... 11

16

*Fallon v. Superior Court,*
     33 Cal.App.2d. 48 (Cal.Ct.App. 1939) ....................................................... 11

17

18

*Flannery v. Prentice,*
     26 Cal.4th 572 (Cal. 2001) ......................................................................... 13

19

*Folsom v. Butte County Assn. of Governments,*
     32 Cal.3d 668 (Cal. 1982) .......................................................................... 13

20

21

*Frink v. Prod,*
     31 Cal.3d 166 (Cal. 1982) .......................................................................... 19

22

*Graham v. DaimlerChrysler Corp.,*
     34 Cal. 4th 553 (Cal. 2004) ........................................................................ 14

23

24

*In re A & C Properties,*
     784 F.2d 1377 (9th Cir. 1986) ........................................... 1, 7, 9, 16, 18, 19

25

*In re S.B.*
     32 Cal.4th 1287 (2004) ............................................................................... 16

26

27

*In re Sanchez,*
     173 F. Supp. 2d 1029 (N.D. Cal. 2001) ........................................................ 1

28

*Interins. Exch., etc. v. Flores,*
     45 Cal.App.4th 661 (Cal.Ct.App. 1995) ....................................................... 2

*Irwin v. Mascott,*
    112 F.Supp.2d 937 (N.D. Cal. 2000) .................................................................. 19

*Kern River Public Access Comm. v. City of Bakersfield,*
    170 Cal.App.3d 1205 (Cal.Ct.App. 1985)........................................................... 15

*Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.,*
    90 Cal.App.4th 64 (Cal.Ct.App. 2001) ............................................................... 19

*Mallick v. Superior Court,*
    89 Cal.App.3d. 434 (Cal.Ct.App. 1979)............................................................. 11

*Maria P. v. Riles,*
    43 Cal.3d 1281 (Cal. 1987) ................................................................................ 14

*Matter of Pizza of Hawaii, Inc.,*
    761 F.2d 1374 (9th Cir. 1985).............................................................................. 1

*Norgart v. Upjohn Co.,*
    21 Cal.4th 383 (Cal. 1999) ........................................................................... 10, 12

*People ex rel. Fogg  v. Perris Irr. Dist.,*
    132 Cal. 289 (Cal. 1901) .................................................................................... 13

*People ex rel. Kennedy v. Beaumont Investment, Ltd.,*
    111 Cal.App.4th 102 (Cal.Ct.App. 2003) ........................................................... 19

*People v. Seneca Ins. Co.,*
    116 Cal.App.4th 75 (Cal.Ct.App. 2004) ............................................................. 17

*Pony v. County of Los Angeles,*
    433 F.3d 1138 (9th Cir. 2006)............................................................................ 14

*Tripp v. Swoap,*
    17 Cal.3d 671 (Cal. 1976) .................................................................................. 19


**STATUTES**

42 U.S.C. § 1983 ...................................................................................................... 2, 14

Cal. Bus. & Prof. Code § 10240 et seq. ......................................................................... 2

Cal. Bus. & Prof. Code § 17200.................................................................................... 7

Cal. Bus. & Prof. Code § 17203.................................................................................... 3

Cal. Civ. Code § 2945 et seq. ....................................................................................... 2

Cal. Civ. Code § 3287 ................................................................................................ 19

Cal. Civ. Proc. Code § 475 ......................................................................................... 12

Cal. Civ. Proc. Code § 916 ......................................................................................... 11

Cal. Civ. Proc. Code § 1021.5.............................................................................. 4, 13, 14

1

Cal. Pen. Code § 1016 ........................................................................................................... 2

Proposition 64 ................................................................. 4, 7, 8, 9, 10, 11, 12, 13, 14, 19

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

# INTRODUCTION

Yeganeh appeals from the Order, which authorized the Trustee to compromise claims based on a California state court judgment against Yeganeh. When Yeganeh filed his bankruptcy case, he had appealed the judgment, which was secured against his real property. An order authorizing such a compromise "is reviewed for an abuse of discretion." *In re A & C Properties*, 784 F.2d 1377, 1380 (9th Cir. 1986). The court reviews embedded findings of fact under the clearly erroneous standard and embedded issues of law de novo. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir. 1985); *In re Sanchez*, 173 F. Supp. 2d 1029, 1031 (N.D. Cal. 2001). The Bankruptcy Court used the following factors in finding the compromise fair and equitable:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*A & C*, 784 F.2d at 1381; RT 4/5/06. Necessarily, the primary issue below was the probability that Yeganeh's appeal would succeed in the California court system.

Here, the Trustee will show that the Bankruptcy Court did not abuse its discretion. On the major legal issue of Yeganeh's California appeal, the Bankruptcy Court correctly predicted the precedent now issued by the California Supreme Court. The Bankruptcy Court properly found Yeganeh's other potential California appellate contentions were very unlikely to succeed.

# II.

# STATEMENT OF THE CASE

## A.    Undisputed Facts About the State Court Litigation

The facts in this subpart of the Trustee's brief were established without dispute by the declaration of the Trustee's counsel, beginning at page 2. (Dkt. 252.[1])

Two plaintiffs sued Yeganeh in California Superior Court in October 1999. Plaintiff Ingram sued on her own behalf and for the public. Plaintiff Wobogo sued only for the public. The

---

[1] Record references in this brief are to the Bankruptcy Court docket number of the document establishing the cited fact, with reference to numbered pages if feasible and helpful.

1  complaint was based primarily on allegations about wrongs done to Ingram.  It included general

2  "pattern and practice" allegations about similar wrongs done to others.  Causes of action for

3  Ingram included violation of the Truth in Lending Act, common law fraud, violation of Cal. Bus.

4  & Prof. Code § 10240 et seq., intentional infliction of emotional distress, abuse of process, battery

5  and assault, conversion, forcible entry and detainer, violation of civil rights under 42 U.S.C.

6  § 1983, breach of implied covenant of good faith and fair dealing, and violation of Cal. Bus. &

7  Prof. Code § 17200 (the unfair practices law or "UPL").  For Wobogo, as a private attorney

8  general on behalf of the public, the Sixteenth Cause of Action incorporated all prior allegations

9  and alleged violation of the UPL.  Wobogo sought restitution of all sums obtained by improper

10  business practices, disgorgement of profits, interest, an injunction, and costs.

11      In March 2001, Yeganeh pleaded no contest to four criminal counts of violating the

12  foreclosure consultant law ("FCL"), Cal. Civ. Code § 2945 et seq.  Under Cal. Pen. Code

13  § 1016(3), the pleas had the same effect as guilty pleas for purposes of other actions based on the

14  same subject matter.  That is, they are evidentiary admissions of the facts inherent to the criminal

15  charge.  *Interins. Exch., etc. v. Flores*, 45 Cal.App.4th 661, 672 (Cal.Ct.App. 1995).

16      In April 2001, Yeganeh settled all claims with Ingram.

17      Shortly after the guilty plea, Wobogo moved for summary adjudication of the Sixteenth

18  Cause of Action based on the criminal plea and additional corroborating evidence.  All the

19  corroborating evidence and argument focused on wrongdoing Yeganeh committed while acting as

20  a foreclosure consultant.  Yeganeh opposed with legal arguments, contests to the corroborating

21  evidence, and an assertion that all victims had signed arbitration agreements and therefore lacked

22  standing to make claims.  The superior court granted summary adjudication in an order that

23  focused on the criminal pleas as unrefuted admissions.

24      After the summary adjudication order, Wobogo and Yeganeh stipulated to the appointment

25  of a temporary judge.  The judge's charge comprised resolving all issues that remained to be

26  determined to reach a complete and final determination of the case.  Among the provisions of the

27  order were requirements that (a) Yeganeh pay for the services of the temporary judge and (b) if

28  either party wished to have a record of proceedings before the temporary judge, that party would

1   be required to arrange for the attendance of a court reporter and for payment of the court reporter.

2   Except on rare occasions, neither party procured attendance of a court reporter.

3        In proceedings before the temporary judge, Yeganeh contended that only victims of his

4   conduct as a foreclosure consultant could claim damages, and damages were limited to remedies

5   provided by the FCL. In February 2002, the temporary judge interpreted the summary

6   adjudication order to allow claims by victims of any conduct that violated the UPL in a manner

7   similar to the wrongs asserted in the first fifteen causes of action by Ingram. Accordingly, the

8   available remedies were those provided by Cal. Bus. & Prof. Code § 17203. The judge agreed in

9   part with Yeganeh in that each claimant would be required to make a prima facie case of liability,

10  not merely prove up restitution sums.

11       Sometime in late 2001 or early 2002, the Department of Real Estate revoked Yeganeh's

12  real estate license because of his conviction of a crime related to licensed activities.

13       In March 2002, the temporary judge established a claims process that required notice to

14  Yeganeh and individual prove-up hearings on both liability and remedy. The claims process also

15  involved extensive publication and other notice to the communities in which Yeganeh had been

16  active. The temporary judge extended the claims period several times in order to assure full

17  penetration of the information. Yeganeh asserts that the claims process did not provide adequate

18  time for discovery from claimants after they came forward.

19       In November 2003, the temporary judge entered an order prohibiting contact between

20  Yeganeh and claimants (so-called stay-away order). The order was entered on Wobogo's motion

21  based on evidence that Yeganeh's contacts were not discovery but instead were intimidation. The

22  court did not find whether Yeganeh had made unlawful or inappropriate contacts with claimants;

23  presumably the order was made pursuant to the inherent power to control proceedings.

24       Yeganeh asserts that he was denied due process because he did not have adequate

25  discovery in the claims process. He also alleges his discovery was frustrated by the stay-away

26  order. Yeganeh violated that and other court orders. He was adjudicated in contempt and jailed.

27  As a result of being in jail and terminating his lawyer, Yeganeh did not attend some of the prove-

28  up hearings. This, too, he asserts as a due process violation. Finally, he claims that the temporary

3

1  judge was biased against him (he filed an unsuccessful for-cause challenge).

2        After considering evidence presented by alleged victims, the temporary judge issued a final

3  decision in June 2004, awarding damages to 27 of the 28 victims who presented evidence. The

4  aggregate principal amount of damages for the 27 victims was approximately $270,000. The

5  temporary judge provided that each victim would be entitled to prejudgment interest but that the

6  amounts of interest due to each victim would be calculated at a later time. The temporary judge

7  also indicated that he would consider a motion for attorney's fees by counsel for Wobogo.

8        The order establishing amounts of claims was treated as a judgment, and the temporary

9  judge gave notice of its entry.

10        Three months later, the temporary judge issued an order awarding prejudgment interest to

11  each victim (approximately $135,000 total), awarding lodestar attorney's fees of approximately

12  $2.3 million, taxing costs, and granting a fee multiplier of 1.5. The total fee and cost award is

13  about $3.45 million. The restitution and fee awards are sometimes abbreviated as "the Judgment."

14        Yeganeh timely appealed.

15        The people of California on November 2, 2004, adopted Proposition 64, modifying the

16  UPL. Material here, the initiative measure outlawed actions by private attorney general plaintiffs

17  who were not personally injured by the alleged practice. Wobogo was such a plaintiff.

18        After the appeals, and shortly after November 2, 2004, the 27 individual beneficiaries of

19  the Judgment moved in superior court to intervene as plaintiffs. The court granted the motion.

20  This brief hereafter refers to the individual beneficiaries as "Plaintiffs."

21  **B.    Specific Facts Concerning the Attorney's Fee Award**

22        Wobogo moved under Cal. Civ. Proc. Code § 1021.5 for an award of attorney's fees and

23  certain expenses incurred by her counsel. (Dkt. 246, Ex. C, p. 4.) The court entered the following

24  award:

25        The Court finds that the base lodestar amount of attorney's fees to be awarded in
          this case is $1,765,769.00 to the Gray, Cary firm, and $536,100.00 to Reneé Glover

26        Chantler, for a total base award to plaintiffs of $2,301,869.00 in attorney's fees.
          The Court further finds, based upon all of the evidence in this case, upon the

27        Court's observations concerning the difficulty and risk to plaintiff's attorneys in
          bringing and prosecuting this action, upon the Court's observations of defendant's

28        conduct throughout this litigation which has dramatically prolonged this litigation
          and made it much more involved and expensive than it ever had to be, and upon the
          principles of fairness and equity, that a multiplier of 1.5 should be applied to the

1  lodestar attorney fee amount.  After applying that multiplier, the Court therefore
   awards plaintiffs a total of $3,452,803.50 as and for attorney's fees in this case, *and*
2  *defendant is ordered to pay that amount to plaintiffs' attorneys forthwith.*

3  (*Id.*, italics added.)  In the same order, the court found that the attorneys' work enforced important

4  rights affecting the public interest, explaining that the objectively unremarkable awards of

5  restitution were "highly significant sums of money to many of the claimants, many of whom live

6  very modestly." (*Id.* at 2.)  It found that the attorneys also prevented "a large number of members

7  of the public" from falling victim to similar Yeganeh wrongs by vigorously prosecuting the suit

8  and obtaining injunctions.  (*Id.*)  It made extended and specific findings about the reasonableness

9  of the amount of time expended in prosecuting the case, particularly in light of Yeganeh's

10 "evasive and obstreperous conduct" and "proclivity for hiding assets." (*Id.* at 3.)

11 **C.    Bankruptcy Proceedings**

12 **1.    Preliminary Matters**

13 On January 1, 2005, Yeganeh filed a Chapter 13 bankruptcy case.  (Dkt. 1.)  On

14 January 21, 2005, the court converted the case to Chapter 7.  (Dkt. 11.)

15 Each Plaintiff filed a timely proof of claim in the Bankruptcy Court for individually

16 awarded restitution and entire award of attorney's fees.  (Dkt. 272 at 2:3; Claims Reg. 05-30047,

17 Claims 7-35.)  Other unsecured claims total at least $1,000,000.  (*Id.*, Claims 1-6, 36-38.)

18 Yeganeh moved to stay bankruptcy proceedings and appoint special appellate counsel to

19 prosecute the state court appeal from the Judgment.  (Dkt. 182, 184, 185, 187-190.)  The court

20 denied the motion on December 19, 2005.  (Dkt. 208.)  Yeganeh did not appeal.

21 **2.    Proceedings on the Trustee's Notice of Intent To Compromise**

22 On February 17, 2006, the Trustee filed and served a notice of intent to dismiss Yeganeh's

23 state court appeal and to compromise with the Plaintiffs.  (Dkt. 210.)  The notice explained the

24 history of the state court case, including the Plaintiffs' recording of an abstract of judgment

25 perfecting a security interest in Yeganeh's property in San Mateo County, California.  (*Id.* at 1.)  It

26 disclosed the Plaintiffs' claim of $800,342.75 for attorney's fees and $39,157.50 costs for the

27 period between entry of the judgment and Yeganeh's bankruptcy.  (*Id.* at 2.)  It explained that the

28 compromise consisted of the Trustee's dismissing the appeal in exchange for a $200,000 reduction

5

1    in the lodestar attorney's fees, a $100,000 reduction in the multiplier, and a $400,000 reduction in

2    post-judgment attorney's fees. (*Id.*) Further, the Trustee successfully negotiated for the lodestar

3    amount of attorney's fees to be treated as a general unsecured claim during the bankruptcy

4    administration and for the multiplier amount to be subordinated to all general unsecured claims.

5    (*Id.* at 2, 4.) The notice then detailed the Trustee's reasons for the compromise, focusing on the

6    low probability of success in the state court appeal. (*Id.* at 3-6.)

7          Yeganeh responded first by objecting to the Plaintiffs' claims (Dkt. 218) and moving again

8    for a stay of bankruptcy proceedings, this time accompanied by a demand for the Trustee to

9    "abandon" the state court appeal and allow Yeganeh to prosecute it (Dkt. 220-221). Yeganeh also

10   objected to the notice of intent to compromise. (Dkt. 222-227.) Based on arguments much like

11   those made in this appeal, two attorneys for Yeganeh stated opinions that Yeganeh's appeal had a

12   substantial prospect of success. (Dkt. 224, 225, 227.)

13         The Trustee opposed Yeganeh's motion to stay and compel abandonment of the appeal.

14   (Dkt. 229) The Trustee pointed out that the motion was an attempt to attack the proposed

15   compromise collaterally, was functionally a renewal of the denied motion to stay and appoint

16   special appellate counsel, and was inappropriate because a defensive appeal is not an asset subject

17   to abandonment. (*Id.*) The Plaintiffs opposed Yeganeh's objection to their claims on the ground it

18   violated the *Rooker-Feldman* doctrine by seeking to have the bankruptcy court act as an appellate

19   court reviewing the Judgment. (Dkt. 230-231.) The Plaintiffs also opposed the motion to stay on

20   substantially the same grounds as the Trustee's opposition. (Dkt. 233-234.)

21         Next, the Trustee replied to Yeganeh's objection to the compromise. (Dkt. 245, 246, 252.)

22   The Trustee showed that if the California Supreme Court held Proposition 64 applied to cases on

23   appeal when it was enacted, nevertheless the Plaintiffs timely intervened and would be protected

24   from reversal of the Judgment. (Dkt. 245 at 4-5.) The Trustee negotiated on the basis that

25   Proposition 64 would be applied retroactively, but that substitution of parties with relation back

26   would be allowed. (*Id.* at 7.) Wobogo's disability to sue would not affect the attorney's fees

27   because the lawyers were the true owners of them under state law and would retain the right to the

28   fees so long as the intervening Plaintiffs retained their rights. (*Id.* at 6.) Yeganeh forfeited his

1    procedural attacks on the Judgment because he had made a voluntary choice not to have the

2    proceedings recorded and thereby forfeited most claims of error; the others were meritless. (*Id.* at

3    8-13.) Finally, the amount of attorney's fees would be reviewed under a deferential abuse of

4    discretion standard and were not unreasonable. (*Id.* at 13-14.) Therefore the compromise met the

5    *A & C* standard. (*Id.* at 14-17.) The Trustee supported the compromise with a declaration of

6    counsel describing the difficult settlement negotiations and attesting to how Yeganeh's conduct

7    multiplied the proceedings against him, interfered with administration of the estate, resulted in

8    both felony conviction and contempt conviction, and was designed to portray him falsely as a

9    victim. (Dkt. 246.) As an illustration, the declaration attached an order from the state court

10    showing that after being warned *not* to fire his then (and current) lawyer as a ploy to obtain a

11    continuance while he was jailed for contempt, Yeganeh did exactly that, and the continuance was

12    denied. (Dkt. 246, Ex. F.) The Trustee also supported the compromise with a declaration of

13    experienced appellate counsel summarizing the issues and stating why the appeal as a whole was

14    very unlikely to result in any benefit to the estate or Yeganeh. (Dkt. 252.)

15        The Plaintiffs also replied to Yeganeh's objections. (Dkt. 247-248.) They provided an

16    even more extensive factual record than that provided by the Trustee. (Dkt. 248.)

17       **3.**      **The Bankruptcy Court's Authorization of the Compromise; Appeal**

18        The Bankruptcy Court heard lengthy argument on whether to authorize the compromise.

19    (RT 3/31/06 at 1-47.) During argument, the court requested documents that might bear on when

20    Yeganeh had notice that there might be claimants other than Wobogo. (*Id.* at 39-40.) The court

21    took the matter under submission, subject to Plaintiffs' filing documents pertaining to such notice.

22    (*Id.* at 47.) Plaintiffs filed the documents. (Dkt. 256.)

23        On April 5, 2006, the Bankruptcy Court orally delivered its decision authorizing the

24    compromise. (RT 4/5/06.) It applied the *A & C* factors, discarding the "risk of noncollection,"

25    which was not an issue here. (*Id.* at 3.) It found that the most important factor was the probability

26    of the appeal's success on the merits. (*Id.*) The court concluded it was more likely than not that

27    the California Supreme Court would apply Proposition 64 to pending cases. (*Id.* at 4.) It agreed

28    with the Trustee that "the judgment is not likely to be set aside even if Proposition 64 is ruled to

1   be retroactive." (*Id*.) The court explained its reasoning in detail. (*Id*. at 4-6.) It agreed with the

2   Trustee's counsel's analysis of other issues. (*Id*. at 6-7.) It found that the expense of further

3   litigation (both legal expenses and interest accruing on secured claims) would be great and was "a

4   very powerful factor" that "strongly bolstered" the appropriateness of the settlement. (*Id*. at 7.)

5   The court explained that the appeal would be unusually costly, not cost effective, a cause of

6   unreasonable delay, and an exposure to paying the Plaintiffs' appellate attorney's fees. (*Id*. at 8-

7   9.) The paramount interest of creditors is to authorize the settlement because of the low

8   probability of success on appeal and the administrative expenses that would be generated by

9   pursuing the appeal and continuing to address Yeganeh's fraudulent transfers of assets. (*Id*. at 9-

10  10.) Finally, the court denied the motion to abandon the appeal as moot and denied the objections

11  to the Plaintiffs' claims because only the California courts can review the Judgment. (*Id*. at 11.)

12          On April 8, 2006, Judge Carlson signed, and on April 10, 2006 the court entered, the

13  formal order authorizing the compromise. (Dkt. 259.) Yeganeh timely appealed on April 17,

14  2006. (Dkt. 261.) The Bankruptcy Court denied his request for a stay pending appeal. (Dkt.

15  273.) The District Court also denied Yeganeh's motion for a stay. (06-2788, Order 5/12/06.)

16  **D.     "Facts" in the Appellant's Opening Brief**

17          Yeganeh's opening brief makes many assertions of fact without reference to any part of the

18  record. The Trustee will not respond to such unsupported statements. Also, Yeganeh's brief

19  makes statements with record references that do not support the statements in the brief. For

20  example, the statement that claims information was kept secret in the state court case, AOB at

21  4:14-17, finds no support in the orders cited (Dkt. 223, Ex. C, at 2; Ex. D, at 2). The allegation

22  that Plaintiffs' attorneys victimized Yeganeh under UPL, AOB at 5:15-19, comes from a criminal

23  convicted of the abuse alleged in the state court action, and is made years after his victims

24  obtained a judgment of restitution for his wrongdoing.  Long parts of the fact statement are legal

25  argument. AOB at 5-8. Some of it is supported only by passion, such as the statement that the

26  state trial court should not have allowed Plaintiffs to intervene, AOB at 7:4-11, and the argument

27  that Plaintiffs' attorneys could not have substantiated their claim for post-judgment attorney's fees

28  AOB at 8:1-18.

**III.**

**LEGAL DISCUSSION**

The Trustee will show that the Bankruptcy Court did not abuse its discretion in applying the factors of *A & C*, 784 F.2d at 1381, to make findings that support authorizing the settlement. The most important factor here was the probability of success of Yeganeh's appeal. Further, the most important issue in determining the probability of Yeganeh's success on appeal was whether Proposition 64 probably would result in reversing the Judgment. The Bankruptcy Court concluded that reversal was unlikely – not because Proposition 64 would not apply but because Plaintiffs would be treated as substituted for Wobogo, with their claims relating back to when Wobogo filed the action. The Bankruptcy Court predicted well. There was no abuse of discretion in any other part of the Bankruptcy Court's analysis.

**A.    Probability of Success of Yeganeh's Appeal**

**1.    Proposition 64**

If Proposition 64 applies to the Judgment, and if Wobogo's loss of standing under Proposition 64 required reversal of the Judgment, Yeganeh could have obtained a reversal. In those circumstances, the court and parties would have been required to analyze the compromise in light of what could have happened if the state court case against Yeganeh was remanded for a restart at some stage in the process. Since the Trustee's settlement analysis was predicated on a high probability that no such restart would be required, the critical inquiry into probability of success was the application of Proposition 64.

The Trustee and the Bankruptcy Court correctly assumed that the California Supreme Court would hold that Proposition 64 applies to cases pending on appeal when the voters adopted it. *Californians for Disability Rights v. Mervyn's, LLC*, 2006 Cal. LEXIS 8774 at * 4 (Cal. July 24, 2006). Accordingly, Yeganeh cannot contend that the court relied on an unduly optimistic argument of Plaintiffs in approving the compromise.

The Trustee and the Bankruptcy Court also reasoned that the California Supreme Court and appellate courts would allow substitution of parties and relation back when Proposition 64 deprived an uninjured representative party of standing. This, too, has proved to be correct. In

9

1    *Branick v. Downey Savings & Loan Ass'n*, 2006 Cal. LEXIS 8775 (Cal. July 24, 2006), the court

2    held that the ordinary rules of amendment of pleadings and relation back apply when an uninjured

3    representative plaintiff is deprived of standing by Proposition 64. Specifically, the court held:

4         Proposition 64 does not affect the ordinary rules governing the amendment of
          complaints and their relation back. We thus reject defendant's contention that

5         courts may never permit a plaintiff to amend a complaint to satisfy Proposition 64's
          standing requirements. [The] the superior court should decide [a] motion [for leave

6         to amend] by applying the established rules governing leave to amend (Code Civ.
          Proc., § 473) and the relation back of amended complaints (*Norgart v. Upjohn Co.*

7         (1999) 21 Cal.4th 383, 408-409 [87 Cal. Rptr. 2d 453, 981 P.2d 79]).

8    *Id.* at *4 - *5.

9         Fatally for Yeganeh's appeal, the California Supreme Court rejected the exact categorical

10   argument Yeganeh has made against relation back, branding the case on which he relies as "not

11   helpful." *Branick*, 2006 Cal. LEXIS 8775 at *14-18 & n. 7.[2] The *Branick* plaintiffs lost on the

12   merits in the superior court and then appealed, *id.* at *6, so they did not have an opportunity before

13   California Supreme Court review to amend their complaint. *Id.* at *13 - *14. Whether to grant

14   leave to amend is a decision vested in trial judges' discretion. *Id.* at *12. The California Supreme

15   Court declined to issue an advisory opinion on whether the specific plaintiffs should be allowed to

16   amend their complaint but "address[ed] and reject[ed] certain categorical arguments defendant has

17   advanced against the granting of leave to amend." *Id.* at *14. First, the court rejected the

18   categorical argument that a new plaintiff could not be substituted because naming an uninjured

19   representative plaintiff was not a mistake. *Id.* at *14 - *16. Supported by a string-citation, the

20   court stated that California courts have regularly allowed plaintiffs who initially lacked, or lost,

21   standing to substitute others as the true parties in interest. *Id.* It summed up: "Amendments for

22   this purpose are liberally allowed." *Id.* at *15. The court next rejected the categorical argument

23   "that leave to amend must be denied because persons with standing under Proposition 64 would

24   necessarily seek to enforce a different legal obligation than would the current, uninjured

25   plaintiffs." *Id.* at 17. It left to the trial court to determine whether substitution of injured plaintiffs

26   _____

27   [2] Theoretically one might argue that the legal landscape should be reconstructed as of the time the
     Bankruptcy Court authorized the compromise. But the proceedings below were informed in large
     measure by the briefing and pendency of *Mervyn's* and *Branick*, and there is no more succinct or

28   authoritative summary of the then-correct law than the California Supreme Court's recent
     opinions.

1   "would impermissibly change the nature of the action. . . ." *Id.* The appended footnote observed:

2       The opinion in *Diliberti v. Stage Call Corp.* (1992) 4 Cal.App.4th 1468 [6 Cal.

3       Rptr. 2d 563], which defendant describes as involving "[t]he closest factual scenario" to the case before us, is not helpful. In that case, the court did not permit

4       the plaintiff, who had not been injured in the subject automobile accident, to substitute the injured sister in whose place she had mistakenly been named.

5       Plaintiffs in the case before us were not named by mistake; they were properly named as plaintiffs with standing to sue on behalf of the general public (see former

6       §§ 17204, 17535) before Proposition 64 took effect.

7   *Id.* at 17, n.7. *Diliberti* is the case on which Yeganeh relies for his categorical argument against

8   relation back. AOB at 15-16, 19.

9       Here, the California trial court has exercised its discretion. It allowed Plaintiffs to

10   intervene promptly after Proposition 64's adoption. It had jurisdiction to allow intervention after

11   appeal. Intervention is possible at any time, even after judgment. In *Fallon v. Superior Court*, 33

12   Cal.App.2d. 48, 50-51 (Cal.Ct.App. 1939), the court stated that parties may intervene after

13   judgment, specifically holding class members may do so to protect their interest. In *Mallick v.*

14   *Superior Court*, 89 Cal.App.3d. 434, 437 (Cal.Ct.App. 1979), the court specifically endorsed the

15   jurisdiction of a trial court to permit intervention during an appeal: "[S]ince the issue of

16   intervention is not a matter 'embraced in or affected by the judgment' the trial court is not

17   deprived of jurisdiction pursuant to the 'stay' provisions of Code of Civil Procedure section 916

18   when an appeal is perfected." Substituting a qualified representative in a class action is a specific

19   justification for allowing intervention during appeal. *Id.* It would be frivolous for Yeganeh to

20   argue that substituting the beneficiaries of a proved-up judgment was an abuse of discretion when

21   the representative plaintiff was deprived of standing she undisputedly held until Proposition 64.

22   (See *Branick*, 2006 Cal. LEXIS 8775 at *17, n.7.) It would be equally frivolous for Yeganeh to

23   argue an abuse of discretion on the basis of untimeliness, since Plaintiffs acted diligently after

24   adoption of Proposition 64.

25       All that remains is to assess whether the Bankruptcy Court abused its discretion in

26   concluding that California courts would relate Plaintiffs' intervention back to Wobogo's filing the

27   complaint. The Trustee's counsel gave the opinion that Plaintiffs, as parties represented by

28   Wobogo, had a right to rely on Wobogo and her lawyers until the voters adopted Proposition 64,

1 | so allowing Plaintiffs to intervene when they were aware of jeopardy under Proposition 64 was not

2 | an abuse of discretion, and that point would be fatal to Yeganeh's appeal. (Dkt. 252 at 7.)

3 | Plaintiffs argued similarly. (Dkt. 247 at 15-16.) The Bankruptcy Court found that the action

4 | would have been filed as an appropriate class action if Proposition 64 had been the law when it

5 | was filed, and the California courts would uphold the intervention or otherwise avoid setting aside

6 | a judgment tried on the merits simply because Wobogo lost standing after Yeganeh appealed. (RT

7 | 4/5/06 at 4-6.) This was a correct application of one of the most universal principles of California

8 | law: courts must disregard any error that "does not affect the substantial rights of the parties."

9 | Cal. Civ. Proc. Code § 475. All California courts involved with the judgment were required to

10 | affirm and validate it unless an error or defect was "prejudicial," and Yeganeh "suffered

11 | substantial injury, and [] a different result would have been probable" but for the error or defect.

12 | *Id.* Yeganeh's argument against relation back – in substance to apply a statute of limitations

13 | defense that never existed – would be frivolous under section 475.

14 |       The California Supreme rang the death knell for Yeganeh's argument in *Branick*. It held

15 | that a substituted plaintiff may claim relation back but "may not 'state facts which give rise to a

16 | wholly distinct and different legal obligation against the defendant.'" *Branick*, 2006 Cal. LEXIS

17 | 8775 at *1. Explaining that phrase, the court stated:

18 |     For this purpose, "[i]n determining whether a wholly different cause of action is
19 |     introduced by the amendment technical considerations or ancient formulae are not
   |     controlling; nothing more is meant than that the defendant not be required to
   |     answer a wholly different legal liability or obligation from that originally stated."
20 |     (*Ibid.*) Similar principles govern the question whether an amendment relates back,
   |     for purposes of the statute of limitations, to the date on which the original
21 |     complaint was filed. "The relation-back doctrine requires that the amended
   |     complaint must (1) rest on the same general set of facts, (2) involve the same
22 |     injury, and (3) refer to the same instrumentality, as the original one. [Citations.]"
   |     (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th 383, 408-409.)

23 |

24 | *Id.* Here, the substituted Plaintiffs raised the general facts, injury, and instrumentality *they had*

25 | *already tried to judgment* against Yeganeh. Under the specific standard of *Branick*, Yeganeh's

26 | argument against relation back is frivolous.

27 |       In summary, Yeganeh's appeal had virtually zero probability of success in overcoming the

28 | restitution awards to the Plaintiffs when the Bankruptcy Court authorized the compromise. The

1    Bankruptcy Court and the Trustee correctly anticipated that Proposition 64 would apply to

2    pending cases and that substitution of injured parties for uninjured representatives of the public

3    would be freely allowed under standard rules of California practice. On the facts here, the

4    arguments to overcome the substitution of Plaintiffs for Wobogo were and are frivolous. As the

5    California Supreme Court has found the law, Yeganeh has achieved absolute zero prospects.

6        **2.    The Attorney's Fee Award**

7        Yeganeh's primary theory to defeat the attorney's fee award is that it belongs to Wobogo

8    and therefore it must be vacated because Wobogo lost standing with enactment of Proposition 64.

9    AOB at 27-30. Yeganeh states that if Wobogo's cause of action is "invalid," so too must be the

10   award of attorney's fees. According to Yeganeh, "[n]o authority needs to be cited for a

11   proposition that elementary." AOB at 28. Not so fast.

12       The attorneys are the equitable owners of the fee award. The California trial court awarded

13   attorney's fees under Cal. Civ. Proc. Code § 1021.5, which allows such awards when an action has

14   conferred a substantial benefit on a large class of people. (Dkt. 246, Ex. C.) The court made the

15   award payable specifically to the attorneys who prosecuted the action: "and defendant is ordered

16   to pay that amount to plaintiffs' attorneys forthwith." (*Id.* at 4.) This is standard California

17   practice. More than 20 years ago, the California Supreme Court concluded it was "established that

18   [section 1021.5] awards are properly made to plaintiffs' attorneys rather than to plaintiffs

19   themselves." *Folsom v. Butte County Assn. of Governments*, 32 Cal.3d 668, 682 & n.26 (Cal.

20   1982). The attorney is the true owner of the fees awarded. *Flannery v. Prentice*, 26 Cal.4th 572,

21   577, 582 (Cal. 2001).

22       So long as the restitution awards and other orders entered in the trial court stand,

23   Yeganeh's argument is bereft of logic and authority. The attorneys provided the same public

24   benefit regardless of Wobogo's loss of standing after the Judgment, so no logical ground exists to

25   reverse the award. The attorneys represent the Plaintiffs (see Dkt. 253, Ex. A. pp. 82-83 [order

26   granting intervention and recognizing the Plaintiffs as the attorneys' clients]), who are the

27   substituted prevailing parties with all the same rights and remedies as original parties. *People ex*

28   *rel. Fogg v. Perris Irr. Dist.*, 132 Cal. 289, 290-91 (Cal. 1901). Authority confirms what logic

1   compels.  Under section 1021.5, any party who has used litigation to catalyze change has a right to

2   claim attorney's fees by showing that a public benefit resulted.  *Maria P. v. Riles*, 43 Cal.3d 1281,

3   1291-92 (Cal. 1987); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 568 (Cal. 2004).

4   Simply, the Bankruptcy Court was objectively correct – and did not abuse its discretion – in

5   concluding that Wobogo's loss of standing and the substitution of Plaintiffs do not affect the

6   attorney's fee award.  *Pony v. County of Los Angeles*, 433 F.3d 1138 (9th Cir. 2006) cannot

7   contradict the analysis of California law because it was decided under 28 U.S.C. § 1983, under

8   which the client is exclusive holder of the right to claim fees.  *Id.* at 1140, 1142.  *Pony* would not

9   apply here in any event, since it concerned an attorney's attempt to move for an award of attorney

10  fees against his client's wishes.  In contrast, "[o]nce the prevailing party exercises her right to

11  receive fees, the attorney's right to collect them vests, and he may then pursue them on his own."

12  *Id.* at 1142.  Here, then, even under section 1983, Plaintiffs' attorneys could pursue the awarded

13  fees unless they are substantively reversed, regardless of Wobogo's personal loss of standing.

14          The appeal offered no reasonable prospect of success in reducing the amount of attorney's

15  fees.  The California Court of Appeal reviews attorney's fee awards for abuse of discretion.

16  *Atkins v. Enterprise Rent-A-Car of San Francisco*, 79 Cal.App.4th 1127, 1134 (Cal.Ct.App. 2000).

17  The formulation of the standard emphasizes an exceptionally broad degree of trial court discretion:

18  "an experienced trial judge is in a much better position than an appellate court to assess the value

19  of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge

20  will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the

21  circumstances."  *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740, 782 (Cal.Ct.App.

22  2002).  Against this standard Yeganeh throws a few miscellaneous darts supported only by his

23  own attorney's theories of appellate argument instead of any record from which a court might

24  infer an abuse of discretion.  AOB at 37-40.  Yeganeh also makes unsubstantiated personal attacks

25  on the attorneys asserting fraud, "a shakedown, nothing more than extortion, nothing more than a

26  scam, and nothing more than a retirement plan for plaintiff's attorneys."  AOB at 40-43 (quotation

27  at 41:5-7).  Nothing in all Yeganeh's name-calling or in the record he established below conveys

28  the faintest hope that an appellate court would reverse the trial judge who reviewed the actual

1  services provided and observed the reality of the litigation.  Yeganeh should have heeded the

2  warnings of other courts to "[t]hose who elect a militant defense in the face of a statute allowing

3  attorney's fees [that] if they are defeated [they] must take into account the time and effort they

4  exact from their opponents." *Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1524-25 (C.D.

5  Cal. 1987).  *See, Kern River Public Access Comm. v. City of Bakersfield*, 170 Cal.App.3d 1205,

6  1228-29 (Cal.Ct.App. 1985) (affirming fee award and stating case was a "relatively complex

7  matter where success was not assured and where the appellants fought the case at every turn").

8      The Bankruptcy Court did not abuse its discretion in its analysis of the attorney's fee

9  aspect of Yeganeh's appeal.

10      **3.      Miscellaneous Arguments**

11      Yeganeh told the Bankruptcy Court his appeal would raise several of the kitchen-sink

12  types of arguments that drive appellate judges to distraction.  The Bankruptcy Court did not abuse

13  its discretion in according those arguments no substantial settlement value.

14          **a)      The Stipulation Appointing the Temporary Judge**

15      Yeganeh contends that the stipulation appointing a temporary judge after summary

16  adjudication of his liability could not be used to prove up Plaintiffs' restitution because Plaintiffs

17  were not parties to the stipulation.  AOB at 31-34.  Yeganeh presents the argument as a tortured

18  version of third-party beneficiary theory based solely on the signature lines of the stipulation –

19  filled in only by Wobogo's attorneys' and Yeganeh's.  But the signatures are neither the starting

20  point nor the end for interpreting the stipulation.  Context, all the language, and the parties'

21  subsequent behavior count.

22      The context alone is close to dispositive against Yeganeh.  Wobogo was an uninjured

23  representative plaintiff acting as a private attorney general for the benefit of the public. (Dkt. 223,

24  Ex. B at 1.)  There was no fact-finding to do after summary adjudication of liability except to

25  establish the amount of restitution and the members of the public entitled to restitution.

26      The language of the stipulation makes clear that the purpose of the temporary judge's

27  appointment was to hear and decide restitution claims.  The judge was granted power to resolve all

28  remaining issues, including "all issues related to restitution." (Dkt. 223, Ex. B at 1:25-27, 4:3-5.)

1        Yeganeh's own behavior demonstrates that he interpreted the stipulation as granting the

2  power to conduct restitution hearings. His attorney requested a claims process "to be in the format

3  of individualized arbitrations, each to last no more than two hours." (Dkt. 246, Ex. D, p. 5.)

4  Counsel stated an intent to propound discovery to identify "the individual claimants, the alleged

5  basis for each claim . . ., the amount of each claim, and the manner in which said amount is

6  calculated." (*Id.*) Yeganeh repeatedly acknowledged that the temporary judge's job was to

7  adjudicate claims. (Dkt. 248, Ex. U, Ex. V [Yeganeh declaration under oath to disqualify Judge

8  Blackman states the temporary judge was appointed "to hear the claims and to resolve this matter

9  expeditiously."], Ex. X at 7-11.) That Yeganeh sponsored those statements and proceeded while

10  not objecting to the power of the temporary judge to conduct claims hearings is evidence by

11  performance of how the parties interpreted the stipulation – evidence that California courts would

12  take as conclusive. *Crestview Cemetery Assn. v. Dieden* 54 Cal.2d 744, 754 (Cal. 1960).

13        The Bankruptcy Court did not abuse its discretion in attributing little settlement value to

14  any argument about the temporary judge's power. The argument is a frivolous afterthought.

15        **b)    Due Process Claims**

16        Yeganeh asserts that he would argue two procedural due process claims in the California

17  appellate courts. AOB at 34-36. They merited no weight in the *A & C* factors. One is that

18  Yeganeh was entitled to full evidentiary trials because the Plaintiffs' restitution claims arose out of

19  injuries other than Yeganeh's criminal conviction. AOB at 34-36. Of course, this contradicts

20  Yeganeh's position that claimants should be heard in individual arbitrations lasting less than two

21  hours. (Dkt. 246, Ex. D, p. 5.) Yeganeh also forfeited[3] any such argument in the trial court by

22  failing to require a court reporter to create a record of the proceedings on which he could argue

23  error. Either party could have demanded a reporter for any or all hearings. (Dkt. 223, Ex. B at

24  2:25-28.) The absence of a record affirmatively demonstrating error is fatal to an issue on appeal

25  in California. When the appellant had a right to preserve a record but did not do so, "it is

26  presumed that the unreported trial testimony would demonstrate the absence of error." *People v.*

27

---

28  [3] Although courts and parties often refer to waiver of appellate issues, "the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim." *In re S.B.* 32 Cal.4th 1287, 1293, n.2 (2004).

1    *Seneca Ins. Co.*, 116 Cal.App.4th 75, 80 (Cal.Ct.App. 2004). *See, Calhoun v. Hildebrandt*, 230

2    Cal.App.2d 70, 72 (Cal.Ct.App. 1964) (no error could be asserted in unreported argument).

3    Exactly the same fate would await the argument made at page 36 of Yeganeh's brief that the

4    individual claims decisions were not supported by admissible evidence.

   c)    **Other Issues**

6         In prior papers, Yeganeh has complained about other factors affecting the merits of the

7    settlement, including the amount of Plaintiffs' post-judgment attorney's fees and the rate of post-

8    judgment interest. Yeganeh appears to have abandoned the arguments, apparently recognizing he

9    made no record on which to base them. *See*, Order Denying Appellant's Emergency Motion for

10   Stay of Order Authorizing Compromise, 5/12/06, at 10, 12-13. The Trustee will not respond to

11   abandoned arguments.

12        **4.    Summary**

13        Yeganeh's appeal appeared doomed when the Bankruptcy Court authorized the

14   compromise. Nothing in its probability of success has improved; to the contrary, the California

15   Supreme Court held the consequences of Proposition 64 are exactly what the Trustee and the

16   Bankruptcy Court predicted. There was no abuse of discretion.

17   **B.    Collection Difficulties**

18        The compromise settled a claim against Yeganeh and the estate, not a claim in favor of the

19   estate. Accordingly collection is not a factor.

20   **C.    Delay and Expense**

21        Yeganeh objects to the Bankruptcy Court's analysis of the delay and expense that would

22   result from not approving the settlement. AOB at 44-45. In the objection, Yeganeh focuses

23   exclusively on the expense of briefing and arguing the appeal from Yeganeh's side. *Id.* That was

24   not the exclusive focus of the Bankruptcy Court. Rather, the Bankruptcy Court considered the risk

25   of adding the Plaintiffs' appellate attorney's fees to the liability of the estate, the excess of interest

26   on the secured judgment over the Trustee's capacity to earn a return on the estate's assets, and the

27   effect of delay. (RT 4/5/06 at 8-9.) The Trustee's counsel had pointed out that even if the

28   California Supreme Court had decided the issues in its pending cases favorably to Yeganeh,

1  Yeganeh's case still would need to be briefed and argued because of distinguishable issues,

2  including that judgment was entered for injured claimants who actually intervened in the case.

3  (Dkt. 252 at 7.)  And a reversal would not end the litigation, which could take years to reach an

4  even more expensive result.  (*Id.*; Dkt. 246 at 1-3.)  Further, the Trustee's counsel pointed out that

5  every delay in resolving the claim protracted the bankruptcy case, in which Yeganeh interfered

6  with the Trustee's administration, lied, and "single-handedly caused much of the legal expense of

7  the Trustee's administration of the estate." (Dkt. 246 at 3.)  Yeganeh does not address these

8  issues.  There was no abuse of discretion.

9  **D.      Paramount Interest of Creditors**

10      Yeganeh makes no serious argument about the paramount interest of creditors, who

11  obviously need to have their relationship with him wound up as quickly as possible.  Without

12  reference to the record, he mentions a settlement offer he purportedly made at some time before

13  the court authorized the compromise.  That is not a proper subject for an appellate brief, and

14  Yeganeh has shown no abuse of discretion.

15  **E.      Add-On Arguments**

16      Without connecting them to the *A & C* factors, Yeganeh makes two additional arguments.

17  First he asserts that the Plaintiffs' bankruptcy claims are not valid because they include attorney's

18  fees awarded to Wobogo. AOB at 46-48.  Then he complains about prejudgment interest in the

19  claims.

20      The attorney's fee argument is a recapitulation of Yeganeh's theory that Wobogo's loss of

21  standing invalidates the attorney's fee award.  The Trustee has fully responded *ante* at pages 13-

22  16.

23      The prejudgment interest argument appears to be a misplaced assertion that the probability

24  of success analysis should have included a finding that Yeganeh would have persuaded the

25  California appellate courts to strike prejudgment interest on the Plaintiffs' restitution awards.

26  AOB at 48-49.  If true, the amount would not materially affect the compromise – even Yeganeh's

27  argument, without record reference, states the amount to be $130,000. AOB at 48.  Yeganeh's

28  first argument against prejudgment interest rests on a supposed distinction between "damages" in

18

1   the prejudgment interest statute, Cal. Civ. Code § 3287, and "restitution" under the UPL.

2   California courts award prejudgment interest on restitution in UPL cases. *See, People ex rel.*

3   *Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102, 132 (Cal.Ct.App. 2003); *Irwin v.*

4   *Mascott*, 112 F.Supp.2d 937, 956 (N.D. Cal. 2000). Prejudgment interest is available when a

5   plaintiff establishes a statutory claim to money. *Tripp v. Swoap*, 17 Cal.3d 671, 681-82 (Cal.

6   1976), overruled on other grounds in *Frink v. Prod*, 31 Cal.3d 166, 180 (Cal. 1982). The

7   argument that the term "damages" in Cal. Civ. Code § 3287 forecloses prejudgment interest on

8   statutory restitution claims therefore was likely to fail. Yeganeh's second argument is that

9   Plaintiffs' restitution amounts were not sufficiently liquidated. Yeganeh correctly states the law

10  that prejudgment interest is intended to compensate the plaintiff for loss of his or her property and

11  is mandatory only when the claim can be made certain by calculation rather than judgment or

12  estimation. AOB at 48, citing *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.*, 90

13  Cal.App.4th 64, 68, 71-72 (Cal.Ct.App. 2001). Yeganeh cannot make an argument relying on that

14  principle because he forfeited any such appellate contention by not preserving a record of the

15  proof of Plaintiffs' claims. *Ante* at 16-17.

## IV.

## CONCLUSION

The Bankruptcy Court did not abuse its discretion in authorizing the compromise under

the *A & C* factors. Therefore the order authorizing the compromise should be affirmed, with costs

to the Trustee.

DATED: August 7, 2006                    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____

Charles A. Bird
Charles P. Maher
Counsel for Appellee Charles E. Sims

## CERTIFICATE OF SERVICE BY MAIL

I, Nelly Quintanilla, declare that:

1.      I am employed in the City and County of San Francisco, California.  My business address is 121 Spear Street, Ste. 200, San Francisco, California 94105.  I am over the age of 18 years and not a party to the above-entitled action.  I work in the office of a member of the bar of this Court, at whose direction the service was made.

2.      I am familiar with Luce, Forward, Hamilton & Scripps, LLP's, practice whereby each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle.  Each day the mail is collected and deposited in a United States postal mailbox at or before the close of business each day.

3.      On this date, I served the following document:

**APPELLEE'S BRIEF OF CHARLES E. SIMS, TRUSTEE IN BANKRUPTCY**

by placing a true copy thereof enclosed in a sealed envelope, postage thereon fully prepaid, in the designated area for outgoing mail at San Francisco, California, which envelopes were addressed to the following persons:

| | |
|---|---|
| William E. Gilg, Esq.<br>305 San Bruno Avenue West<br>San Bruno, CA  94066 | Jeffry A. Davis, Esq.<br>DLA Piper Rudnick Gray Cary US LLP<br>401 B Street, Suite 1700<br>San Diego, CA  92101-4297 |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on August 7, 2006, in San Francisco, California.

Nelly M. Quintanilla

20

# EXHIBIT 6

**Entered on Docket**
**August 08, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Charles P. Maher, State Bar No. 124748
    LUCE, FORWARD, HAMILTON
2       & SCRIPPS LLP
    121 Spear Street, Suite 200
3   San Francisco, California 94105-1582
    Telephone No.: 415.356.4600
4   Fax No.: 415.356.4610

5   Counsel for Charles E. Sims
    Trustee in Bankruptcy

6

7

Signed and Filed: August 08, 2006

THOMAS E. CARLSON
U.S. Bankruptcy Judge

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10
    In re RAMIN YEGANEH,                     Case No. 05-30047 TEC
11                                           Chapter 7

12              Debtor.

13

14
                    **ORDER AUTHORIZING SALE OF REAL PROPERTY**
15
                        (1611 Shoreview Avenue, San Mateo)
16

17          Based on the Trustee's application and the supporting declaration of counsel, and it

18   appearing that notice has been adequate, that no objections have been filed or served on the

19   Trustee, and it further appearing that the creditors asserting liens against the property have

20   executed a stipulation to an order authorizing the sale free and clear of their liens, and that good

21   cause exists, it is

22          ORDERED as follows:

23          1.      The Trustee is authorized to sell to Jesus B. Alaniz or his designee for the sum of

24   $670,000 the real property commonly known as 1611 Shoreview Avenue, San Mateo, California

25   (the "Property") in its "as is" condition.   The legal description of the Property is attached as

26   **Exhibit A**.

27          2.      The Buyer shall be entitled to a credit from escrow in the amount of up to $15,000

28   as reimbursement for his actual closing costs.

1    3.    The Trustee, or any escrow officer acting on his behalf and at his instruction, is

2    authorized to pay the debts to IndyMac Bank FSB, or its successor-in-interest, secured by first

3    priority deed of trust recorded in the Official Records of San Mateo County on August 9, 2001, as

4    Document No. 2001-122583.

5    4.    The sale shall be free and clear of the following liens and encumbrances and those

6    liens and encumbrances shall re-attach to the proceeds of sale in the same order, to the same

7    extent, and with the same validity as they attach to the Property itself:

8    (a)    Second Modified Preliminary Injunction issued in San Mateo Superior Court Case

9    No. 410586 and recorded in the Official Records of San Mateo County as Document No. 2003-

10    145197 on May 29, 2003;

11    (b)    Abstracts of judgment entered in San Mateo Superior Court Case No. 410586 and

12    recorded in the Official Records of San Mateo County on August 28, 2004, as Document Nos.

13    2004-131360 through 2004-131387 inclusive.

14    5.    The Trustee, or any escrow officer acting on his instruction, is authorized to pay a

15    real estate commission in the amount of six percent of the gross sales price, payable to the

16    Trustee's realtor, Coldwell Banker, and the buyer's broker.

17    6.    The Trustee, or any escrow officer acting on his instruction, is authorized to pay

18    real property taxes for the Property to the extent the estate is liable, with the amount paid pro-rated

19    with the buyer according to custom.

20    7.    The Trustee, or any escrow officer acting on his instruction, is authorized to pay

21    ordinary closing costs according to the sale contract.

22    8.    The Trustee is further authorized to take those steps and sign those documents he

23    deems necessary to conclude the sale.

24    9.    This order is effective immediately.

25    *END OF ORDER*

26

27

28

Escrow No.:   55905-55050277-CLM

**"EXHIBIT A"**
**LEGAL DESCRIPTION**

LOT 5 BLOCK 16 AS DESIGNATED ON THE MAP ENTITLED MAP NO. 8 SHORE VIEW TRACT SAN MATEO
CALIFORNIA WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO,
STATE OF CALIFORNIA, ON JUNE 22, 1949 IN BOOK 30 MAPS AT PAGES 25 TO 28 INCLUSIVE.

1                           COURT SERVICE LIST

2

3

4   Charles P. Maher, State Bar No. 124748
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
5   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
6

7

8
    United States Trustee
9   235 Pine Street, Suite 700
    San Francisco, CA  94104
10

11

12

13

14

15  203750.1

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 7

Entered on Docket
September 11, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  Charles P. Maher, State Bar No. 124748
   LUCE, FORWARD, HAMILTON
2      & SCRIPPS LLP
   121 Spear Street, Suite 200
3  San Francisco, California 94105-1582
   Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610

5  Counsel for Charles E. Sims
   Trustee in Bankruptcy

**Signed and Filed: September 11, 2006**

THOMAS E. CARLSON
U.S. Bankruptcy Judge

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10
   In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
11                                         Chapter 7

12              Debtor.

13

14
                **ORDER AUTHORIZING SALE OF REAL PROPERTY**
15
                     (786 5th Avenue, Redwood City)
16

17         Based on the Trustee's application and the supporting declaration of counsel, and it

18  appearing that notice has been adequate, that no objections have been filed or served on the

19  Trustee, and it further appearing that the creditors asserting liens against the property have

20  executed a stipulation to an order authorizing the sale free and clear of their liens, and that good

21  cause exists, it is

22         ORDERED as follows:

23         1.      The Trustee is authorized to sell to Rosa and Juan Zertuche or their designee for the

24  sum of $610,000 the real property commonly known as 786 5th Avenue, Redwood City, California

25  (the "Property") in its "as is" condition.  The legal description of the Property is attached as

26  **Exhibit A**.

27         2.      The Trustee, or any escrow officer acting on his behalf and at his instruction, is

28  authorized to pay the debt to IndyMac Bank FSB, or its successor-in-interest, secured by first

1   priority deed of trust recorded in the Official Records of San Mateo County on August 22, 2001,

2   as Document No. 2001-129901.

3       3.      The sale shall be free and clear of the following liens and encumbrances and those

4   liens and encumbrances shall re-attach to the proceeds of sale in the same order, to the same

5   extent, and with the same validity as they attach to the Property itself:

6       (a)     Second Modified Preliminary Injunction issued in San Mateo Superior Court Case

7   No. 410586 and recorded in the Official Records of San Mateo County as Document No. 2003-

8   145197 on May 29, 2003;

9       (b)     Abstracts of judgment entered in San Mateo Superior Court Case No. 410586 and

10  recorded in the Official Records of San Mateo County on August 28, 2004, as Document Nos.

11  2004-131360 through 2004-131387 inclusive.

12      4.      The Trustee, or any escrow officer acting on his instruction, is authorized to pay a

13  real estate commission in the amount of six percent of the gross sales price, payable to the

14  Trustee's realtor, Coldwell Banker, and the buyer's broker.

15      5.      The Trustee, or any escrow officer acting on his instruction, is authorized to pay

16  real property taxes for the Property to the extent the estate is liable, with the amount paid pro-rated

17  with the buyer according to custom.

18      6.      The Trustee, or any escrow officer acting on his instruction, is authorized to pay

19  ordinary closing costs according to the sale contract.

20      7.      The Trustee is further authorized to take those steps and sign those documents he

21  deems necessary to conclude the sale.

22      8.      This order is effective immediately.

23                              *END OF ORDER*

24

25

26

27

28

Escrow No.:    55905-55050135-CLM
Date:          August 23, 2006

## "EXHIBIT A"
## LEGAL DESCRIPTION

PARCEL ONE:

LOT 2, BLOCK 22, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED, "NORTH FAIR OAKS, SUBDIVISION NO. 1, SAN MATEO COUNTY", FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON NOVEMBER 18, 1907 IN BOOK 5 OF MAPS, AT PAGE 42.

PARCEL TWO:

A PORTION OF BLOCK 22, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED, "NORTH FAIR OAKS, SUBDIVISION NO. 1, SAN MATEO CO.", FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA, ON NOVEMBER 18, 1907 IN BOOK 5 OF MAPS AT PAGE 42, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEASTERLY LINE OF 5TH AVENUE AT THE NORTHWESTERLY CORNER OF LOT 2 IN SAID BLOCK ; THENCE NORTHEASTERLY ALONG SAID  LINE OF 5TH AVENUE 22.90 FEET TO THE NORTHWESTERLY CORNER OF SAID BLOCK 22; THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY BOUNDARY OF SAID BLOCK 22, 120 FEET TO A POINT WHICH IS THE PROLONGATION NORTHEASTERLY OF THE DIVIDING LINE BETWEEN LOTS 2 AND 20 IN SAID BLOCK ; THENCE SOUTHWESTERLY PARALLEL TO SAID LINE OF 5TH AVENUE 22.86 FEET TO THE NORTHEASTERLY CORNER OF SAID LOT 2; THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY LINE OF SAID LOT 2, 120 FEET TO THE POINT OF BEGINNING.

BEING THE UN-NUMBERED LOT ADJOINING LOT 2 IN BLOCK 22 AS SHOWN ON THE MAP ABOVE REFERRED TO.

1

COURT SERVICE LIST

2

3

4   Charles P. Maher, State Bar No. 124748
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
5   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
6

7

8

    United States Trustee
9   235 Pine Street, Suite 700
    San Francisco, CA  94104
10

11

12

13

14

15   204658.1

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 8

Entered on Docket
September 11, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Charles P. Maher, State Bar No. 124748
   LUCE, FORWARD, HAMILTON
2      & SCRIPPS LLP
   121 Spear Street, Suite 200
3  San Francisco, California 94105-1582
   Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610

5  Counsel for Charles E. Sims
   Trustee in Bankruptcy

6

7

**Signed and Filed: September 11, 2006**

THOMAS E. CARLSON
U.S. Bankruptcy Judge

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

   In re RAMIN YEGANEH,                  Case No. 05-30047 TEC
11                                        Chapter 7

12             Debtor.

13

14

15         **ORDER AUTHORIZING SALE OF REAL PROPERTY**

16              (3912 Kent Way, South San Francisco)

17         Based on the Trustee's application and the supporting declaration of counsel, and it

18  appearing that notice has been adequate, that no objections have been filed or served on the

19  Trustee, and it further appearing that creditors asserting liens against the property have executed a

20  stipulation to an order authorizing the sale free and clear of their liens, and that good cause exists,

21  it is

22         ORDERED as follows:

23         1.    The Trustee is authorized to sell to Teresita Jomok or her designee for the sum of

24  $651,000 the real property commonly known as 3912 Kent Way, South San Francisco, California

25  (the "Property") in its "as is" condition.   The legal description of the Property is attached as

26  **Exhibit A**.

27         2.    The sale shall be free and clear of the following liens and encumbrances and those

28  liens and encumbrances shall re-attach to the proceeds of sale in the same order, to the same

extent, and with the same validity as they attach to the Property itself:

(a)     Second Modified Preliminary Injunction issued in San Mateo Superior Court Case No. 410586 and recorded in the Official Records of San Mateo County as Document No. 2003-145197 on May 29, 2003;

(b)     Abstracts of judgment entered in San Mateo Superior Court Case No. 410586 and recorded in the Official Records of San Mateo County on August 28, 2004, as Document Nos. 2004-131360 through 2004-131387 inclusive.

3.     The Trustee, or any escrow officer acting on his instruction, is authorized to pay a real estate commission in the amount of six percent of the gross sales price, payable to the Trustee's realtor, Coldwell Banker, and the buyer's broker.

4.     The Trustee, or any escrow officer acting on his instruction, is authorized to pay real property taxes for the Property to the extent the estate is liable, with the amount paid pro-rated with the buyer according to custom.

5.     The Trustee, or any escrow officer acting on his instruction, is authorized to pay ordinary closing costs according to the sale contract.

6.     The Trustee is further authorized to take those steps and sign those documents he deems necessary to conclude the sale.

7.     This order is effective immediately.

*END OF ORDER*

Escrow No.:    55905-55050137-CLM
Date:          August 23, 2006

## "EXHIBIT A"
## LEGAL DESCRIPTION

LOT 12, BLOCK 10, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED, "WEST-BOROUGH-WEST PARK UNIT NO. 3D, IN THE CITY OF SOUTH SAN FRANCISCO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA", FILED FOR RECORD ON OCTOBER 13, 1972, IN BOOK 78 OF MAPS AT PAGES 43, 44 AND 45 IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SAN MATEO, CALIFORNIA.

EXCEPTING THEREFROM ALL METALS, MINERALS, PETROLEUM, NATURAL GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AND THAT MAY BE PRODUCED FROM A DEPTH BELOW 500 FEET BENEATH THE SURFACE THEREOF, WITHOUT THE RIGHT OF ENTRY UPON THE SURFACE THEREOF, AS RESERVED IN THE DEED EXECUTED BY HOME SAVINGS AND LOAN ASSOCIATION, A CALIFORNIA CORPORATION TO TIN TAK HO AND LUCILLA M. HO, HUSBAND AND WIFE, AS JOINT TENANTS, RECORDED MAY 30, 1975, IN BOOK 6855, AT PAGE 123, OFFICIAL RECORDS.

COURT SERVICE LIST

Charles P. Maher, State Bar No. 124748
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582

United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104

204659.1

# EXHIBIT 9



Entered on Docket
**October 03, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Charles P. Maher, State Bar No. 124748
   LUCE, FORWARD, HAMILTON
2     & SCRIPPS LLP          **Signed and Filed: October 02, 2006**
   121 Spear Street, Suite 200
3  San Francisco, California 94105-1582
   Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610              **THOMAS E. CARLSON**
                                       **U.S. Bankruptcy Judge**
5  Counsel for Andrea A. Wirum
   Trustee in Bankruptcy
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,            Case No. 05-30047 TEC
                                     Chapter 7
12
              Debtor.
13

14

15       **ORDER AUTHORIZING SALE OF REAL PROPERTY**

16              (150 Broadway, Redwood City)

17       Based on the Trustee's application and the supporting declaration of counsel, and it

18  appearing from those documents that notice has been adequate, that no objections have been filed

19  or served on the Trustee and no overbids have been received, and that good cause exists, it is

20       ORDERED as follows:

21       1.      The Trustee is authorized to sell to Joel and Victoria Ochoa or their designee for

22  the sum of $710,000 the real property commonly known as 150 Broadway, Redwood City,

23  California (the "Property") in its "as is" condition.  The legal description of the Property is

24  attached as **Exhibit A**.

25       2.      The Trustee, or any escrow officer acting on her behalf and at her instruction, is

26  authorized to pay the debt to IndyMac Bank FSB, or its successor-in-interest, secured by first

27  priority deed of trust recorded in the Official Records of San Mateo County on August 22, 2001,

28  as Document No. 2001-129900.

1     3.     The sale shall be free and clear of the following liens and encumbrances and those

2 liens and encumbrances shall re-attach to the proceeds of sale in the same order, to the same

3 extent, and with the same validity as they attach to the Property itself:

4     (a)     Second Modified Preliminary Injunction issued in San Mateo Superior Court Case

5 No. 410586 and recorded in the Official Records of San Mateo County as Document No. 2003-

6 145197 on May 29, 2003;

7     (b)     Abstracts of judgment entered in San Mateo Superior Court Case No. 410586 and

8 recorded in the Official Records of San Mateo County on August 28, 2004, as Document Nos.

9 2004-131360 through 2004-131387 inclusive.

10     4.     The Trustee, or any escrow officer acting on her instruction, is authorized to pay a

11 real estate commission in the amount of six percent of the gross sales price, payable to the

12 Successor Trustee's realtor, Coldwell Banker, and the buyer's broker.

13     5.     The Trustee, or any escrow officer acting on her instruction, is authorized to pay

14 real property taxes for the Property to the extent the estate is liable, with the amount paid pro-rated

15 with the buyer according to custom.

16     6.     The Trustee, or any escrow officer acting on her instruction, is authorized to pay

17 ordinary closing costs according to the sale contract.

18     7.     The Trustee is further authorized to take those steps and sign those documents she

19 deems necessary to conclude the sale.

20     8.     This order is effective immediately.

21                             *END OF ORDER*

22

23

24

25

26

27

28

**DESCRIPTION:**

**The land referred to herein is situated in the State of California, County of San Mateo, City of Redwood City, and is described as follows:**

LOT 33, BLOCK 34, AS SHOWN ON THAT CERTAIN MAP ENTITLED "BELLE HAVEN SUBDIVISION NO. 2, SAN MATEO COUNTY, CALIFORNIA" FILED IN THE OFFICE OF RECORDER OF THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA ON NOVEMBER 5, 1929 IN BOOK 17 OF MAPS AT PAGES 75 AND 76.

APN:          055-022-310      JPN: 55-002-022-31

# EXHIBIT A

1                                   COURT SERVICE LIST

2

3

4    Charles P. Maher, State Bar No. 124748
     LUCE, FORWARD, HAMILTON & SCRIPPS LLP
5    Rincon Center II, 121 Spear Street, Suite 200
     San Francisco, California 94105-1582
6

7

8
     United States Trustee
9    235 Pine Street, Suite 700
     San Francisco, CA  94104
10

11

12

13

14

15   206388.1

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 10

Entered on Docket
July 06, 2005
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1 | Charles P. Maher, State Bar No. 124748
LUCE, FORWARD, HAMILTON
2 | & SCRIPPS LLP
121 Spear Street, Suite 200
3 | San Francisco, California 94105-1582
Telephone No.: 415.356.4600
4 | Fax No.: 415.356.4610

**Signed and Filed: July 05, 2005**

THOMAS E. CARLSON
U.S. Bankruptcy Judge

5 | Counsel for Charles E. Sims
Trustee in Bankruptcy

6

7

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10

11 | In re RAMIN YEGANEH,                          Case No. 05-30047 TEC
Chapter 7

12 | Debtor.

13 |                                               Date:   July 1, 2005
Time:   9:30 a.m.
14 |                                               Place:  235 Pine Street, 23rd Floor
San Francisco
15 |                                               Court:  Hon. Thomas E. Carlson

16

17 | **ORDER AUTHORIZING SALE OF REAL PROPERTY**

18 | (182 Dublin Street, San Francisco)

19 | On July 1, 2005, a hearing was held on the objection of Debtor Ramin Yeganeh to the

20 | Trustee's proposed sale of the real property commonly known as 182 Dublin Street, San

21 | Francisco, California. Charles P. Maher of Luce, Forward, Hamilton & Scripps, LLP, appeared on

22 | behalf of the Trustee.  Richard G. Avila appeared especially on behalf of the Debtor.  Emily

23 | Maxwell of DLA Piper Rudnick Gray Cary appeared on behalf of creditors Hari and Krishna

24 | Shand and others.  The Trustee and the Debtor were present.

25 | Based on the Trustee's notice, and having reviewed the Debtor's objection, and the

26 | documents filed in reply by the Trustee and by the creditors appearing, and it appearing that notice

27 | has been adequate, that no objections other than the Debtor's objection have been filed or served

28 | on the Trustee, and it further appearing that the creditors asserting liens against the property have

1   executed a stipulation to an order authorizing the sale free and clear of their liens, and that good

2   cause exists, and for the reasons stated on the record, it is

3       ORDERED as follows:

4       1.      The Debtor's objection is overruled.

5       2.      The Trustee is authorized to sell to Stephanie Chu or her designee for the sum of

6   $638,000 the real property commonly known as 182 Dublin Street, San Francisco, California (the

7   "Property") in its "as is" condition.  The legal description of the Property is attached as Exhibit A.

8       3.      The sale shall be free and clear of the following liens and encumbrances and those

9   liens and encumbrances shall re-attach to the proceeds of sale in the same order, to the extent, and

10  with the same validity as they attach to the Property itself:

11      (a)     Second Modified Preliminary Injunction recorded in the Official Records of San

12  Francisco County as Document No. 2003-H448742 on May 29, 2003;

13      (b)     Writ of execution recorded in the Official Records of San Francisco County as

14  Document No. 2004-H846792 on November 5, 2004; and

15      (c)     Abstract of judgment recorded in the Official Records of San Francisco County as

16  Document No. 2004-H849477 on November 10, 2004.

17      4.      The Trustee, or any escrow officer acting on his instruction, is authorized to pay a

18  real estate commission in the amount of six percent of the gross sales price, payable to the

19  Trustee's realtor, Coldwell Banker, and the buyer's broker.

20      5.      The Trustee, or any escrow officer acting on his instruction, is authorized to pay

21  real property taxes for the Property to the extent the estate is liable, with the amount paid pro-rated

22  with the buyer according to custom.

23      6.      The Trustee, or any escrow officer acting on his instruction, is authorized to pay

24  ordinary closing costs.

25

26

27  ///

28  ///

1      7.     The Trustee is further authorized to take those steps and sign those documents he

2   deems necessary to conclude the sale.

3                              *END OF ORDER*

4

5   APPROVED AS TO FORM AND CONTENT.

6

7   ____/s/_____Jeffry A. Davis_____

8   Jeffry A. Davis, Esq.
    DLA Piper Rudnick Gray Cary
    Attorneys for Lienholders

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEGAL DESCRIPTION**

Real property in the City of San Francisco, County of San Francisco, State of California, described as follows:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF DUBLIN STREET, DISTANT THEREON 75 FEET NORTHEASTERLY FROM THE NORTHEASTERLY LINE OF RUSSIA AVENUE; RUNNING THENCE NORTHEASTERLY ALONG SAID LINE OF DUBLIN STREET 25 FEET; THENCE AT A RIGHT ANGLE NORTHWESTERLY 100 FEET; THENCE AT A RIGHT ANGLE SOUTHWESTERLY 25 FEET; THENCE AT A RIGHT ANGLE SOUTHEASTERLY 100 FEET TO THE POINT OF BEGINNING.

BEING A PORTION OF BLOCK 94 EXCELSIOR HOMESTEAD ASSOCIATION.

APN: LOT: 007 BLOCK: 6095

# EXHIBIT A

1

COURT SERVICE LIST

2

3

4   Charles P. Maher, State Bar No. 124748
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
5   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582

6

7

8
    Richard G. Avila, Esq.
9   1150 Bayhill Drive, Suite 105
    San Bruno, CA  94066
10

11

12
    United States Trustee
13  235 Pine Street, Suite 700
    San Francisco, CA  94104
14

15

16

17

18  182673.1

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 11

**IndymacBank™**
Home Loan Servicing

**Property Address:** 1611 SHOREVIEW AVE,
SAN MATEO, CA 94401

066208  RE

#BWNDXCT
#6684915961001079#

RAMIN YEGANEH
724 E 4TH AVE
SAN MATEO  CA  94401-3315

| Account Information | |
|---|---|
| Account Information as of | 07/17/06 |
| Loan Number | 1001695194 |
| Interest Rate | 7.500% |
| Loan Balance | $289,558.15 |
| Escrow Balance | $ .00 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $1,895.48 |
| Interest Paid YTD | $10,900.12 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $ .00 |
| Primary Phone Number | (650) 343 6530 |
| Secondary Phone Number | |

For statement questions,
please call Customer Service at
1.800.781.7399.

## Payment Information

**08/01/06 Payment Options**

| | |
|---|---|
| Principal and/or Interest | $2,132.60 |
| Escrow | $ .00 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | **$2,132.60** |
| Past Due Payment(s) | $2,132.60 |
| Total Payments Due | $4,265.20 |
| Unpaid Late Charges | $213.26 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| **Total Amount Due** | **$4,478.46** |
| After 08/16/06 please pay: (3) | $4,585.09 |

**Your Account is
Past Due.**

### Additional Information

1  Unless otherwise agreed upon,
additional funds may be applied
to advances prior to being
applied to fees/charges.

2  Itemized detail available upon
request.

3  Payment calculation includes
Late Charge fee.

## Transactions Since Last Statement

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 07/17/06 | Fee Assessment | | | | | 106.63- |

## Important Messages

**THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED
AS A COLLECTION NOTICE.**

**ONLINE ACCESS TO YOUR LOAN INFORMATION IS JUST A CLICK AWAY.**
You can view your loan information or make a payment online.  Also, you can
sign-up to receive an email alert whenever a payment is posted or when
property taxes and insurance premiums are paid from your escrow account.
To find out more, login to My Mortgage at www.indymacbank.com.

**imb IndymacBank**
Home Loan Servicing

**Property Address:** 786 5TH AVE,
REDWOOD CITY, CA 94063

066210  RE

#BWNDXCT
#6683433271001079#

RAMIN YEGANEH
724 E 4TH AVE
SAN MATEO  CA  94401-3315

| Account Information | |
| --- | --- |
| Account Information as of | 07/17/06 |
| Loan Number | 1001723343 |
| Interest Rate | 7.500% |
| Loan Balance | $284,811.28 |
| Escrow Balance | $ .00 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $1,864.43 |
| Interest Paid YTD | $10,721.41 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $ .00 |
| Primary Phone Number | (650) 343 6530 |
| Secondary Phone Number | |

**For statement questions,
please call Customer Service at
1.800.781.7399.**

## Payment Information

**08/01/06 Payment Options**

| | |
| --- | --- |
| Principal and/or Interest | $2,097.64 |
| Escrow | $ .00 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| Payment Amount | $2,097.64 |
| Past Due Payment(s) | $2,097.64 |
| Total Payments Due | $4,195.28 |
| Unpaid Late Charges | $104.88 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Total Amount Due | $4,300.16 |
| After 08/16/06 please pay: (3) | $4,405.04 |

**Your Account is
Past Due.**

### Additional Information

1  Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.

2  Itemized detail available upon request.

3  Payment calculation includes Late Charge fee.

### Transactions Since Last Statement

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
| --- | --- | --- | --- | --- | --- | --- |
| 07/17/06 | Fee Assessment | | | | | 104.88- |

### Important Messages

**THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED
AS A COLLECTION NOTICE.**

**ONLINE ACCESS TO YOUR LOAN INFORMATION IS JUST A CLICK AWAY.**
You can view your loan information or make a payment online.  Also, you can
sign-up to receive an email alert whenever a payment is posted or when
property taxes and insurance premiums are paid from your escrow account.
To find out more, login to My Mortgage at www.indymacbank.com.

**imb IndymacBank**™
Home Loan Servicing

**Property Address:** 150 BROADWAY ST,
REDWOOD CITY, CA 94063

066209  RE

#BWNDXCT
#6685333271001079#

RAMIN YEGANEH
724 E 4TH AVE
SAN MATEO  CA  94401-3315

I|I|ıIıIılıIIııılıIıIıIıılıIılıIıIıIıIIıII

| Account Information | |
| --- | --- |
| Account Information as of | 07/17/06 |
| Loan Number | 1001723335 |
| Interest Rate | 7.500% |
| Loan Balance | $323,972.48 |
| Escrow Balance | $ .00 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| Principal Paid YTD | $2,120.82 |
| Interest Paid YTD | $12,195.60 |
| Property Taxes Paid YTD | $ .00 |
| Hazard Insurance Paid YTD | $ .00 |
| Primary Phone Number | (650) 343 6530 |
| Secondary Phone Number | |

For statement questions,
please call Customer Service at
1.800.781.7399.

## Payment Information

**08/01/06 Payment Options**

| | |
| --- | --- |
| Principal and/or Interest | $2,386.07 |
| Escrow | $ .00 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | $2,386.07 |
| Past Due Payment(s) | $2,386.07 |
| Total Payments Due | $4,772.14 |
| Unpaid Late Charges | $238.60 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMB (1,2) | $ .00 |
| **Total Amount Due** | $5,010.74 |
| After 08/16/06 please pay: (3) | $5,130.04 |

**Your Account is
Past Due.**

### Additional Information

1  Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.

2  Itemized detail available upon request.

3  Payment calculation includes Late Charge fee.

### Transactions Since Last Statement

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
| --- | --- | --- | --- | --- | --- | --- |
| 07/17/06 | Fee Assessment | | | | | 119.30- |

### Important Messages

**THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED
AS A COLLECTION NOTICE.**

**ONLINE ACCESS TO YOUR LOAN INFORMATION IS JUST A CLICK AWAY.**
You can view your loan information or make a payment online.  Also, you can
sign-up to receive an email alert whenever a payment is posted or when
property taxes and insurance premiums are paid from your escrow account.
To find out more, login to My Mortgage at www.indymacbank.com.

# EXHIBIT 12

Entered on Docket
September 27, 2005
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Charles P. Maher, CSBN 124748
LUCE, FORWARD, HAMILTON
2      & SCRIPPS LLP
121 Spear Street, Suite 200
3  San Francisco, California 94105
Telephone No.: 415.356.4600
4  Fax No.: 415.356.4610

5  Attorneys for Charles E. Sims
Trustee in Bankruptcy

6

7

Signed and Filed: September 23, 2005

THOMAS E. CARLSON
U.S. Bankruptcy Judge

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                           Chapter 7
12
                    Debtor.
13                                          Date:   September 21, 2005
                                           Time:   9:30 a.m.
14                                          Place:  235 Pine Street, San Francisco
                                           Court:  Hon. Thomas E. Carlson
15

16      **ORDER APPROVING FIRST APPLICATION FOR INTERIM COMPENSATION
              AND EXPENSE REIMBURSEMENT**
17
              (Luce, Forward, Hamilton & Scripps, LLP)
18

19      On September 21, 2005, a hearing was held on the application of Luce, Forward, Hamilton

20  & Scripps, LLP, for interim compensation and expense reimbursement in the above case. Charles

21  P. Maher appeared on behalf of the Applicant. Richard G. Avila appeared on behalf of the Debtor.

22  The Trustee was present in the courtroom.

23      Having considered the application and the supporting declaration of counsel, the Debtor's

24  objection, it appearing that notice has been adequate, that no other objections have been filed or

25  served, and for the reasons stated on the record, it is

26      ORDERED as follows:

27      1.    The Debtor's objection is overruled.  The first application of Luce, Forward,

28  Hamilton & Scripps, LLP, for compensation and expense reimbursement, as modified, is

1    approved.

2         2.      The Trustee is authorized to pay Luce, Forward, Hamilton & Scripps, LLP,

3    $152,431.50 in compensation and $9,681.64 in expense reimbursement for services rendered to

4    the Trustee between January 25, 2005, and July 31, 2005.

5                                   *END OF ORDER*

1    COURT SERVICE LIST

2

3

4    Charles P. Maher, CSBN 124748
     LUCE, FORWARD, HAMILTON
5       & SCRIPPS LLP
     121 Spear Street, Suite 200
6    San Francisco, California 94105

7

8

9

10   United States Trustee
     235 Pine Street, Suite 700
11   San Francisco, CA 94104

12

13

14

15

16

17

18

19

20   186921.1

21

22

23

24

25

26

27

28

# EXHIBIT 13

Entered on Docket
September 27, 2005
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Bachecki, Crom & Co., LLP
Jay D. Crom. CPA
180 Montgomery St. #2340
San Francisco, CA 94104
Telephone: (415) 398-3534

Accountants for Trustee,
Charles E. Sims

Signed and Filed: September 23, 2005

_____
THOMAS E. CARLSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT-

NORTHERN DISTRICT OF CALIFORNIA

In re

RAMIN YEGANEH,

                    Debtor(S).

Case No. 05-30047
Chapter 7
Hearing: September 21, 2005
Time: 9:30 am
235 Pine Street, 23rd Floor
San Francisco, CA 94104

ORDER APPROVING AND AUTHORIZING COMPENSATION TO ACCOUNTANTS

Bachecki, Crom & Co., LLP's first interim application for compensation by accountants

for Trustee; having come on for hearing before The Honorable Thomas E. Carlson United States

Bankruptcy Judge, September 21, 2005, the Court having reviewed the first interim application

for compensation, due and proper notice having been given to the Debtor, creditors and other

parties-in-interest, and no objections having been filed with the court, and good cause appearing

therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

Bachecki, Crom & Co., LLP, accountants for Trustee, Charles E. Sims, be allowed and

authorized to be paid compensation for services rendered for the period stated on its application in

the sum of $11,306.00, plus reimbursement of expenses in the amount of $288.39.

**END OF ORDER**

Page 1

1

COURT SERVICE LIST

2

3    Jay D. Crom
     Bachecki, Crom & Co. LLP
4    180 Montgomery Street, Suite 2340
     San Francisco, CA 94104

5

6    Charles E. Sims
     PO Box 1247
7    Sonoma, CA 95476

8

9    Charles Maher
     Luce Forward Hamilton & Scripps LLP
10   121 Spear Street, #200
     San Francisco, CA 94105

11

12   Office of the U.S. Trustee
     235 Pine Street, Suite 700
     San Francisco, CA 94104

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 14

Entered on Dock(
**June 26, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1   Charles P. Maher, CSBN 124748
    LUCE, FORWARD, HAMILTON
2     & SCRIPPS LLP
    121 Spear Street, Suite 200
3   San Francisco, California 94105
    Telephone No.: 415.356.4600
4   Fax No.: 415.356.4610

5   Attorneys for Charles E. Sims
    Trustee in Bankruptcy

6

7

Signed and Filed: June 26, 2006

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,                Case No. 05-30047 TEC
                                        Chapter 7
12
                Debtor.
13                                      Date:   June 21, 2006
                                        Time:   9:30 a.m.
14                                      Place:  235 Pine Street, 23rd Floor
                                        Court:  Hon. Thomas E. Carlson
15

16  **ORDER APPROVING SECOND APPLICATION FOR INTERIM COMPENSATION**
                **AND EXPENSE REIMBURSEMENT**
17
            (Luce, Forward, Hamilton & Scripps, LLP)
18

19          On June 21, 2006, a hearing was held on the second application of Luce, Forward,

20  Hamilton & Scripps, LLP, for interim compensation and expense reimbursement for services

21  rendered to the Trustee.    Charles P. Maher appeared on behalf of the Applicant.    Other

22  appearances are noted in the record.

23          Based on the application, the supporting declaration of counsel, it appearing that notice has

24  been adequate, that no objection was timely served or filed, and that good cause exists, it is

25          ORDERED as follows:

26          1.      The second application of Luce, Forward, Hamilton & Scripps, LLP, for interim

27  compensation and expense reimbursement is approved.

28

1    2.    The Trustee is authorized to pay $216,216.50 in fees and $6,937.83 in expenses to

2    Luce, Forward, Hamilton & Scripps, LLP, for services rendered to the Trustee between August 1,

3    2005, and April 30, 2006.

4                              *END OF ORDER*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                    COURT SERVICE LIST

2

3

4     Charles P. Maher, CSBN 124748
      LUCE, FORWARD, HAMILTON
5        & SCRIPPS LLP
      121 Spear Street, Suite 200
6     San Francisco, California 94105

7

8

9

10    United States Trustee
      235 Pine Street, Suite 700
11    San Francisco, CA  94104

12

13

14

15

16

17

18

19

20

21    201348.1

22

23

24

25

26

27

28

# EXHIBIT 15

Entered on Docket
**June 26, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1

Bachecki, Crom & Co., LLP

2
Jay D. Crom. CPA
180 Montgomery St. #2340

3
San Francisco, CA 94104
Telephone: (415) 398-3534

4

**Signed and Filed: June 26, 2006**

_____
THOMAS E. CARLSON
U.S. Bankruptcy Judge

Accountants for Trustee,
5
Charles E. Sims

6

7

8

9
UNITED STATES BANKRUPTCY COURT-

10
NORTHERN DISTRICT OF CALIFORNIA

11
In re

12
RAMIN YEGANEH

13
Debtor(s).

14

Case No. 05-30047
Chapter 7
Hearing: June 21, 2006
Time: 9:30 am
235 Pine Street, 23rd Floor
San Francisco, CA 94104

15
<u>ORDER APPROVING AND AUTHORIZING COMPENSATION TO ACCOUNTANTS</u>

16
Bachecki, Crom & Co., LLP's second interim application for compensation by

17
accountants for Trustee; having come on for hearing before The Honorable Thomas E. Carlson

18
United States Bankruptcy Judge, June 21, 2006, the Court having reviewed the second interim

19
application for compensation, due and proper notice having been given to the Debtor, creditors

20
and other parties-in-interest, and no objections having been filed with the court, and good cause

21
appearing therefore,

22
IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

23
Bachecki, Crom & Co., LLP, accountants for Trustee, Charles E. Sims, be allowed and

24
authorized to be paid compensation for services rendered for the period stated on its application in

25
the sum of $6,119.50, plus reimbursement of expenses in the amount of $147.49.

26
**END OF ORDER**

27

28

Page 1

1                          COURT SERVICE LIST

2    Jay D. Crom

3    Bachecki, Crom & Co. LLP
       180 Montgomery St., Suite 2340
       San Francisco, CA 94104

4

5    Charles E. Sims

6    PO Box 1247
       Sonoma, CA 95476

7

8    Charles Maher
       Luce Forward Hamilton & Scripps LLP

9    121 Spear Street, #200
       San Francisco, CA 94105

10

11   Office of the United States Trustee
      235 Pine Street, Suite 700
      San Francisco, CA 94104

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 2

1    JONATHAN CHANCE
     Attorney at Law
2    205 East Third Ave., Suite 411
     San Mateo, CA 94401
3    (650) 342-6200

4    Attorney for Defendants

5

6

7          IN THE UNITED STATES BANKRUPTCY COURT

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   In re RAMIN YEGANEH,       ) Case No. 05-30047 TEC
                           )
11        Debtor.              ) Chapter 7
12                            )
13   CHARLES E. SIMS, Trustee,    ) Adversary Proceeding No. 05-3240,
                           ) No. 05-3241, No. 05-3242,
14                            ) No. 05-3243.
15        Plaintiff,         )
16                            ) **PROOF OF SERVICE**
                           )
17                            )
18      vs.                  )
19                            )
20   FARIN YEGANEH,         )
     KEN YEGANEH, ET AL,      )
21                            ) Date: <u>November 15, 2006</u>
22                            ) Time: <u>9:30 AM</u>
23                            ) Dept: <u>23</u>
       Defendant.        )
24

25       I, the undersigned, state that I am a citizen of the United States and employed in

26 the City of San Mateo, that I am over the age of eighteen (18) years and not a party to the

27 within cause; that my business address is 205 E. Third Ave., Suite 411, San Mateo,

28

1  California; and that on the date set out below I deposited a true copy of the attached

2  documents, listed below, on the parties to the action by one or more of the following

3  methods:

4

5      [XX]  First Class Mail

6          --by placing a true copy thereof enclosed in a sealed envelope with

7  postage thereon fully prepaid in the United States Mail at San Mateo, California;

8

9  Documents Served:  NOTICE OF MOTION AND MOTION FOR SUMMARY

10  JUDGMENT; REQUEST FOR JUDICIAL NOTICE; NOTICE OF LODGING OF

11  DOUCMENTS; DECLARATIONS; EXHIIBTS; PROPOSED COURT ORDER

12

13  Parties Served:

14  JEFFREY FILLERUP, ESQ.
   Luce, Forward, Hamilton & Scripps, LLP

15  Rincon Center II, 121 Spear St., Suite 200
   San Francisco, CA 94105

16

17

18

19  I declare under penalty of perjury under the laws of the State of California that the

20  foregoing is true and correct.  Executed at San Mateo, California on October 18, 2006.

21

22

23          /S/ JONATHAN CHANCE, ESQ.

24

25

26

27

28

Proof of Service                                          -2-

ELECTRONICALLY FILED

NOV 0 1 2006·

1  Charles P. Maher, State Bar No. 124748
   Jeffrey L. Fillerup, State Bar No. 120543
2  Nhung Le, State Bar No. 209552
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3  Rincon Center II, 121 Spear Street, Suite 200
   San Francisco, California 94105-1582
4  Telephone No.: 415.356.4600
   Fax No.: 415.356.4610
5
   Attorneys for Plaintiff
6  ANDREA A. WIRUM, Trustee in Bankruptcy

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
            Debtor.
13

14  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No.  05-3240 TC
15          Plaintiff,

16  v.

17  F. NAMDARAN aka FRAN NAMDARAN
    aka FARIN NAMDARAN aka FARIN
18  YEGANEH aka FRAN YEGANEH,

19          Defendant.

20
    CHARLES E. SIMS, Trustee,             Adversary Proceeding
21                                        No.  05-3241 TC
            Plaintiff,
22
    v.
23
    ALLIED MANAGEMENT TRUST and K.
24  YEGANEH aka KEN YEGANEH aka
    KAIKHOSROW YEGANEH,
25
            Defendants.
26

27

28

                              1

1

2    CHARLES E. SIMS, Trustee,                    Adversary Proceeding
                                                  No.  05-3242 TC
3              Plaintiff,

4    v.

5    COAST DEVELOPMENT TRUST and
     FARIN YEGANEH aka F. NAMDARAN aka
6    FRAN NAMDARAN aka FARIN
     NAMDARAN aka FRAN YEGANEH,
7
               Defendants.
8

9    CHARLES E. SIMS, Trustee,                    Adversary Proceeding
                                                  No.  05-3243 TC
10             Plaintiff,

11   v.

12   ADVANTA TRUST and FARIN YEGANEH            **THE TRUSTEE'S MEMORANDUM  IN
     aka F. NAMDARAN aka FRAN                   OPPOSITION TO THE DEFENDANTS'
13   NAMDARAN aka FARIN NAMDARAN aka            MOTION FOR SUMMARY JUDGMENT**
     FRAN YEGANEH,
14                                              Date:  November 15, 2006
               Defendants.                      Time:  9:30 a.m.
15                                              Dept: 23

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## **TABLE OF CONTENTS**

                                                                                                          **Page**

I.     SUMMARY OF ARGUMENT ................................................................................ 3

II.    THE UNDISPUTED FACTS SUPPORTING THE TRUSTEE'S STANDING.................. 4

III.   ARGUMENT ...................................................................................................... 7
       A.     The Summary Judgment Motion Should be Denied Because Defendants
              Have Failed to Satisfy their Initial Burden.................................................. 7
       B.     Summary Judgment Should be Denied Because the Facts and the Law
              Establish the Trustee's Standing to Sue ...................................................... 9
              1.     The Trustee Has Standing under Section 544(b) of the Bankruptcy
                     Code ................................................................................................ 9
              2.     The Trustee Has Standing under California Civil Code Section
                     3439.04 .......................................................................................... 10
              3.     The Trustee May Avoid the Entire Transfer To the Extent Necessary
                     For the Benefit of the Estate........................................................... 12
       C.     Neither the Facts nor the Law Set Forth in the  Summary Judgment Motion
              Support The Defendants'  Inscrutable Arguments .................................... 13
       D.     The Defendants' Argument Regarding Who Owns the Attorneys  Fee
              Award is Irrelevant ................................................................................... 14

IV.    CONCLUSION ................................................................................................ 15

1

## TABLE OF AUTHORITIES

2
Page

**CASES**

3

4    *Canada v. Blain's Helicopters, Inc.,*  831 F.2d 920, 925 (9th Cir.  1987) ........................................ 8

5    *Celotex v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).................... 7

6    *Cristobal v. Siegel,*  26 F.3d 1488 (9th Cir.  1994) ......................................................................... 7, 8

7    *Danning v. Miller (In re Bullion Reserve),* 922 F.2d 544, 546 (9th Cir. 1991) ............................. 12

8    *Decker v. Tramiel (In re JTS Corporation),* 2006 WL 2844581 (Bankr. N.D. Cal. 2006)........... 12

9    *Evans v. Independence Order of Foresters,* 141 F.3d 931 (9th Cir. 1998) ...................................... 7

10   *Forsberg v. Pacific Northwest Bell Tel. Co.,* 840 F .2d 1409, 1418 (9th Cir. 1988) ....................... 9

11   *Heffernan v. Bennett & Armour,* 110 Cal.App. 2d 564 (1952) ...................................................... 11

12   *In re Acequia,* 34 F.3d 800 (9th Cir. 1994) ................................................................................... 12

13   *In re Cohen,* 199 B.R. 709, 714 (9th Cir. BAP 1996)............................................................... 11, 13

14   *In re Liquimatic Systems, Inc.,* 194 F.Supp. 625 (1961) ............................................................... 13

15   *Kireby v. Superior Court,* 33 Cal.4[th] 642, 648 (2004).................................................................... 13

16   *Lippi v. City Bank,* 955 F.2d 599, 605 (9th Cir. 1992) .................................................................. 12

17   *Maguire v. Corbett,* 119 Cal.App.2d 244, 259 (1953) ................................................................... 13

18   *Mehrtash v. Mehrtash,* 93 Cal. App. 4th 75, 80 (2001) (citations omitted)............................. 13, 14

19   *Mirage Resorts, Inc. v. Stirpe,* 152 F.Supp.2d 1208 (D. Nev. 2000) ............................................. 7

20   *Orr v. Bank of America,* 285 F.3d 764 (9th Cir. 2002) .................................................................. 8, 9

21   *Pony v. County of Los Angeles,* 433 F. 3d. 1138 (9th Cir. 2006).................................................... 15

22   *Reddy v. Gonzalez,* 8 Cal.App. 4th 118, 123 (1992) ....................................................................... 11

23   *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003) ................. 9

24

25

26

27

28

1

**STATUTES**

2   11 U.S.C. § 544 ................................................................................................................... 12

3   11 U.S.C. § 544(b) ............................................................................................... 3, 4, 9, 10, 12

4   11 U.S.C. § 547(b) ........................................................................................................... 10

5   11 U.S.C. § 550 ................................................................................................................ 12

6   California Code of Civil Procedure § 3439.01(b) ................................................................ 11

7   California Code of Civil Procedure § 3439.01(c) ................................................................ 11

8   California Code of Civil Procedure § 3439.04 ............................................... 3, 4, 10, 11, 12

9   California Code of Civil Procedure § 3439.04(a) ..................................... 10, 11, 12, 13

10  Federal Rules of Civil Procedure § 56(c) ........................................................................... 7

11  Federal Rules of Civil Procedure § 56(e) ........................................................................... 8

12

**OTHER**

13

    5 COLLIER ON BANKRUPTCY ¶ 544.09[1] (15TH ed rev. 2006) .................................9-10

14
    Legis. Com. Com., 12A WEST'S ANN. CIV. CODE (1997 ed.) foll. §3439.01, p. 273 ............. 11
15

16

17

18      208576.1

19

20

21

22

23

24

25

26

27

28

1      Plaintiff Andrea A. Wirum, Trustee in Bankruptcy for the Estate of Ramin Yeganeh

2  ("Debtor") and successor trustee to Charles E. Sims (the "Plaintiff" or "Trustee"), hereby submits

3  this opposition memorandum to the motion for summary judgment filed by the defendants

4  ("Defendants") in the four Adversary Proceedings, A.P. Nos. 05-3240, 05-3241, 05-3242, and 05-

5  3243.  The Defendants filed a joint motion, that is, one motion that applies in all four Adversary

6  Proceedings.  The Trustee is responding with a single opposition memorandum,  which will be e-

7  filed  in each of the four Adversary Proceedings.

8  I.    **SUMMARY OF ARGUMENT**

9      The Defendants' motion contends that the Trustee lacks standing to assert the claims

10  alleged in the four Adversary Proceedings. Unfortunately, the Defendants' motion fails to

11  articulate an understandable theory or theories to support their general "lack of standing"

12  argument, leaving the Trustee and the Court to attempt to speculate on the factual and legal bases

13  for the  motion. In this regard, the motion should be denied because it fails to satisfy the most

14  basic requirement of a motion for summary judgment, that is, it fails to set forth the facts and law

15  that would support the entry of a judgment in favor of the Defendants. The Defendants have failed

16  to satisfy their initial burden of establishing that the Trustee cannot present facts supporting her

17  standing to sue.

18      Furthermore, when the facts and the law are considered, the Defendants' motion should be

19  denied because the facts and the law establish that the Trustee does have standing to assert these

20  claims. The Trustee has standing under Section 544(b) of the Bankruptcy Code because several

21  unsecured creditors with allowable claims existed at the time of the bankruptcy filing.  Because

22  the Trustee has standing under Section 544(b) of the Bankruptcy Code, she may bring an action

23  under Section 3439.04 of the California Civil Code.  The record supports the Trustee's standing

24  under Section 3439.04 of the California Civil Code because, before the earliest date of the

25  transfers of the properties from the Debtor to his parents, the plaintiffs in the State Court suit and

26  their attorneys were creditors of the Debtor.    Finally, it is undisputed that the Trustee is seeking

27  the recovery of the 13 parcels of property in order to pay creditors and administrative expenses,

28  and the Debtor's "speculation" that the Trustee does not "need" the 13 properties is untrue and

3

1  unsupported by any admissible evidence.

2  **II.    THE UNDISPUTED FACTS SUPPORTING THE TRUSTEE'S STANDING**

3       The Trustee filed these four Adversary Proceedings seeking to recover 13 parcels of real

4  property that had been fraudulently transferred by the Debtor to his parents prior the Debtor's

5  bankruptcy filing.   The Trustee's entitlement to recover the 13 properties is based upon Section

6  544(b) of the Bankruptcy Code and California Civil Code Section 3439.04.   The Trustee has

7  standing under Section 544(b) because at the time of the Debtor's bankruptcy filing at least one

8  unsecured creditor with an allowable claim existed, which is sufficient to provide the Trustee with

9  standing to assert these claims. The Trustee has standing under Section 3439.04 because the

10 Debtor had creditors (including the plaintiffs in the Superior Court case and the attorneys in the

11 Superior Court case) with claims existing before the transfers of the properties at issue occurred.

12 The undisputed evidence establishes that these claims existed, and the Defendants' motion

13 concedes that these claims existed.

14       The undisputed facts supporting the Trustee's standing are as follows:

15       On October 4, 1999, Edith Ingram and Nozipo Wobogo, filed a complaint against Ramin

16 Yeganeh (the "Debtor") in San Mateo County Superior Court of San Mateo County, Case No.

17 Case No. 410586. (Declaration of Ramin Yeganeh ("Yeganeh Decl."), 2: 7-8; Declaration of

18 Renee Glover-Chantler ("Glover-Chantler Decl."), par. 2; Notice of Lodgment of Documentary

19 Evidence for Which Judicial Notice is Sought, and Other Deposition and Documentary Evidence

20 filed in support of the Trustee's Motion for Summary Judgment Based on Actual Fraud ("NOL"),

21 Ex. 30) Plaintiff Edith Ingram sued on behalf of herself, while plaintiff Nozipo Wobogo sued

22 on behalf of the general public and alleged various unfair business practice claims under

23 California Business and Professions Code Section 17200. (Yeganeh Decl., 2: 9-12) The

24 complaint contains a demand for attorneys fees under several causes of action. (NOL, Ex. 30 at

25 22:7-8, 22:20-21, 23:3-4, 23:10-11, 23:24-25, 24:19-20, 24:25-26, 25:16-17, 26:5-6) Edith

26 Ingram's causes of action were settled and dismissed on April 25, 2001. (Yeganeh Decl., 2: 9-10)

27       On April 23, 2001, Plaintiff Wobogo through her attorneys Gray Cary Ware & Freidenrich

28 ("Gray Cary") and Renee Glover-Chantler, filed a motion for summary adjudication in the

1  Superior Court case. The summary adjudication motion sought an order determining the liability

2  of Ramin Yeganeh for violations of Section 17200 of the California Business and Professions

3  Code. (Glover-Chantler Decl., par. 3)

4      After the motion was filed, on May 3, 2001, the Debtor's attorney, Charles J. Smith, sent

5  a written settlement proposal to the plaintiffs' counsel at Gray Cary. (Declaration of Emily L.

6  Maxwell ("Maxwell Decl."), par. 3, Ex. A)   The Debtor's settlement proposal included an offer

7  to both the plaintiffs in the Superior Court case, and an offer pay the plaintiffs' attorneys fees,

8  Gray Cary and Ms. Glover-Chantler.   The letter stated that "Mr. Yeganeh agrees that the sum of

9  $15,000 be paid upon completion of the arbitration process to [East Palo Alto Community Law

10 Project] as and for attorneys' fees in this matter."

11     In response to Mr. Smith's May 3 letter, Michael Tracy of the Gray Cary firm wrote to Mr.

12 Smith rejecting the Debtor's offer. (Maxwell Decl., par. 4, Ex. B) Mr. Tracy's May 18, 2001

13 letter stated that the Debtor's settlement offer was deficient in two respects. First, it failed to

14 provide "sufficient cash and/or unencumbered property" to satisfy the plaintiffs' demands.

15 Second, Mr. Tracy stated that the $15,000 offer to the plaintiffs' attorneys was insufficient. Mr.

16 Tracy wrote: "all further settlement proposals on our part will include payment of all attorneys'

17 fees generated in prosecuting the public Business and Professions Code 17200 claim." (Maxwell

18 Decl., par. 4, Ex. B)

19     The Debtor acknowledged that the attorneys fees being sought were substantial in amount.

20 On July 17, 2001, in a letter to Mr. Tracy and Ms. Glover-Chantler, the Debtor threatened to file

21 bankruptcy so that the attorneys fees claim would be discharged. (Glover-Chantler Decl., par. 4,

22 Ex. A; Maxwell Decl., par. 5, Ex. C)   The Debtor's July 17 letter stated: "But as I mentioned

23 earlier, I can not pay exhorbitant [sic] attorneys' fees which you now demand."

24     In July, 2001, including on July 24, July 25, July 26, and July 27, 2001, the Debtor left a

25 series of voicemail messages for Renée Glover (now Renée Glover-Chantler) in which he

26 acknowledged a claim for attorneys fees against him in the $200,000 to $350,000 range. (Glover-

27 Chantler Decl., par. 6, Ex. C) In a July 23, 2001 letter to the Debtor's attorney, Charles Smith,

28 Ms. Glover-Chantler informed Mr. Smith that, although the demand for attorneys fees was

5

1    $350,000, the estimated actual attorneys fees was at least $750,000 at that time. (Glover-Chantler

2    Decl., par. 5, Ex. B)

3          On August 2, 2001, Mr. Tracy sent a letter which sets forth settlement terms agreed,

4    accepted and signed by the Debtor. (Maxwell Decl., par. 6, Ex. D) The letter provides, among

5    other things, that the Debtor would pay $400,000 in attorneys fees. (Id.)

6          The Trustee has established that the  plaintiffs in the Superior Court case and their

7    attorneys  were creditors and had been creditors of the Debtor from the outset of the  Superior

8    Court case in 1999.

9          The Debtor filed for bankruptcy on January 7, 2005. (Yeganeh Decl., par. 6)  By

10   compromise, the judgment claims were reduced to $399,946.88 (without post-judgment interest)

11   in favor of the individual judgment creditors in the Superior Court case, and a general unsecured

12   claim for attorneys fees in the amount of $2,573,827, and a subordinated penalty claim for

13   attorneys fees in the amount of $1,050,935. (Declaration of Andrea A. Wirum ("Wirum Decl."),

14   par. 3)  In addition to the claims of the plaintiffs and their attorneys, the claims filed in the

15   Debtor's bankruptcy case include the following:

16          (1)     An unsecured claim filed on April 28, 2005 by Robert Scott and Alyssa Scott.

17   (Request for Judicial Notice, par. 1, Ex. A)

18          (2)     An unsecured claim filed on April 28, 2005 by Phyllis "Suzy-Q" Shoop. (Request

19   for Judicial Notice, par. 2, Ex. B)

20          (3)     An unsecured claim filed on July 18, 2005 by Nicole Wilkins, amended on October

21   25, 2005 and further amended on March 10, 2006. (Request for Judicial Notice, pars. 3, 4, 5, Exs.

22   C, D, E).

23   As of  November 1, 2006,  none of these claims has been paid. (Wirum Decl, par. 3)

24          In his bankruptcy schedules, the Debtor disclosed interest in seven parcels of real property.

25   (Yeganeh Decl., par. 7) There is currently approximately $1,583,000 in funds on hand which

26   represent the net proceeds of sale of five of the properties disclosed by the Debtor after payment of

27   approved administrative expenses through April 30, 2006. (Wirum Decl., par. 4)  The remaining

28   two disclosed properties have a gross value of between $800,000 and $1,000,000. (Id.)

6

1    In order to satisfy the claims against the estate, the Trustee needs to recover the 13

2    properties fraudulently transferred by the Debtor to his parents.  Sale of the properties disclosed by

3    the Debtor only will result in a large deficiency.  (Wirum Decl, par. 5)  Recovery of fraudulently

4    conveyed property is necessary to ensure payment in full of allowed claims and approved

5    administrative expenses, which is continuing to accrue because in large part to the litigation in the

6    four Adversary Proceedings. (Id.)

7    **III.    ARGUMENT**

8    **A.    The Summary Judgment Motion Should be Denied Because Defendants Have**

9    **Failed to Satisfy their Initial Burden**

10    Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and

11    admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

12    any material fact and that the moving party is entitled to judgment as a matter of law.  F.R.C.P.

13    56(c).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims

14    or defenses.  *Celotex v. Catrett*, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

15    In order to obtain summary judgment, the moving party bears the burden of establishing the

16    absence of genuine issues of material fact and that the moving party is entitled to judgment as a

17    matter of law.  Thus, there is both a factual and legal component of the moving party's burden in

18    seeking summary judgment.  If the motion fails to satisfy this burden, then the motion should be

19    denied without the Court even considering the non-moving party's substantive opposition to the

20    motion.

21    Here, the Defendants have failed to satisfy their initial burden.  First, the Defendants have

22    failed to establish the absence of a genuine issue of material fact.  In the Ninth Circuit, if the

23    moving party fails to satisfy this burden, the motion should be denied even if no opposition is

24    filed. *Mirage Resorts, Inc. v. Stirpe*, 152 F.Supp.2d 1208 (D. Nev. 2000)(citing  *Cristobal v.*

25    *Siegel*,  26 F.3d 1488 (9th Cir.  1994); *Evans v. Independence Order of Foresters*, 141 F.3d 931

26    (9th Cir. 1998)).  The Court is obligated to undertake a review of the motion to ensure that it

27    satisfies the moving party's  initial burden.  In *Cristobal*, the Ninth Circuit  held  that a trial court

28    cannot grant summary judgment under the Federal Rules unless the moving party carries its

7

1   burden of showing its entitlement to judgment. *Cristobal*, 26 F.3d at 1491.   The Ninth Circuit

2   also held that a Court should deny summary judgment if the movant's papers are insufficient on

3   their face *Id.* at 1494.

4         In their motions, the Defendants have argued that there are insufficient facts to support the

5   Trustee's standing to bring suit; however, the Defendants do not demonstrate that such facts do

6   not exist.  For example, the Defendants have not submitted deposition testimony, interrogatory

7   responses, or other testimony from the Trustee to establish the factual basis for their contention

8   that the Trustee lacks standing.  The Defendants have not submitted evidence to support their

9   "lack of standing" arguments because the evidence does not exist. The facts submitted with this

10  Opposition, along with the Trustee's declaration, establishes that standing does exist. The

11  Defendants have simply offered speculation and legal argument to support their motion. The

12  Defendants have failed to satisfy their initial burden of proof because they have not shown that the

13  factual basis for standing is absent.

14        Second, the Defendants' motion is insufficient on its face because it is based on

15  inadmissible and inadequate evidence.  A summary judgment motion must be based on admissible

16  evidence, that is, facts that would be admissible at trial.  F.R.C.P. 56(e); *Canada v. Blain's*

17  *Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir. 1987); *Cristobal v. Siegel,* 26 F.3d 1488, 1494 (9th

18  Cir. 1994).  A trial court can only consider admissible evidence in ruling on a motion for summary

19  judgment.  *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  The Defendants' motion is

20  based upon inadmissible legal argument and speculation by the Debtor and the Debtor's lawyer.

21  The Trustee has filed a separate set of evidentiary objections, which specify objects to some of the

22  Defendants' inadmissible evidence.   As an example, the Defendants' motion is based on the

23  Debtor's testimony that "[t]he plaintiff/trustee has now liquidated more than enough of my

24  properties to pay off and satisfy all of the individual creditors' claims." This is the key "evidence"

25  offered by the Defendants to support their "lack of standing" argument. However, the Debtor's

26  testimony is inadmissible. It is not based upon personal knowledge, it lacks foundation, it is

27  speculative, and it offers improper opinion testimony. The Defendants' motion is not based on

28  any testimony from the Trustee or any other competent witness as to the Trustee's need to recover

8

1    the subject properties. In short, the Defendants have not satisfied their initial burden of proof

2    because the evidence on which they rely is inadmissible.

3        Third, the Defendants have failed to satisfy their initial burden by failing to identify the

4    evidence in the record that supports their contentions.    While the Defendants have identified a

5    long list of documents in the record, they have failed to identify by page and line the facts in the

6    record that support their motion.    A party may not support or oppose summary judgment by

7    general references to the record.    *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885,

8    889 (9th Cir. 2003).    Instead, the parties are required to identify the specific evidence supporting

9    their position by reference to the page and line where the evidence is located in the record.    *Orr v.*

10   *Bank of America*, 285 F.3d 764, 774-775 (9th Cir. 2002).    The Trustee and the Court are not

11   required to comb the record to locate the evidence that the Defendants are  in relying on is support

12   of their motion.    See *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F .2d 1409, 1418 (9th Cir.

13   1988).

14       In addition to the factual deficiencies in the Defendants' motion,  the motion is also

15   deficient in its failure to identify a legal bases for summary judgment.    The Defendants'

16   memorandum purports to set forth the legal bases for the motion,  however, the  memorandum is

17   incomprehensible and it fails to articulate a legal bases upon which the Court could dismiss the

18   Trustee's claims.

19       Because of these deficiencies, which appear on the face of the Defendants' motion, the

20   motion should be denied.

21       **B.    Summary Judgment Should be Denied Because the Facts and the Law**

22   **Establish the Trustee's Standing to Sue**

23           **1.    The Trustee Has Standing under Section 544(b) of the Bankruptcy**

24   **Code**

25       Section 544(b) of the Bankruptcy Code gives the Trustee the right to avoid any transfer of

26   the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is

27   allowable at the commencement of the case.    In other words, under Section 544(b), the Trustee

28   succeeds to the rights of an unsecured creditor in existence at the commencement of the case.    5

1  COLLIER ON BANKRUPTCY ¶ 544.09[1] (15TH ed rev. 2006).

2      At the time of the bankruptcy filing, there were several unsecured creditors with claims

3  against the Debtor's estate. Those creditors include the following: (1) the plaintiffs in the Superior

4  Court case, (2) the attorneys for the plaintiffs in the Superior Court case, (3) Phyllis "Suzy-Q"

5  Shoop, (4) Robert and Alyssa Scott, and (5) Nicole Wilkins. The Debtor and the Defendants

6  ignore this fact. On the petition date, the attorneys fee claim was partly secured by a judgment

7  lien that was avoidable under 11 U.S.C. § 547(b). The attorneys were unsecured creditors of the

8  Debtor at the time of the commencement of the bankruptcy case and at the time of the transfers.

9  Finally, the Debtor ignores the three other unsecured creditors that have filed claims in his

10  bankruptcy case, Robert and Alyssa Scott (Request for Judicial Notice, par. 1, Ex. A), Phyllis

11  "Suzy-Q" Shoop (Request for Judicial Notice, par. 2, Ex. B), and Nicole Wilkins. (Request for

12  Judicial Notice, pars. 3, 4, 5, Exs. C, D, E). There is no dispute that these claims existed at the

13  time of the bankruptcy filing because the claims are based on lawsuits against the Debtor initiated

14  prior to his bankruptcy filing. (Request for Judicial Notice, pars. 1, 2, 3, 4, 5, Exs. A, B, C, D, E).

15      The undisputed evidence establishes that the Trustee has standing to prosecute these claims

16  pursuant to Section 544(b) of the Bankruptcy Code.

17      **2.    The Trustee Has Standing under California Civil Code Section 3439.04**

18      Since the Trustee has standing under Section 544(b) of the Bankruptcy Code, she may

19  bring any action under applicable state law to avoid a transfer. The Trustee has standing under

20  Section 544(b) to bring the four Adversary Proceedings under Section 3439.04 of the California

21  Civil Code. Although the Trustee's complaint alleges both causes of action under Section

22  3439.04, the Trustee will focus primarily on the actual fraud cause of action under Section

23  3439.04(a) since it is that section upon which the Trustee's motion for summary judgment relies.

24      The Trustee has standing under Section 3439.04(a) because at least one unsecured creditor

25  existed at the time of the transfers.

26      Section 3439.04(a) provides:

27      A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
    whether the creditor's claim arose before or after the transfer was made or the
28      obligation was incurred, if the debtor made the transfer or incurred the

1    obligation....[w]ith actual intent to hinder, delay, or defraud any creditor of the
2    debtor.

3        A transfer may be avoidable if it was made with actual intent regardless of whether the
4    debtor was insolvent at the time of the transfer. See *In re Cohen*, 199 B.R. 709, 714 (9th Cir. BAP
5    1996) ("The focus of the inquiry into actual intent is on the state of mind of the debtor. Neither
6    malice nor insolvency are required."); *Reddy v. Gonzalez*, 8 Cal.App. 4th 118, 123 (1992). It is
7    irrelevant whether the Debtor had other property to satisfy the claim of the plaintiffs in the
8    Superior Court case. *In re Liquimatic Systems, Inc.*, 194 F.Supp. 625 (1961); *Heffernan v. Bennett*
9    *& Armour*, 110 Cal.App. 2d 564 (1952).

10        Section 3439.04(a) provides that a transfer may be avoided if it was made with actual intent
11    to hinder, delay, or defraud "any creditor" of the debtor. The issue is whether "any creditor"
12    existed before the transfers occurred who was harmed or injured by the Debtor's transfers of
13    properties to his parents. The Trustee's motions for summary judgment in the four Adversary
14    Proceedings set forth the dates of each of the transfers at issue. The earliest of the Debtor's 13
15    transfers to his parents occurred on June 28, 2001. (NOL., Ex. 8)

16        "Creditor" is defined in Section 3439.01(c) of the California Civil Code as any person who
17    has a claim. A "claim" is a "right to payment, whether or not the right is reduced to judgment,
18    liquidated, unliquidated, fixed contingent, matured, unmatured, disputed, undisputed, legal,
19    equitable, secured or unsecured." (Cal. Civ. Code §3439.01(b)) The legislative committee
20    comments to Section 3439.01 state that the combination of the definitions of "creditor" and
21    "claim" gives the holder of an "unliquidated tort claim or contingent claim" status of a creditor
22    protected under the Uniform Fraudulent Transfer Act ("UFTA"). Legis. Com. Com., 12A WEST'S
23    ANN. CIV. CODE (1997 ed.) foll. §3439.01, p. 273.

24        Under this expansive definition of a "creditor" protected by the UFTA, both the plaintiffs
25    in the Superior Court case and their attorneys qualify as creditors prior to the first fraudulent
26    transfer in June, 2001, regardless of whether their claims had been reduced to a judgment. The
27    Superior Court case was filed in October 1999 (NOL, Ex. 30), and the plaintiffs and their attorneys
28    were creditors at the time the case commenced. The Scotts, Shoop, and Wilkins were creditors

1  before the 2003 transfers, which are at issue in the Allied Management Trust case. ((Request for

2  Judicial Notice, pars. 1, 2, 3, 4, 5, Exs. A, B, C, D, E; NOL, Exs. 20, 21)  Thus, any of these

3  creditors may bring an action under Section 3439.04.

4      The Defendants have not submitted any admissible evidence that would dispute these facts

5  or the Trustee's standing to sue.    Accordingly, the undisputed evidence establishes that the

6  Trustee has standing to bring the actions under Section 3439.04(a) on behalf of any of these

7  creditors.

8      **3.    The Trustee May Avoid the Entire Transfer To the Extent Necessary**

9  **For the Benefit of the Estate**

10     The avoidance of a transfer and the recovery from a transferee are distinct concepts in

11  bankruptcy.  *Lippi v. City Bank*, 955 F.2d 599, 605 (9th Cir. 1992).   Once the transfers of the

12  properties are avoided under Section 544 of the Bankruptcy Code and Section 3439.04 of the

13  California Civil Code, Section 550 of the Bankruptcy Code provides that the transfers are

14  recovered for the benefit of the estate.  Section 550 also prescribes the liability of the transferee.

15     It is well-settled law that any recovery by a trustee should benefit all unsecured creditors

16  even if the Trustee was "standing in the shoes" of only one unsecured creditor.  *Danning v. Miller*

17  *(In re Bullion Reserve)*, 922 F.2d 544, 546 (9th Cir. 1991).   Thus, if the Trustee establishes that a

18  particular transfer is avoidable because it is fraudulent as to a particular creditor, the transfer may

19  be avoided in its entirety. *In re Acequia*, 34 F.3d 800, 809 (9th Cir. 1994); *Decker v. Tramiel (In re*

20  *JTS Corporation)*, 2006 WL 2844581 (Bankr. N.D. Cal. 2006)  For instance, in *In re Acequia*, the

21  Ninth Circuit allowed the debtor-in-possession to use its section 544(b) powers after plan

22  confirmation and payment of all unsecured creditors because the recovery of the transfers would

23  benefit the estate.  *In re Acequia*, 34 F.3d at 808.

24     The Defendants' argument that the plaintiffs in the Superior Court case will soon be paid

25  in full on their judgment claim has no bearing on the extent of the Trustee's recovery.   The

26  transfers, if found to be avoidable under California Civil Code Section 3439.04, are recovered for

27  the benefit of the estate, which would include all the other claimants in the case and any

28  administrative expenses of the estate.   The Defendants do not dispute the amounts of the

12

1   administrative expenses that have been approved by this Court or the existence of other claims in

2   this case.  The Defendants have not established that the administrative expenses and the other

3   claims (the remaining attorneys fee award claim of the plaintiffs and the claims of Ms. Shoop, the

4   Scotts, and Ms. Wilkins) can be satisfied by the seven properties listed in the Debtor's bankruptcy

5   schedules.  The sale of the properties disclosed by the Debtor only will not generate enough funds

6   to ensure payment in full of the unsecured claims and approved administrative expenses in this

7   case. (Wirum Decl., par. 3)

8         The Trustee is entitled to recover the transfers of the properties for the benefit of the estate

9   regardless of whether the claims of the plaintiffs in the Superior Court case have been satisfied.

10        **C.        Neither the Facts nor the Law Set Forth in the  Summary Judgment Motion**

11  **Support The Defendants' Inscrutable Arguments**

12        The Defendants argue that, retroactively, no harm was suffered by the plaintiffs, and

13  therefore, the Trustee lacks standing to bring the fraudulent transfer actions.  As support for this

14  argument, the Debtor and the Defendants argue that the Debtor's properties listed in his

15  bankruptcy schedules are sufficient to pay the plaintiffs' claim.  Thus, no harm was suffered by

16  the creditors as a result of the transfers.

17        A creditor is injured when the transfer "puts beyond [its] reach property [it] otherwise

18  would be able to subject to the payment of [its] debt." *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75,

19  80 (2001) (citations omitted).   It does not matter that the Debtor has other properties that may

20  have satisfied the plaintiffs' claim.  See  *In re Cohen*, 199 B.R. 709 (9th Cir. BAP 1996); *In re*

21  *Liquimatic Systems Inc.*, 194 F. Supp. 625 (1961); *Maguire v. Corbett*, 119 Cal.App.2d 244, 259

22  (1953).  Section 3439.04(a) addresses a transfer by the debtor of property to a third person

23  undertaken with the intent to prevent a creditor from reaching that particular interest to satisfy its

24  claim.  *Kireby v. Superior Court*, 33 Cal.4th 642, 648 (2004).   Thus, the issue in this case is

25  whether the Debtor has transferred properties otherwise available to satisfy claims so that the

26  properties are beyond the reach of his creditors.

27        The Defendants rely heavily on *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75 (2001),  for the

28  proposition that the plaintiffs in the Superior Court case must have suffered "affirmative harm" as

13

1  a result of the transfers of the properties.  In *Mehrtash*, the court held that the creditor who brought

2  the fraudulent transfer action did not suffer harm because the property sought to be recovered was

3  overencumbered and had no equity for the creditor.  The inquiry in *Mehrtash* was whether the

4  transferred property could have been used by the creditor to satisfy her debt.  Because there was

5  no equity in the transferred property in the first place, the transfer did not cause harm.

6        There is no dispute in this case that the plaintiffs' claims existed at the time of the transfers

7  of the properties, that the properties had equity, and that the transfers put the properties beyond the

8  reach of the creditors.  Unlike in *Mehrtash*, the Debtor and the Defendants have not shown that the

9  transferred properties had or have no value or could not have been used by the creditors to satisfy

10  their claim.   The harm or injury here is that the properties were put beyond the reach of creditors

11  who had claims against the Debtor prior to the transfers, and those properties could have been

12  used to satisfy the creditors' claims.

13        The Defendants and the Debtor do not dispute that the attorneys fees liability to the

14  plaintiffs existed prior to the date of the transfers at issue.  As shown by the correspondence

15  between the Debtor or his attorney and the attorneys for the Superior Court plaintiffs, the Debtor

16  knew that he had significant liability for attorneys  fees.   In July,   2001, the Debtor even

17  acknowledged a claim for attorneys  fees against him in the $200,000 to $350,000 range.  The

18  Debtor cannot dispute or deny that he had potential liability for a large claim for attorneys fees

19  before the transfers occurred.  The Defendants and the Debtor have not submitted any evidence

20  that the Debtor had no liability for attorneys  fees or had no knowledge of such liability before the

21  transfers occurred.

22        **D.    The Defendants' Argument Regarding Who Owns the Attorneys  Fee Award**

23  **is Irrelevant**

24        The Defendants devote six pages of their memorandum on the issue of who owns the

25  attorneys fee award against him.  The pertinent question, however, is not who owns the award but

26  rather who <u>owes</u> the fees.

27        The Defendants assert that for the Trustee to assert that the plaintiffs are entitled to the

28  attorneys fee award would be contradictory to the position taken by the Trustee in prior pleadings.

14

1    In the pleadings quoted by the Defendants, the Trustee argued under applicable controlling case

2    law that *awards* of attorneys fees belong to the attorneys.  Like the Debtor, the Defendants fail to

3    appreciate the difference between a *claim* for attorneys fees and an *award* of attorneys fees.

4        In pleadings filed earlier in the bankruptcy case, the Debtor cited *Pony v. County of Los*

5    *Angeles*, 433 F. 3d. 1138 (9th Cir. 2006), for the proposition that plaintiff Nozipo Wobogo owned

6    the attorneys' fee award, and that if Wobogo's standing evaporated, so did the fee award.  *Pony*

7    does not stand for that proposition, as the Trustee pointed out in response to the Debtor's pleading.

8    As the Ninth Circuit made clear in *Pony*, the applicable statute "vests the right to seek attorneys

9    fees in the prevailing party, not her attorney, and that attorneys therefore lack standing to pursue

10   them."  433 F. 3d. at 1142.  However, the Ninth Circuit acknowledged that an attorney has the

11   right to collect the award once made.  433 F. 3d. at 1144-1145.

12       It is the Trustee's position that before the fee award was made in September 2004, plaintiff

13   Wobogo was vested with the right to seek fees and that only after the award was made, did the

14   attorneys themselves obtain a property right.

15       Regardless of who owned the fee claim in 2001, it cannot be disputed that the plaintiffs

16   were seeking fees from the Debtor, that the fees were substantial, and constituted a "claim" against

17   the Debtor at the time.  There is no inconsistency in the Trustee's position.

18       The Debtor implies that his waiver of a discharge is relevant:

19       "Since the Debtor has waived his discharge the unpaid balance of the secured
         attorneys' fees award after the sale of all Schedule A property shall remain
20       unsecured against the debtor."

21   (Defendants' Memorandum, 7: 23-25)    The Debtor cites no authority for this novel proposition.

22       The Debtor appears to argue that, if he remains personally liable for the fee award, the fee

23   claim in 2001 is retroactively eliminated, and the estate has no liability to pay the claim.  The

24   Trustee is unaware of any legal authority for this proposition.  The non-dischargeability of the fee

25   award as against the Debtor does not relieve the bankruptcy estate of the liability to pay claims.

26   The discharge is not relevant.

27   IV.    **CONCLUSION**

28       As set forth above, the Defendants' motion for summary judgment should be denied

15

1    because (1) the Defendants have failed to meet their initial burden of establishing the factual and

2    legal bases for summary judgment in their favor, and (2) the Trustee has established by way of

3    undisputed evidence that she has standing to prosecute the four adversary proceedings.

4

5    DATED: November 1, 2006              LUCE, FORWARD, HAMILTON & SCRIPPS LLP

6

7                                        By:  _____

8                                             Jeffrey L. Fillerup
                                              Attorneys for Plaintiff Andrea A. Wirum

9

10   208576.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ELECTRONICALLY FILED

NOV 0 1 2006

1   Charles P. Maher, State Bar No. 124748
    Jeffrey L. Fillerup, State Bar No. 120543
2   Nhung Le, State Bar No. 209552
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
4   Telephone No.: 415.356.4600
    Fax No.: 415.356.4610
5
    Attorneys for Andrea A. Wirum
6   Trustee in Bankruptcy
7
8               UNITED STATES BANKRUPTCY COURT
9               NORTHERN DISTRICT OF CALIFORNIA
10              SAN FRANCISCO DIVISION
11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
              Debtor.
13

14  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No.  05-3240 TC
15            Plaintiff,
16  v.
17  F. NAMDARAN aka FRAN NAMDARAN
    aka FARIN NAMDARAN aka FARIN
18  YEGANEH aka FRAN YEGANEH,
19            Defendant.
20
21  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No.  05-3241 TC
22            Plaintiff,
23  v.
24  ALLIED MANAGEMENT TRUST and K.
    YEGANEH aka KEN YEGANEH aka
25  KAIKHOSROW YEGANEH,
26            Defendants.
27
28

                            1

1    CHARLES E. SIMS, Trustee,                          Adversary Proceeding
                                                        No. 05-3242 TC
2              Plaintiff,

3    v.

4    COAST DEVELOPMENT TRUST and
     FARIN YEGANEH aka F. NAMDARAN aka
5    FRAN NAMDARAN aka FARIN
     NAMDARAN aka FRAN YEGANEH,
6
               Defendants.
7

8

9    CHARLES E. SIMS, Trustee,                          Adversary Proceeding
                                                        No. 05-3243 TC
               Plaintiff,
10                                                      **REQUEST FOR JUDICIAL NOTICE IN**
     v.                                                 **SUPPORT OF TRUSTEE'S OPPOSITION**
11                                                      **TO DEFENDANTS' MOTION FOR**
     ADVANTA TRUST and FARIN YEGANEH                    **SUMMARY JUDGMENT**
12   aka F. NAMDARAN aka FRAN
     NAMDARAN aka FARIN NAMDARAN aka                    Date:  November 15, 2006
13   FRAN YEGANEH,                                      Time:  9:30 a.m.
                                                        Dept:  23
14             Defendants.

15

16

17          Plaintiffs Andrea A. Wirum, Chapter 7 Trustee for the estate of Ramin Yeganeh, request

18   that the Court take judicial notice of the following documents contained in the files of the United

19   States Bankruptcy Court for the Northern District of California:

20          1.      Proof of Claim dated April 7, 2005 and filed on April 28, 2005 by Phyllis "Suzy-

21   Q" Shoop, docketed by the Court as Claim No. 3, a true and correct copy of which is attached as

22   **Exhibit A**;

23          2.      Proof of Claim dated April 7, 2005 and filed on April 28, 2005 by Robert Scott and

24   Alyssa Scott, docketed by the Court as Claim No. 4, a true and correct copy of which is attached

25   as **Exhibit B**;

26          3.      Proof of Claim dated July 18, 2005 and filed on July 18, 2005 by Nicole Wilkins,

27   docketed by the Court as Claim No. 36, a true and correct copy of which is attached as **Exhibit C**;

28          4.      Proof of Claim dated October 25, 2005 and filed on October 25, 2005 by Nicole

                                              2

1    Wilkins, docketed by the Court as Claim No. 37, a true and correct copy of which is attached as

2    **Exhibit D**; and

3        5.       Proof of Claim dated March 10, 2006 and filed on March 10, 2006 by Nicole

4    Wilkins, docketed by the Court as Claim No. 38, a true and correct copy of which is attached as

5    **Exhibit E**.

6        Judicial notice of these documents is appropriate under Federal Rules of Evidence, rule

7    201. These documents are not subject to reasonable dispute because they are capable of accurate

8    and ready determination by resort to the files of the United States Bankruptcy Court for the

9    Northern District of California. FED. R. EVID. 201(b). Furthermore, courts regularly take judicial

10    notice of documents filed and orders or decisions entered in federal and state courts. *Kramer v.*

11    *Time Warner Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp.

12    2d 956, 965-66 (C.D. Cal. 2005); *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 814, 816

13    (C.D. Cal. 2004); *Manges*, 29 F.3d at 1042 (*citing Landy v. FDIC*, 486 F.2d 139, 151 (3d Cir.

14    1973).

15        In addition, Plaintiff has requested that the Court take judicial notice of these documents

16    and has provided the Court with the necessary information to take judicial notice. Accordingly,

17    under Federal Rules of Evidence, rule 201(d), judicial notice of these court documents is

18    mandatory and should be granted by the Court. FED. R. EVID. 201(d).

19    DATED: November 1, 2006        LUCE, FORWARD, HAMILTON & SCRIPPS LLP

20

21                        By: _____

22                            Nhung Le,
                           Attorneys for Plaintiff Andrea A. Wirum

23

24    208558.1

25

26

27

28

04/07/2005 03:36 FAX 14157323777          KLETTER & PERETZ          ☑002

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT **Northern** | DISTRICT OF **California** | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>**Ramin Yeganeh** | Case Number<br>**05-30047** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>**Robert Scott and Alyssa Scott** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br><br>**Kletter & Peretz**<br>**One Embarcadero Center, Suite 1200**<br>**San Francisco, CA 94111**<br>Telephone number: **(415)732-3790** | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court.<br><br>THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends     a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other **fraudulent foreclosure rescue claim**

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)              (date)

**2. Date debt was incurred:**
**December 6, 2002**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ __TBD_____ _____ _____ __TBD__
                                    (unsecured)      (secured)        (priority)         (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $ **TBD**

☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim.
Amount entitled to priority $___. _____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| **8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | |
| Date<br><br>April 7, 2005 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*Cary S. Kletter, Esq.* | |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT A

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT Northern | DISTRICT OF California | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>Ramin Yeganeh | Case Number<br>05-30047 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Phyllis "Susy- Q" Shoop | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | |
|---|---|---|
| Name and address where notices should be sent:<br><br>Kletter & Peretz<br>One Embarcadero Center, Suite 1200<br>San Francisco, CA 94111<br>Telephone number: (415) 732-3790 | | THIS SPACE IS FOR COURT USE ONLY |
| Account or other number by which creditor identifies debtor: | Check here<br>if this claim ☐ replaces<br>☐ amends     a previously filed claim, dated:_____ | |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other  fraudulent foreclosure rescue claim

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)        (date)

| 2. Date debt was incurred:<br>August 16, 2002 | 3. If court judgment, date obtained: |
|---|---|

**4. Total Amount of Claim at Time Case Filed:** $ TBD _____ _____ _____ TBD
                                     (unsecured)     (secured)     (priority)     (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $ TBD
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

| THIS SPACE IS FOR COURT USE ONLY |
|---|

| Date<br>April 7, 2005 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*Gary S. Kletter, Esq.* | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT B

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT **NORTHERN** DISTRICT OF **CALIFORNIA** | | ⚖ PROOF OF CLAIM ⚖ |
|---|---|---|

| Name of Debtor<br>Ramin Yeganeh | Case Number<br>05-30047 TEC 7 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Nicole Wilkins | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>Cheryl C. Rouse<br>345 Franklin Street<br>San Francisco, CA 94102<br>Telephone number:   415-575-9444 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor: | Check here if this claim ☐ replaces   a previously filed claim, dated:_____<br>☐ amends |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other ___Claim for Indemnity, Contribution

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____ _____ _____
  Unpaid compensation for services performed
  from _____ to _____
        (date)                    (date)

| **2. Date debt was incurred:**  12/3/03 | **3. If court judgment, date obtained:** |
|---|---|

**4. Total Amount of Claim at Time Case Filed:**  $     500,000.00
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle
☐ Other_____
Value of Collateral:  $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>7/18/05 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Cheryl C. Rouse, Attorney   /s/ Cheryl C. Rouse (SBN 118313) |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

# EXHIBIT C

IN RE:  Ramin Yeganeh
Case No.: 05-30047 TEC7

## EXHIBIT A TO PROOF OF CLAIM

Nicole Wilkins is named as a defendant in that certain action entitled Robert Scott and Alyssa Scott v. R. Rad, a.k.a K. Rad, etc. et al., Case No. RG 03-129933, in the Superior Court, County of Alameda, State of California, which was filed on December 3, 2003.  A First Amended Complaint was filed on February 18, 2004.  In that case, Ms. Wilkins filed a Cross-Complaint against the debtor for indemnification, apportionment of fault and declaratory relief.

Debtor is also named as a defendant in Scott case.  In the Scott case, on August 3, 2004, debtor filed a cross-complaint against Nicole Wilkins which stated causes of action for Indemnification, Apportionment of Fault and Declaratory Relief.

On or about December 24, 2004, Nicole Wilkins entered into a settlement agreement with the plaintiffs Robert and Alyssa Scott.  As part of that agreement, Plaintiffs' complaint will be dismissed against Ms. Wilkins.  Ms. Wilkins prepared a motion to determine good faith of settlement, which has been continued numerous times and is now set for hearing on August 12, 2005. Debtor has opposed the motion.

The Scotts have filed a proof of claim in this case for $500,000.  In the event that the superior court does not approve the good faith settlement, then Ms. Wilkin's liability exposure is potentially $500,000.00.   In the event that the superior court does approve the good faith settlement, Ms. Wilkins will amend this proof of claim to reflect the settlement amount.

# EXHIBIT C

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT **NORTHERN** DISTRICT OF **CALIFORNIA** | ☼ PROOF OF CLAIM ☼ |
|---|---|

| Name of Debtor<br>Ramin Yeganeh | Case Number<br>05-30047 TEC 7 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**Nicole Wilkins**

Name and address where notices should be sent:

Cheryl C. Rouse
345 Franklin Street
San Francisco, CA 94102
Telephone number:   415-575-9444

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☒ amends a previously filed claim, dated: _7/18/05_

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other Claim for Indemnity. Contribution

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)

  Your SS #: _____

  Unpaid compensation for services performed

  from _____ to _____
           (date)              (date)

**2. Date debt was incurred:**   12/3/03

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**   $ _50,000.00_

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral:   $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>10/25/05 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Cheryl C. Rouse, Attorney   /s/ Cheryl C. Rouse (SBN 118313) |
|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Tuesday, October 25, 2005.max

# EXHIBIT D

IN RE:  Ramin Yeganeh
Case No.: 05-30047 TEC7

<u>EXHIBIT A TO PROOF OF CLAIM</u>

Nicole Wilkins is named as a defendant in that certain action entitled <u>Robert Scott and Alyssa Scott v. R. Rad, a.k.a K. Rad, etc. et al.</u>, Case No. RG 03-129933, in the Superior Court, County of Alameda, State of California, which was filed on December 3, 2003.  A First Amended Complaint was filed on February 18, 2004.  In that case, Ms. Wilkins filed a Cross-Complaint against the debtor for indemnification, apportionment of fault and declaratory relief.

Debtor is also named as a defendant in <u>Scott</u> case.  In the <u>Scott</u> case, on August 3, 2004, debtor filed a cross-complaint against Nicole Wilkins which stated causes of action for Indemnification, Apportionment of Fault and Declaratory Relief.

On or about December 24, 2004, Nicole Wilkins entered into a settlement agreement with the plaintiffs Robert and Alyssa Scott.  As part of that agreement, Plaintiffs' complaint will be dismissed against Ms. Wilkins.  Ms. Wilkins prepared a motion to determine good faith of settlement, which was heard on August 12, 2005, and granted by the court on August 21, 2005. (The bankruptcy court granted Ms. Wilkins relief from stay to go forward with the motion.) Attached hereto is a copy of the Order - Motion to Confirm Good Faith Settlement Granted.  Pursuant to the terms of the settlement, Nicole Wilkins paid the sum of $30,000 to the Plaintiffs. The settlement is a sliding scale settlement and Ms. Wilkins has additional liability exposure to a maximum obligation of $50,000.  Accordingly, the proof of claim filed by Ms. Wilkins on July 18, 2005 is amended from $500,000 to $50,000, based upon her settlement with the Plaintiffs.

**EXHIBIT D**

Kletter & Peretz
Attn: Peretz, Yosef
One Embarcadero Center
Suite 1200
San Francisco, CA  94111

Attorney at Law
Attn: Gilg, William E.
305 San Bruno Avenue West
San Bruno, CA  94066-____

## Superior Court of California, County of Alameda
## Wiley W. Manuel Courthouse

Scott

Plaintiff/Petitioner(s)

vs.

Yeganeh

Defendant/Respondent(s)
(Abbreviated Title)

No. RG03129933

Order

Motion to Confirm Good Faith Settlement
Granted

The Motion to Confirm Good Faith Settlement filed for Nicole Wilkins was set for hearing on 08/12/2005 at 09:00 AM in Department 110 before the Honorable Jo-Lynne Q. Lee.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

Continued hearing on Defendant and Cross-Complainant NICOLE WILKENS' Motion for an Order Determining Good Faith Settlement was held on August 12, 2005 before the Hon. Jo-Lynne Q. Lee, Judge, Alameda County Superior Court, Dept. 110.  Richard Grabstein appeared for moving party, Defendant and Cross-Complainant NICOLE WILKENS and William Gilg appeared for Defendants R. RAD-YAGANEH and ALLIED MANAGEMENT TRUST, and Cary Kletter appeared for Plaintiffs Robert and Alyssa Scott.

Defendant and Cross-Complainant NICOLE WILKENS seeks an Order determining that her settlement with Plaintiffs ROBERT SCOTT and ALYSSA SCOTT is in good faith pursuant to Code of Civil Procedure 877.6 and an order dismissing cross-actions against her for equitable comparative contribution or equitable indemnity brought by defendant and cross-complainants R. RAD-YAGANEH, ALLIED MANAGEMENT TRUST or others.  Defendants R. RAD-YAGANEH and ALLIED MANAGEMENT TRUST (hereafter collectively referred to as RAD-YEGANEH) initially opposed this motion on procedural grounds arguing that WILKENS failure to produce a copy of the Settlement Agreement.  Pursuant to order of this Court, a sealed copy of the Confidential Settlement Agreement was provided to the Court for in camera inspection and to counsel for defendants RAD-YAGENEH under a Protective Order.

The party asserting the lack of good faith in a settlement agreement shall have the burden of proof on that issue. Cal. Civ. Proc. Code § 877.6(d). In this case, opposing parties fail to meet their burden of proof.  In Tech-Bilt, Inc. v. Woodward-Clyde & Associates (1985), 38 Cal.3d 488, the Supreme Court explained; "[The] intent and policies underlying section 877.6 require that a number of factors be taken into account [in determining good faith] including a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settler should pay less in settlement than he would if he would if he were found liable after a trial.  Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortuous conduct aimed to injure the interests of nonsettling defendants. [citation.]  Finally, practical considerations obviously require that the evaluation be on the basis of information available at the time

Order

Tuesday, October 25, 2005.max



of settlement. [A] defendant's settlement figure must not be disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be." Id. at pp 499-500.

This case involves the sale of plaintiff's home to nonsettling defendants RAD-YAGENEH (defendant ALLIED MANAGEMENT TRUST is currently the holder of title) through a series of transactions between plaintiffs and defendant WILKENS, who allegedly represented herself to be an foreclosure expert", defendant MCKINZIE (defaulted party), and defendant RAD-YAGENEH. It is alleged that defendants were not licensed real estate brokers, and in violation of various Civil Code and Business and Professions' Code provisions, engaged in fraudulent misrepresentations and manipulative sales tactics to convince plaintiffs, whose home was subject to foreclosure, to transfer title to their house for a cash payment of $2,000 and pay-off of the outstanding mortgage, when in fact plaintiffs had $100,000 equity in the house. Plaintiffs' First Amended Complaint sets forth causes of action for Violation of Home Equity Sales Act (C.C. section 1698); Breach of Duty under the Foreclosure Consultants Act (CC section 2945); Fraud, Deceit and Misrepresentation; Invasion of Privacy; and Unfair Business Practices in violation of Business and Professions Code section 17200 et. seq.   In addition to recovery of the alleged $100,000 loss of equity, plaintiffs seek a declaration voiding the sale, compensatory damages for emotional distress, punitive damages, reasonable attorney's fees and costs and treble damages for statutory violations alleged. According to the parties, the potential recovery against all defendants is between $100,000, the alleged loss of equity and up to $500,000, if plaintiffs recover the non-economic damages they seek.

Although the original Complaint was filed in December 2003 (and the First Amended Complaint filed in February, 2004), this matter was stayed during the pendency of this action due to the bankruptcy petition filed by non-settling party, RAD-YAGANEH. As a result, there has been limited, if any, discovery of the facts. (Moving party obtained a release from stay by the Bankruptcy Court to have this motion heard and determined.)   It is alleged that WILKENS, was allegedly operating on behalf of defaulted party, MCKINZIE and his company, RP REAL ESTATE.  It is alleged that it was she who first approached plaintiffs and made misrepresentations about their foreclosure, and it was she who allegedly introduced plaintiffs to defendants MCKINZIE and RAD-YAGENEH.  It is contended that WILKENS induced plaintiffs to sign a contract for sale of the property to RP Real Estate, but that contract was never executed and none of the damages alleged flow from that contract.  Instead, the sales contract that is the subject of this litigation, is between plaintiffs and defendant RAD-YAGENEH. Title to the subject property was subsequently transferred by him to defendant ALLIED MANAGEMENT TRUST, an entity allegedly owned and controlled by defendant RAD-YAGENEH, which currently hold title.

WILKENS' counsel argues that his client's involvement in the contract signed between RAD-YAGENEH and plaintiffs was "peripheral" because all she did was introduce plaintiffs to RAD-YAGENEH.  He claims that she was not present during the meeting between plaintiffs and RAD-YAGENEH and MCKINZIE that resulted in the execution of the subject contract for sale.  Plaintiffs' counsel, appearing in Court in support of the motion, supports the view that WILKENS' involvement was peripheral to the execution of that contract.  Opposing parties argue that the $30,000 payment to plaintiffs has "seemed to muddy their memory...[leading] one to conclude that there is collusion" between the settling parties.  But opposing parties offer no contrary evidence as to what they contend was the true nature of WILKEN'S involvement in the sale.  Non-settling parties do not allege any agency relationship between them and WILKENS.  Looking at the record before it, there is no evidence before this Court as to what, if any, benefit WILKENS obtained as a result of her alleged tortuous actions nor is there any competent evidence as to the exact relationship between WILKENS and non-settling parties.  While the allegations of the First Amended Complaint state that WILKENS may have some ownership interest in one or more of defendant companies, there is no evidence of such ownership.

The Settlement Agreement herein calls for a cash payment by WILKENS of $30,000, and potential additional payments to plaintiffs on a sliding scale; the additional payment depending upon the recoveries, if any, by plaintiffs against other defendants.  The maximum amount that the settling defendant may be obligated to pay to the plaintiffs is the sum of $50,000, including the amount already paid, and including attorneys' fees and costs.  Decl. Of Richard M. Grabstein, paragraph. 3; Settlement Agreement.  As additional consideration, WILKENS has agreed to supply "full and truthful information regarding the facts of the case" and to cooperate with plaintiffs in various ways in connection with litigation of this matter.

---

Order

# EXHIBIT D

Defendant RAD-YAGENEH argues that the settlement is in bad faith because it is proportionately low compared to the settling defendant's true liability and further, that the Agreement is a produce of collusion. This Court does not agree. First, the payment of $30,000 cash and possible additional payment of up to $50,000 represents approximately one-third to one-half of the actual damages (loss of equity) of approximately $100,000 claimed by plaintiffs. The additional potential recovery of up to $400,000 is for non-economic losses, including statutory treble damages, attorney's fees and costs, or punitive damages. Defendants are not joint and severally liable for the damages for the statutory violations alleged in the first and second causes of action (triggering treble damages), for fraud and misrepresentation, deceit, undue influence or for unfair business practices. Bad faith is not established by a showing that a settling defendant paid less than her theoretical proportionate or fair share of the value of plaintiff's case. In light of all the above factors, and limited evidence presented to this Court, this Court finds that the settlement amount agreed upon here appears to be within the "ballpark" of WILKENS proportionate liability in this case. Indeed, there appears to be little argument by opposing parties as to reasonableness of the amount of the settlement. Rather, the major thrust of the argument in opposition is that the WILKENS' agreement to cooperate with plaintiff by providing information to them about RAD-YAGENEH in this and other matters, together with the sliding scale aspect of the settlement, provides an incentive to WILKENS to perjure herself and fabricate evidence against RAD-YAGENEH. Hence, they argue, this settlement was not made in good faith.

The Court notes that sliding scale agreements are authorized by statute (CCP § 877.5), and a sliding scale agreement does not in itself constitute a settlement in bad faith. The court notes that CCP § 877.5, subd. (a)(2), was adopted as a partial solution to the problem of the potential collusive nature of sliding scale settlement agreements and the unfair prejudice to the nonsettling defendant. It requires the parties to such an agreement to advise the court of the terms of the agreement and requires the court, upon request, to tell the jury the essential nature of the agreement and "the possibility that the agreement may bias the testimony of the alleged tortfeasor or tortfeasors who entered into the agreement." See, Moreno v Sayre (1984, 2nd Dist) 162 Cal App 3d 116, 208 Cal Rptr 444.

The cooperation provisions that defendants RAD-YAGENEH complains of here are not atypical in Settlement Agreements. These agreements, acknowledged as additional consideration for the settlement, may also be subject to disclosure at the time trial to show bias or motive when, and if, defendant WILKINS testifies. In any event, WILKINS' is obligated to respond to discovery truthfully and to testify truthfully whether or not specified in any Settlement Agreement. Further, as pointed out by WILKINS, she is not immunized from liability regarding any disclosures from cross actions by RAD-YAGENEH or MCKINZIE, if any exist. Hence, the cooperation provisions in the Settlement Agreement herein, in the opinion of this Court, do not amount to a showing of bad faith sufficient under C.C.P. section 877.6 when all factors in this case are considered. Those factors include the determination that the amount paid by WILKINS in settlement is "within the reasonable range of her proportional share of comparative liability for plaintiffs alleged injuries, the uncertainty of recovery against other defendants given the bankruptcy petition filed by opposing parties on this case, and the current stay status of this litigation for an unknown period of time.

WHEREFORE, the Court and that the settlement between WILKINS and plaintiffs is in good faith pursuant to C.C.P. section 877.6 and IT IS HEREBY FURTHER ORDERED:

1.    Defendant WILKENS' Motion for an Order Determining Good Faith Settlement pursuant to C.C.P. Section 877.6 and Rules of Court, Rule 330 is hereby GRANTED.

2.    Any and all claims by alleged joint tortfeasors for equitable comparative contribution or partial or comparative indemnity, based upon comparative negligence or comparative fault are hereby barred and dismissed, including any such claims alleged in Cross Complaints for damages filed by cross-complainants ALLIED MANAGEMENT TRUST or R RAD-YAGENEH against WILKENS.

SO ORDERED.

Dated: 08/21/2005

_____
Judge Jo-Lynne Q. Lee

_____
Order

# EXHIBIT D

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | Scott VS Ycganeh | RG03129933 |

ADDITIONAL ADDRESSEES

ORME AND GRABSTEIN
Attn: Grabstein, Richard M.
685 Market Street
Suite 370
San Francisco, CA   94105-____

Order

Tuesday, October 25, 2005.max

**EXHIBIT D**

FORM B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT  NORTHERN  DISTRICT OF CALIFORNIA | |
|---|---|
| Name of Debtor<br>Ramin Yeganeh | Case Number<br>05-30047 TEC 7 |

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Nicole Wilkins | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars | |
|---|---|---|
| Name and address where notices should be sent:<br>Cheryl C. Rouse<br>345 Franklin Street<br>San Francisco, CA 94102<br>Telephone number:  415-575-9444 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor: | Check here<br>if this claim  ☐ replaces<br>             ☒ amends   a previously filed claim, dated: 7/18/05 |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other Claim for Indemnity, Contribution

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____ _____ _____
  Unpaid compensation for services performed
  from _____ to _____
         (date)        (date)

**2. Date debt was incurred:**  12/3/03

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**  $  74,000.00
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral:  $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $ _____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $ _____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>3/10/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Cheryl C. Rouse, Attorney   /s/ Cheryl C. Rouse (SBN 118313) |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to  $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT E

IN RE:  Ramin Yeganeh
Case No.: 05-30047 TEC7

## EXHIBIT A TO PROOF OF CLAIM

Nicole Wilkins is named as a defendant in that certain action entitled Robert Scott and Alyssa Scott v. R. Rad, a.k.a K. Rad, etc. et al., Case No. RG 03-129933, in the Superior Court, County of Alameda, State of California, which was filed on December 3, 2003. A First Amended Complaint was filed on February 18, 2004. In that case, Ms. Wilkins filed a Cross-Complaint against the debtor for indemnification, apportionment of fault and declaratory relief.

Debtor is also named as a defendant in Scott case. In the Scott case, on August 3, 2004, debtor filed a cross-complaint against Nicole Wilkins which stated causes of action for Indemnification, Apportionment of Fault and Declaratory Relief.

On or about December 24, 2004, Nicole Wilkins entered into a settlement agreement with the plaintiffs Robert and Alyssa Scott. As part of that agreement, Plaintiffs' complaint will be dismissed against Ms. Wilkins. Ms. Wilkins prepared a motion to determine good faith of settlement, which was heard on August 12, 2005, and granted by the court on August 21, 2005. (The bankruptcy court granted Ms. Wilkins relief from stay to go forward with the motion.) Attached hereto is a copy of the Order - Motion to Confirm Good Faith Settlement Granted. Pursuant to the terms of the settlement, Nicole Wilkins paid the sum of $30,000 to the Plaintiffs. The settlement is a sliding scale settlement and Ms. Wilkins has additional liability exposure to a maximum obligation of $50,000. Ms. Wilkins also has a claim for attorneys fees and costs in the amount of $24,000 against debtor. Accordingly, the proof of claim filed by Ms. Wilkins on July 18, 2005 is amended from $500,000 to $74,000, based upon her settlement with the Plaintiffs.

**EXHIBIT E**

Kletter & Peretz
Attn: Peretz, Yosef
One Embarcadero Center
Suite 1200
San Francisco, CA  94111

Attorney at Law
Attn: Gilg, William E.
305 San Bruno Avenue West
San Bruno, CA  94066-____

---

## Superior Court of California, County of Alameda
## Wiley W. Manuel Courthouse

| | |
|---|---|
| Scott | No. <u>RG03129933</u> |
| Plaintiff/Petitioner(s) | |
| VS. | Order |
| | Motion to Confirm Good Faith Settlement |
| | Granted |
| Yeganeh | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

---

The Motion to Confirm Good Faith Settlement filed for Nicole Wilkins was set for hearing on 08/12/2005 at 09:00 AM in Department 110 before the Honorable Jo-Lynne Q. Lee.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

Continued hearing on Defendant and Cross-Complainant NICOLE WILKENS' Motion for an Order Determining Good Faith Settlement was held on August 12, 2005 before the Hon. Jo-Lynne Q. Lee, Judge, Alameda County Superior Court, Dept. 110. Richard Grabstein appeared for moving party, Defendant and Cross-Complainant NICOLE WILKENS and William Gilg appeared for Defendants R. RAD-YAGANEH and ALLIED MANAGEMENT TRUST, and Cary Kletter appeared for Plaintiffs Robert and Alyssa Scott.

Defendant and Cross-Complainant NICOLE WILKENS seeks an Order determining that her settlement with Plaintiffs ROBERT SCOTT and ALYSSA SCOTT is in good faith pursuant to Code of Civil Procedure 877.6 and an order dismissing cross-actions against her for equitable comparative contribution or equitable indemnity brought by defendant and cross-complainants R. RAD-YAGANEH, ALLIED MANAGEMENT TRUST or others. Defendants R. RAD-YAGANEH and ALLIED MANAGEMENT TRUST (hereafter collectively referred to as RAD-YEGANEH) initially opposed this motion on procedural grounds arguing that WILKENS failure to produce a copy of the Settlement Agreement. Pursuant to order of this Court, a sealed copy of the Confidential Settlement Agreement was provided to the Court for in camera inspection and to counsel for defendants RAD-YAGENEH under a Protective Order.

The party asserting the lack of good faith in a settlement agreement shall have the burden of proof on that issue. Cal. Civ. Proc. Code § 877.6(d). In this case, opposing parties fail to meet their burden of proof. In Tech-Bilt, Inc. v. Woodward-Clyde & Associates (1985), 38 Cal.3d 488, the Supreme Court explained: "[The] intent and policies underlying section 877.6 require that a number of factors be taken into account [in determining good faith] including a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settler should pay less in settlement than he would if he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortuous conduct aimed to injure the interests of nonsettling defendants. [citation.] Finally, practical considerations obviously require that the evaluation be on the basis of information available at the time

---

Order

---

**EXHIBIT E**

of settlement. [A] defendant's settlement figure must not be disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be." Id. at pp 499-500.

This case involves the sale of plaintiff's home to nonsettling defendants RAD-YAGENEH (defendant ALLIED MANAGEMENT TRUST is currently the holder of title) through a series of transactions between plaintiffs and defendant WILKENS, who allegedly represented herself to be an foreclosure expert", defendant MCKINZIE (defaulted party), and defendant RAD-YAGENEH. It is alleged that defendants were not licensed real estate brokers, and in violation of various Civil Code and Business and Professions' Code provisions, engaged in fraudulent misrepresentations and manipulative sales tactics to convince plaintiffs, whose home was subject to foreclosure, to transfer title to their house for a cash payment of $2,000 and pay-off of the outstanding mortgage, when in fact plaintiffs had $100,000 equity in the house. Plaintiffs' First Amended Complaint sets forth causes of action for Violation of Home Equity Sales Act (C.C. section 1698); Breach of Duty under the Foreclosure Consultants Act (CC section 2945); Fraud, Deceit and Misrepresentation; Invasion of Privacy; and Unfair Business Practices in violation of Business and Professions Code section 17200 et. seq.   In addition to recovery of the alleged $100,000 loss of equity, plaintiffs seek a declaration voiding the sale, compensatory damages for emotional distress, punitive damages, reasonable attorney's fees and costs and treble damages for statutory violations alleged. According to the parties, the potential recovery against all defendants is between $100,000, the alleged loss of equity and up to $500,000, if plaintiffs recover the non-economic damages they seek.

Although the original Complaint was filed in December 2003 (and the First Amended Complaint filed in February, 2004), this matter was stayed during the pendency of this action due to the bankruptcy petition filed by non-settling party, RAD-YAGANEH. As a result, there has been limited, if any, discovery of the facts. (Moving party obtained a release from stay by the Bankruptcy Court to have this motion heard and determined.)   It is alleged that WILKENS, was allegedly operating on behalf of defaulted party, MCKINZIE and his company, RP REAL ESTATE. It is alleged that it was she who first approached plaintiffs and made misrepresentations about their foreclosure, and it was she who allegedly introduced plaintiffs to defendants MCKINZIE and RAD-YAGENEH. It is contended that WILKENS induced plaintiffs to sign a contract for sale of the property to RP Real Estate, but that contract was never executed and none of the damages alleged flow from that contract. Instead, the sales contract that is the subject of this litigation, is between plaintiffs and defendant RAD-YAGENEH. Title to the subject property was subsequently transferred by him to defendant ALLIED MANAGEMENT TRUST, an entity allegedly owned and controlled by defendant RAD-YAGENEH, which currently hold title.

WILKENS' counsel argues that his client's involvement in the contract signed between RAD-YAGENEH and plaintiffs was "peripheral" because all she did was introduce plaintiffs to RAD-YAGENEH. He claims that she was not present during the meeting between plaintiffs and RAD-YAGENEH and MCKINZIE that resulted in the execution of the subject contract for sale. Plaintiffs' counsel, appearing in Court in support of the motion, supports the view that WILKENS' involvement was peripheral to the execution of that contract. Opposing parties argue that the $30,000 payment to plaintiffs has "seemed to muddy their memory...[leading] one to conclude that there is collusion" between the settling parties. But opposing parties offer no contrary evidence as to what they contend was the true nature of WILKEN'S involvement in the sale. Non-settling parties do not allege any agency relationship between them and WILKENS. Looking at the record before it, there is no evidence before this Court as to what, if any, benefit WILKENS obtained as a result of her alleged tortuous actions nor is there any competent evidence as to the exact relationship between WILKENS and non-settling parties. While the allegations of the First Amended Complaint state that WILKENS may have some ownership interest in one or more of defendant companies, there is no evidence of such ownership.

The Settlement Agreement herein calls for a cash payment by WILKENS of $30,000, and potential additional payments to plaintiffs on a sliding scale; the additional payment depending upon the recoveries, if any, by plaintiffs against other defendants. The maximum amount that the settling defendant may be obligated to pay to the plaintiffs is the sum of $50,000, including the amount already paid, and including attorneys' fees and costs. Decl. Of Richard M. Grabstein, paragraph. 3; Settlement Agreement. As additional consideration, WILKENS has agreed to supply "full and truthful information regarding the facts of the case" and to cooperate with plaintiffs in various ways in connection with litigation of this matter.

---

Order

# EXHIBIT E

Defendant RAD-YAGENEH argues that the settlement is in bad faith because it is proportionately low compared to the settling defendant's true liability and further, that the Agreement is a produce of collusion. This Court does not agree. First, the payment of $30,000 cash and possible additional payment of up to $50,000 represents approximately one-third to one-half of the actual damages (loss of equity) of approximately $100,000 claimed by plaintiffs. The additional potential recovery of up to $400,000 is for non-economic losses, including statutory treble damages, attorney's fees and costs, or punitive damages. Defendants are not joint and severally liable for the damages for the statutory violations alleged in the first and second causes of action (triggering treble damages), for fraud and misrepresentation, deceit, undue influence or for unfair business practices. Bad faith is not established by a showing that a settling defendant paid less than her theoretical proportionate or fair share of the value of plaintiff's case. In light of all the above factors, and limited evidence presented to this Court, this Court finds that the settlement amount agreed upon here appears to be within the "ballpark" of WILKENS proportionate liability in this case. Indeed, there appears to be little argument by opposing parties as to reasonableness of the amount of the settlement. Rather, the major thrust of the argument in opposition is that the WILKENS' agreement to cooperate with plaintiff by providing information to them about RAD-YAGENEH in this and other matters, together with the sliding scale aspect of the settlement, provides an incentive to WILKENS to perjure herself and fabricate evidence against RAD-YAGENEH. Hence, they argue, this settlement was not made in good faith.

The Court notes that sliding scale agreements are authorized by statute (CCP § 877.5), and a sliding scale agreement does not in itself constitute a settlement in bad faith. The court notes that CCP § 877.5, subd. (a)(2), was adopted as a partial solution to the problem of the potential collusive nature of sliding scale settlement agreements and the unfair prejudice to the nonsettling defendant. It requires the parties to such an agreement to advise the court of the terms of the agreement and requires the court, upon request, to tell the jury the essential nature of the agreement and "the possibility that the agreement may bias the testimony of the alleged tortfeasor or tortfeasors who entered into the agreement." See, Moreno v Sayre (1984, 2nd Dist) 162 Cal App 3d 116, 208 Cal Rptr 444.

The cooperation provisions that defendants RAD-YAGENEH complains of here are not atypical in Settlement Agreements. These agreements, acknowledged as additional consideration for the settlement, may also be subject to disclosure at the time trial to show bias or motive when, and if, defendant WILKINS testifies. In any event, WILKINS' is obligated to respond to discovery truthfully and to testify truthfully whether or not specified in any Settlement Agreement. Further, as pointed out by WILKINS, she is not immunized from liability regarding any disclosures from cross actions by RAD-YAGENEH or MCKINZIE, if any exist. Hence, the cooperation provisions in the Settlement Agreement herein, in the opinion of this Court, do not amount to a showing of bad faith sufficient under C.C.P. section 877.6 when all factors in this case are considered. Those factors include the determination that the amount paid by WILKINS in settlement is "within the reasonable range of her proportional share of comparative liability for plaintiffs alleged injuries, the uncertainty of recovery against other defendants given the bankruptcy petition filed by opposing parties on this case, and the current stay status of this litigation for an unknown period of time.

WHEREFORE, the Court and that the settlement between WILKINS and plaintiffs is in good faith pursuant to C.C.P. section 877.6 and IT IS HEREBY FURTHER ORDERED:

1.      Defendant WILKENS' Motion for an Order Determining Good Faith Settlement pursuant to C.C.P. Section 877.6 and Rules of Court, Rule 330 is hereby GRANTED.

2.      Any and all claims by alleged joint tortfeasors for equitable comparative contribution or partial or comparative indemnity, based upon comparative negligence or comparative fault are hereby barred and dismissed, including any such claims alleged in Cross Complaints for damages filed by cross-complainants ALLIED MANAGEMENT TRUST or R RAD-YAGENEH against WILKENS.

SO ORDERED.

Dated:  08/21/2005

_____
Judge Jo-Lynne Q. Lee

---

Order

**EXHIBIT E**

| SHORT TITLE: Scott VS Yeganeh | CASE NUMBER: RG03129933 |
|---|---|

ADDITIONAL ADDRESSEES

ORME AND GRABSTEIN
Attn: Grabstein, Richard M.
685 Market Street
Suite 370
San Francisco, CA   94105-____

Order

**EXHIBIT E**

ELECTRONICALLY FILED

NOV 0 1 2006

1  Charles P. Maher, State Bar No. 124748
   Jeffrey L. Fillerup, State Bar No. 120543
2  Nhung Le, State Bar No. 209552
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3  Rincon Center II, 121 Spear Street, Suite 200
   San Francisco, California 94105-1582
4  Telephone No.: 415.356.4600
   Fax No.: 415.356.4610
5
   Attorneys for Andrea A. Wirum
6  Trustee in Bankruptcy

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  In re RAMIN YEGANEH, | Case No. 05-30047 TEC<br>Chapter 7 |
| 12 | |
| 13                Debtor. | |
| 14  CHARLES E. SIMS, Trustee, | Adversary Proceeding<br>No.  05-3240 TC |
| 15                Plaintiff, | |
| 16  v. | |
| 17  F. NAMDARAN aka FRAN NAMDARAN<br>aka FARIN NAMDARAN aka FARIN | |
| 18  YEGANEH aka FRAN YEGANEH, | |
| 19                Defendant. | |
| 20  CHARLES E. SIMS, Trustee, | Adversary Proceeding<br>No.  05-3241 TC |
| 21                Plaintiff, | |
| 22 | |
| 23  v. | |
| 24  ALLIED MANAGEMENT TRUST and K.<br>YEGANEH aka KEN YEGANEH aka<br>KAIKHOSROW YEGANEH, | |
| 25                Defendants. | |
| 26 | |

27

28

1

| | | |
|---|---|---|
| 1 | CHARLES E. SIMS, Trustee, | Adversary Proceeding |
| 2 | | No. 05-3242 TC |
| | Plaintiff, | |
| 3 | | |
| | v. | |
| 4 | | |
| | COAST DEVELOPMENT TRUST and | |
| 5 | FARIN YEGANEH aka F. NAMDARAN aka | |
| | FRAN NAMDARAN aka FARIN | |
| 6 | NAMDARAN aka FRAN YEGANEH, | |
| 7 | Defendants. | |
| 8 | | |
| 9 | CHARLES E. SIMS, Trustee, | Adversary Proceeding |
| | | No. 05-3243 TC |
| 10 | Plaintiff, | |
| 11 | v. | |
| 12 | ADVANTA TRUST and FARIN YEGANEH | |
| | aka F. NAMDARAN aka FRAN | |
| 13 | NAMDARAN aka FARIN NAMDARAN aka | |
| | FRAN YEGANEH, | |
| 14 | | |
| 15 | Defendants. | |
| 16 | | |

## DECLARATION OF ANDREA A. WIRUM

I, Andrea A. Wirum, declare as follows:

    1.    On September 21, 2006, the United States Trustee appointed me to succeed Charles E. Sims as Trustee in Bankruptcy of the estate of the above Debtor. Since my appointment, I have become familiar with the status of the case by reviewing documents and pleadings. Based upon my review, I am familiar with the total amounts of debt asserted against the estate, and the amount of funds currently on hand. I have also become generally familiar with the litigation commenced against insiders of the Debtor for recovery of transfers of real property to them.

    2.    Attached as **Exhibit A** is an authentic copy of the claims register in this case, which was retrieved from the Court's electronic filing system on November 1, 2006.

    3.    The claims register contains secured claims (in favor of lenders with security interests in two transferred properties), a claim in favor of Robert and Alyssa Scott in the amount

2

1   of $500,000, a claim in favor of Phyllis Shoop in the amount of $250,000, a claim in favor of

2   Nicole Wilkins in the amount of $74,000, and numerous duplicate claims in favor of judgment

3   creditors. By compromise negotiated by my predecessor, the judgment claims were reduced to

4   $399,946.88 (without post-judgment interest) in favor of the individual judgment creditors, and a

5   general unsecured claim for attorneys fees in the amount of $2,573,827, and a subordinated

6   penalty claim for attorneys fees in the amount of $1,050,935. As of the date of this declaration,

7   none of these claims has been paid.

8       4.      There is currently approximately $1,583,000 in funds on hand which represent the

9   net proceeds of sale of five of the properties disclosed by the Debtor in his Schedule A after

10  payment of approved administrative expenses through April 30, 2006. I am informed and believe

11  that the remaining two disclosed properties have a gross value of between $800,000 and

12  $1,000,000.

13      5.      Sale of the disclosed property only will result in a large deficiency. Therefore,

14  recovery of fraudulently conveyed property is necessary to ensure payment in full of allowed

15  claims and approved administrative expenses. I note that administrative expenses continue to be

16  accrued in large part due to the litigation in this adversary proceeding and the three related to it.

17      I declare under penalty of perjury that the above statements are true and that if called as a

18  witness I could and would testify to their truthfulness. This declaration is executed on the K T

19  day of November 2006 in _Labiyelle_____, California.

20

21

22                      _Andrea W_____
                        Andrea A. Wirum

23

24  208586 :

25

26

27

28

                                    3

# EXHIBIT A

# Northern District of California
# Claims Register

### 05-30047 Ramin Yeganeh CASE CONVERTED on 01/21/2005

**Judge:** Thomas E. Carlson          **Chapter:** 7
**Office:** San Francisco             **Last Date to file claims:** 07/18/2005
**Trustee:** Andrea A. Wirum          **Last Date to file (Govt):**

| *Creditor:*<br>CitiMortgage, Inc.<br>PO Box 9481<br>Gaithersburg, MD 20898 | **Claim No: 1**<br>*Filed:*   02/15/2005<br>*Entered:* 02/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* vb<br>*Modified:* |
|---|---|---|
| Secured claimed: $103736.64<br>**Total    claimed: $103736.64** | | |
| *History:*<br>   1-1     02/15/2005 Claim #1 filed by CitiMortgage, Inc. , total amount claimed: $103736.64 (vb) | | |
| *Description:* | | |
| *Remarks:* | | |

| *Creditor:*<br>CitiMortgage, Inc.<br>PO Box 9481<br>Gaithersburg, MD 20898 | **Claim No: 2**<br>*Filed:*   02/16/2005<br>*Entered:* 02/16/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* vb<br>*Modified:* |
|---|---|---|
| Secured claimed: $83332.43<br>**Total    claimed: $83332.43** | | |
| *History:*<br>   2-1     02/16/2005 Claim #2 filed by CitiMortgage, Inc. , total amount claimed: $83332.43 (vb) | | |
| *Description:* | | |
| *Remarks:* | | |

| *Creditor:*<br>Robert Scott and Alyssa Scott<br>c/o Kletter & Peretz<br>One Embarcadero Center, Ste. 1200<br>San Francisco, CA 94111 | **Claim No: 3**<br>*Filed:*   04/28/2005<br>*Entered:* 04/28/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Kletter, Cary<br>*Modified:* 05/13/2005 |
|---|---|---|
| Unsecured claimed: $500000.00<br>**Total    claimed: $500000.00** | | |
| *History:*<br>   3-1     04/28/2005 Claim #3 filed by Robert Scott and Alyssa Scott , total amount claimed: $500000 (Kletter, Cary) | | |
| *Description:* (3-1) Twoo Claims Were Attached As One Proof of Claim. The Address Was Corrected. | | |
| *Remarks:* (3-1) There Are No Amounts Listed On The Claims. | | |

| *Creditor:*<br>Phyllis Shoop | **Claim No: 4**<br>*Filed:*   04/28/2005 | *Status:*<br>*Filed by:* CR |
|---|---|---|

| c/o Kletter & Peretz<br>One Embarcadero Center, Suite 1200<br>San Francisco, CA 94111 | *Entered:* 04/28/2005 | *Entered by:* Kletter, Cary<br>*Modified:* 05/13/2005 |
|---|---|---|

Unsecured claimed: $250000.00

**Total**    **claimed: $250000.00**

*History:*

4-1    04/28/2005 Claim #4 filed by Phyllis Shoop , total amount claimed: $250000 (Kletter, Cary)

*Description:* (4-1) The Claim is attached with another claim.

*Remarks:* (4-1) The amounts are not listed on the physical claim. Called Attorney.

| *Creditor:*<br>Farbstein & Blackman, APC<br>John S. Blackman<br>411 Borel Ave., #425<br>San Mateo, CA 94402 | **Claim No: 5**<br>*Filed:* 05/13/2005<br>*Entered:* 05/18/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* vb<br>*Modified:* |
|---|---|---|

Unsecured claimed: $838.27

**Total**    **claimed: $838.27**

*History:*

5-1    05/13/2005 Claim #5 filed by Farbstein & Blackman, APC , total amount claimed: $838.27 (vb)

*Description:*

*Remarks:*

| *Creditor:*<br>CitiMortgage, Inc.<br>PO Box 9481<br>Gaithersburg, MD 20898 | **Claim No: 6**<br>*Filed:* 06/06/2005<br>*Entered:* 06/06/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* vb<br>*Modified:* |
|---|---|---|

Secured claimed: $103736.54

**Total**    **claimed: $103736.54**

*History:*

6-1    06/06/2005 Claim #6 filed by CitiMortgage, Inc. , total amount claimed: $103736.54 (vb)

*Description:*

*Remarks:*

| *Creditor:*<br>Phillip Alarcon<br>c\o Evan Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive<br>Suite 1100<br>San Diego, CA 92121 | **Claim No: 7**<br>*Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|

Unsecured claimed:    $801608.25

Secured    claimed: $3506396.93

**Total**    **claimed: $4308005.18**

*History:*

CANB Live Database - Modify the description for an existing claim

| 7-1 | 07/15/2005 Claim #7 filed by Phillip Alarcon , total amount claimed: $4308005.18 (Sorem, Evan) |
|---|---|

*Description:*

*Remarks:*

| *Creditor:* William Lee Beasley II c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 8** *Filed:* 07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |
|---|---|---|

Unsecured claimed:  $801608.25

Secured    claimed: $3493983.13

**Total**    **claimed: $4295591.38**

*History:*

| 8-1 | 07/15/2005 Claim #8 filed by William Lee Beasley II , total amount claimed: $4295591.38 (Sorem, Evan) |
|---|---|

*Description:*

*Remarks:*

| *Creditor:* Cleo Carey c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 9** *Filed:* 07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |
|---|---|---|

Unsecured claimed:  $801608.25

Secured    claimed: $3490661.95

**Total**    **claimed: $4292270.20**

*History:*

| 9-1 | 07/15/2005 Claim #9 filed by Cleo Carey , total amount claimed: $4292270.2 (Sorem, Evan) |
|---|---|

*Description:*

*Remarks:*

| *Creditor:* Sione and Senolita Tuipulotu c/o Evan R. Sorem DLA Piper Rudnick Gray Cary US LLP 4365 Executive Drive, Suite 1100 San Diego, CA 92122 | **Claim No: 10** *Filed:* 07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |
|---|---|---|

Unsecured claimed:  $801608.25

Secured    claimed: $3499556.69

**Total**    **claimed: $4301164.94**

*History:*

| 10-1 | 07/15/2005 Claim #10 filed by Sione and Senolita Tuipulotu , total amount claimed: $4301164.94 (Sorem, Evan) |
|---|---|

*Description:*

*Remarks:*

| *Creditor:*<br>Adolphurs and Nadine Turner<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary US LLP<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92122 | **Claim No: 11**<br>*Filed:*    07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|

| Unsecured claimed:   $801608.25 |
| Secured    claimed: $3494027.28 |
| **Total**       **claimed: $4295635.53** |

*History:*

11-1      07/15/2005 Claim #11 filed by Adolphurs and Nadine Turner , total amount claimed: $4295635.53 (Sorem, Evan)

*Description:*

*Remarks:*

| *Creditor:*<br>Leonard Williams<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary US LLP<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92122 | **Claim No: 12**<br>*Filed:*    07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* 07/18/2005 |
|---|---|---|

| Unsecured claimed:   $801608.25 |
| Secured    claimed: $3503438.00 |
| **Total**       **claimed: $4305046.25** |

*History:*

12-1      07/15/2005 Claim #12 filed by Leonard Williams , total amount claimed: $4305046.25 (Sorem, Evan)

*Description:* (12-1) The Attorney Was Contacted and they had system problems. This is why they claim is filed in duplicate.

*Remarks:*

| *Creditor:*<br>Willie Roberson<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | **Claim No: 13**<br>*Filed:*    07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* 07/18/2005 |
|---|---|---|

| Unsecured claimed:   $801608.25 |
| Secured    claimed: $3485946.40 |
| **Total**       **claimed: $4287554.65** |

*History:*

13-1      07/15/2005 Claim #13 filed by Willie Roberson , total amount claimed: $4287554.65 (Sorem, Evan)

*Description:* (13-1) The Attorney Was Contacted. They had Computer Problems. This Is Why The Claim Is Filed In

Duplicate.

*Remarks:*

| Creditor: | Claim No: 14 | Status: |
|---|---|---|
| Kenneth Hearne, Sr.<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary US LLP<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92122 | *Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | *Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* 07/18/2005 |

Unsecured claimed:  $801608.25

Secured  claimed: $3513254.40

**Total**  **claimed: $4314862.65**

*History:*

14-1  07/15/2005 Claim #14 filed by Kenneth Hearne, Sr. , total amount claimed: $4314862.65 (Sorem, Evan)

*Description:* (14-1) The Attorney Was Contacted. They Had Computer Problems. This Is Wny The Claim Is Filed In Duplicate.

*Remarks:*

| Creditor: | Claim No: 15 | Status: |
|---|---|---|
| Hari and Krishna Chand<br>c/o Evan Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | *Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | *Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* 07/18/2005 |

Unsecured claimed:  $801608.25

Secured  claimed: $3508630.72

**Total**  **claimed: $4310238.97**

*History:*

15-1  07/15/2005 Claim #15 filed by Hari and Krishna Chand , total amount claimed: $4310238.97 (Sorem, Evan)

*Description:* (15-1) The Attorney Was Contacted. They Had Computer Problems. This Is Why The Claim Is Duplicate.

*Remarks:*

| Creditor: | Claim No: 16 | Status: |
|---|---|---|
| Willie Roberson<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | *Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | *Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |

Unsecured claimed:  $801608.25

Secured  claimed: $3485946.40

**Total**  **claimed: $4287554.65**

*History:*

16-1  07/15/2005 Claim #16 filed by Willie Roberson , total amount claimed: $4287554.65 (Sorem, Evan)

*Description:*

*Remarks:*

| Creditor:<br>Cheryl Dockery<br>c/o Evan Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 17<br>Filed:    07/15/2005<br>Entered: 07/15/2005 | Status:<br>Filed by: CR<br>Entered by: Sorem, Evan<br>Modified: |
|---|---|---|

|   |
|---|
| Unsecured claimed:  $801608.25 |
| Secured    claimed: $3501646.30 |
| **Total**      **claimed: $4303254.55** |

| History: |
|---|
| <u>17-1</u>    07/15/2005 Claim #17 filed by Cheryl Dockery , total amount claimed: $4303254.55 (Sorem, Evan) |
| Description: |
| Remarks: |

| Creditor:<br>Second Baptist Church of Flower<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 18<br>Filed:    07/15/2005<br>Entered: 07/15/2005 | Status:<br>Filed by: CR<br>Entered by: Sorem, Evan<br>Modified: |
|---|---|---|

|   |
|---|
| Unsecured claimed:  $801608.25 |
| Secured    claimed: $3492414.42 |
| **Total**      **claimed: $4294022.67** |

| History: |
|---|
| <u>18-1</u>    07/15/2005 Claim #18 filed by Second Baptist Church of Flower , total amount claimed: $4294022.67 (Sorem, Evan) |
| Description: |
| Remarks: |

| Creditor:<br>Yolanda Segura and Rose Rivera<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 19<br>Filed:    07/15/2005<br>Entered: 07/15/2005 | Status:<br>Filed by: CR<br>Entered by: Sorem, Evan<br>Modified: |
|---|---|---|

|   |
|---|
| Unsecured claimed:  $801608.25 |
| Secured    claimed: $3492819.18 |
| **Total**      **claimed: $4294427.43** |

| History: |
|---|
| <u>19-1</u>    07/15/2005 Claim #19 filed by Yolanda Segura and Rose Rivera , total amount claimed: $4294427.43 (Sorem, Evan) |
| Description: |
| Remarks: |

CANB Live Database - Modify the description for an existing claim

| Creditor:<br>Henry Stevens<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 20<br>*Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | Status:<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|

| Unsecured claimed:  $801608.25 |
| Secured      claimed: $3495819.03 |
| **Total**        **claimed: $4297427.28** |

*History:*
20-1   07/15/2005 Claim #20 filed by Henry Stevens , total amount claimed: $4297427.28 (Sorem, Evan)

*Description:*

*Remarks:*

| Creditor:<br>Samuel and Joan Trail<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 21<br>*Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | Status:<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|

| Unsecured claimed:  $801608.25 |
| Secured      claimed: $3504186.42 |
| **Total**        **claimed: $4305794.67** |

*History:*
21-1   07/15/2005 Claim #21 filed by Samuel and Joan Trail , total amount claimed: $4305794.67 (Sorem, Evan)

*Description:*

*Remarks:*

| Creditor:<br>George Porter<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 22<br>*Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | Status:<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|

| Unsecured claimed:  $801608.25 |
| Secured      claimed: $3501633.63 |
| **Total**        **claimed: $4303241.88** |

*History:*
22-1   07/15/2005 Claim #22 filed by George Porter , total amount claimed: $4303241.88 (Sorem, Evan)

*Description:*

*Remarks:*

| Creditor:<br>Pamela Gene Helvie<br>c/o Evan Sorem | Claim No: 23<br>*Filed:* 07/15/2005<br>*Entered:* 07/15/2005 | Status:<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan |
|---|---|---|

CANB Live Database - Modify the description for an existing claim                    Page 8 of 13

| DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | | *Modified:* |
|---|---|---|
| Unsecured claimed:  $801678.25<br>Secured    claimed: $3501722.58<br>**Total       claimed: $4303400.83** | | |

*History:*
23-1      07/15/2005 Claim #23 filed by Pamela Gene Helvie , total amount claimed: $4303400.83 (Sorem, Evan)

*Description:*

*Remarks:*

| *Creditor:*<br>Joe and Joannah Jackson<br>c/o Evan Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | **Claim No: 24**<br>*Filed:*   07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|
| Unsecured claimed:  $801608.25<br>Secured    claimed: $3493041.40<br>**Total       claimed: $4294649.65** | | |

*History:*
24-1      07/15/2005 Claim #24 filed by Joe and Joannah Jackson , total amount claimed: $4294649.65 (Sorem, Evan)

*Description:*

*Remarks:*

| *Creditor:*<br>Gloria Penney<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | **Claim No: 25**<br>*Filed:*   07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* |
|---|---|---|
| Unsecured claimed:  $801608.25<br>Secured    claimed: $3495631.08<br>**Total       claimed: $4297239.33** | | |

*History:*
25-1      07/15/2005 Claim #25 filed by Gloria Penney , total amount claimed: $4297239.33 (Sorem, Evan)

*Description:*

*Remarks:*

| *Creditor:*<br>Yolanda Jackson<br>c/o Evan Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | **Claim No: 26**<br>*Filed:*   07/15/2005<br>*Entered:* 07/15/2005 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Sorem, Evan<br>*Modified:* 07/18/2005 |
|---|---|---|

CANB Live Database - Modify the description for an existing claim                    Page 9 of 13

| Unsecured claimed: | $801608.25 |
| Secured  claimed: | $3494671.94 |
| **Total**  **claimed: $4296280.19** | |

*History:*
26-1    07/15/2005 Claim #26 filed by Yolanda Jackson , total amount claimed: $4296280.19 (Sorem, Evan)

*Description:* (26-1) The Attorney Was Contacted. The Claim Was Filed In Duplicate Because of System Problems.

*Remarks:*

| **Creditor:** Lula Jackson-Christian c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 27** *Filed:*  07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |

| Unsecured claimed:  $801608.25 |
| Secured  claimed: $3502967.47 |
| **Total**  **claimed: $4304575.72** |

*History:*
27-1    07/15/2005 Claim #27 filed by Lula Jackson-Christian , total amount claimed: $4304575.72 (Sorem, Evan)

*Description:*

*Remarks:*

| **Creditor:** Shalen Lachan c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 28** *Filed:*  07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |

| Unsecured claimed:  $801608.25 |
| Secured  claimed: $3485721.40 |
| **Total**  **claimed: $4287329.65** |

*History:*
28-1    07/15/2005 Claim #28 filed by Shalen Lachan , total amount claimed: $4287329.65 (Sorem, Evan)

*Description:*

*Remarks:*

| **Creditor:** Gwendolyn Penney c/o Evan R. Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 29** *Filed:*  07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |

| Unsecured claimed:  $801608.25 |
| Secured  claimed: $3485506.74 |

| Total | claimed: $4287114.99 |
|-------|---------------------|

| History: | |
|----------|---|
| 29-1 | 07/15/2005 Claim #29 filed by Gwendolyn Penney , total amount claimed: $4287114.99 (Sorem, Evan) |

| Description: |
|-------------|

| Remarks: |
|----------|

| Creditor:<br>Lucy Mae Pickens<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 30<br>Filed:    07/15/2005<br>Entered: 07/15/2005 | Status:<br>Filed by: CR<br>Entered by: Sorem, Evan<br>Modified: |
|---|---|---|

|  Unsecured claimed:  $801608.25 |
|---|
|  Secured   claimed: $3521006.40 |
|  Total     claimed: $4322614.65 |

| History: | |
|----------|---|
| 30-1 | 07/15/2005 Claim #30 filed by Lucy Mae Pickens , total amount claimed: $4322614.65 (Sorem, Evan) |

| Description: |
|-------------|

| Remarks: |
|----------|

| Creditor:<br>Roy and Rose Piedot<br>c/o Evan R. Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 31<br>Filed:    07/15/2005<br>Entered: 07/15/2005 | Status:<br>Filed by: CR<br>Entered by: Sorem, Evan<br>Modified: |
|---|---|---|

|  Unsecured claimed:  $801608.25 |
|---|
|  Secured   claimed: $3489731.64 |
|  Total     claimed: $4291339.89 |

| History: | |
|----------|---|
| 31-1 | 07/15/2005 Claim #31 filed by Roy and Rose Piedot , total amount claimed: $4291339.89 (Sorem, Evan) |

| Description: |
|-------------|

| Remarks: |
|----------|

| Creditor:<br>Maliaeme and Latanoa Lauese<br>c/o Evan Sorem<br>DLA Piper Rudnick Gray Cary<br>4365 Executive Drive, Suite 1100<br>San Diego, CA 92121 | Claim No: 32<br>Filed:    07/15/2005<br>Entered: 07/15/2005 | Status:<br>Filed by: CR<br>Entered by: Sorem, Evan<br>Modified: |
|---|---|---|

|  Unsecured claimed:  $801608.25 |
|---|
|  Secured   claimed: $3499102.20 |
|  Total     claimed: $4300710.45 |

| History: |
|----------|

| 32-1 | 07/15/2005 Claim #32 filed by Maliaeme and Latanoa Lauese , total amount claimed: $4300710.45 (Sorem, Evan) |

*Description:*

*Remarks:*

| *Creditor:* Katherine and Webster Loudd c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 33** *Filed:* 07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |

Unsecured claimed:  $801608.25

Secured    claimed: $3518742.06

**Total**        **claimed: $4320350.31**

*History:*

| 33-1 | 07/15/2005 Claim #33 filed by Katherine and Webster Loudd , total amount claimed: $4320350.31 (Sorem, Evan) |

*Description:*

*Remarks:*

| *Creditor:* Romeo and Fely Mabutas c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 34** *Filed:* 07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |

Unsecured claimed:  $801608.25

Secured    claimed: $3511972.39

**Total**        **claimed: $4313580.64**

*History:*

| 34-1 | 07/15/2005 Claim #34 filed by Romeo and Fely Mabutas , total amount claimed: $4313580.64 (Sorem, Evan) |

*Description:*

*Remarks:*

| *Creditor:* Doroteo Magana c/o Evan Sorem DLA Piper Rudnick Gray Cary 4365 Executive Drive, Suite 1100 San Diego, CA 92121 | **Claim No: 35** *Filed:* 07/15/2005 *Entered:* 07/15/2005 | *Status:* *Filed by:* CR *Entered by:* Sorem, Evan *Modified:* |

Unsecured claimed:  $801608.25

Secured    claimed: $3503225.88

**Total**        **claimed: $4304834.13**

*History:*

| 35-1 | 07/15/2005 Claim #35 filed by Doroteo Magana , total amount claimed: $4304834.13 (Sorem, Evan) |

CANB Live Database - Modify the description for an existing claim                Page 12 of 13

| | | |
|---|---|---|
| *Description:* | | |
| *Remarks:* | | |

| | | |
|---|---|---|
| *Creditor:*<br>Nicole Wilkins<br>c/o Law Offices of Rouse & Bahlert<br>345 Franklin Street<br>San Francisco, CA 94102 | **Claim No: 36**<br>*Filed:* 07/18/2005<br>*Entered:* 07/18/2005<br>*Amended By Claim No:* 38 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Rouse, Cheryl<br>*Modified:* |

Unsecured claimed: $500000.00

**Total**        **claimed: $500000.00**

*History:*

36-1    07/18/2005 Claim #36 filed by Nicole Wilkins , total amount claimed: $500000 (Rouse, Cheryl)

37-1    10/25/2005 Claim #37 filed amending Claim #36 filed by Nicole Wilkins , total amount claimed: $50000 (Rouse, Cheryl)

38-1    03/10/2006 Claim #38 filed amending Claim #36 filed by Nicole Wilkins , total amount claimed: $74000 (Rouse, Cheryl)

| | | |
|---|---|---|
| *Description:* | | |
| *Remarks:* | | |

| | | |
|---|---|---|
| *Creditor:*<br>Nicole Wilkins<br>c/o Law Offices of Rouse & Bahlert<br>345 Franklin Street<br>San Francisco, CA 94102 | **Claim No: 37**<br>*Filed:* 10/25/2005<br>*Entered:* 10/25/2005<br>*Amends Claim No:* 36 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Rouse, Cheryl<br>*Modified:* |

Unsecured claimed: $50000.00

**Total**        **claimed: $50000.00**

*History:*

37-1    10/25/2005 Claim #37 filed amending Claim #36 filed by Nicole Wilkins , total amount claimed: $50000 (Rouse, Cheryl)

| | | |
|---|---|---|
| *Description:* | | |
| *Remarks:* | | |

| | | |
|---|---|---|
| *Creditor:*<br>Nicole Wilkins<br>c/o Law Offices of Rouse & Bahlert<br>345 Franklin Street<br>San Francisco, CA 94102 | **Claim No: 38**<br>*Filed:* 03/10/2006<br>*Entered:* 03/10/2006<br>*Amends Claim No:* 36 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Rouse, Cheryl<br>*Modified:* |

Unsecured claimed: $74000.00

**Total**        **claimed: $74000.00**

*History:*

36-1    07/18/2005 Claim #36 filed by Nicole Wilkins , total amount claimed: $500000 (Rouse, Cheryl)

38-1    03/10/2006 Claim #38 filed amending Claim #36 filed by Nicole Wilkins , total amount claimed: $74000 (Rouse, Cheryl)

| | | |
|---|---|---|
| *Description:* | | |

CANB Live Database - Modify the description for an existing claim

*Remarks:*

## Claims Register Summary

**Case Name:** Ramin Yeganeh
**Case Number:** 05-30047
**Chapter:** 7
**Date Filed:** 01/07/2005
**Total Number Of Claims:** 38

|                | Total Amount Claimed | Total Amount Allowed |
|----------------|----------------------|----------------------|
| Unsecured      | $24621547.52         |                      |
| Secured        | $101764209.67        |                      |
| Priority       |                      |                      |
| Unknown        |                      |                      |
| Administrative |                      |                      |
| Total          | $126385757.19        | $0.00                |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/01/2006 09:01:48 | | | |
| **PACER Login:** | lf0121 | **Client Code:** | 99095-33156-00001 |
| **Description:** | Claims Register | **Search Criteria:** | 05-30047 Filed or Entered From: 1/1/2005 Filed or Entered To: 1/2/2007 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

ELECTRONICALLY FILED

NOV 0 1 2006

1   Charles P. Maher, State Bar No. 124748
    Jeffrey L. Fillerup, State Bar No. 120543
2   Nhung Le, State Bar No. 209552
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
4   Telephone No.: 415.356.4600
    Fax No.: 415.356.4610
5
    Attorneys for Andrea A. Wirum
6   Trustee in Bankruptcy

7

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
            Debtor.
13

14  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No. 05-3240 TC
15          Plaintiff,

16  v.

17  F. NAMDARAN aka FRAN NAMDARAN
    aka FARIN NAMDARAN aka FARIN
18  YEGANEH aka FRAN YEGANEH,

19          Defendant.

20

21  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No. 05-3241 TC
            Plaintiff,
22
    v.
23
    ALLIED MANAGEMENT TRUST and K.
24  YEGANEH aka KEN YEGANEH aka
    KAIKHOSROW YEGANEH,
25
            Defendants.
26

27

28

                                    1

| | |
|---|---|
| CHARLES E. SIMS, Trustee,<br><br>        Plaintiff,<br><br>v.<br><br>COAST DEVELOPMENT TRUST and<br>FARIN YEGANEH aka F. NAMDARAN aka<br>FRAN NAMDARAN aka FARIN<br>NAMDARAN aka FRAN YEGANEH,<br><br>        Defendants. | Adversary Proceeding<br>No. 05-3242 TC |
| CHARLES E. SIMS, Trustee,<br><br>        Plaintiff,<br><br>v.<br><br>ADVANTA TRUST and FARIN YEGANEH<br>aka F. NAMDARAN aka FRAN<br>NAMDARAN aka FARIN NAMDARAN aka<br>FRAN YEGANEH,<br><br>        Defendants. | Adversary Proceeding<br>No. 05-3243 TC<br><br>**DECLARATION OF EMILY L.<br>MAXWELL IN SUPPORT OF<br>TRUSTEE'S OPPOSITION TO<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Date: November 15, 2006<br>Time: 9:30 a.m.<br>Dept: 23 |

I, Emily L. Maxwell, declare as follows:

1.      I am an attorney at law duly admitted to practice before this Court and a partner with the law firm of DLA Piper Rudnick Gray Cary US LLP, attorney of records for plaintiffs and judgment creditors in the case entitled *Wobogo v. Yeganeh*, San Mateo County Superior Court, Case No. 410586 ("*Wobogo v. Yeganeh*"). I make this declaration of my own personal knowledge, and if called as a witness, I could and would testify competently to the matters set forth herein.

2.      On October 4, 1999, a Complaint for Damages, Restitution, Disgorgement, and Injunctive Relief was filed against the Debtor, commencing a civil action before the Superior Court of the State of California, County of San Mateo titled *Edith Ingram, on behalf of herself, and Nozipo Wobogo, on behalf of the general public v. Ramin Yeganeh, dba American Mortgage Realty, and d/b/a American Mortgage Realty and Trust, and Does 1 through 100*, and numbered

2

410586. I am familiar with the files in this case. I have worked on this case from approximately Spring of 2001 to the present date, attended numerous hearings in the case, conducted depositions and other discovery and had many conversations with the Debtor. I have reviewed the files, including correspondence, in this case from prior to the Spring of 2001.

3.      Attached as **Exhibit A** is a true and correct copy of a May 3, 2001 letter sent by attorney Charles J. Smith, counsel at that time to Ramin Yeganeh ("Debtor"), to Ray Hartman of my firm. (The firm was formerly known as "Gray Cary Ware & Freidenrich LLP".) I obtained a copy of this letter from the *Wobogo* case files maintained by my firm. This letter is a record of the written communication between my firm, as counsel for the plaintiffs, and counsel for the Debtor. The letter was received by my firm on or about the date of the letter, and the letter has been maintained in the ordinary course of business.

4.      Attached as **Exhibit B** is a true and correct copy of the May 18, 2001 letter from Michael S. Tracy of my firm to attorney Charles J. Smith, responding to Mr. Smith's May 3, 2001 letter. Mr. Tracy is also counsel for the plaintiffs in *Wobogo. v. Yeganeh*. I obtained a copy of this letter from the *Wobogo* case files maintained by my firm. This letter is a record of the written communication between my firm, as counsel for the plaintiffs, and counsel for the Debtor. The letter was sent by my firm on or about the date of the letter, and the letter has been maintained in the ordinary course of business.

5.      Attached as **Exhibit C** is a true and correct copy of a July 17, 2001 letter sent by the Debtor to Mr. Tracy and Renee Glover, now Renee Glover Chantler. Ms. Glover Chantler is co-counsel for the plaintiffs in *Wobogo. v. Yeganeh*. I obtained a copy of this letter from the files maintained by my firm. This letter is a record of the written communication between my firm, as counsel for the plaintiffs, and the Debtor. The letter was received by my firm on or about the date of the letter, and the letter has been maintained in the ordinary course of business.

6.      Attached as **Exhibit D** is a true and correct copy of a August 2, 2001 letter sent by Mr. Tracy to the Debtor which sets forth settlement terms agreed, accepted and signed by the Debtor. I obtained a copy of this letter from the *Wobogo* case files. This letter is a record of the written communication between my firm, as counsel for the plaintiffs, and the Debtor. The letter

3

1    was sent by my firm on or about the date of the letter, and the letter has been maintained in the

2    ordinary course of business.

3         I declare under penalty of perjury under the laws of the State of California and of the

4    United States that the above statements are true and that if called as a witness I could and would

5    testify to their truthfulness.  This declaration was executed on the 1st day of November 2006 in

6    San Francisco, California.

7

8

Emily L. Maxwell

208564.1

4

RECEIVED TIME  3. MAY  1:51PM    PRINT TIM  3. MAY  1:50PM

## SMITH, BENTLEY & HARTNETT
### ATTORNEYS AT LAW

CHARLES J. SMITH, ESQ.
JOSHUA M. BENTLEY, ESQ.
JIM HARTNETT, ESQ.

777 MARSHALL STREET
REDWOOD CITY, CA 94063
PHONE (650) 568-2820
FAX (650) 568-2823

May 3, 2001

<u>VIA FACSIMILE AND U.S. MAIL</u>

M. Ray Hartman, Esq.
GRAY, CARY, WARE & FREIDENRICH, LLP
401 B. Street, Suite 1700
San Diego, CA  92101-4297
<u>Facsimile:  (619) 699-2701</u>

R. Renee Glover, Esq.
EAST PALO ALTO COMMUNITY LAW PROJECT
1395 Bay Road
East Palo Alto, CA  94303
<u>Facsimile:  (650) 853-1608</u>

Re:   <u>Ingram v. Yeganeh</u>

Dear Counsel:

I make the following proposal to settle the Section 17200 claim:

1.     Mr. Yeganeh will pay $5,000 towards notification costs.  Notification period is to be 90 days.  Notification to take the form of either legal notice or direct mailings to potential claimants.

2.     Class of claimants is limited to parties to whom Mr. Yeganeh loaned money to in order to avoid foreclosure, that is, Mr. Yeganeh was arguably acting as a foreclosure consultant.

3.     Mr. Yeganeh will deposit $7,500 for the cost of an arbitrator.

4.     Mr. Yeganeh is to place his personal residence with an approximate equity value of $500,000 in escrow as a deposit for successful claimants.

**EXHIBIT A**

RECEIVED TIME    MAY. 3.    1:50PM          PRINT TIME    MAY. 3.    1:51PM

**SMITH, BENTLEY & HARTNETT**

M. Ray Hartman, Esq.
R. Renee Glover, Esq.
Re:   Ingram v. Yeganeh
May 3, 2001
Page 2

5.     Mr. Yeganeh agrees that the sum of $15,000 be paid upon completion of the arbitration process to East Palo Alto Law Project as and for attorneys' fees in this matter.

6.     Mr. Yeganeh agrees to pay for the costs of arbitration and up to $2,500 for claimants' attorneys' fees if claimant is successful.   If claimant is unsuccessful, claimant shall pay his or her own attorneys' fees and the cost of arbitration.

7.     Mr. Yeganeh, through counsel, be given the opportunity to settle claims directly with claimant before arbitration.

8.     Any awards made by the arbitrator to be paid within 180 days of the date of the award and, if not paid, a judgment to be entered against Mr. Yeganeh for said amount with an agreement that said judgment be secured by Mr. Yeganeh's residence.

Please contact me after you have considered this offer.

Very truly yours,

CHARLES J. SMITH

CJS:mjc
cc:
Ray Yeganeh

**EXHIBIT A**

# SMITH, BENTLEY & HARTNETT
### ATTORNEYS AT LAW

CHARLES J. SMITH, ESQ.
JOSHUA M. BENTLEY, ESQ.
JIM HARTNETT, ESQ.

777 MARSHALL STREET
REDWOOD CITY, CA 94063
PHONE (650) 568-2820
FAX (650) 568-2823

MST

## FACSIMILE COVER PAGE
### NOTICE OF CONFIDENTIALITY

The pages comprising this facsimile transmission contain confidential information from CHARLES J. SMITH, ATTORNEY AT LAW. This information is intended solely for use by the individual or entity named as a recipient hereof. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone immediately so we may arrange to retrieve this transmission at no cost to you.

DATE: May 3, 2001

TO:   M. Ray Hartman      Fax No:   (619) 699-2701
      R. Renee Glover     Fax No:   (650) 853-1608

FROM:   CHARLES J. SMITH
        SMITH, BENTLEY & HARTNETT
        777 Marshall Street
        Redwood City, CA  94063

RE:   Yeganeh

Number of pages, including this cover sheet: 3 pages.

For voice contact call: (650) 568-2820

For return facsimile messages: (650) 568-2823

Remarks:

**EXHIBIT A**

# GRAYCARY. TECHNOLOGY'S LEGAL EDGE®

401 B Street, Suite 1700
San Diego, CA 92101-4297
www.graycary.com
O] 6619-699-3620

May 18, 2001
*VIA FACSIMILE*

OUR FILE NO. 9999050-900117

Mr. Charles J. Smith, Esq.
Smith, Bentley & Hartnett
777 Marshall Street
Redwood City, CA 94063

**Re:    Ingram v. Yeganeh**

Dear Mr. Smith:

We are in receipt of Mr. Yeganeh's most recent settlement proposal. Rather than viewing the current settlement proposal as a step forward, we view it as three steps backwards. We presented what we believed was a balanced approach to settlement issues in this matter. Mr. Yeganeh's current settlement proposal continues his bad faith approach to settlement as expressed before Judge Kemp. Any settlement proposal from Mr. Yeganeh to be considered by us **must** include sufficient cash and/or unencumbered property to satisfy the claims process. (His current settlement proposal offers neither.) If Mr. Yeganeh is unwilling to provide such security, we have nothing further to discuss.

We offer Mr. Yeganeh one more opportunity to make a reasonable balanced settlement proposal. Otherwise, all further settlement proposals on our part will include payment of all attorneys' fees generated in prosecuting the public Business & Professions Code 17200 claim.

Sincerely,

**Gray Cary Ware & Freidenrich LLP**

By: _____
Michael S. Tracy
*miketracy@graycary.com*

Admitted to practice in California

MST:ras

Gray Cary\SD\1444753.1
9999050-900117

# EXHIBIT B

P. 1

* * * COMMUN. ATION RESULT REPORT ( MAY.21.2001  9:18AM ) * * *

|  |  |  |  | TTI  GRAY CARY ACCTING |  |
|---|---|---|---|---|---|
| FILE | MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
| 538 | MEMORY TX |  | *59999050900117916505682823 | OK | P. 2/2 |

---

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                    E-2) BUSY
E-3) NO ANSWER                               E-4) NO FACSIMILE CONNECTION

# GRAYCARY. TECHNOLOGY'S LEGAL EDGE®

401 B Street, Suite 1700
San Diego, CA 92101-4297
www.graycary.com

O) 619-699-2700
F) 619-699-2701

## FAX TRANSMISSION COVER SHEET

May 18, 2001

**To:**                         **Telephone:**                    **Fax Number:**

Charles J. Smith, Esq.                                          (650) 568-2823
Smith, Bentley & Hartnett

---

From:    Michael S. Tracy          Client-Matter Number:    9999050-900117
         619-699-3620

Re:      Ingram v. Yehaneh

Pages:  -  2  - (including this form)    Originals: ☐ will be mailed  ☒ will not be mailed

   If there is a problem with this transmission, please call (619) _____

                                              Fax Operator/Ext.

**Message:**
Please see attached.

# EXHIBIT B

# GRAYCARY. TECHNOLOGY'S LEGAL EDGE®

401 B Street, Suite 1700
San Diego, CA 92101-4297
*www.graycary.com*

O] 619-699-2700
F] 619-699-2701

## FAX TRANSMISSION COVER SHEET

**May 18, 2001**

<u>To</u>:                                        Telephone:                    <u>Fax Number</u>:

**Charles J. Smith, Esq.**                                                    **(650) 568-2823**
**Smith, Bentley & Hartnett**

---

From:     Michael S. Tracy            Client-Matter Number:     9999050-900117
             619-699-3620

Re:     *Ingram v. Yehaneh*

Pages: -   2   - (including this form)     Originals: ☐ will be mailed ☒ will not be mailed

**If there is a problem with this transmission, please call (619) _____**

                                                                        Fax Operator/Ext.

**Message:**

Please see attached.

**CONFIDENTIALITY NOTICE**

This communication is ONLY for the person named above. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you are not the person named above, or responsible for delivering it to that person, be aware that disclosure, copying, distribution or use of this communication is strictly PROHIBITED. If you have received it in error, or are uncertain as to its proper handling, please immediately notify us by collect telephone and mail the original to us at the above address. Thank you.

(Form Rev. 6/5/00)

Gray Cary\SD\1444800.1
9999050-900117

# EXHIBIT B

*FILE*

R. Yeganeh
724 E 4th Ave
San Mateo, CA  94401
(650) 343-6530

to: Renee Glover                                        July 17, 2001
    East Palo Alto Community Law Project
    1395 Bay Rd, East Palo Alto, CA 94303

    Michael Tracy
    Gray Cary Ware & Freidenrich,LLP
    401 B St, Suite 1700                    re: case#410586
    San Diego, CA  92101                        case#412706

Dear Ms Glover & Mr Tracy:

    Attached is a copy of my Chapter 13 Bankruptcy. As you are aware,
bankruptcy proceedings will stop all lawsuits for about one year. If
you decide to pursue the Wobogo case or the Evans case to trial after
the abovementioned automatic stay has expired, and even if you succeed
at trial (highly unlikely) and attempt to extort additional monies from
me in the form of attorney's fees, your judgment will be discharged.
If any portion of your judgment survives, it will be unsecured, and
paid out over a 5 year period, if there are funds available.

    Therefore, before you incur any additional unnecessary expenses
by arranging another deposition, I suggest we all sit down to see if
we can settle this case.

    My position has always been that if anyone feels that he/she has
been wronged by me, they can always submit a claim, if we are unable
to settle it, it can go to a neutral arbitrator, and if there is a
judgment rendered against me for damages, I will pay.  Any pre-
bankruptcy settlement agreement is exempt from bankruptcy.

    In all honesty, I can not put up a huge amount of cash, as you
requested in your original settlement offer on 5/7/2001. I simply do
not have the cash, otherwise I would have taken your original offer.
My entire savings, the money I have saved for over 11 years, over
$275,000 went to settle Ingram's causes of action, and the rest I
had to borrow from my parents to pay for Harrison's restitution. I
simply do not have any more money. I have a couple of properties
whose equities I can use to settle the claims as they come in. But
as I mentioned earlier, I can not pay exhorbitant attorney's fees
which you now demand.

    If you honestly tell me your real attorney's fees (as of 5/7/2001
you requested $25,000 in attorney's fees), and work out the other details,
I am sure we can sit down and workout something. But now is the time to do
it if you are serious. If not, it is more cost effective for me to file for
bankruptcy, now that I have nothing more to lose.

    Your prompt consideration of this matter is greatly appreciated.

Sincerely,

R. Yeganeh

07/19/2001 THU 12:27  [TX/RX NO 7971]

**EXHIBIT C**

Form B1 (Official Form) - (Rev. 3/98)

| UNITED STATES BANKRUPTCY COURT<br>Northern _____ District of _____ California | Voluntary Petition |
|---|---|
| **Name of Debtor** (If Individual, enter Last, First, Middle):<br><br>Yeganeh, R. | **Name of Joint Debtor** (Spouse) (Last, First, Middle): |
| **All Other Names used by the Debtor in the last 6 years**<br>(Include married, maiden, and trade names): | **All Other Names used by the Joint Debtor in the last 6 years**<br>(Include married, maiden, and trade names): |
| **Soc. Sec./Tax I.D. No.** (If more than one, state all): | **Soc. Sec./Tax I.D. No.** (If more than one, state all): |
| **Street Address of Debtor** (No. & Street, City, State, & Zip Code)<br><br>724 E. 4th Ave<br>San Mateo, CA  94401 | **Street Address of Joint Debtor** (No. & Street, City, State, & Zip Code) |
| **County of Residence or of the**<br>**Principal Place of Business:**  San Mateo County | **County of Residence or of the**<br>**Principal Place of Business:** |
| **Mailing Address of Debtor** (If different from street address): | **Mailing Address of Joint Debtor** (If different from street address): |
| **Location of Principal Assets of Business Debtor**<br>(If different from street address above): | |

### Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)
- ☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.
- ☐ This petition is being filed by a corporation or partnership under chapter 11 and the debtor acknowledges that a Venue Disclosure Form is required to be filed by General Order 97-02.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed** (Check one box) |
|---|---|---|
| ☒ Individual(s)      ☐ Railroad<br>☐ Corporation       ☐ Stockbroker<br>☐ Partnership       ☐ Commodity Broker<br>☐ Other _____ | | ☐ Chapter 7      ☐ Chapter 11      ☒ Chapter 13<br>☐ Chapter 9      ☐ Chapter 12<br>☐ Sec. 304 - Case Ancillary to foreign proceeding |

| **Nature of Debts** (Check one box) | **Filing Fee** (Check one box) |
|---|---|
| ☒ Consumer/Non-Business      ☐ Business | ☒ Full Filing Fee attached |
| **Chapter 11 Small Business** (Check all boxes that apply) | ☐ Filing Fee to be paid in installments (Applicable to individuals only)<br>Must attach signed application for the court's consideration certifying<br>that the debtor is unable to pay fee except in installments.<br>Rule 1006(b). See Official Form No. 3. |
| ☐ Debtor is a small business as defined in 11 U.S.C. § 101 | |
| ☐ Debtor is and elects to be considered a small business under<br>11 U.S.C. § 1121(e) (Optional) | |

**Statistical/Administrative Information** (Estimates only)
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there<br>will be no funds available for distribution to unsecured creditors.

**Estimated Number of Creditors**

| 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Assets**

| $0-<br>50,000 | $50,001-<br>$100,000 | $100,001-<br>$500,000 | $500,001-<br>$1 million | $1,000,001-<br>$10 million | $10,000,001-<br>$50 million | $50,000,001-<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**Estimated Debts**

| $0-<br>50,000 | $50,001-<br>$100,000 | $100,001-<br>$500,000 | $500,001-<br>$1 million | $1,000,001-<br>$10 million | $10,000,001-<br>$50 million | $50,000,001-<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**THIS SPACE FOR<br>COURT USE ONLY**

07/19/2001 THU 12:27  [TX/RX NO 7971]

# EXHIBIT C

Form B1 (Official Form 1) Page Two - (Rev. 3/98)

| Voluntary Petition<br>(This page must be completed and filed in every case) | Name of Debtor(s):<br>Yeganeh, R. | FORM B1,<br>Page 2 |
|---|---|---|

**Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet)  none

| Location<br>Where Filed: | Case Number: | Date Filed: |
|---|---|---|

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) none

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct. [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _R___

Signature of Debtor

X ___

Signature of Joint Debtor

(650) 343-6530/(650) 343-0593 fax

Telephone and Fax Number (if not represented by attorney)

7/17/01

Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X ___

Signature of Authorized Individual

X ___

Printed Name of Authorized Individual

___

Title of Authorized Individual

___

Date

**Signature of Attorney**

X ___

Signature of Attorney for Debtor(s)

Printed Name of Attorney for Debtor(s)

Firm Name

Address

Telephone and Fax Number

Date          Bar Number

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Printed or Typed Name of Bankruptcy Petition Preparer

Social Security Number

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X ___

Signature of Bankruptcy Petition Preparer

___

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

**Exhibit "A"**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15 (d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐  Exhibit A is attached and made a part of this petition.

**Exhibit "B"**

(To be completed if debtor is an individual whose debts are primarily consumer debts) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X ___          ___

Signature of Attorney for Debtor(s)     Date

07/19/2001 THU 12:27  [TX/RX NO 7971]

# EXHIBIT C

Local Rule 104 - (Rev. 6/95)

## STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LOCAL RULE 104
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of such prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    n/a

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    n/a

3.  (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    n/a

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at _____ San Mateo _____, California.

Dated _____ 7/17/01 _____.

_____
Debtor

_____
Joint Debtor

07/19/2001 THU 12:27  [TX/RX NO 7971]

# EXHIBIT C

**GRAYCARY**. TECHNOLOGY'S LEGAL EDGE®

401 B Street, Suite 1700
San Diego, CA 92101-4297
www.graycary.com
T] 619-699-3600
F] 619-699-2701

August 2, 2001
*VIA FACSIMILE 650-343-0593*

Ray Yeganeh
724 E. 4th Avenue
San Mateo, CA 94401

Re:    Ingram v. Yeganeh

Dear Mr. Yeganeh:

On the evening of August 1, 2001, Renee Glover sent to you a settlement proposal. In a letter dated August 1, 2001, you accepted certain terms of the proposal and rejected others. In a conversation with you this morning, I rejected the financial terms of your counter-proposal. I reiterated our current proposal is virtually the same settlement proposed as we set forth last night. The key terms of that offer were: (1) You agree to pay attorneys' fees of $400,000.00; (2) you place in escrow property with a net value of $1.1 million; and (3) you place $85,000.00 in cash into an escrow account. Of that $85,000.00, $10,000.00 was to be paid for notice to potential victims, $25,000.00 was to be paid as an upfront deposit for the services of an arbitrator, and $50,000.00 was to be set aside for the payment of attorneys' fees in arbitrating the individual claims.

Our current settlement offer to you continues to be as expressed in our letter of August 1, 2001, with the following changes:

We agreed that we will only require that $35,000.00 in cash be paid up front. The $35,000.00 will be used to provide notice to the victims ($10,000.00) and $25,000.00 will constitute a deposit on the arbitrator's fees. The $50,000.00 demand for attorneys' fees and the claims process can be secured by additional property value being placed in escrow, rather than being paid up front in cash.

You will now be required to place into escrow $1.15 million worth of unencumbered net value property.

Your August 1, 2001 letter raises the issue of whether you will be "given the opportunity to negotiate and pay the bills" of the victims. We will allow such contact as long as a representative of our choosing is present during your "negotiations."

Lastly, we will be adding to the settlement agreement a $250,000.00 liquidated damages provision. Such a provision will require you to pay $250,000.00 if you breach the settlement agreement. The clause will not be invoked if you adhere to the terms of the settlement agreement.

If you do not execute this letter and agree to the terms of a settlement by 3:00 p.m., August 2, 2001, the following will occur:

RECEIVED TIME    AUG. 2.    2:14PM            PRINT TIME    AUG. 2.    2:16PM

# EXHIBIT D

Gray Cary Ware & Freid. ...rich LLP

Ray Yeganeh
August 2, 2001
Page Two

1.  We will post notice of your bankruptcy in all County Recorder Offices any county where you own property. Such notification will place all purchasers and potential lien holders on notice of your pending bankruptcy and will thereby make any purchaser or lender a non-bona fide purchaser and/or lender.

2.  Secondly, we will be noticing your Debtor Examination for as soon as the court will allow;

3.  We will move for an order in the bankruptcy court, reaffirming your obligation to refrain from encumbering, selling or in any way transferring any real or personal property that is in your possession. Such an order will include American Mortgage or any other companies under which you operate.

We hope that we will not have to take the steps outlined above. Please sign this letter signifying you agree to settle on the terms outlined in our August 1, 2001 letter and this letter. (If we do not receive an executed copy of this letter by 3:00 p.m., our settlement offer of August 1st and 2nd, 2001, is hereby rescinded and we will take the steps outlined above.

AGREED AND ACCEPTED TO:

Dated:  _____8/2/01_____     _____
                            Ray Yeganeh

Sincerely,

Gray Cary Ware & Freidenrich LLP

By: _____
Michael S. Tracy
miketracy@graycary.com

Admitted to practice in California

MST:ag

Gray Cary\SD\1480185.1
1898050-900117

RECEIVED TIME   AUG. 2.   2:14PM        PRINT TIME   AUG. 2.   2:15PM

# EXHIBIT D

ELECTRONICALLY FILED

NOV 01 2006

1   Charles P. Maher, State Bar No. 124748
    Jeffrey L. Fillerup, State Bar No. 120543
2   Nhung Le, State Bar No. 209552
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
4   Telephone No.: 415.356.4600
    Fax No.: 415.356.4610
5
    Attorneys for Andrea A. Wirum
6   Trustee in Bankruptcy

7

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  In re RAMIN YEGANEH, | Case No. 05-30047 TEC<br>Chapter 7 |
| 12 | |
| 13          Debtor. | |
| 14  CHARLES E. SIMS, Trustee, | Adversary Proceeding<br>No. 05-3240 TC |
| 15          Plaintiff, | |
| 16  v. | |
| 17  F. NAMDARAN aka FRAN NAMDARAN<br>aka FARIN NAMDARAN aka FARIN | |
| 18  YEGANEH aka FRAN YEGANEH, | |
| 19          Defendant. | |
| 20  CHARLES E. SIMS, Trustee, | Adversary Proceeding<br>No. 05-3241 TC |
| 21          Plaintiff, | |
| 22 | |
| 23  v. | |
| 24  ALLIED MANAGEMENT TRUST and K.<br>YEGANEH aka KEN YEGANEH aka<br>KAIKHOSROW YEGANEH, | |
| 25 | |
| 26          Defendants. | |
| 27 | |
| 28 | |

1

| | |
|---|---|
| 1    CHARLES E. SIMS, Trustee, | Adversary Proceeding |
| 2           Plaintiff, | No. 05-3242 TC |
| 3    v. | |
| 4    COAST DEVELOPMENT TRUST and | |
| 5    FARIN YEGANEH aka F. NAMDARAN aka FRAN NAMDARAN aka FARIN | |
| 6    NAMDARAN aka FRAN YEGANEH, | |
| 7           Defendants. | |

| | |
|---|---|
| 8 | |
| 9    CHARLES E. SIMS, Trustee, | Adversary Proceeding |
| 10           Plaintiff, | No. 05-3243 TC |
| 11    v. | **DECLARATION OF RENEE GLOVER-CHANTLER IN SUPPORT OF TRUSTEE'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 12    ADVANTA TRUST and FARIN YEGANEH aka F. NAMDARAN aka FRAN NAMDARAN aka FARIN NAMDARAN aka FRAN YEGANEH, | |
| 13 | Date: November 15, 2006 |
| 14           Defendants. | Time: 9:30 a.m. Dept: 23 |

15

16    I, Renee Glover-Chantler, declare as follows:

17    1.    I am an attorney at law duly admitted to practice before this Court and currently

18  employed by DLA Piper US LLP as its west coast Pro Bono Manager. I have been co-counsel of

19  record for all claimants and victims in the underlying state action styled *Wobogo v. Yeganeh* since

20  the inception of that litigation in 1999. Specifically, from 1998 to 2001, I was the Executive

21  Director of the E. Palo Alto Community Law Project, co-counsel of record for Nozipo Wobogo,

22  the former private attorney general on behalf of the general public in the underlying state court

23  action, *Wobogo v. Yeganeh*. From 2001 until May of this year, I was principal of Chantler Law

24  Offices, my own solo practice, which became successor co-counsel of record to the E. Palo Alto

25  Community Law Project for Ms. Wobogo and then, after claimants were permitted to intervene in

26  January 2005, the individual claimants in this matter. I also represented Harrington Evans in

27  separate civil litigation against the debtor, Ramin Yeganeh ("Debtor"). I also represented both

28  Mr. Evans and Benjetta Carr (daughter and successor in interest to the claims of the late Mr. and

2

1   Mrs. Benjamin Harrison) in connection with their status as victims within the criminal case of

2   *People v. Yeganeh*, San Mateo County Superior Court Case No. SC46012A, in which the Debtor

3   pled guilty to multiple felony violations of California's mortgage foreclosure consultant's law.  I

4   make this declaration of my own personal knowledge, and if called as a witness, I could and

5   would testify competently to the matters set forth herein.

6         2.       On October 4, 1999, a Complaint for Damages, Restitution, Disgorgement, and

7   Injunctive Relief was filed against the Debtor, commencing a civil action before the Superior

8   Court of the State of California, County of San Mateo titled *Edith Ingram, on behalf of herself,*

9   *and Nozipo Wobogo, on behalf of the general public v. Ramin Yeganeh, dba American Mortgage*

10   *Realty, and d/b/a American Mortgage Realty and Trust, and Does 1 through 100,* and numbered

11   410586 ("*Wobogo. v. Yeganeh*").  I was plaintiff's co-counsel of record when the complaint was

12   filed.

13         3.       On April 23, 2001, Plaintiff Wobogo filed a motion for summary adjudication in

14   *Wobogo v. Yeganeh.*  By the motion, Plaintiff Wobogo sought an order determining the liability of

15   the Debtor for violations of Section 17200 of the California Business and Professions Code.   On

16   July 30, 2001, the San Mateo Superior Court granted the motion for summary adjudication,

17   concluding that the Debtor had violated Section 17200 and his liability. · Subsequently, the parties

18   began to prepare for what Plaintiff Wobogo intended to be restitution hearings commenced to

19   determine the appropriate relief for the 17200 violations for each victim.

20         4.       Attached as **Exhibit A** is a true and correct copy of a July 17, 2001 letter sent by

21   the Debtor to Michael Tracy and me, attaching a fully executed Voluntary Petition. Mr. Tracy and

22   his partner Emily L. Maxwell have been co-counsel for the plaintiffs in *Wobogo. v. Yeganeh* since

23   March, 2001. I obtained a copy of this letter from my files.   This letter is a record of the written

24   communication between myself, as counsel for the plaintiffs, and counsel for the Debtor.  The

25   letter was received by me on or about the date of the letter, and the letter has been maintained by

26   me in my files relating to the case in the ordinary course of business of my firm.

27         5.       Attached as **Exhibit B** is a true and correct copy of a July 23, 2001 letter sent by

28   me to Charles Smith, attorney for the Debtor in which I informed Mr. Smith that the estimated

3

1    attorneys fees at that time was $750,000.  I obtained a copy of this letter from my files.  This letter

2    is a record of the written communication between myself, as counsel for the plaintiffs, and counsel

3    for the Debtor.  The letter was sent by me on or about the date of the letter, and the letter has been

4    maintained by me in my files relating to the case in the ordinary course of business of my firm.

5          6.    Attached collectively as **Exhibit C** are true and correct copies of transcriptions of

6    voicemails I received from the Debtor on July 25, July 26, and July 27, 2001.  I personally

7    transcribed these voicemails at the time or shortly after I received them and retained a copy of the

8    transcriptions in my files in the regular course of business.  It was my regular practice to transcribe

9    voicemails I received from the Debtor.  If called to as a witness, I can testify to receiving these

10   voicemails and that the transcriptions are accurate representations of the voicemails.  In these

11   voicemails, the Debtor acknowledged our claim for attorneys fees against him, which he knew

12   from correspondence sent to both him and his counsel of record at the time commencing on July

13   23, 2001, that Gray Cary and I were willing to compromise only for the minimum sum of

14   $350,000, increasing by the sum of $50,000 each week for each week that settlement was delayed.

15         I declare under penalty of perjury under the laws of the State of California and of the

16   United States that the above statements are true and that if called as a witness I could and would

17   testify to their truthfulness.  This declaration was executed on the _181_ day of November, 2006 in

18   _San Diego_, California.

19

20   208443.2

21                                    Renee Glover-Chantler

22

23

24

25

26

27

28

4

*FILE*

R. Yeganeh
724 E 4th Ave
San Mateo, CA  94401
(650) 343-6530

July 17, 2001

to: Renee Glover
East Palo Alto Community Law Project
1395 Bay Rd, East Palo Alto, CA 94303

Michael Tracy
Gray Cary Ware & Freidenrich,LLP
401 B St, Suite 1700
San Diego, CA  92101

re: case#410586
case#412706

Dear Ms Glover & Mr Tracy:

Attached is a copy of my Chapter 13 Bankruptcy. As you are aware, bankruptcy proceedings will stop all lawsuits for about one year. If you decide to pursue the Wobogo case or the Evans case to trial after the abovementioned automatic stay has expired, and even if you succeed at trial (highly unlikely) and attempt to extort additional monies from me in the form of attorney's fees, your judgment will be discharged. If any portion of your judgment survives, it will be unsecured, and paid out over a 5 year period, if there are funds available.

Therefore, before you incur any additional unnecessary expenses by arranging another deposition, I suggest we all sit down to see if we can settle this case.

My position has always been that if anyone feels that he/she has been wronged by me, they can always submit a claim, if we are unable to settle it, it can go to a neutral arbitrator, and if there is a judgment rendered against me for damages, I will pay. Any pre-bankruptcy settlement agreement is exempt from bankruptcy.

In all honesty, I can not put up a huge amount of cash, as you requested in your original settlement offer on 5/7/2001. I simply do not have the cash, otherwise I would have taken your original offer. My entire savings, the money I have saved for over 11 years, over $275,000 went to settle Ingram's causes of action, and the rest I had to borrow from my parents to pay for Harrison's restitution. I simply do not have any more money. I have a couple of properties whose equities I can use to settle the claims as they come in. But as I mentioned earlier, I can not pay exhorbitant attorney's fees which you now demand.

If you honestly tell me your real attorney's fees (as of 5/7/2001 you requested $25,000 in attorney's fees), and work out the other details, I am sure we can sit down and workout something. But now is the time to do it if you are serious. If not, it is more cost effective for me to file for bankruptcy, now that I have nothing more to lose.

Your prompt consideration of this matter is greatly appreciated.

Sincerely,

R. Yeganeh

**EXHIBIT A**

Form B1 (Official Form)  -  (Rev. 1/00)

| UNITED STATES BANKRUPTCY COURT<br>Northern    District of    California | Voluntary Petition |
|---|---|
| Name of Debtor (if Individual, enter Last, First, Middle):<br><br>Yeganeh, R. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (If more than one, state all) | Soc. Sec./Tax I.D. No. (If more than one, state all): |
| Street Address of Debtor (No. & Street, City, State, & Zip Code)<br><br>724 E. 4th Ave<br>San Mateo, CA  94401 | Street Address of Joint Debtor (No. & Street, City, State, & Zip Code) |
| County of Residence or of the<br>Principal Place of Business:    San Mateo County | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above) | |

## Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)
- ☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.
- ☐ This petition is being filed by a corporation or partnership under chapter 11 and the debtor acknowledges that a Venue Disclosure Form is required to be filed by General Order 97-02.

| Type of Debtor (Check all boxes that apply) | | Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☒ Individual(s)          ☐ Railroad<br>☐ Corporation          ☐ Stockbroker<br>☐ Partnership          ☐ Commodity Broker<br>☐ Other _____ | | ☐ Chapter 7          ☐ Chapter 11          ☒ Chapter 13<br>☐ Chapter 9          ☐ Chapter 12<br>Sec. 304 - Case Ancillary to foreign proceeding |
| **Nature of Debts** (Check one box)<br>☒ Consumer/Non-Business     ☐ Business | | **Filing Fee** (Check one box)<br>☒ Full Filing Fee attached |
| **Chapter 11 Small Business** (Check all boxes that apply)<br>☐ Debtor is a small business as defined in 11 U.S.C.  § 101<br><br>☐ Debtor is and elects to be considered a small business under<br>11 U.S.C.  § 1121(e) (Optional) | | ☐ Filing Fee to be paid in installments (Applicable to individuals only)<br>Must attach signed application for the court's consideration certifying<br>that the debtor is unable to pay fee except in installments.<br>Rule 1006(b). See Official Form No. 3. |

**Statistical/Administrative Information (Estimates only)**
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

**Estimated Number of Creditors**

| 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Assets**

| $0 -<br>$50,000 | $50,001-<br>$100,000 | $100,001-<br>$500,000 | $500,001-<br>$1 million | $1,000,001-<br>$10 million | $10,000,001-<br>$50 million | $50,000,001-<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Debts**

| $0 -<br>$50,000 | $50,001-<br>$100,000 | $100,001-<br>$500,000 | $500,001-<br>$1 million | $1,000,001-<br>$10 million | $10,000,001-<br>$50 million | $50,000,001-<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

THIS SPACE FOR
COURT USE ONLY

07/19/2001 THU 12:27  [TX/RX NO 7971]

# EXHIBIT A

Form B1 (Official Form 1) Page Two - (Rev. 3/98)

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br><br>Yeganeh, R. | **FORM B1,**<br>**Page 2** |
|---|---|---|

| **Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet) none |||
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet) none |||
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct. [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _R—_____
Signature of Debtor

X _____
Signature of Joint Debtor

(650) 343-6530/(650) 343-0593 fax
Telephone and Fax Number (If not represented by attorney)

7/17/01
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

X _____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

### Signature of Attorney

X _____
Signature of Attorney for Debtor(s)

_____
Printed Name of Attorney for Debtor(s)

_____
Firm Name

_____
Address

_____
Telephone and Fax Number

_____          _____
Date                          Bar Number

### Signature of Non-Attorney Petition Preparer

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed or Typed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

### Exhibit "A"

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15 (d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

### Exhibit "B"

(To be completed if debtor is an individual whose debts are primarily consumer debts) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____          _____
Signature of Attorney for Debtor(s)          Date

# EXHIBIT A

Local Rule 104 - (Rev. 6/95)

# STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LOCAL RULE 104
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    n/a
    _____

    _____

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    n/a
    _____

    _____

3.  (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    n/a
    _____

    _____

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    none
    _____

    _____

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at   San Mateo _____, California.

Dated _____ 7/17/01 _____

_____
Debtor

_____
Joint Debtor

07/19/2001 THU 12:27  [TX/RX NO 7971]

# EXHIBIT A



THE
EAST PALO ALTO
COMMUNITY
LAW PROJECT

*Legal Services*
*Clinical Education*

July 23, 2001

<u>**COMMUNICATION REGARDING SETTLEMENT – PRIVILEGED
PURSUANT TO EVIDENCE CODE §1119**</u>

*Via Facsimile and Mail*

Charles Smith, Esq.
Smith, Bentley and Hartnett
777 Marshall Street
Redwood City, California 94063

   Re:  *Ingram v. Yeganeh*, San Mateo County Case No. 410586

Dear Chuck:

   As promised I attempted to reach you by telephone to continue discussions about a possible settlement of this case, but your assistant said you were gone for the day. In the interests of time I wanted to write to you and advise you of our response to your settlement offer from this morning.

   From our brief discussion today, it seems that there remains agreement in principle to a settlement which encompasses a permanent injunction, establishment of a claims process in which Ramin Yeganeh's victims will obtain restitution for their claims, payment by Ray of the costs – including notice – associated with that claims process, and some amount of attorney's fees. Our specific terms for settlement, which we were hoping to discuss with Bill Gilg last week (as he contacted us seeking to broker settlement of this case, but never called back after we said we needed confirmation that he had your authority) are as follows:

   <u>Judgment and Permanent Injunction</u>: Ray will stipulate to have judgment taken against him and a permanent injunction entered which bars his engaging in the plethora unfair, unlawful and fraudulent business practices alleged in this case. The specific language of the injunction will be by negotiation or court order; however, it will be at least as broad in scope as the existing preliminary injunction which Judge Pfeiffer ordered in March, 2000.

   <u>Claims Process/Restitution</u>: The action will be converted to a class-action where, following a 90 day period of notice to the proposed class, all claims for restitution must be presented or be barred in subsequent or separate proceedings. Persons timely submitting a claim will be entitled to receive restitution to the full extent of their losses. Those elements of restitution that will be allowed in the claims process are to be decided judicially, by the Court, following briefing by the parties and prior to commencement of the actual claims process.

   In the claims process, parties can choose to be represented. The Plaintiffs will use reasonable efforts to secure pro-bono representation for claimants as needed; however, if pro-

1195 BAY ROAD  TEL: 650 853 1600
EAST PALO ALTO  FAX: 650 853 1608
CALIFORNIA 94303 EMAIL: INFO@EPACLP.ORG

**EXHIBIT B**

Charles Smith, Esq.                    **COMMUNICATION REGARDING SETTLEMENT**
July 23, 2001                          <u>**PRIVILEGEDPURSUANT TO EVIDENCE CODE §1119**</u>
Page 2 of 3

bono representation is not available, attorneys fees will be awarded to the claimants as part of their restitution, up to the maximum amount of $2,500 per claimant.

We estimate that the process outlined above will be completed by the end of calendar year 2001 if we begin now, and have reduced our proposed notice period from 120 days to 90 to further that end.

<u>Notice Procedure</u>:  Gray Cary and the Law Project will issue all notices to the class, including the notice of settlement/class action and the claims procedure notices discussed above. Ray will bear all expenses associated with notice, payable from the cash deposit discussed below.

<u>Selection of Neutral</u>:  The parties will meet and confer to select a neutral arbitrator.  If the parties cannot agree on a choice, they will request that the Court appoint one for them.  Ray will pay all costs, including retainer fees, for the neutral, from the cash deposit discussed below and, if necessary, from the proceeds of the properties securing the settlement.

<u>Deposits to Secure Costs and Restitution</u>:  We will accept a combination of cash and property deposits which equal the estimated combined value of claims, notice and arbitration costs, as well as our current attorney's fee demand of $350,000 (see below).

We will accept a cash deposit of $125,000 against the settlement.  That deposit will first be applied to the costs of notice, neutral arbitration, restitution claims, and a small portion of the attorney's fees payable to Plaintiffs.  Ray will also provide us immediately with a list of six (6) properties that he owns.  Plaintiffs will select up to three (3) to be used as security for the claims process, or however many is necessary to provide total net proceeds (whether from unencumbered equity or net proceeds after sale) of at least $1.2 million.  Of those six (6) properties, we will consider both the 395 Sequoia Avenue property and the Kent Way property, but ultimately we will choose which three properties will serve as security and make no commitment that the Sequoia or Kent Way properties will be selected.  We will under no set of circumstances accept the 724 East 4th Avenue property (Ray's personal residence) as an option.

For each of the properties which Ray would like considered, he must disclose the estimated fair market value for the property and all existing encumbrances.  At our discretion, we will have the properties appraised using an appraiser we select, and a title search run on each, to confirm the accuracy of Ray's disclosures.  Ray will bear the costs of the appraisal and title search for each property selected.  If the value of $1.2 million in net proceeds is not supported, Ray will proffer additional property (but not his personal residence) to reach the necessary value. Once the properties are chosen, we will place them in trust or liquidate them at our discretion to fund the claims process and the balance of attorneys' fees due and payable.  If a property or the proceeds from its sale are not needed to fund the restitution claims or full amount of attorneys' fees payable under this settlement, the difference will be returned to Ray.

Chuck, at this late date we are highly skeptical of your client's willingness to finalize a good faith settlement based on these previously well-described parameters.  Over the last year, we have repeatedly made him essentially the same settlement offer that you proffered this morning: in writing, in judicially supervised settlement conferences, and in informal attorney discussions. As an inducement to settlement and to avoid what is now the enormous and ever-growing expense of multiple attorneys working full-time to prepare for a now-imminent trial, Gray Cary and Heller Ehrman over the course of the year repeatedly offered to waive all of their attorney's

**EXHIBIT B**

Charles Smith, Esq.
July 23, 2001
Page 3 of 3

**COMMUNICATION REGARDING SETTLEMENT**
**PRIVILEGEDPURSUANT TO EVIDENCE CODE §1119**

fees if it would further settlement. The Law Project also offered to waive the lion's share of its own fees as well, for the same reasons. Ray has had every opportunity to settle this case upon almost identical terms and conditions as are now being discussed for over a year, while avoiding most of the attorney's fees, and has steadfastly chosen not to do so. That was to his peril, as Ray and his attorneys, including you, have been repeatedly warned that at some point, we would no longer accept a settlement offer that did not include a very large payment of attorney's fees as they were being incurred.

We are at that point. Currently, our attorney's fee demand is $350,000, although we estimate actual attorney's fees and costs to be at least $750,000 at this point. They are rising fast, as we are now within 2 weeks of trial and Ray's continued deposition. The $350,000 compromise is included as part of the overall valuation of the settlement we propose above. However, that compromise figure is now not only non-negotiable, as Ray was warned, but will continue to increase by $50,000 per week, each week through trial. Thus, if we do not complete all the steps necessary to finalize the settlement we propose above by Friday, July 27, 2001 at 5:00 PM, including the entry of the settlement on the record in Court, we will require either that the cash deposit be increased by $50,000 or that the property funding the settlement be increased to a valuation of $1.25 million to compensate for the additional attorney fees.

Because this offer to settle will expire if not accepted in writing by 9:00 AM on Wednesday, July 25, 2001, I look forward to speaking to you at your earliest opportunity about this matter.

Very Truly Yours,

R. Renee Glover

cc:    Michael S. Tracy, Gray Cary

**EXHIBIT B**

**7/24/01 – 4:41 PM**

Yeah, hi, Ms. Glover this is Ray. Ray Yeganch. Just wanted to let you know that as far as the Evans' case is concerned you can negotiate with Bill Gilg. You know, he's a nice guy, you can talk to him.

I just got your letter dated July 20. I'm kind of confused. My original offer to you was that I don't want anything over and above what Judge Pfeiffer's deed of trust for $11,385 is. So all I want is my out of pocket expenses, which was $11,385. That's according to your own figure. That's the figure you disclosed to Judge Pfeiffer during the criminal proceedings. I will accept anything close to it. I'm kind of flexible on that . And I would appreciate it if we could work something out. I want to get on with this thing. It's not worth it for me to spend too much time on these things. I am going to be very flexible on this and I would appreciate it if you are also flexible on the 17200 case, which is what my main concern is.

If you honestly tell me or tell Chuck Smith as to how much your out of pocket expenses for your attorney's fees were on your 17200 case....an honest figure, no padding, OK, if you tell me I'm going to see if I can take care of it. OK? But I don't want to spend too much money that I don't have and that's the reason why I am...why I might file for bankruptcy. So please be considerate and don't get greedy. Thank you. Bye.

**7/25/01 – 9:46 AM**

This message is for Renee Glover. Hi, Renee, my name is Ray Yeganch. I'm sure you remember me. I wanted to let you know that as far as Evans' case is concerned you can talk directly to Bill Gilg. As far as the Wobo....Nozipo Wobogo's case is concerned you can talk to Chuck Smith. Or if you prefer you can talk to me. It's completely up to you.

Now as far as the Evans' case is concerned, I need something close to $10,000 because even the Judge Pfeiffer according to your own instructions ordered a deed of trust to be recorded for $11,385 which represents my ...at minimum, my out of pocket expenses. I don't think that even if you go to trial...I don't think you can even...there's...I don't think there is going to be any jury that is going to buy your thing...your contention that Evans...that I owe Evans any money, OK? So the point is I saved Evans' house twice and I expect to be paid something close to $10,000. Now, I leave that up to you, OK? Whatever you think is fair. But please keep in mind that my out of pocket expenses at minimum are $11,385. And, that is your own figure, OK?. So that's that.

Secondly as far as the Ingram's case is concerned. I've already settled Ingram, so the 17200 cause of action .... You know, I do not have too much cash. I think I can only raise like a maximum of $150,000 if I am lucky. And I can put up two properties, Kent Way or Sequoia, or both if you prefer, to liquidate those claims. But that is the best I can do. Now, the $150K is going to be...is going to have to include everything, attorney's fees and everything else. Now that is the best I can do.

If that is not acceptable I'm just going to file for bankruptcy this Friday which means you're not going to get anything, as far as attorneys fees, for Evans or for this Nozipo's Wobogo case. So it's completely up to you. If you really want to seriously want to settle this thing . . . . You mentioned on May 7 that you only wanted $25,000, and I don't mind paying you for this additional work you've done for the motions and stuff. I don't think it's going to be any more than an additional $25,000 or $30,000. But like I said I'm willing to pay you a fair shake on your

# EXHIBIT C

attorney's fees, OK? But it's certainly not going to be $350,000 or $300,000 or even $200,000, OK? The total cash I can raise…the maximum cash is going to be $150,000, and even that I have to think about it. I have to see what I can do. And the total net equity I can get is $500,000, represented by the two properties, or just one of the properties, the one on Sequoia I do not have 18 properties, like you mentioned, I do not know where you're getting those numbers, probably from the assessors'. A lot of those properties have been sold over the last 3-4 years. The assessor's index is behind three years, OK? So…and a lot of those other properties are overencumbered. So even if you were to get a judgement against me, the maximum you can collect is from that property on Sequoia or Kent Way, if I don't encumber it by then to pay my attorney's fees.

So…so, anyway if that is acceptable to you please let Chuck know. Like I said, that's the best I can do. Otherwise I'm going to file for bankruptcy and you're not going to be paid any attorney's fees, period, so….because there is going to be an automatic stay and there's not going to be any depositions held, any more motions held and any trial held, OK? So I just wanted to let you know. Thank you. Bye.

**7/25/01 11:12 AM**

Yeah, Hi Renee this is Ray. I think my message got cut off. OK if you want to contact Chuck Smith his number is 650/568-2825 that's his direct line or you can call his cell phone, which is 400-3858. If you have a hard time trying to get hold of him you can call me, you know, I'm not….I'm not too worried about you calling me. You can call me on my cell phone. That's 650-520-6360. And as I mentioned about the attorney's fees you know I'm kind of surprised because I was looking at the motion for sanctions and you are requesting $19,000 in attorney's fees for my summary adjudication because I brought my own summary adjudication. You know, If you like you can include that on top of the $25,000 which you originally agreed on and I am willing to pay that, OK? The original 25,000 that you agreed on back on May 25th I believe. So um. and I still have your letter and everything about that.

So anyway you know I don't mind paying that even though I know it is exaggerated and you padded a lot. And I don't think there is 5 attorneys necessary to defend against that summary adjudication and besides you guys bought your own summary adjudication. So anyway, I can take care of that if you are so worried about that, but I really think your attorney's fees are excessive and I am sure that if I include that letter and show it to any judge whether it is a bankruptcy judge or otherwise sure, including your declarations by the way, I'm sure they are going to say something, OK?

Like I said the point is if you want to settle this thing now's the time to do it before I file bankruptcy. If I file for bankruptcy you're not going to get anything on attorney's fees, OK? And the case is going to be postponed for about a year postponed for everything, for all the motions, for all the deposition, all discovery and the trial…um…unless I dismiss the case voluntarily. Like I said contact Chuck Smith or contact me or contact Bill Gilg to work out something if you are serious OK? Bye.

**7/26/01 – 9:02 AM**

Yeah hi Ms. Glover. This is Ray. Ray Yeganeh. Yeah, I've been trying to reach you. Yes, I did get your settlement offer. And, basically I don't know if you guys understand what I said, but I do not have any cash, OK? I don't know how else I can tell you that. If I had the cash I would have taken your original offer back in May. All my cash is gone, all my savings are gone because

# EXHIBIT C

I gave it to Ingram OK? To settle the causes of action for Ingram. So please...I do not have have...I would like to settle this case if possible. I do not have $350,000 plus an additional $125K in cash. I do not have 1.2 million worth of equity. I don't know where you guys are getting these numbers OK?. I have couple pieces of property, OK, that have around $500,000 in equity. OK? Your ideas of equity or cash that I have are completely exaggerated, OK? I don't know where you're getting that information from.

But anyway I am willing to put up sufficient equity and give you a cash deposit for your attorney's fees or whichever way you want to use it, it really doesn't matter to me. But I am going to need some time to raise that money. It is not something I can do in one week or two weeks, OK? If I can settle this case this week, fine, otherwise I'm just going to file for bankruptcy OK, because this is kind of getting ridiculous. And if I file for bankruptcy, well then, you know you guys cannot proceed with the deposition or with the trial. It's probably going to be postponed for another year or so.

So If you really want to settle this thing I am willing to pay your attorney's fees, you know We can work out some sort of payment plan. I would like to get on with this thing it has gone on for enough time? After that I will go to trial and I will take my chances there. And you're not going to get a dime I can assure you that. The point is if you really want to do something you can call me or you can contact my attorney. You got his number. You can call him on his cell phone, which is 650-400-3858. Or you can call me it doesn't really matter whichever way you want to do it. And we can see if we can work something out. Or we can all sit down around a table and we'll see what we can do this week? That's probably the best. So give us a call. Bye.

### 7/26/01 – 9:56AM

Yeah hi this message is for Renee Glover. Hi, Renee this is Ray Yeganeh. I don't know why you don't want to talk to me in person but I would like to resolve...I would like to resolve both cases...the Evans and Nozipo Wobogo's case. Now on Evans, as I mentioned you can talk to Bill Gilg or you can talk to me directly if you feel like it. And, we offered $5,000. And I would appreciate it...look, I've already put in at least according to your own words at least $11,385.00 and we have the transcript of that, OK. That's your own words that you mentioned in court. And I think I'm entitled to at least that much for saving this man's property twice from foreclosure. So I would appreciate it if you treat me fairly, like a normal human being and you pay me something close to it. But I leave up to you and your own generosity. As to how much you want to pay me. Something that is fair. Don't try to knock it down, on the Evans' case.

On the other case I would appreciate if we can work out some kind of a settlement. Otherwise I would...I'd have to file bankruptcy just to allow myself sufficient time, probably at least a year, but also to try to knock out all of your attorney's fees. Actually *all* of the attorney's fees, including Gray Cary's attorney's fees. Once I file bankruptcy all those attorney's fees will be essentially unsecured and they are going to be eliminated. So, if you really want to settle that case you can talk to me directly or if you can get hold of Chuck. Chuck Smith is really busy nowadays, but you can talk to him. Or you can talk to me, either way.

Or we can all agree to go to mediation That's another way we can work it out. We can go to mediation probably later this week or next week. Or you can also agree to postpone the trial date, and the deposition date, and the motion for sanctions date by a couple of weeks, or probably for a month, so we can work out the details. Otherwise I'm just going to file for bankruptcy tomorrow which is Friday, OK? If we don't work out a settlement.

# EXHIBIT C

Now, as far as any money for attorney's fees are concerned. I do not have much money. All my cash is gone. All my savings are gone. All I got is two properties that have sufficient equity to take care of them. Umm...I can put up to $500,000 in equity and once the claims come in, you know we see if we can settle the claims. If not, we can go through arbitration and once the claims are decided, you know either I have to pay it or there is going to be a judgment against me, OK? One of those. And a judgment can be secured by the that property...by the $500K equity in the property. So it can't get any easier than that, OK? That's what we talked about originally. So the only thing that remains is the attorney's fees. I'm willing to put up to $150,000 in total deposit including attorney's fees and that is the best I can do and even for that I'm going to need some time to raise that kind of money. So you know can use $10,000 of that for notification, you can use ...I think there is going to be another $10-15,000 for binding arbitration, and for mutual arbitration, and the rest you guys can have it. Either for deposit or attorney's fees it really doesn't matter to me. The point is that I can only put up that much, and $500,000 in equity.

That is the best I can do. If that is unacceptable we can go to trial, OK? My witnesses are all ready, except I don't like your attorney's fees and for that I am going to file bankruptcy to try to eliminate your attorneys' fees. And once I do that, I don't think there is going to be any judgment against me and the case is going to be postponed because of the automatic stay. So...unless I dismiss my bankruptcy. So, anyway, if we can work out a deal, now is the time to do it. You can call me direct, you know I will talk to you. If you don't want to see me that's fine. But you can talk to me directly or you can talk to Chuck Smith if you can find him. He's really going to be busy this week, today and tomorrow. If you really want to communicate stop playing games and you can communicate with me. Alright? I'm sure we can work something out, OK? Otherwise I'm just going to go to trial and file bankruptcy before that. OK bye.

**7/27/01 – 1:26 PM**

Hi, this message is for Renee Glover. Hi, Ms. Glover, this is Ray Yeganeh. I've been trying to reach my attorney Chuck Smith about the Wobogo case. I've been trying to reach him actually since Tuesday. And I just cannot reach him. I don't know where he is, he's probably at a trial, but I just don't know how to reach him.

So anyway. I don't know if he faxed you my latest offer but the thing is I think we're going to need some time to try to work out the details on the settlement. And, overall I agree with a lot of the stuff that you put down but some of the details have to be worked out. Now, I'd appreciate it if you could continue the trial and the deposition and the motion for sanctions or if you like I can withdraw my motion for summary adjudication if you guys withdraw your motion for sanctions. So, and also if you could continue the deposition and the trial to allow us sufficient time to settle this thing. So, anyway that's pretty much it.

I don't know if you got my latest offer but in my latest offer I was offering $150,000 for the deposit and attorney's fees. And I think that's pretty fair that considering just two months ago you only wanted $25,000 in attorney's fees. And from that $150,000 I guess 5-10K should go to notification, around $15,000 for the mutual arbitration, and the rest which is like $125K for the deposit and attorney's fees. And I can put up the property on Sequoia that has $500,000 equity because it's vacant and it's on the market so it can easily sell. So I can put that up as the property equity.

That's pretty much all I can do. If you decide to go to trial what's going to happen is that I have to borrow against that property to pay my attorney's fees or the trial fees. So even if you guys get

# EXHIBIT C

a judgment against me you cannot collect on your judgment because there won't be any equity left in Sequoia because I have to pay for my attorney's fees and costs for the trial.

So anyway I think it's best if we can settle this thing but it is completely up to you. I would appreciate it if you don't do any depositions if you stop all these things so you don't incur any additional expenses. Because it would be completely unnecessary. If you don't believe me or if you don't trust me I can always prove myself by filing a bankruptcy. Even the last minute I can do this prior to the deposition. And that would stop all adversary proceedings, meaning the motions, the depositions and the trial. But I don't think it is going to stop and any negotiations. So the negotiations and the mediations and whatever can still go on or whatever.

So anyway, that's pretty much it. I'm sorry to communicate with you like this but I have no other way of communicating with you and I cannot get hold of my attorney. So thank you. Bye.

# EXHIBIT C

ELECTRONICALLY FILED

NOV 0 1 2006

1 | Charles P. Maher, State Bar No. 124748
Jeffrey L. Fillerup, State Bar No. 120543
2 | Nhung Le, State Bar No. 209552
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3 | Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
4 | Telephone No.: 415.356.4600
Fax No.: 415.356.4610

5

Attorneys for Plaintiff
6 | ANDREA A. WIRUM, Trustee in Bankruptcy

7

UNITED STATES BANKRUPTCY COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

SAN FRANCISCO DIVISION

10

| | |
|---|---|
| 11   In re RAMIN YEGANEH, | Case No. 05-30047 TEC<br>Chapter 7 |
| 12       Debtor. | |
| 13   CHARLES E. SIMS, Trustee, | Adversary Proceeding<br>No. 05-3240 |
| 14 | |
| 15       Plaintiff, | |
| 16   v. | |
| 17   F. NAMDARAN aka FRAN NAMDARAN<br>aka FARIN NAMDARAN aka FARIN | |
| 18   YEGANEH aka FRAN YEGANEH, | |
| 19       Defendant. | |
| 20 | |
| 21   CHARLES E. SIMS, Trustee, | Adversary Proceeding<br>No. 05-3241 TC |
| 22       Plaintiff, | |
| 23   v. | |
| 24   ALLIED MANAGEMENT TRUST and K.<br>YEGANEH aka KEN YEGANEH aka | |
| 25   KAIKHOSROW YEGANEH, | |
| 26       Defendants. | |
| 27 | |

28

1

| | |
|---|---|
| CHARLES E. SIMS, Trustee,<br><br>     Plaintiff,<br><br>v.<br><br>COAST DEVELOPMENT TRUST and<br>FARIN YEGANEH aka F. NAMDARAN aka<br>FRAN NAMDARAN aka FARIN<br>NAMDARAN aka FRAN YEGANEH,<br><br>     Defendants. | Adversary Proceeding<br>No. 05-3242 TC |
| CHARLES E. SIMS, Trustee,<br><br>     Plaintiff,<br><br>v.<br><br>ADVANTA TRUST and FARIN YEGANEH<br>aka F. NAMDARAN aka FRAN<br>NAMDARAN aka FARIN NAMDARAN aka<br>FRAN YEGANEH,<br><br>     Defendants. | Adversary Proceeding<br>No. 05-3243 TC<br><br>**THE TRUSTEE'S EVIDENTIARY<br>OBJECTIONS TO THE<br>DECLARATIONS OFFERED IN<br>SUPPORT OF DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT**<br><br>Date: November 15, 2006<br>Time: 9:30 a.m.<br>Dept: 23 |

Plaintiff Andrea A. Wirum, Trustee in Bankruptcy for the Estate of Ramin Yeganeh and successor to trustee Charles E. Sims (the "Plaintiff" or "Trustee"), submits these evidentiary objections to the motion for summary judgment filed by the Defendants in the four Adversary Proceedings (A.P. Nos. 05-3240, 05-3241, 05-3242, and 05-3243). The Defendants filed a joint motion for summary judgment, that is, a single motion for summary judgment that applies in all four of the Adversary Proceedings. In support of their motion for summary judgment in each of the four cases, the Defendants have filed the Declaration of the Ramin Yeganeh (the "Debtor"), and the Declaration of William Gilg, the Debtor's attorney. The declarations indicate that they relate to each of the four Adversary Proceedings. These evidentiary objections relate to testimony offered in the declaration of Ramin Yeganeh (the "Debtor's Declaration"), and the testimony offered in the declaration of William Gilg (the "Gilg Declaration"). The Trustee is asserting these objections in a single brief, which will be e-filed by the Trustee in each of the four

1    Adversary Proceedings.

2    **I.**    **A SUMMARY JUDGMENT MOTION CANNOT BE BASED UPON SPECULATION OR OTHER INADMISSIBLE EVIDENCE**

3

4        Federal Rule of Civil Procedure 56(e) provides that only "facts as would be admissible in

5    evidence" may be considered in connection with a summary judgment motion. The rule also

6    provides that any declaration submitted in support of a motion for summary judgment must

7    establish that the declarant "is competent to testify to the matters" set forth in the declaration.

8    The Courts have construed Rule 56(e) as a prerequisite to the granting of a motion for summary

9    judgment, so that if speculative or otherwise inadmissible evidence is offered in support of a

10    motion for summary judgment, the motion should be denied. *See, e.g., Cristobal v. Siegel*, 26

11    F.3d 1488, 1494 (9th Cir. 1994).

12        The Defendants' motion for summary judgment is not based upon admissible evidence

13    showing that the Trustee lacks standing to assert these fraudulent conveyance claims. Instead, the

14    motion is based upon inadmissible speculation.

15    **II.**    **EVIDENTIARY OBJECTIONS TO THE DEBTOR'S DECLARATION**

16        A.    <u>The offered testimony:</u>

17           "17. Therefore, after deducting the remaining mortgage balances of $898,341 and the amounts awarded to plaintiff's attorneys and accountants

18           of $403,128.85 from the gross sales proceeds of my above-referenced five properties, the net sales proceeds remaining total approximately

19           $1,976,871. Hence, it would seem that this $1.9 million amount is more than sufficient to pay off the individual creditors' approximate $400,000

20           allowed claims and any post-judgment interest thereon.

21           18. The plaintiff/trustee has now liquidated more than enough of my properties to pay off and satisfy all of the individual creditors' claims."

22

23        <u>Evidentiary objections to the offered testimony:</u> This testimony lacks foundation in that it

24    is not based on the personal knowledge of the declarant, FRE 602; it is improper opinion

25    testimony, FRE 702; and it is not the best evidence regarding the subject of the testimony, FRE

26    1002.

27        B.    <u>The offered testimony:</u> "although she admitted that she had never done any

28    business with the debtor and had never suffered any loss or injury." (page 2, lines 13-14)

1        Evidentiary objections to the offered testimony:   This testimony is hearsay, FRE 802;  it

2    lacks foundation in that it is not based upon personal knowledge, FRE 602; and it is not the best

3    evidence, FRE 1002.

4        C.    The offered testimony:   The declarant's testimony at:     page 2, lines 1-6;  page 2,

5    lines 15-18; page 2, lines 20-26; and page 4, lines 4-9.

6        Evidentiary objections to the offered testimony:   Throughout the declaration, the declarant

7    purports to state what various pleadings and exhibits state.        This testimony should all be

8    stricken because the documents and pleadings referred to are the best evidence of the contents

9    those exhibits.  FRE   1002.   The Trustee does not object to the exhibits, but the declarant's

10    purported testimony about the contents of the exhibits.

11        D.    The offered testimony:  "These allegations are false." (page 2, lines 5-6)

12        Evidentiary objections to the offered testimony:   This testimony lacks foundation, FRE

13    602; it is improper opinion testimony; it fails to comply with FRCP 56(e); it contradicts prior

14    sworn testimony of the declarant; it relates to a subject for which the declarant has previously

15    asserted the Fifth Amendment right against self-incrimination; it is not the best evidence, FRE

16    1002; and it is not relevant in the context of this motion, FRE 402.

17    **III.    EVIDENTIARY OBJECTIONS TO THE GILG DECLARATION**

18        A.    The offered testimony:

19            "21.   Therefore, after deducting the remaining mortgage balances of $898,341 and the amounts awarded to plaintiff's attorneys and accountans

20    of  $403,128.85 from the gross sales proceeds of the debtor's above-referenced five properties, the net sales proceeds remaining total

21    approximately $1,976,871.  Hence it would seem that this $1.9 million amounts is more sufficient to pay off the individual creditors' approximate

22    $400,000 allowed claims and any post-judgment interest thereon.

23            22.  The plaintiff/trustee has now liquidated more than enough of the debtor' properties to pay off and satisfy all of the individual creditors

24    claims."

25        Evidentiary objections to the offered testimony:  This testimony lacks foundation in that it

26    is not based on the personal knowledge of the declarant, FRE 602;    it is improper opinion

27    testimony, FRE 702;  and it is not the best evidence regarding the subject of the testimony, FRE

28    1002.

1    B.    The offered testimony: "although she admitted that she had never done any

2    business with the debtor and had never suffered any loss or injury." (page 2, lines 24-5)

3    Evidentiary objections to the offered testimony:    This testimony is hearsay, FRE 802;  it

4    lacks foundation in that it is not based upon personal knowledge, FRE 602; and it is not the best

5    evidence, FRE 1002.

6    C.    The offered testimony:  The declarant's testimony at:    page 2, lines 5-9;  page 2,

7    lines 26-27; page 3, line 1-2;  page 3, lines 3-11;  page 4, lines 11-14;  page 4, lines 17-23;  page

8    4, lines 27-28;   and page 5, lines 1-3.

9    Evidentiary objections to the offered testimony:    Throughout the declaration, the

10    declarant purports to state what various pleadings and exhibits state.    This testimony should all

11    be stricken because the documents and pleadings referred to are the best evidence of the contents

12    those exhibits.  FRE    1002.    The Trustee does not object to the exhibits, but the declarant's

13    purported testimony about the contents of the exhibits.

14

15    DATED: November 1, 2006    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

16

17    By:

18    Jeffrey L. Fillerup
    Attorneys for Plaintiff ANDREA A. WIRUM

19

20

21    208604.1

22

23

24

25

26

27

28

ELECTRONICALLY FILED

NOV 0 1 2006

1   Charles P. Maher, State Bar No. 124748
    Jeffrey L. Fillerup, State Bar No. 120543
2   Nhung Le, State Bar No. 209552
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3   Rincon Center II, 121 Spear Street, Suite 200
    San Francisco, California 94105-1582
4   Telephone No.: 415.356.4600
    Fax No.: 415.356.4610
5
    Attorneys for Andrea A. Wirum
6   Trustee in Bankruptcy

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11  In re RAMIN YEGANEH,                    Case No. 05-30047 TEC
                                            Chapter 7
12
              Debtor.
13

14  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No. 05-3240 TC
15             Plaintiff,

16  v.

17  F. NAMDARAN aka FRAN NAMDARAN
    aka FARIN NAMDARAN aka FARIN
18  YEGANEH aka FRAN YEGANEH,

19             Defendant.

20  CHARLES E. SIMS, Trustee,              Adversary Proceeding
                                           No. 05-3241 TC
21             Plaintiff,

22  v.

23  ALLIED MANAGEMENT TRUST and K.
    YEGANEH aka KEN YEGANEH aka
24  KAIKHOSROW YEGANEH,

25             Defendants.

26

27

28

                              1

1

CHARLES E. SIMS, Trustee,

2
      Plaintiff,

3

4
v.

5
COAST DEVELOPMENT TRUST and
FARIN YEGANEH aka F. NAMDARAN aka
FRAN NAMDARAN aka FARIN

6
NAMDARAN aka FRAN YEGANEH,

7
      Defendants.

8

Adversary Proceeding
No. 05-3242 TC

9
CHARLES E. SIMS, Trustee,

10
      Plaintiff,

11
v.

12
ADVANTA TRUST and FARIN YEGANEH
aka F. NAMDARAN aka FRAN

13
NAMDARAN aka FARIN NAMDARAN aka
FRAN YEGANEH,

14
      Defendants.

15

16

Adversary Proceeding
No. 05-3243 TC

**CERTIFICATE OF SERVICE**

Date: November 15, 2006
Time: 9:30 a.m.
Dept: 23

17
    I, Alissa V. Worthing, declare that:

18
    1.   I am employed in the City and County of San Francisco, California. My business

19
address is 121 Spear Street, Suite 200, San Francisco, California 94105. I am over the age of 18
years and not a party to the above-entitled action. I work in the office of a member of the bar of
this Court, at whose direction the service was made.

20
    2.   I am familiar with Luce, Forward, Hamilton & Scripps' practice whereby each

21
document is placed in an envelope, the envelope is sealed, the appropriate postage is placed
thereon and the sealed envelope is placed in the office mail receptacle.

22
    3.   On this date, I served a copy of:

23
**THE TRUSTEE'S MEMORANDUM IN OPPOSITION TO THE**

24
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

25
**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**
**TRUSTEE'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

26
**DECLARATION OF ANDREA A. WIRUM**

27
**DECLARATION OF EMILY L. MAXWELL IN SUPPORT OF**

28
**TRUSTEE'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

2

1   **DECLARATION OF RENEE GLOVER-CHANTLER IN SUPPORT OF
TRUSTEE'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

2

3   **THE TRUSTEE'S EVIDENTIARY OBJECTIONS TO THE DECLARATIONS OFFERED
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

4
    **CERTIFICATE OF SERVICE**

5

6   by ☒ **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for each
    address named on the attached service list for collection and mailing on the below indicated day
7   following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP.  I certify I
    am familiar with the ordinary business practices of my place of employment with regard to
8   collection for mailing with the United States Postal Service.  I am aware that on motion of the
    party served, service is presumed invalid if postal cancellation date or postage meter date is more
9   than one day after date of deposit or mailing affidavit.

10  on

11  | Jonathan G. Chance, Esq. | |
    | JC Law Offices | |
12  | 205 East 3rd Avenue, Suite 411 | |
    | San Mateo, CA  94401 | |
13

14

15          I declare under penalty of perjury that the foregoing is true and correct to the best of my
    knowledge.   Executed on November 1, 2006 at San Francisco, California.

16

17
                                            /s/ Alissa V. Worthing
18                                          Alissa V. Worthing

19  208578.1

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS E. CARLSON, JUDGE

| | |
|---|---|
| In Re:<br><br>RAMIN YEGANEH,<br><br>              Debtor. | ) Case No. 05-30047 TEC<br>) Chapter 7<br>)<br>)<br>)<br>) |

| | |
|---|---|
| CHARLES E. SIMS, Trustee,<br><br>          Plaintiff,<br><br>        v.<br><br>F. NAMDARAN, aka FRAN NAMDARAN,<br>aka FARIN NAMDARAN, aka FARIN<br>YEGANEH, aka FRAN YEGANEH,<br><br>         Defendant. | ) Adv. 05-3240 TC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| CHARLES E. SIMS, Trustee,<br><br>          Plaintiff,<br><br>        v.<br><br>ALLIED MANAGEMENT TRUST and<br>K. YEGANEH, aka KEN YEGANEH,<br>aka KAIKHOSROW YEGANEH,<br><br>         Defendants. | ) Adv. 05-3241 TC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Wednesday, November 15, 2006<br>) San Francisco, California |

Trustee's motion for summary judgement
based upon actual fraud


Caption continued on next page.

2

```
CHARLES E. SIMS, Trustee,          ) Adv. 05-3242 TC
                                   )
                Plaintiff,         )
                                   )
           v.                      )
                                   )
COAST DEVELOPMENT TRUST and        )
FARIN YEGANEH, aka F. NAMDARAN,    )
aka FRAN NAMDARAN, aka FARIN       )
NAMDARAN, aka FRAN YEGANEH,        )
                                   )
                Defendants.        )
_____)
                                   )
CHARLES E. SIMS, Trustee,          ) Adv. 05-3243 TC
                                   )
                Plaintiff,         )
                                   )
           v.                      )
                                   )
ADVANTA TRUST and FARIN YEGANEH,   )
aka F. NAMDARAN, aka FRAN          )
NAMDARAN, aka FARIN NAMDARAN, aka  )
FRAN YEGANEH,                      )
                                   )
                Defendants.        ) Wednesday, November 15, 2006
_____) San Francisco, California
```

Trustee's motion for summary judgement
based upon actual fraud


                 Appearances listed on next page.

3

<u>Appearances</u>:

For the Debtor:                    William Gilg, Esq.
                                   305 San Bruno Avenue West
                                   San Bruno, California  94066
                                   (650) 871-8647


For the Defendants:                Jonathan G. Chance, Esq.
                                   Law Offices of Jonathan G. Chance
                                   2000 Broadway Street
                                   Redwood City, California  94063
                                   (650) 299-1269


For Andrea A. Wirum,               Jeffrey L. Fillerup, Esq.
Trustee in Bankruptcy:             Charles P. Maher, Esq.
                                   Luce, Forward, Hamilton & Scripps, LLP
                                   Rincon Center II
                                   121 Spear Street, Suite 200
                                   San Francisco, California  94105-1582
                                   (415) 356-4610



Digital Court                      United States Bankruptcy Court
Reporter:                          Clerk of the Court
                                   Jane L. Galvani
                                   235 Pine Street, 23rd Floor  (94104)
                                   Post Office Box 7341
                                   San Francisco, California  94120-7341
                                   (415) 268-2366




Certified Electronic               Palmer Reporting Services
Transcriber:                       P. O. Box 30727
                                   Stockton, California  95213-0727


            Proceedings recorded by digital recording;
    transcript produced by federally-approved transcription service.

*Trustee's Motion for Summary Judgment*                                          4

1   <u>Wednesday, November 15, 2006</u>                    <u>9:35 o'clock a.m.</u>

2                         P R O C E E D I N G S

3           THE CLERK:  Matter of Sims versus Namdaran, Sims

4   versus Trust.

5           THE COURT:  Are they outside?

6           MR. [SPEAKER]:  They are outside of the gate.

7           THE COURT:  Okay.  I didn't think they expected me to

8   be so fast.  Okay.

9           MR. MAHER:  Good morning, Your Honor.  Charles Maher

10  and Jeffrey Fillerup on behalf of Andrea Wirum, Trustee and

11  plaintiff.

12          THE COURT:  Okay.  They've stated their appearance,

13  Mr. Chance.  You might want to do the same.

14          MR. CHANCE:  Yes.  Jonathan Chance on behalf of the

15  Defendants, the Namdarans, who are not present in court.

16          THE COURT:  Okay.

17          MR. GILG:  Good morning, Your Honor.  Bill Gilg,

18  specially appearing for the debtor.

19          THE COURT:  Okay.  I issued a tentative ruling

20  yesterday.  I assume you both got it?

21          [COUNSEL]:  Yes, Your Honor.

22          THE COURT:  I think the best thing to do would be -

23  unless there's something I've missed, I will assume the Trustee

24  has no qualm with parts one and two?

25          MR. MAHER:  Correct, Your Honor.

*Trustee's Motion for Summary Judgment*                                    5

1    THE COURT: And that the defendants definitely have

2  qualms of one and two. And so I'll just go to the - to defense

3  counsel and ask, can you - you can comment on -

4    MR. CHANCE: Yes.

5    THE COURT: - on parts one and two?

6    MR. CHANCE: Yes, Your Honor.

7    THE COURT: It's necessary I'll let you respond to the

8  comments. And then will go on to part three, which is, I think,

9  the most difficult one. So please go ahead.

10    MR. CHANCE: Well, let me ask you a question. What do

11  you mean with regards to part one and two? I'm looking at -

12    THE COURT: Your motion.

13    MR. CHANCE: Yes.

14    THE COURT: Your motion, the tentative ruling, would

15  deny your motion and -

16    MR. CHANCE: I have no comments with respect to your

17  tentative on that.

18    THE COURT: Okay.

19    MR. CHANCE: I mean, the record's preserved on it.

20  And that's -

21    THE COURT: Okay. Go to part two, then, which is -

22  has to do with the four Allied properties were transferred after

23  the injunction.

24    MR. CHANCE: Can you give me just one quick moment?

25    THE COURT: Sure.

1        (Pause in the proceedings.)

2            THE COURT:  I guess it's five Allied properties.

3            MR. CHANCE:  Actually, all I'm prepared to offer

4    rebuttal and comment on is your last ruling, which is the

5    remaining 3240, 3242, and 3243 cases.

6            THE COURT:  In other words, the one where I said I

7    wanted to hear -

8            MR. CHANCE:  Yes.

9            THE COURT:  - argument -

10           MR. CHANCE:  Yes.

11           THE COURT:  - about what I thought was a closer

12   question.

13           MR. CHANCE:  Yes.

14           THE COURT:  Okay.  Well, if you want to go first, I

15   guess I'll let you go first, but I definitely want to hear

16   comments from both sides.

17           MR. CHANCE:  I think the Court is correct in pointing

18   out that, in part C, the debtor did not substantially transfer

19   all of his assets.  The part I'd like to comment on is on line

20   25 to the end of the page talking about, "The debtor could still

21   be considered to have taken actions to hinder any creditor's

22   effort."

23           The bottom line, Your Honor, is this is all a matter

24   of a jury question.  The Trustee in their reply papers attempted

25   to point out some facts that they believed established

*Trustee's Motion for Summary Judgment*                    7

1    conclusively as a matter of law that they had met the burden of

2    proof on the issue whether fraudulent transfer had occurred.

3         In the same documents, deposition testimony they

4    submitted before this Court — and this was pointed out to Your

5    Honor in a surreply brief that we had filed on Monday — within

6    those same documents, there is deposition testimony from the

7    debtor, whose testimony incidentally, is allowed to be

8    considered in this, was not precluded, stating that he had no

9    interest in these properties.

10        As you know, under the *Anderson-Liberty Lobby* case,

11   *Celotex*, the various summary judgment standard cases, all

12   inferences have to be resolved in favor of the nonmovant, which

13   is the Namdarans in this party.

14        And the issue about whether or not a jury could

15   believe that the transfer had occurred or, conversely, would

16   believe that no transfer had occurred is a jury question.  And

17   issues regarding the debtor's credibility, those are not the

18   province of this Court.

19        And that's what this is really boiling down to, is

20   whether a jury could believe that my clients could defeat a

21   fraudulent-transfer action is going to come down on the

22   credibility of the debtor.

23        To the extent that defendants can testify as to this

24   and hadn't been precluded from doing so, their testimony had to

25   be considered, as well.  This all comes down to being whether a

*Trustee's Motion for Summary Judgment* 8

1   jury could believe them or not.  It's not a matter of there's no

2   evidence.  It's just a matter of whether they're going to

3   believe the evidence at trial.

4           And for that reason, Your Honor, the summary judgment

5   should be denied.  And it should proceed to a jury trial in this

6   issue.  As Your Honor stated in a tentative ruling, there is not

7   a substantial transfer of all the assets, significant assets

8   remain.

9           THE COURT: A transfer of substantially all.  What I

10  tried to get at was this - and perhaps from the way you're

11  phrasing it, I'm not sure that I was very clear.

12          The - what I thought you - what I thought the

13  defendant asserted in his - his declaration, that portion of it

14  which was not precluded by the prior order, was - he said, "One

15  thing you should consider in determining whether I had intent,

16  is I didn't get rid of everything.  And, it was not - I didn't

17  get rid of everything.  I didn't try wholly and completely to -

18  to stiff the potential plaintiff - plaintiffs.  But - and, in

19  fact, I kept property worth a value, you know, at least in a

20  very interesting comparison range with the damages that were

21  contemplated at that time.  I understand that argument.

22          Is there something else?  Is that it?

23          MR. CHANCE: Well, there is something else.  The issue

24  about the attorney's fee judgment, that didn't come down till

25  about three years after that.

1      THE COURT:  Oh, I understand.

2      MR. CHANCE:  So -

3      THE COURT:  And - so I - I know that there were some -

4  there were some - some traffic, some settlement traffic, that

5  talked about a substantial amount of attorney's fees.  But I - I

6  understand the argument to be that, gee, I thought I kept enough

7  for what I knew at the time I might have to pay.

8      That's basically the argument, right?

9      MR. CHANCE:  Yes, that's - that's that's an argument -

10     THE COURT:  Okay.

11     MR. CHANCE:  - with the debtor, that the debtor has

12  put forward.

13     THE COURT:  Okay.  All right.  Now what I'm asking you

14  to focus on - and I understand the importance of that argument -

15  and it's really a fact, it's -

16     MR. CHANCE:  Correct.

17     THE COURT:  - that he kept substantial property.  What

18  I'm asking you to focus on and what you may want to comment on

19  here, is that I don't think the concept of hinder, delay, or

20  defraud requires that the transfer in question be to the end of

21  completely stiffing the creditors, but rather can be just sort

22  of, you know, throwing logs in the road to slow or make less

23  straightforward the enforcement of any resulting judgment.

24     And there are other facts here that are - that focus

25  not on whether the debtor ultimately tried to stiff them, but

*Trustee's Motion for Summary Judgment*                    10

1    whether the debtor was the - the debtor was trying to make this

2    more difficult, such as making transfers not in his own name, by

3    taking property not in his own name, and then transferring them

4    where - to a person that was his mother, but not disclosed as

5    his mother, things like that.

6          And I just want to make sure you have an opportunity

7    to comment on that because, as I look at this, I see - and as I

8    try to figure out whether a reasonable jury could find for the

9    defendant, I look at this and say, "Yeah, he - you know, it's

10   pretty clear, he kept a lot of stuff."

11         On the other hand, is also pretty clear that there

12   were all sorts of shenanigans going on.  And the question is:

13   How to take account of those two - -

14         MR. CHANCE:  I -

15         THE COURT:  - two things that are very, very clear.

16         MR. CHANCE:  I'd like to offer some things for your

17   consideration definitely.  I was looking up the statute again,

18   where - the concept of hindering comes up in Section 3439.04 of

19   the California Civil Code.  It talks about basically the jury

20   has to find an intent to hinder.  That's the ultimate fact to be

21   found here when ruling on fraudulent transfer.

22         Just in its own articulation, the concept of intent to

23   hinder, it's a quintessential question of fact.  If the jury

24   finds as true these various facts that you elucidated and

25   further draws from that an inference or a conclusion that the

*Trustee's Motion for Summary Judgment*                                              11

1  debtor and the client, the defendants, had an intent to

2  hinder...

3          THE COURT:  I don't think the defendants have to have

4  the intent.  It focuses on the intent with which the transfer

5  was made by the debtor.

6          MR. CHANCE:  Yeah.  Let me rephrase that.

7          THE COURT:  Yeah.

8          MR. CHANCE:  All I'm trying to say is:  The jury is

9  going to have to decide whether there's an intent to hinder.

10  That's a question of fact.

11          THE COURT:  Oh, I understand that it's a fact

12  question.  I understand that completely.  I'm just asking you to

13  focus on the - what I think is the legal test, which that they

14  don't have to find that he intended that they never collect

15  anything, but merely to make this all more difficult.  I think

16  that's hindering.

17          MR. CHANCE:  But the debtor took certain actions to

18  protect his rights.  And, again, I'm just trying to emphasize

19  that these are all facts that have to be considered by the jury.

20  Whether they could draw the conclusion that there was an intent

21  to hinder is for them to decide.

22          THE COURT:  Okay.  Okay.  Mr. Fillerup or Mr. Maher,

23  you look like you're about to speak.  And you've written most of

24  this, so I assume you're the one that's going to speak on this

25  question, Mr. Fillerup?

*Trustee's Motion for Summary Judgment*                    12

1    MR. FILLERUP: That's right. And - and the tentative

2    is very helpful. And I'll really focus on what's written in the

3    third section of the tentative.

4    And I think in this situation, it's all - it's

5    oftentimes helpful to go back and look at the instructions the

6    Court will give to the jury. And I went back and I looked at

7    the Judicial Council Civil Jury Instructions. And for a

8    fraudulent conveyance, based on actual intent to defraud, the

9    jury instruction - and let me give this to you.

10    THE COURT: Do you have a number for that? I don't

11    remember whether that that was -

12    MR. FILLERUP: I can give you a copy of this.

13    THE COURT: - in your papers or not.

14    MR. FILLERUP: Your Honor?

15    (Counsel handed a copy of the above-mentioned document.)

16    THE COURT: Yeah, please.

17    "Actual intent to defraud or hinder, delay, and

18    defraud" - well, I'll see it in a minute so I'll find out.

19    MR. FILLERUP: And -

20    THE COURT: Okay. Let me -

21    MR. FILLERUP: - what I think it -

22    THE COURT: Can I just read this - can I just read

23    this first before you comment?

24    MR. FILLERUP: Sure. And I'm - I'm going to focus on

25    the last paragraph.

1    THE COURT: "To prove intent to hinder, delay, or

2  defraud," that paragraph?

3    MR. FILLERUP: Correct. Yes.

4    THE COURT: So it's the second-full paragraph before

5  the second line? About - do you see it, Mr. Chance?

6    MR. CHANCE: Yes, I do.

7    THE COURT: Okay. Go ahead then.

8    MR. FILLERUP: And just so that we have a record of

9  what we're looking at, this is Judicial Council of California

10  Civil Jury Instructions, Fall 2006 Edition, Model Jury

11  Instructions 4200, Actual Intent to Defraud.

12    And what is significant about this is that paragraph

13  says to prove intent to hinder, delay, or defraud creditors it

14  is not necessary to show that the debtor had a desire to harm

15  his creditors. The plaintiff need only show that the debtor

16  intended to remove or conceal assets to make it more difficult

17  for creditors to collect payment.

18    And I think what's important about that is to make it

19  more difficult for creditors to collect payment and that's what

20  the jury is told. The jury isn't told - well, if the Court were

21  to adopt this model instruction, the jury would not be told to

22  make it impossible.

23    And I think this is significant because it indicates

24  that in connection with actual fraud, insolvency or the assets

25  remaining after the transfers is not a prima facie element, it's

1    not required.  And -

2         THE COURT:  Although if the person had $50 million in

3    assets and transferred $500,000 of assets, that particular fact

4    would go a long way, and sometimes it can be very important how

5    much is transferred and how much is kept.

6         MR. FILLERUP:  Well, I'm not so sure that even in that

7    situation if there were a number of other badges of fraud, that

8    that would be sufficient.  I mean the - and I guess your

9    hypothetical goes to whether anyone would bother to prosecute a

10   fraudulent-conveyance case.

11        THE COURT:  Yeah, maybe.  Okay.  Go ahead.  I'm sorry

12   to interrupt.

13        MR. FILLERUP:  And so, number one, the assets that are

14   remaining or insolvency is not an element, as it is in a

15   constructive-fraud case.  And I - I don't want to give you a lot

16   more cases, because I think we've cited an entire law library in

17   connection with all of this, but I just have a couple of cases

18   that I want to give you that - that really go to what you have

19   identified in the third section of the tentative.  And one is a

20   case called *Heffernen*, 110 Cal.App.2d 564.  And this is an

21   actual fraud case.  And an issue comes up - the same issue

22   arises in the case.  And the court finds that there had been a

23   fraudulent conveyance and says it does not matter if the

24   transferor retains property ample to pay his creditors.

25        There are - there's another leading federal case

*Trustee's Motion for Summary Judgment*                                    15

1    called *Kelly versus Thomas Solvent*, 725 F.Supp. 1446.  And this

2    case involved a corporation spinning off part of its operations

3    into a subsidiary and a fraudulent-conveyance claim being made

4    in connection with that spin-off.

5            And an issue about the remaining assets available to

6    pay off creditors came up.  And the court directly address the

7    issue that we're talking about, and that is if creditors are

8    simply delayed, is that enough.  And in *Thomas Solvent* the court

9    said yes.  The court wrote, and this is the Western District of

10   Michigan, "Even if the company only intended to hinder or delay

11   creditors, these purposes satisfy the intent elements, where a

12   debtor's purpose is merely to stave off creditors by putting

13   property beyond the reach, even when the purpose not to cheat

14   them of ultimate payment but only to wrest them from the time to

15   restore the debtor's affairs."

16           There's another federal case, *The United States versus*

17   *Green*, a Third Circuit case, 201 F.3d 251.  And this case says

18   that in reviewing the badges of fraud, in those instances, like

19   this case where there is a transfer to a family member for no

20   consideration, then the remaining assets or solvency of the

21   debtor is not significant.

22           And the court said the present facts are that the

23   transfer was to a spouse for a wholly-inadequate consideration.

24   No matter how healthy Howard Green's balance sheet might have

25   been, the factual presumption of actual fraud would survive.

1      Our main point is that it's clear, and there really

2   hasn't been any dispute that no matter how much – how many

3   assets remained after the transfers were made, these transfers

4   were clearly intended to delay, and they did in fact delay

5   creditors in collecting on judgments and obligations that were

6   owed by the debtor.

7      We also have cited a number of cases in our reply

8   brief where courts have granted summary judgment.  And I think

9   that we cited about ten cases.  And if the Court goes back and

10  looks at those cases, in each of those cases there were multiple

11  badges of fraud that were presented in connection with the

12  plaintiff's motion for summary judgment.

13     All of the badges of fraud were not established on

14  summary judgment.  That's not a requirement.  In this case there

15  were certain badges of fraud that we didn't present.  And so the

16  Court may ask, 'Well, why didn't you present evidence that goes

17  to the debtor's solvency and the remaining assets'; well, the

18  answer to that goes back to one of the badges of fraud that we

19  did identify, and that is the debtor's and the defendants'

20  failure to maintain records, their destruction of records and

21  their failure to produce documents.

22     And that is – those – that fact is something that made

23  it difficult for us to go back and determine the debtor's

24  financial status at the time of the transfers.

25     THE COURT:  Also has some bearing on whether the

*Trustee's Motion for Summary Judgment*                                    17

1    debtor continued to have beneficial use.  Your argument about

2    looking in to see who was the owner beforehand, the same

3    evidence also pertains to whether the debtor had beneficial use

4    after the formal transfer.

5           MR. FILLERUP:  Right.

6           Of the cases that we've cited where summary judgment

7    was granted in an actual fraud situation, none of those cases

8    had as many badges of fraud as we have identified.  In most of

9    those cases there are three or four badges of fraud.  And most

10   of those cases identify the key badges of fraud as transferred

11   to a family member and no consideration.  And the cases refer to

12   those two badges of fraud as being particularly significant.

13          It's - it would be a rare case where a plaintiff in a

14   fraudulent transfer case could come in and establish all of the

15   badges of fraud.  And none of the cases say that that's

16   required.  And when I say none of the cases I mean the cases in

17   which summary judgment was granted in a fraudulent-transfer

18   case.

19          So our main point is that while remaining assets is a

20   badge of fraud, it's not a badge of fraud that we identified.

21   We did identify in each case about a dozen badges of fraud, all

22   of which are undisputed.  And the fact that the defendant or the

23   debtor comes in and identifies some other badge of fraud and

24   says:  Well, maybe there's a genuine issue of material fact with

25   respect to this other badge of fraud doesn't prevent summary

1   judgment.

2           And the reason it doesn't prevent summary judgment is

3   that a jury will be given the totality of the facts and given

4   the facts that we've presented, a jury would have to take

5   admissible evidence from the defendants and say:  This

6   admissible evidence from the defendants outweighs the evidence

7   that's been presented by the trustee.  And they haven't done

8   that.

9           And in connection with the remaining assets and the

10  solvency or insolvency of the debtor, they really haven't

11  submitted evidence of what his financial condition was at the

12  time.  Do I have it?  I don't have it because they haven't

13  produced that information for me.

14          I've asked for it.  I subpoenaed the debtor.  When the

15  debtor appeared for his deposition, he didn't produce a single

16  piece of paper to me.  Not one page in response to my

17  subordinate that asked for - that required that he produce

18  documents relating to this case, including the badges of fraud.

19          The Court's discovery order says that while the debtor

20  may offer evidence, the debtor cannot offer - or the defendants

21  cannot offer evidence from the debtor other than testimony from

22  the debtor and no documents that were not previously produced.

23  And there weren't documents produced to us that go to the

24  financial condition of the debtor at the time of the transfers.

25          So I think that covers my main points with respect to

*Trustee's Motion for Summary Judgment*                                19

1   the third section of your tentative.

2         THE COURT:  Okay.  Let me ask a couple practical

3   questions.

4         Do you have some sense of what the equity in these

5   other - it's 13? - 13 properties is total?

6         MR. MAHER:  We have some sense, Your Honor.  We don't

7   - we've never been in the inside of these properties.  We don't

8   know what the condition is inside.  We have some sense of what

9   we need.  We probably do not need some of the less valuable

10  properties.

11        THE COURT:  Some of the less valuable?

12        MR. MAHER:  Less valuable.

13        THE COURT:  Well, how - how much short is the estate?

14        MR. MAHER:  The estate, as we speak and without having

15  liquidated two properties, would be about three and a half to

16  four million dollars short.  If we liquidate the remaining

17  properties, we get -

18        THE COURT:  Before you liquidate them you're -

19        MR. MAHER:  Before.

20        THE COURT:  - three and a half million short.

21        MR. MAHER:  If we - if we get a million dollars for

22  those two remaining, then we're two and a half to three and a

23  half short.  And that - that assumes no administrative expenses.

24  You'd have to factor that in.

25        THE COURT:  No additional administrative expenses?

1        MR. MAHER:  Correct.

2        THE COURT:  Okay.  And do you have any sense of what

3  these are worth?

4        MR. MAHER:  Yes.

5        THE COURT:  And I'm not holding you to anything on

6  this.  I'm just trying to ask a practical question.  What is

7  your - what's your rough sense of what they're likely going to

8  sell for net?

9        MR. MAHER:  Net, I would say -

10       THE COURT:  Net of liens and costs of sale.

11       MR. MAHER:  I would say probably net three and a half

12  to four million.  And again that's a guess without having seen

13  the inside, which - and the property that was disclosed that

14  we've sold has been an issue.  Condition has been an issue.

15       THE COURT:  My only comment from you is this:  Whether

16  this is granted on summary judgment, whether it goes to a jury,

17  whatever happens, I think this is a question of when and not if

18  it is turned over the trustee.  These - I don't think that -

19  whether the hypothetical "reasonable jury" could find for the

20  defendant, I don't think a real-life jury will.  I don't know

21  there's any chance of that at all.

22       What you have the opportunity to do here, if the

23  defendants will wake up and smell the coffee, is you might be

24  able to keep something for the defendants by way - that will

25  otherwise be used up in administrative costs.  The cost of going

*Trustee's Motion for Summary Judgment*                            21

1    to trial, the cost of an appeal will be a lot.

2          If the trustee wins, even it's on appeal, even if that

3    is unreach- - a trial after an appeal, or something like that,

4    all the money the trustee spends is going to be - all the

5    proceeds of the property are going to be used to pay that before

6    anything goes back to the debtor or the - or the defendants.

7          And at some point the fight may not be worth all the

8    costs, because it's going to cost them fees - and they're

9    basically going to be, I think in the long run, paying the fees

10   for both sides.

11         And the trustee and the - in consultation with the

12   counsel for the plaintiffs in this case might be willing to

13   leave something, not a huge amount, because this case is a very

14   strong one, but at least the amount of their administrative

15   expenses in order to get the property quickly and in order not

16   to go through that appeal and in order not to suffer the very

17   minor risk that they - in doing this case.

18         Which brings me to another point about timing.  Now

19   I'm inclined here to - there are four actions - I'm inclined

20   here to rule at this point for the trustee in one of them.  And

21   I need to think a lot more about the other three.

22         The - I have two questions.  You know, I don't know

23   how long it's going to take me.  I have a couple things that I'm

24   going to be out of office for, but - I'm going to on a trip, and

25   then I have to have my knee worked on.  It may not be a while -

1   it may be a while before I can decide the other three. You

2   know, maybe three, four weeks before I can get it. I'm going to

3   write something in fairly close detail.

4            Thing one, the judgment on the five properties is much

5   simpler. I don't need to take so long to do that. And does the

6   trustee want these all done together? Do you want me to hold

7   off and do them all together?

8            And, secondly, what do you want to do about the trial?

9            MR. MAHER:  I don't think it's necessary to do them

10  all together. I think the Allied one could be done separately.

11           THE COURT:  Okay. So it makes no difference to you.

12  They'll - they'll start their appeal separately then on that?

13           MR. MAHER:  Yes, Your Honor.

14           MR. FILLERUP:  And in terms of a trial, my suggestion

15  is that we wait until the Court has issued rulings on - in all

16  four cases, and that we have a status conference at that point

17  and set a trial date.

18           THE COURT:  Have we set a trial?

19           MR. FILLERUP:  We don't have a trial date.

20           MR. CHANCE:  No.

21           THE COURT:  Okay. Then we don't need to vacate.

22           I would suggest that you - I don't know if there's any

23  more discovery to be done. Have we set a discovery cutoff?

24           MR. CHANCE:  I think it's a *de facto* cutoff, because

25  we've extended past the first discovery deadline -

1    THE COURT:  Okay.

2    MR. CHANCE:  - in the trial, the first trial.

3    THE COURT:  Well, and then all I was going to say:  I

4    wouldn't do any discovery right now until you see what happens.

5    And if it's already cut off, well, then, that answers that.  And

6    if we don't have a trial date, then we don't need to worry about

7    postponing a trial date.

8        My - my goal here will be to be - my first priority is

9    going to be to be careful.  So it may be a little while before

10   you get the decision.  It will be written, you know.  I'm not

11   going to do it on the - just state it on the record.  I will be

12   - I will do it in writing.  It just may take me a while because

13   I have these couple other things going.  I just want to let you

14   know that.

15   MR. MAHER:  Thank you, Your Honor.

16   THE COURT:  Yes.

17   MR. CHANCE:  Can I - I have just a couple of quick

18   comments, not to take away from your sort of guidance, if you

19   will.  I want to point out that I was informed by the debtor,

20   prior to coming in the courtroom, that there's been some

21   discussions and possible resolution about this matter.  I'm not

22   aware of the details.  It may be it gets resolved, Your Honor.

23       But in the event it doesn't, I just wanted to offer a

24   couple of quick comments in response to what Mr. Fillerup said.

25       I would point out that in the cases that the trustee's

1    counsel cited in the reply -

2              THE COURT:  About summary judgment?

3              MR. CHANCE:  Yes, sir.

4              - that none of those cases involved the same fact

5    pattern here where a debtor retained a sizable amount of assets

6    because he believed that was sufficient to cover what was then

7    know or reasonably known to be the possible debt.  I think that

8    distinguishes those cases from this.

9              And then looking at the model jury instruction, were

10   this case to go to trial, I would definitely be offering a

11   different instruction to bring home to the jury the fact that

12   they need to consider the remaining assets.

13             But even if this were the model instruction accepted,

14   even in the section that Mr. Fillerup was quoting to you, it

15   still makes it very clear this is a question of intent.

16             It states that, "The plaintiff need only show" - and

17   I'm reading from the paragraph we talked about earlier - "need

18   [to] show the debtor intended to remove," "intended to remove or

19   conceal assets," not take certain steps, but "intended to

20   remove...assets" to make it more difficult for the creditors to

21   collect.

22             As the debtor said in his own declaration, he had no

23   such intent.  He believed that the assets he had at time - at

24   the time were sufficient.  And just hearing the dialogue between

25   yourself and Mr. Fillerup about whether this is sufficient or

*Trustee's Motion for Summary Judgment*                                    25

1   not, and Mr. Fillerup not necessarily being able to give a

2   definitive answer, this type of argument reminds me of what

3   should be happening in a jury room, because it comes down to is

4   what debtor would testify at trial that he kept a significant

5   amount of assets, this is what they were worth and this was his

6   intent at the time, is that sufficient to defeat the trustee's

7   claim or not.  It shows me this is really for a jury to decide.

8   And that's the only comments I have.

9         THE COURT:  My comments to you about why you should

10  try to avoid the transaction costs were not on the - the sense

11  that the - there's a very probability that you'll lose on

12  summary judgment on these last five issues.  I think it's hard

13  to grant summary judgment.

14        If summary judgment is granted, it will be because

15  that - there was clearly some roadblock thrown in the way, even

16  though there wasn't an attempt to prevent ultimate collection.

17        What I'm saying, though, in the long run is I think

18  the pattern here, which would be fully disclosed to the jury in

19  a jury trial, would be something where a jury, who is basically

20  going to say:  Now, we have these defendants who didn't pay

21  anything for this property.  Do we want to prefer their interest

22  in the property over these plaintiffs who the debtor has behaved

23  in the, you know, in the following way toward.

24        And I think the conduct we see here is such that

25  people who didn't pay anything for this and because of their

1  unwillingness to make discovery, they are going to be

2  determined, as a matter of law, not to have paid anything,

3  because they are not - they're precluding investigation of

4  whether they did.

5      I don't know a jury is ultimately going to prefer

6  them.  And I think it's - that's so to a very, very high degree

7  of likelihood.  In these cases it's always - where there's no

8  consideration provided, it's always a question of, well, he can

9  really let the people who - who are just the giftee of this

10 thing prevail over people who are really owed money?

11     It's not the sort of claim that is all that compelling

12 to ordinary people.  And the kind of conduct we see here, this

13 pattern of conduct is not going to be very easy for a jury to

14 say, oh, that's just a little bit of - you know, that's what I'd

15 do.

16     So that's what a - that's what any decent person would

17 do.  It's just not going to come across that way.

18     And I think - but I think you've got a lot of expenses

19 here that, you know, the defendants are ultimately going to pay

20 both sides of, and they might want to consider, you know, trying

21 to keep something out of this.

22     I don't get the sense that the defendants are

23 impoverished and that, you know, unless they get all this

24 property they're not going to be able to live.  It's - but, you

25 know, as practical decision it might be better to keep something

1   than - than what will ultimately wind up being nothing.

2           And, again, you know, that they - the problem is if

3   they - you know, they're are un- - they have been unwilling and,

4   you know, I expressly brought it up at the - at the first

5   hearing on summary judgment.  They - they are not going to

6   permit a look into, you know, what was paid for this, a full

7   look into what was paid for this, where it really came from.

8           So they're determined to be just giftees of this

9   thing, donees for - without consideration.  That's not going to

10  have a lot of appeal.

11          Okay.  So I will get back to you.  You know it's -

12  it's going to be, you know, a while, but I will be back to you

13  with something that's very careful.  I just urge you to try and

14  - you know, use the money and time better than what it's going

15  to wind up being if there's a - at minimum, there's going to be

16  an appeal.

17          MR. FILLERUP:  I have - I have a housekeeping matter.

18          THE COURT:  Sure.

19          MR. FILLERUP:  On Monday - the defendants filed a

20  surreply, and on Monday a group of creditors filed a memorandum

21  in support of our motions.  We would just like to make a record

22  that we would like those stricken.  The surreply by the

23  defendants is not appropriate.  The brief filed by the creditors

24  was not something that we had anything to do with, and it's

25  redundant, I think, of arguments we've already made.

1        It includes an argument that I want to make clear is

2  not our argument.  There's an argument made in the creditors'

3  brief that there was no transfer.  In the context of these

4  motions, we're not taking the position that there was no

5  transfer.

6        We've always taken the position that there have been,

7  that there were transfers.

8        THE COURT:  Okay.  Well, is there any comment about

9  that?

10       MR. CHANCE:  I would state that even if Your Honor

11 were to consider the request to strike the surreply, the

12 evidence that forms the basis of the surreply is submitted

13 before Your Honor by the sheer fact of my oral argument.  I

14 think I've preserved the record for Your Honor to consider the

15 evidence in its totality.

16       THE COURT:  Well, the only evidence that I consider -

17 a summary judgment motion is really - the only thing that really

18 matters, in terms of the record, is what declarations were put

19 in and what evidence is introduced with those declarations.

20       Argument about legal issues is just - other than just

21 preserving an issue by raising, say, yoohoo, you know, I do

22 contend this.  In the barest sense it doesn't mean anything.

23       What really is important is what the record is.  And

24 that was closed long before these two documents came in.  This

25 has no bearing.

1    MR. MAHER:  Thank you, Your Honor.

2    THE COURT:  The creditors' brief was clearly off the

3    point.  I don't think a surreply is - is appropriate.  And I

4    think I'll grant this motion, but it's not going to make any

5    difference whatsoever.  I'll just assure both of you of that.

6    It just doesn't make any difference, because it's really the

7    record that's the key.  And the record is long before that.

8    MR. MAHER:  Thank you, Your Honor.

9    MR. CHANCE:  Thank you, Your Honor.

10   THE COURT:  Okay.

11   MR. GILG:  Thank you, Your Honor.

12   (The matter was concluded at 10:15 o'clock a.m.)

13                          -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

State of California          )
                             )    SS.
County of San Joaquin        )


        I, Susan Palmer, certify that the foregoing is a true
and correct transcript, to the best of my ability, of the above
pages, of the digital recording provided to me by the United
States Bankruptcy Court, Northern District of California, of the
proceedings taken on the date and time previously stated in the
above matter.

        I further certify that I am not a party to nor in any
way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber
by the American Association of Electronic Reporters and
Transcribers, Certificate No. 00124.  Palmer Reporting Services
is approved by the Administrative Office of the United States
Courts to officially prepare transcripts for the U.S. District
and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated May 2, 2007

Entered on Docket
February 28, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: February 28, 2008

THOMAS E. CARLSON
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>RAMIN YEGANEH,<br><br>                          Debtor. | Case No: 05-30047 TEC<br><br>Chapter 7 |
| CHARLES E. SIMS, Trustee,<br><br>                       Plaintiff,<br><br>v.<br><br>F. NAMDARAN aka FRAN NAMDARAN<br>aka FARIN NAMDARAN aka FARIN<br>YEGANEH aka FRAN YEGANEH,<br><br>                     Defendant. | Adv. Proc. 05-3240 TC |
| CHARLES E. SIMS, Trustee,<br><br>                       Plaintiff,<br><br>v.<br><br>COAST DEVELOPMENT TRUST and<br>FARIN YEGANEH aka F. NAMDARAN aka<br>FRAN NAMDARAN aka FARIN NAMDARAN<br>aka FRAN YEGANEH,<br><br>                   Defendants. | Adv. Proc. 05-3242 TC |

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT         -1-

1  CHARLES E. SIMS,                          )        Adv. Proc. 05-3243 TC
2                          Plaintiff,         )
3  v.                                         )
4  ADVANTA TRUST and FARIN YEGANEH           )
5  aka F. NAMDARAN aka FRAN NAMDARAN         )
   aka FARIN NAMDARAN aka FRAN                )
6  YEGANEH,                                   )
7                          Defendants.        )
   _____  )
8

## ORDER RE TRUSTEE'S AND DEFENDANTS'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

The court held a hearing on November 15, 2006 on Trustee's and Defendants' cross motions for summary judgment. Jeffery L. Fillerup and Nhung Le appeared for Trustee. Jonathan G. Chance appeared for Defendants.

Upon request of the parties, the court deferred ruling on the cross motions to allow the parties time to discuss settlement. On November 9, 2007, the parties informed the court that settlement efforts had failed, and requested that the court rule on the cross motions.

Upon due consideration, the court hereby orders as follows:

(1)  Plaintiff's motion for summary judgment is denied.

(2)  Defendants' cross motion for summary judgment is denied.

(3)  For purposes of this order:

        (a)  The "**San Mateo Properties**" means the following real
             property involved in the action against Coast Development
             Properties (A.P. No. 05-3242): (i) 627 Prospect Row, San
             Mateo, CA; (ii) 48 N. Grant St., San Mateo, CA; and (iii)
             718 E. 4th St., San Mateo, CA.

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT                    -2-

(b)  The **"East Bay Properties"** means the following real
property involved in the action against Advanta Trust
(A.P. No. 05-3243): (i) 6853 Simson St., Oakland, CA; and
(ii) 394 Sparling Drive, Hayward, CA.

(c)  The **"Peninsula Properties"** means the following real
property involved in the action against Fran Namdaran
(A.P. No. 05-3240): (i) 1659 Linda Mar Blvd, Pacifica, CA;
(ii) 115 Francisco Dr., South San Francisco, CA; and (iii)
139 Francisco Drive, South San Francisco, CA.

(d)  The **"Oakland Properties"** means the following real property
involved in the action against Allied Management Trust
(A.P. No. 05-3241): (i) 2462 Taylor Avenue, Oakland, CA;
(ii) 2300 Auseon Avenue, Oakland, CA; (iii) 1012 73rd
Avenue, Oakland, CA; (iv) 1278 79th Avenue, Oakland, CA;
and (v) 1086 69th Avenue, Oakland, CA.

(4)  Plaintiff has established that the following material facts
exist without substantial controversy.

(a)  Farin Namdaran and F. Namdaran are Debtor's mother.

(b)  R. Rad is Debtor.

(c)  Debtor's mother is the trustee and beneficiary of the
Coast Development Trust.  There is no document evidencing
the creation of the Coast Development Trust.

(d)  Debtor's mother is the trustee and beneficiary of the
Advanta Trust.  There is no document evidencing the
creation of the Advanta Trust.

(e)  Debtor is the trustee and beneficiary of the Allied
Management Trust.

(f)  All of the facts set forth in the table below.

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT                 -3-

| Date | Event |
|------|-------|
| 8/14/92 | "Ramin Yeganeh, an unmarried man" takes title to the real property at 627 Prospect Row, San Mateo, CA, one of the three San Mateo Properties. |
| 1/27/94 | "Ramin Yeganeh, an unmarried man" takes title to the real property at 48 N. Grant St., San Mateo, CA, one of the three San Mateo Properties. |
| 6/1/94 | "Ramin Yeganeh, an unmarried man" takes title to the real property at 718 E. 4th St., San Mateo, CA, one of the three San Mateo Properties. |
| 9/14/98 | "Ramin Yeganeh, a single man" takes title to the real property at 6853 Simson St., Oakland, CA, one of the two East Bay Properties. |
| 10/8/98 | "Ramin Yeganeh, a single man" takes title to the real property at 394 Sparling Drive, Hayward, CA, one of the two East Bay Properties. |
| 4/7/99 | "Ramin Yeganeh, a single man" takes title to the real property at 1659 Linda Mar Blvd, Pacifica, CA, one of the three Peninsula Properties. |
| 6/25/99 | "Ramin Yeganeh, a single man" takes title to the real properties at 115 Francisco Dr., South San Francisco, CA and 139 Francisco Drive, South San Francisco, CA, two of the three Peninsula Properties. |
| 1999 | Debtor discards or destroys records regarding the San Mateo Properties, the East Bay Properties, and the Peninsula Properties. Debtor destroys or discards mortgage loan documents, property tax statements, lease agreements, evidence of lease payments received, records of improvements, repair invoices, property insurance statements, and utilities statements. |
| 9/8/99 | Debtor is arrested and his business records are seized; he is charged with violations of the criminal provisions of Cal. Civ. Code § 2945 re business practices of mortgage foreclosure consultants. |
| 10/4/99 | Wobogo files suit against Debtor under Cal. Bus. & Prof. Code § 17200 in San Mateo County Superior Court (Superior Court), Case No. 410586 (State-Court Action); 27 victims allege in the complaint that Debtor unlawfully foreclosed mortgages. |
| 3/20/01 | Debtor pleads no contest to four separate felony counts under Cal. Civ. Code § 2945.4(g), involving four victims. Debtor is sentenced to five years probation, his broker's license is suspended, and he is ordered not to engage in mortgage broker activity. |

| 6/28/01 | Debtor transfers the three Peninsula Properties to "F. Namdaran, a single woman" (Debtor's mother). No consideration was paid for the transfers. A motion for summary judgment was pending in the State-Court Action on the date the Peninsula Properties were transferred. |
|---|---|
| 7/30/01 | Superior Court grants plaintiffs' motion for summary judgment, determining that Debtor violated Cal. Bus & Prof. Code § 17200; restitution hearings commence. |
| 7/31/01 | Debtor transfers the three San Mateo Properties to the Coast Development Trust (in which Debtor's mother is the trustee and beneficiary). No consideration was paid for the transfers. |
| 8/1/01 | Debtor files chapter 13 bankruptcy case; on petition, Debtor uses an incomplete and inaccurate spelling of his name and the wrong home address. |
| 8/2/01 | Debtor voluntarily dismisses his chapter 13 case. |
| 8/10/01 | In State-Court Action, the plaintiffs file an application for temporary restraining order to prohibit Debtor from transferring any real property. |
| 9/24/01 | Debtor transfers the East Bay Properties to the Advanta Trust (in which Debtor's mother is the trustee and beneficiary). No consideration was paid for the transfers. After transferring these properties, Debtor continues to collect the rental income from the properties and does not turn over the rent to his mother. |
| 10/3/01 | The Superior Court grants an order modifying the preliminary injunction, which prohibits Debtor from conducting or engaging in certain real property transactions. |
| 4/18/02 | Debtor testifies under oath in the Superior Court: (i) that F. Namdaran was a man named "Fred" or a woman whose name he could not recall; and (ii) that R. Rad was Rick Rad, that his relationship with R. Rad was none. |
| June 2002 | Under the name "R. Rad, a single man", Debtor acquires title to 2462 Taylor Avenue, Oakland, CA, one of the five Oakland Properties. |
| Sept. 2002 | Under the name "R. Rad, a single man", Debtor acquires title to 2300 Auseon Avenue, Oakland, CA (Auseon Property), one of the five Oakland Properties. |
| Nov. 2002 | Under the name "R. Rad, a single man", Debtor acquires title to 1012 73rd Avenue, Oakland, CA, one of the five Oakland Properties. |

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT          -5-

| | | |
|---|---|---|
| 1<br>2 | Dec.<br>2002 | Under the name "R. Rad, a single man", Debtor acquires title to 1278 79th Avenue, Oakland, CA, one of the five Oakland Properties. |
| 3<br>4 | January<br>2003 | Under the name "R. Rad, a single man", Debtor acquires title to 1086 69th Avenue, Oakland, CA, one of the five Oakland Properties. |
| 5<br>6 | 3/21/03 | R. Rad, who is Debtor, transfers all of the Oakland Properties, except the Auseon Property, to the Allied Management Trust, of which Debtor is the trustee and beneficiary. |
| 7<br>8 | 5/6/03 | R. Rad, who is Debtor, transfers the Auseon Property to the Allied Management Trust, of which Debtor is the trustee and beneficiary. |
| 9<br>10<br>11 | 6/20/03 | Superior Court finds Debtor guilty of contempt due to Debtor's transfer of the Oakland Properties in violation of the preliminary injunction.  Superior Court sentences Debtor to 36 days in jail. |
| 12 | 6/3/04 | $270K judgment entered in State-Court Action. |
| 13<br>14 | 9/9/04 | Supplemental judgment entered in the State-Court Action adding $130K prejudgment interest, $3,452,803 attorneys' fees, and $32,458 costs to the judgment (collectively, the Judgment). |
| 15<br>16<br>17<br>18 | 1/7/05 | Debtor files chapter 13 bankruptcy case.  Debtor is not eligible for chapter 13 relief because his debts, including the more than $3.8 million Judgment, exceed the chapter 13 debt eligibility limits (as of the petition date: noncontingent, liquidated, unsecured debts of less than $307,765 and noncontingent, liquidated, secured debts of less than $922,975). |
| 19 | 1/21/05 | Debtor's bankruptcy case is converted to chapter 7 because Debtor is not eligible for chapter 13 relief. |
| 20<br>21<br>22 | 2/22/05 | Four days after the trustee filed adversary proceedings against Debtor to recover the San Mateo Properties, the East Bay Properties, the Peninsula Properties, and the Oakland Properties, Debtor transfers the San Mateo Properties to F. Namdaran (Debtor's mother). |
| 23<br>24<br>25 | 2/25/05 | Debtor files schedules in his bankruptcy case.  Debtor does not list in his schedules any of the San Mateo Properties, the East Bay Properties, the Peninsula Properties, or the Oakland Properties. |
| 26<br>27<br>28 | 6/1/05 | Debtor testifies under oath at his 2004 examination that he doesn't remember why he didn't put his home address on the bankruptcy petition he filed in 2001, but that it may have been because he didn't want his credit affected. |

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT            -6-

1  (5)  The following issues are reserved for trial, as limited by

2       paragraph (6) below:

3       (a)  whether Debtor retained other real or personal property

4            after he transferred the San Mateo, East Bay, Peninsula,

5            and Oakland Properties (collectively, the "**Properties**");

6       (b)  whether Debtor was insolvent on the date the transfers

7            were made or became insolvent as a result of the

8            transfers; and

9       (c)  whether Debtor made the transfers with actual intent to

10           hinder, delay, or defraud creditors.

11 (6)  Pursuant to this court's October 13, 2006 Order re Cross

12      Motions to Preclude or Compel:

13      (a)  Defendants are precluded from introducing any evidence

14           that Defendants, rather than Debtor, were the true

15           (equitable) owners of the Properties before the transfers

16           at issue.

17      (b)  Defendants are precluded from introducing any evidence

18           that they paid Debtor consideration in connection with the

19           transfers at issue.

20      (c)  Except as provided in subparagraph (6)(d) below,

21           Defendants are authorized to introduce Debtor's testimony

22           and any documents already produced regarding: (i) whether

23           the badges of fraud indicate intent to hinder, delay, or

24           defraud creditors; and (ii) insolvency at the time of or

25           as a result of the transfers at issue.

26      (d)  In addressing the issues identified in subparagraph (6)(c)

27           above, Defendants are precluded from introducing any

28           evidence that Defendants rather than Debtor were the true

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT                    -7-

1   (equitable) owners of the Properties before the transfers
2   at issue or any evidence that Defendants paid any
3   consideration in connection with the transfers at issue.
4                          **END OF ORDER**
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT                    -8-

1

## COURT SERVICE LIST

2  Jeffrey L. Fillerup, Esq.
Luce, Forward, Hamilton & Scripps LLP
3  121 Spear St., Ste. 200
San Francisco, CA 94105

4

Nhung Le, Esq.
5  Luce, Forward, Hamilton & Scripps LLP
121 Spear St., Ste. 200
6  San Francisco, CA 94105

7  Jonathan G. Chance, Esq.
JC Law Office
8  1605 Middlefield Rd.
Redwood City, CA 94063

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  WILLIAM E. GILG
   Attorney at Law, #151991
2  305 San Bruno Avenue West
   San Bruno, CA 94066
3  (650) 871-8647
   (650) 873-3168 (fax)
4
   Attorney for Defendants/Appellants
5

**FILED**

MAR  6 2008

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                      )
12                                    )
                                      ) Chapter 7
13         Debtor.                     )
                                      )
14  _____      ) Adversary Proceeding No. 05-3242
    CHARLES E. SIMS, Trustee,         )
15                                    )
           Plaintiff,                 )
16                                    )
                                      )  NOTICE OF APPEAL
17                                    )
                                      )
18         vs.                        )
                                      )  [Rules of Bankruptcy Procedure,
19  FRAN YEGANEH, ET AL,              )  Rule 8001(a), (b)],
                                      )
20                                    )
                                      )
21         Defendants.                )
    _____      )
22

23         The defendants in the above-entitled matter hereby appeal under Title 28 of the

24  United States Code, section 158(a), (b) from the Order denying "Defendants' cross

25  motion for summary judgment" entered by this Bankruptcy Court on February 28, 2008

26  in this bankruptcy proceeding.

27

28

Notice of Appeal                          -1-

The names of all parties to this Order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

1. Charles E. Sims, Trustee, represented by

   Charles P. Maher, Esq.
   Jeffrey Fillerup, Esq.
   Luce, Forward, Hamilton & Scrips, LLP
   121 Spear St., Suite 200
   San Francisco, CA 94105
   (415) 356-4600

2. Defendants Fran Yeganeh, et al, represented by

   William E. Gilg
   Attorney at Law
   305 San Bruno Avenue West
   San Bruno, CA 94066
   (650) 871-8647

March 6, 2008

WILLIAM E. GILG,
Attorney for Defendants/Appellants

## PROOF OF SERVICE

I, the undersigned, state that I am a citizen of the United States and employed in the City of San Bruno, that I am over the age of eighteen (18) years and not a party to the within cause; that I am an active member of the State Bar of California; that my business address is 305 San Bruno Avenue West, San Bruno, California; and that on the date set out below I deposited a true copy of the attached documents, listed below, on the parties to the action by one or more of the following methods:

[XX]  First Class Mail

[]  Fax via (415) 356-4610

– by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Bruno, California;

Documents Served: <u>NOTICE OF APPEAL</u>

Party Served:  CHARLES P. MAHER, ESQ.
Luce, Forward, Hamilton & Scripps, LLP
Rincon Center II, 121 Spear St., Suite 200
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed at San Bruno, California on March 6, 2008.

WILLIAM E. GILG,
Attorney for Appellants

1
WILLIAM E. GILG
Attorney at Law, #151991
2
305 San Bruno Avenue West
San Bruno, CA 94066
3
(650) 871-8647
(650) 873-3168 (fax)
4
Attorney for Defendants/Appellants
5

6

7

8
UNITED STATES BANKRUPTCY COURT
9
NORTHERN DISTRICT OF CALIFORNIA
10

11
In re RAMIN YEGANEH,                       ) Case No. 05-30047 TEC
12                                          )
13          Debtor.                         ) Chapter 7
                                            )
14 ─────────────────────────               ) Adversary Proceeding No. 05-3242
   CHARLES E. SIMS, Trustee,               )
15                                          )
16          Plaintiff,                      ) ELECTION TO APPEAL
                                            ) DIRECTLY TO DISTRICT
17                                          ) COURT
                                            )
18          vs.                             )
                                            ) [Rules of Bankruptcy Procedure,
19 FRAN YEGANEH, ET AL,                     )  Rule 8001(e)]
20                                          )
                                            )
21          Defendants.                     )
                                            )
22

23          The defendants in the above-entitled matter, hereby elect to have their appeal of

24 the Order denying "Defendants' cross motion for summary judgment" under Title 28 of

25 the United States Code, section 158(a), be heard by the United States District Court.

26          The names of all parties to this Order appealed from and the names, addresses,

27 and telephone numbers of their respective attorneys are as follows:

28

Notice of Election re Appeal                      -1-

FILE[D]
MAR   6 2008
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

1

2    1. Charles E. Sims, Trustee, represented by

3       Charles P. Maher, Esq.

4       Jeffrey Fillerup, Esq.
        Luce, Forward, Hamilton & Scrips, LLP
5       121 Spear St., Suite 200
        San Francisco, CA 94105
6       (415) 356-4600

7

8    2. Defendants Fran Yeganeh, et al, represented by

9       William E. Gilg

10      Attorney at Law
        305 San Bruno Avenue West
11      San Bruno, CA 94066
        (650) 871-8647
12

13

14

March 6, 2008                    _____
15                               WILLIAM E. GILG,
                                 Attorney for Defendants/Appellants
16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Election re Appeal                -2-

## PROOF OF SERVICE

I, the undersigned, state that I am a citizen of the United States and employed in the City of San Bruno, that I am over the age of eighteen (18) years and not a party to the within cause; that I am an active member of the State Bar of California; that my business address is 305 San Bruno Avenue West, San Bruno, California; and that on the date set out below I deposited a true copy of the attached documents, listed below, on the parties to the action by one or more of the following methods:

[XX]  First Class Mail

[]  Fax via (415) 356-4610

– by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Bruno, California;

Documents Served: <u>ELECTION TO APPEAL DIRECTLY TO DISTRICT COURT</u>

Party Served:  CHARLES P. MAHER, ESQ.
               Luce, Forward, Hamilton & Scripps, LLP
               Rincon Center II, 121 Spear St., Suite 200
               San Francisco, CA 94105

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed at San Bruno, California on March 6, 2008.

WILLIAM E. GILG,
Attorney for Appellants

1

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                     )
12           Debtor.                 ) Chapter 7
                                     )
13 _____  )
   CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
14                                   )  05-3240; 05-3241; 05-3242; and
             Plaintiff,              )  05-3243
15                                   )
                                     )
16                                   ) DEFENDANT'S REPLY
          vs.                        ) MEMORANDUM OF POINTS
17                                   ) AND AUTHORITIES IN
   FRAN YEGANEH, KEN                 ) SUPPORT OF DEFENDANTS'
18 YEGANEH, ET AL,                   ) MOTION FOR SUMMARY
                                     ) JUDGMENT
19                                   )
                                     )
20                                   ) Date: November 15, 2006
                                     ) Time: 9:30 AM
21                                   ) Dept: 23
                                     )
22           Defendant.              )
   _____  )
23

24

25

26

27

28

# TABLE OF CONTENTS

| TOPIC | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT | 1 |
| INTRODUCTION | 1 |
| STATEMENT OF FACTS | 2 |
| I    DEFENDANTS HAVE SUBMITTED COMPETENT EVIDENCE TO MEET THEIR BURDEN OF PROOF IN THIS MATTER | 3 |
| II    THE TRUSTEE LACKS STANDING TO EVEN BRING THESE ADVERSARY PROCEEDINGS SINCE THE CREDITORS HAVE SUFFERED NO AFFIRMATIVE HARM AS A RESULT OF THESE ALLEGED FRAUDULENT TRANSFERS | 4 |
| A.    California's UFTA. | 5 |
| B.    The Attorneys Had to Submit Claims to be Creditors In this Bankruptcy Proceeding in Order to Obtain Their Attorneys' Fees. | 9 |
| C.    The Attorneys Cannot File a Late Claim. | 11 |
| D.    The Attorneys Cannot File an Amended Claim. | 11 |
| E.    The Attorneys Are Not Entitled to the 'Informal Proof of Claim' Doctrine. | 12 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

| STATUTE | PAGE |
|---|---|
| CC { 1714(a) | 7 |
| CC }} 3439, et seq. | 2, 5 |
| CC } 3439.01 | 7 |
| CC { 3439.01(b) | 9 |
| CC } 3439.01(c) | 10 |
| CC } 3439.04(a) | 5 |
| CC } 3439.04(a)(1) | 2 |
| CC } 3439.04(a)(2) | 2 |
| CCP } 1021.5 | 9 |
| Evid C } 1152 | 3 |
| 11 U.S.C. } 101(5)(a) | 9 |
| 11 U.S.C. } 101(10)(A) | 10 |
| 11 U.S.C. } 501(a) | 10 |
| 11 U.S.C. } 502 | 10 |
| 11 U.S.C. } 544(a) | 2, 4, 9 |
| 11 U.S.C. } 544(b) | 2, 4, 9 |
| 11 U.S.C. } 726 | 10 |

| CASE | PAGE |
|------|------|
| A/S Kreditt-finans v. Cia Venetico De Navegacion, S.A. of Panama (E.D. Pa. 1983) 560 F.Supp. 705 | 5-6 |
| Barnes v. Independent Automobile Dealers Ass'n of Calif Health & Welfare Benefit Plan (9th Cir. 1995) 64 F.3d 1389 | 3 |
| Bennett v. Paulson (1935) 7 Cal.App.2d 120 | 5 |
| Butner v. United States (1979) 440 U.S. 48, 59 L.Ed.2d 136, 99 S.Ct. 914 | 9 |
| Flannery v. Prentice (2001) 26 Cal.4th 572 | 8-9 |
| Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668 | 8-9 |
| Haskins v. Certified Escrow & Mtge. Co. (1950) 96 Cal.App.2d 688 | 5 |
| Hefferman v. Bennett & Armour (1952) 110 Cal.App.2d 564 | 6 |
| In re Bagen (Bkrtcy. S.D.N.Y. 1995) 185 B.R. 691 | 8-9 |
| In re Berry Estates, Inc. (D.C. 1985) 49 B.R. 1002 | 10 |
| In re Bridge (3rd Cir. 1994) 18 F.3d 195 | 5, 9-10 |
| In re Carillo (Bkrtcy. N.D. Okla. 1997) 215 B.R. 212 | 10 |
| In re Coastal Alaska Lines, Inc. (9th Cir. 1990) 920 F.2d 1428 | 11 |
| In re Cohen (9th Cir. BAP 1996) 199 B.R. 709 | 7 |

| CASE | PAGE |
|---|---|
| In re Edelman (9th Cir. BAP 1999)<br>237 B.R. 146 | 11 |
| In re First Alliance Mortg. Co. (C.D. Cal. 2001)<br>269 B.R. 428 | 8-10 |
| In re Gardenhire (9th Cir. 2000)<br>209 F.3d 1145 | 11 |
| In re Hayes (Bkrptcy. C.D. Cal. 2005)<br>327 B.R. 453 | 11-12 |
| In re Heckert (4th Cir. 2001)<br>272 F.3d 253 | 8 |
| In re Huff (Bankr. M.D. Ga 1993)<br>160 B.R. 256 | 5 |
| In re Lawson Burich Ass'n, Inc. (Bkrtcy. S.D.N.Y. 1986)<br>59 B.R. 681 | 8 |
| In re Liquimatic Systems, Inc. (1961)<br>194 F.Supp. 625 | 6-7 |
| In re Office Products Co. Securities Liltig. (D.D.C. 2004)<br>313 B.R. 73 | 12 |
| In re PT-1 Communications, Inc. (Bkrtcy. E.D.N.Y. 2003)<br>292 B.R. 482 | 11-12 |
| Kirkeby v. Superior Court (2004)<br>33 Cal.4th 642 | 7 |
| Maguire v. Corbett (1953)<br>119 Cal.App.2d 244 | 7 |
| Matter of AM, Federation of T.V. & Radio Artists<br>(Bkrtcy. 1983) 30 B.R. 772 | 9 |
| Matter of Plunkett (7th Cir. 1996)<br>82 F.3d 738 | 10-11 |
| Mehrtash v. Mehrtash (2001)<br>93 Cal.App.4th 75 | 5-7 |

| CASE | PAGE |
|------|------|
| Oldham v. Parker (N.D. TX 1925)<br>5 F.2d 682 | 10 |
| Palmer v. First Nat. Bank of Kingman (Kan. 1984)<br>692 P.2d 386 | 10-11 |
| Ritter v. Hughes Aircraft Co. (9th Cir. 1995)<br>58 F.3d 454 | 3 |
| U.S. v. Johnson (N.D. Texas 2001)<br>267 B.R. 717 | 11-12 |
| U.S. v. Owens (1988)<br>84 B.R. 361 | 12 |

| OTHER AUTHORITIES | PAGE |
|-------------------|------|
| Federal Rules of Civil Procedure, Rule 56 | 2-3 |
| Federal Rules of Evidence, Rule 201 | 3 |
| Federal Rules of Evidence, Rule 408 | 3 |
| Bankruptcy Rules of Procedure, Rule 3001(a) | 10 |
| Bankruptcy Rules of Procedure, Rule 3002(a) | 10 |
| Bankruptcy Rules of Procedure, Rule 3002(c) | 10-11 |
| Bankruptcy Rules of Procedure, Rule 9006(b)(3) | 11 |
| Collier on Bankruptcy, Fifteenth Edition Revised,<br>Vol. 5, } 544.02, p. 544-6 | 5, 9-10 |
| Collier on Bankruptcy, Fifteenth Edition Revised,<br>Vol. 5, } 544.09[3], p. 544-20 | 5, 9 |

1   JONATHAN CHANCE
    Attorney at Law
2   205 East Third Ave., Suite 411
    San Mateo, CA 94401
3   (650) 342-6200

4   Attorney for Defendants

5

6

7

8                   IN THE UNITED STATES BANKRUPTCY COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,          ) Case No. 05-30047 TEC
                                  )
12              Debtor.           ) Chapter 7
                                  )
13  _____ )
    CHARLES E. SIMS, Trustee,     ) Adversary Proceeding Nos.
14                                )  05-3240; 05-3241; 05-3242; and
                Plaintiff,        )  05-3243
15                                )
                                  ) DEFENDANT'S REPLY
16        vs.                     ) MEMORANDUM OF POINTS
                                  ) AND AUTHORITIES IN
17                                ) SUPPORT OF DEFENDANTS'
    FRAN YEGANEH, KEN             ) MOTION FOR SUMMARY
18  YEGANEH, ET AL,               ) JUDGMENT
                                  )
19                                ) Date: November 15, 2006
                                  ) Time: 9:30 AM
20                                ) Dept: 23
                                  )
21  _____ )
                Defendant.        )
22

23

24                           INTRODUCTION

25      These matters are four adversary proceedings based upon alleged fraudulent

26  transfers of adversary properties to the defendants, the debtor's parents.  Plaintiff alleges

27  in his adversary complaints that by "transfers" of certain real properties (adversary

28  properties) about three years before there was a judgment against the debtor, and about

    Defendants' Reply to Motion for Summary Judgment    -1-

1  four years before this Chapter 7 bankruptcy, the debtor intended to hinder, delay, or

2  defraud his creditors or became insolvent as a result of said transfers.

3       Plaintiff's complaints are based upon California's Uniform Fraudulent Transfer

4  Act (hereinafter "UFTA") contained in Civil Code sections 3439, et al. (See CC {

5  3439.04(a)(1), (a)(2).)   The plaintiff also relies in all four adversary complaints on Title

6  11 of the United States Code, section 544(a), (b) as providing him with standing to avoid

7  these transfers that could have been avoided by a creditor under local law, that is

   California's UFTA.

8       Defendants' moved for summary judgment on the grounds that the individual

9  creditors had had their claims already satisfied or could be satisfied and hence had not

10 suffered any affirmative harm as a result of any alleged fraudulent transfers. Hence

11 neither they nor the plaintiff had standing to bring these adversary proceedings. Plaintiff

12 filed his opposition and now defendants submit this reply.

13

14                              STATEMENT OF FACTS

15      Defendants refer this Court to the statement of facts contained in their moving

16 papers.  This reply statement of facts will only address the issues brought up on the

   plaintiff's opposition.

17      The plaintiff opposes the defendants' motion for summary judgment on the

18 grounds that defendants' position and argument is not understandable to plaintiff and that

19 defendants have not submitted admissible evidence to satisfy their burden of proof under

20 Federal Rules of Civil Procedure, Rule 56.  (See opposing P&A, p. 3(10-17), pp. 7-9.)

21 Plaintiff's opposition also argues that under the UFTA a creditor does not have to suffer

22 any affirmative harm to bring an action to avoid an alleged fraudulent conveyance. Thus

23 the individual creditors have standing to bring these actions and so does the plaintiff as

24 trustee. (See plaintiff's opposing P&A, pp. 12-14.)

25      Plaintiff also argues that the debtor was well aware during the underlying civil

26 action that the individual claimants, here the individual creditors, were seeking attorneys'

27 fees against him[1]. As a result, the plaintiff continually implies that the attorneys who are

28

---

[1] In doing so plaintiff attaches the declarations of the individual creditor's two civil attorneys and several settlement letters between these two attorneys and the debtor and his attorney regarding said fees. These

Defendants' Reply to Motion for Summary Judgment    -2-

1   entitled to these attorneys' fees are also creditors.  (See plaintiff's opposing P&A, p.

2   4(23)—p. 6(23), p. 10(7-8), p. 14(22)—p. 15(26).)  However, it is undisputed that these

3   attorneys have not filed a proof of claim with this Bankruptcy Court for their attorneys'

4   fees award.  (See plaintiff's opposition Exhibit A.)

5       Plaintiff admits in her declaration that approximately $1,583,000 in funds were

6   generated in net proceeds of sale of five of the Schedule A properties.  Obviously this

7   amount is more than sufficient to pay off the individual creditors' claims of $399,946.88

8   (approximately $400,000), plus any post-judgment interest, and the unliquidated and

    unsecured claims of the Scotts, Shoop, and Wilkins which total approximately $824,000.

9       Defendants now respond to the plaintiff's arguments.

10

11                                   I

12      DEFENDANTS HAVE SUBMITTED COMPETENT EVIDENCE
13      TO MEET THEIR BURDEN OF PROOF IN THIS MATTER

14      Federal Rules of Civil Procedure, Rule 56 permit a party moving for summary

15  judgment to request that the Court take judicial notice of adjudicative facts, that is court

16  records, pleadings, briefs, court orders, etc., filed in that court.  (FRE, Rule 201; Ritter v.

17  Hughes Aircraft Co. (9th Cir. 1995) 58 F.3d 454, 458-459 [judicial notice taken of layoffs

18  of major local employer]; Barnes v. Independent Automobile Dealers Ass'n of Calif.

19  Health & Welfare Benefit Plan (9th Cir. 1995) 64 F.3d 1389, 1395, fn. 2 [judicial notice

    taken of value of personal injury claim based on the cost of medical care].)

20      In this matter, defendants sought judicial notice of this Court's orders and other

21  briefs filed therein.  These orders included this Court's orders allowing the sale of five of

22  the debtor, Ramin Yeganeh's, real properties and the sale amount.  (See defendants'

23  Exhibits 6-10.)  These orders also included the orders paying the plaintiff for his

24  attorneys fees and costs in the underlying Chapter 7 Bankruptcy proceeding.  (See

25  Exhibits 12-15.)  Other exhibits include the debtor's Bankruptcy Schedule A, the 'Notice

26  of Trustee's Intent to Dismiss Appeals and Compromise with Creditors', this Court's

27

28  letters are inadmissible under both state law and federal law as settlement negotiations and plaintiff should
    know better. (See FRE, Rule 408; Cal. Evid. C { 1152.) Defendants submit a formal objection to same
    with this reply brief.

1  'Order Authorizing Compromise' (see Exhibits 1, 2, 4.)  Two exhibits contain the

2  plaintiff's briefing in support of this Court's 'Order Authorizing Compromise' filed in

3  this Court and on appeal from same. (See Exhibits 3, 5.)

4      Hence all of these exhibits are a proper subject of judicial notice under Federal

5  Rules of Civil Procedure, Rule 201. Exhibits 6 to 10 and 12 to 15 are designed to

6  establish that the individual creditors' claims have been satisfied or could be satisfied

7  without the sale of the adversary properties at issue in these actions. According to

8  defendants' calculation, the sale of these properties, minus fees and expenses

9  awarded to plaintiff and minus mortgages, amount to $1.9 million.  Plaintiff's calculation

10  is that said amount is $1.583 million and that the debtor's remaining two Schedule A

11  properties have a gross value of "between $800,000 and $1,000,000 (see plaintiff's

12  successor, Andrea A. Wirum's, declaration at paragraph 4). These amounts are obviously

13  more than sufficient to satisfy the secured and unsecured creditors who have submitted

14  claims, plus the administrative expenses in this case.

15      This evidence supports defendants' main argument, that the individual creditors

16  who have submitted claims cannot show any affirmative harm in that their claims either

17  have been paid off or will be paid off without the aid of any adversary properties.  Hence,

18  said creditors do not have standing and neither does the plaintiff have standing to

19  prosecute these adversary proceedings for them.  Consequently, defendants have met

20  their burden of proof under Rule 56 of the Federal Rules of Civil Procedure.

## II

### THE TRUSTEE LACKS STANDING TO EVEN BRING THESE ADVERSARY PROCEEDINGS SINCE THE CREDITORS HAVE SUFFERED NO AFFIRMATIVE HARM AS A RESULT OF THESE ALLEGED FRAUDULENT TRANSFERS

24      Title 11 of the United States Code, section 544(a) provides that the trustee "shall

25  have ….. the rights and powers of, or may avoid any transfer of property of the debtor

26  …… that is voidable by -- a creditor ….".  Section 544(a), (b) confer standing on the

27  plaintiff/trustee under federal law to bring these adversary proceedings on behalf of the

28  individual creditors for both secured and unsecured claims.

1    However, the extent of the plaintiff's rights to pursue these adversary complaints
2    is measured by the substantive law of the jurisdiction governing the property in question.
3    (In re Bridge (3rd Cir. 1994) 18 F.3d 195, 200; see also Collier on Bankruptcy, Fifteenth
4    Edition Revised, Vol. 5, { 544.02, p. 544-6 [citing numerous multi-jurisdictional
5    authorities].)  If the creditors are deemed estopped to recover upon a claim, or are barred
6    from recovery because of applicable law, the plaintiff/trustee is likewise estopped or
7    barred.  (In re Huff (Bankr. M.D. Ga 1993) 160 B.R. 256; see also Collier on Bankruptcy,
     Fifteenth Edition Revised, Vol. 5, { 544.09[3], p. 544-20.)
8
9    A.  California's UFTA.
10       The applicable law upon which the plaintiff as trustee is proceeding in these
11   matters, as alleged in the four adversary complaints, is California's UFTA contained in
12   Civil Code sections 3439, et seq.  Under this applicable law, avoidance of these alleged
13   fraudulent transfers is available to the plaintiff/trustee only if he has the status and rights
14   of a creditor where said transfers are "fraudulent as to a creditor".  (See CC {
15   3439.04(a).)
16       It is well established under California law that a creditor bringing an avoidance
17   action pursuant to Civil Code section 3439, et seq., must have suffered affirmative harm.
18   Civil Code section 3439.04(a) requires the transfer to be "fraudulent as to a creditor".
     (Mehrtash v. Mehrtash (2001) 93 Cal.App.4th 75, 80.)
19
20              A well established principal of the law of fraudulent
                transfers is, 'A transfer in fraud of creditors may be
21              attacked only by one who is injured thereby.  Mere
                intent to delay or defraud is not sufficient; injury to
22              the creditor must be shown affirmatively.  In other
                words, prejudice to the plaintiff is essential.  It cannot
23              be said that a creditor has been injured unless the
                transfer puts beyond [her] reach property [she]
24              otherwise would be able to subject to the payment of
25              [her] debt'.  (emphasis added)

26   (Ibid; Bennett v. Paulson (1935) 7 Cal.App.2d 120, 123; Haskins v. Certified Escrow &
27   Mtge. Co. (1950) 96 Cal.App.2d 688, 691; A/S Kreditt-Finans v. Cia Venetico De
28   Navegacion, S.A. of Panama (E.D.Pa. 1983) 560 F.Supp. 705, 711, aff'd 729 F.2d 1446
     (3rd Cir. 1984) ["numerous courts in other jurisdictions in which the issue has arisen have

1   stated as though it were axiomatic the requirement that a creditor be injured by the
2   conveyance it seeks to invalidate".] This is a principal in equity. A plaintiff/creditor
3   seeking the equitable relief of setting aside a transfer of property must show entitlement
4   to relief and inadequacy of a remedy at law. This is axiomatic "because ordinarily
5   creditors do not bother to seek avoidance of debtor's conveyances without a clear
6   prospect of profiting by the litigation." (Mehrtash, supra, at 93 Cal.App.4th 80.)

7       In other words, if the individual creditors in this bankruptcy proceeding who have
8   submitted claims were not harmed or prejudiced as a result of the alleged transfers in
9   question, they are not entitled to relief under California's UFTA. (Mehrtash, supra, at 93
    Cal.App.4th 81.) These creditors' claims have been paid in full, or could be paid in full
10  by now. As explained above, the plaintiff/trustee has approximately $1.9 million, or by
11  the plaintiff's own admission at least $1.583 million[2], in which to pay the approximate
12  $400,000 or so to satisfy the individual creditors' claims in full and other unsecured
13  creditors' claims totaling $824,000. Moreover, according to plaintiff the sale of the
14  remaining two of the debtor's Schedule A properties will bring in a gross amount of an
15  additional $800,000 to $1,000,000, more than sufficient to satisfy any administrative
16  expenses.

17      However, plaintiff in his opposition argues that under the UFTA a creditor does
18  not have to suffer any harm at all to be able to bring a fraudulent transfer action against a
19  debtor. (See plaintiff's opposing P&A, pp. 11-14.) Plaintiff argues that it doesn't matter
20  if a debtor has other properties that could satisfy a creditor's claim, if he sells a particular
21  piece of property the creditor can prosecute an UFTA action to void the transfer. He cites
22  the 1961 federal case of In re Liquimatic Systems, Inc. (1961) 194 F.Supp. 625 and the
23  1952 case of Hefferman v. Bennett & Armour (1952) 110 Cal.App.2d 564. (See
24  plaintiff's opposing P&A, p. 11(6-9).) The Liquimatic Systems case only holds that it is
25  not necessary that the debtor be insolvent at the time of the transfer. (Id. at 628.) The
26  Hefferman case does support plaintiff's position but it was based on former section 3439
27  of the Civil Code. (Id. at 584.) Hence it is no longer good authority for the current state
    of the law in the UFTA.

28
    _____
    [2] See plaintiff's successor, Andrea A. Wirum's, declaration at paragraph 4.

    Defendants' Reply to Motion for Summary Judgment    -6-

1    Plaintiff repeats this argument again at page 13, lines 19 to 26 in his opposing

2    papers. This time he cites the <u>Liquimatic Systems</u> case again and also <u>In re Cohen</u> (9th

3    Cir. BAP 1996) 199 B.R. 709 and the case of <u>Maguire v. Corbett</u> (1953) 119 Cal.App.2d

4    244. The <u>Cohen</u> case only holds that neither malice nor insolvency are required to

5    establish a violation of the UFTA. (<u>Id</u>. at 717.) The property at issue in the <u>Maguire</u>

6    case, a 1953 case, was two vehicles, not real property. Plaintiff cites to page 259 as the

7    point page for his authority. However, the <u>Maguire</u> case ends at page 252. <u>Maguire</u>

8    simply does not support plaintiff's argument. Nevertheless, plaintiff persistently cites the

9    recent California Supreme Court case of <u>Kirkeby v. Superior Court</u> (2004) 33 Cal.4[th] 642,

10   648 for his assertion that the UFTA targets a transfer by the debtor "with the intent to

11   prevent a creditor from reaching that <u>particular</u> interest to satisfy its claim". (emphasis

12   added) (See plaintiff's opposing P&A, p. 13(22-24).) Plaintiff implies that the law is

13   that a creditor can bring an action under the UFTA no matter how many properties a

14   debtor has if he transfers just one. That is not the law. The <u>Kirkeby</u> case only held that a

15   "fraudulent conveyance is a transfer by the debtor of property to a third person

16   undertaken with the intent to prevent a creditor from reaching that interest to satisfy its

17   claim." (<u>Id</u>. at 33 Cal.4[th] 648.) This holding implies that the creditor must be harmed by

     the transfer.

18        To argue that a creditor does not have to suffer any harm at all in order to bring an

19   action under the UFTA is ludicrous. If plaintiff was standing on a street corner and the

20   debtor ran a red light would the plaintiff be able to bring a negligence action against the

21   debtor even though there had been no accident? Of course not. Damages are an essential

22   element of a negligence cause of action. (See CC { 1714(a).) Just as proving affirmative

23   harm is an essential element for a creditor to prove in an UFTA action. (<u>Mehrtash</u>, supra,

24   at 93 Cal.App.4[th] 80.) An UFTA action is an action in equity and a creditor "seeking the

25   equitable relief of setting aside a transfer of property must show entitlement to relief and

26   inadequacy of a remedy at law". (<u>Ibid</u>.) "This requirement is also implied by another

27   fundamental maxim of jurisprudence, 'the law neither does nor requires idle acts'." This

28   seldom needs to be re-stated because ordinarily, except in this instance of course,

     creditors do not bother to seek avoidance of a debtor's conveyances without a clear

     prospect of profiting by the litigation. (<u>Ibid</u>.)

Defendants' Reply to Motion for Summary Judgment     -7-

1
2    In this instance the creditors are also seeking attorneys' fees that are included in
3    their claims. (See plaintiff's opposition Exhibit A.) The problem is that these attorneys'
4    fees do not belong to these creditors. The underlying judgment in the state court
5    provided that these attorneys fees were to be paid directly to the attorneys. (See Request
6    for Judicial Notice of defendants' opposition to plaintiff's summary judgment motion,
7    Exhibit 42, p. 4(9-12).)   Additionally, this Court in its "Order Authorizing Compromise"
8    ordered that these attorneys' fees were to be paid directly to the attorneys. (See
9    defendant's Exhibit 4, pp. 2-3.) In any event this Court would not have jurisdiction to
10   modify the state court judgment to order that said attorneys' fees were part of the
11   individual creditor's judgment against the debtor. (See In re Heckert (4th Cir. 2001) 272
12   F.3d 253, 257 [a bankruptcy court's entry of its own money judgment to replace the state
13   court's judgment is barred by res judicata]; In re First Alliance Mortg. Co. (C.D. Cal.
14   2001) 269 B.R. 428, 435;  In re Lawson Burich Ass'n, Inc. (Bkrtcy. S.D.N.Y. 1986) 59
15   B.R. 681, 687. Moreover, the plaintiff and this Court have always taken the position that
16   these attorney's fees belong to the attorneys and not the individual creditors. (See
17   defendant's Exhibit 2, p. 1; Exhibit 3, p. 5(17)—p. 6(21); Exhibit 5, p. 13(12-21).)  State
     law is in accord. (See Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d
     668, 682, fn. 26; Flannery v. Prentice (2001) 26 Cal.4th 572, 582.)

18          Consequently, it is beyond dispute that if these creditors who have submitted
19   claims have not already been paid off, they certainly can be and will be from the amounts
20   already obtained from the sale of these Schedule A properties.  There can be no triable
21   issue of fact in regards to whether the amount of money obtained from the sale of these
22   properties is sufficient to pay off the individual creditors' claims.  Hence these individual
23   creditors have suffered no affirmative harm as a result of the alleged transfers of non-
     Schedule A properties.

24          Thus the attorneys' fees contained in the individual creditors claims in Exhibit A
25   of plaintiff's opposing papers do not belong to the creditors.  Said fees are unenforceable
26   in said creditors' claims under applicable state law and thus said creditors lack the
27   requisite standing to assert the right to these attorney's fees in these adversary
28   proceedings. (In re Bagen (Bkrtcy. S.D.N.Y. 1995) 185 B.R. 691, 695.)  Consequently
     this plaintiff also lacks standing to bring these adversary actions on the part of the

1  creditors. (11 U.S.C. { 544(a), (b); <u>In re Bridge</u>, supra, at 18 F.3d 198-200; see also

2  <u>Collier on Bankruptcy</u>, supra, at Vol. 5, { 544.02, p. 544-6, { 544.09[3], p. 544-20.)

3

4      B.  <u>The Attorneys Had to Submit Claims to Be Creditors in this Bankruptcy</u>
           <u>Proceeding in Order to Obtain Their Attorneys' Fees</u>.

5

6          It is well established that a "claim" as defined by Civil Code section 3439.01(b)

7  "means a right to payment". This definition of "claim" in the UFTA is the same as in

8  bankruptcy proceedings. (See 11 U.S.C. { 101(5)(a); see also CC { 3439.01's

9  "Legislative Committee Comment—Assembly (1986 Addition) ["The definition of

   'claim' is derived from (former) Section 101(4) of the Bankruptcy Code].) A "right to

10 payment" is determined by state substantive law, here the law of UFTA and California.

11 (<u>Butner v. United</u> States (1979) 440 U.S. 48, 55, 59 L.Ed.2d 136, 99 S.Ct. 914; <u>In re First</u>

12 <u>Alliance Mortg. Co.</u> (C.D. Cal. 2001) 269 B.R. 428, 435.) According to California law,

13 the right to payment of the attorney's fees in this matter belongs to the attorneys. (CCP {

14 1021.5; <u>Folsom v. Butte County Assn. of Governments</u> (19820 32 Cal.3d 668, 682 & fn.

15 26; <u>Flannery v. Prentice</u> (2001) 26 Cal.4[th] 572, 577, 582.) The plaintiff cannot argue with

16 that since, as explained above, that has been his position all through this litigation.

   Indeed in the debtor's underlying attorney's fees judgment, the temporary judge ordered

17 that said attorneys fees under Code of Civil Procedure section 1021.5 be paid directly to

18 the attorneys. (See Request for Judicial Notice, Exhibit 42, p. 4(11-12).) Hence, once

19 awarded, this claim for attorney's fees belongs to the attorneys and not the creditors.

20 (See <u>Matter of AM. Federation of T.V. & Radio Artists</u> (Bkrtcy. 1983) 30 B.R. 772, 775

21 [holding that this instant plaintiff's law firm of Luce Forward could not be a creditor in

22 that bankruptcy proceeding because the underlying attorney's fees award was awarded to

23 said law firm's client and not the law firm].) Since these attorney's fees belong to the

24 attorneys and not the creditors but are still contained in the creditors' bankruptcy claims

25 (see plaintiff's opposition Exhibit A), said fees are unenforceable in said creditors' claims

26 under applicable state law and thus said creditors lack the requisite standing to assert the

   right to these attorney's fees in these adversary proceedings. (<u>In re Bagen</u> (Bkrtcy.

27 S.D.N.Y. 1995) 185 B.R. 691, 695.) Consequently this plaintiff also lacks standing to

28 bring these adversary actions on the part of the creditors. (11 U.S.C. { 544(a), (b); <u>In re</u>

1    Bridge, supra, at 18 F.3d 198-200; see also Collier on Bankruptcy, supra, at Vol. 5, {

2    544.02, p. 544-6.)

3         To assert their "right to payment" of these attorneys fees, said attorneys need to

4    become creditors in this bankruptcy proceeding. Both the UFTA and the Bankruptcy

5    Code define "creditor" to mean a person who has a claim. (CC { 3439.01(c); 11 U.S.C. {

6    101(10)(A).) If the attorneys want to be creditors in this bankruptcy proceeding they

7    must properly file a claim in this Bankruptcy Court. (In re First Alliance Mortg. Co.

     (C.D. Cal. 2001) 269 B.R. 428, 434-435.)

8

9              By reason of the attorney's prior obligation incurred by the
               bankrupt or the petitioning creditors, he has a demand which
10             should be paid out of the estate in bankruptcy; hence, he
               presents a claim in bankruptcy and therefore becomes a
11             creditor of the estate. (emphasis added)

12   (Oldham v. Parker (N.D. TX 1925) 5 F.2d 682, 683) A creditor must file a proof of

13   claim in order for a claim to be allowed. (In re Carillo (Bkrtcy. N.D.Okla. 1997) 215

14   B.R. 212, 214; 11 U.S.C. {{ 501(a), 502; Rules of Bankruptcy Procedure, Rule 3002(a).)

15   In a Chapter 7 bankruptcy proceeding as we have here, Title 11 of the United States

16   Code, section 726 "calls for distribution only to creditors who have in fact filed such a

17   claim. Those creditors who have not filed do not participate in the distribution of the

     estate's assets." (Palmer v. First Nat. Bank of Kingman (Kan. 1984) 692 P.2d 386, 391.)
18
     Thus the attorneys seeking this award of attorney's fees should have filed a timely claim
19
     for same in this Bankruptcy Court. (In re Berry Estates, Inc. (D.C. 1985) 49 B.R. 1002,
20
     1005.) A claim is a simple written statement setting forth the potential creditor's claim.
21
     (BK Rule, 3001(a); Matter of Plunkett (7th Cir. 1996) 82 F.3d 738, 742.)

22        This claim must be timely, however. In Chapter 7 cases it must be filed within 90

23   days after the first date set for the meeting of creditors. (Rules of Bankruptcy Procedure,

24   Rule 3002(c).) In this matter this Court set a 'claim bar date' of July 18, 2005. (See

25   plaintiff's opposing Exhibit A, top of page 1 ["Last Date to file claims: 07/18/2005"].) It

26   is undisputed that the attorneys seeking the attorneys' fees award in this matter have not

     filed a claim nor a proof of claim. (See plaintiff's successor, Andrea A. Wirum's,
27
     declaration, paragraphs 2-3, and Exhibit A thereto.)
28

1    Consequently, not having filed a claim nor a proof of claim, said attorneys are not

2  entitled to participate in the distribution of the debtor's assets.  (Palmer, supra, at 692

3  P.2d 391.)

4

5  C.  The Attorneys Cannot File a Late Claim.

6    "Late-filed claims, especially in the bankruptcy context, disrupt orderly discharge

   and should generally be barred."  (Matter of Plunkett (7th Cir. 1996)  82 F.3d 738, 741.)
7
   "Timely presentation is essential to permit investigation and resolution of contests."
8
   (Ibid.)  It is well established that in a Chapter 7 bankruptcy, section 502(b)(9) of the
9
   Bankruptcy Code and Rules 3002(c) and 9006(b)(3) of the Rules of Bankruptcy
10
   Procedure "constitute a comprehensive, unambiguous scheme that addresses the
11
   treatment of untimely filed claims."  (In re Hayes (Bkrtcy. C.D. Cal. 2005) 327 B.R. 453,
12
   457-458.)  Rule 3002(c) requires that proofs of claim be filed not later than 90 days after
13
   the first date set for the meeting of creditors, except for five exceptions none of which are
14
   applicable here.  Moreover this Court set a claim bar date of July 18, 2005.  (See
15
   plaintiff's opposition Exhibit A, top of page 1.)  Rule 9006(b)(3) provides that a
16
   Bankruptcy Court does not have discretion to enlarge the time periods fixed by Rule
17
   3002(c) nor to permit a late claim filing when none of the exceptions of Rule 3002(c)
18
   apply.  (Ibid; In re Coastal Alaska Lines, Inc. (9th Cir. 1990) 920 F.2d 1428, 1432-1433;
19
   In re Edelman (9th Cir. BAP 1999) 237 B.R. 146, 152.)  Moreover, the doctrine of
20
   equitable tolling is not available to extend or suspend the deadlines of Rule 3002(c).  (In
   re Gardenhire (9th Cir. 2000) 209 F.3d 1145, 1152.)
21
       Consequently, since the attorneys have not filed a claim nor a proof of claim in
22
   this bankruptcy proceeding, they are not entitled to file a late claim.
23

24  D.  The Attorneys Cannot File an Amended Claim.

25    Under the Federal Rules of Civil Procedure, Rule 15, amendments are liberally

26  allowed.  However, amendments to claims are allowed only when there was an original

   timely filed claim and the amendment does not assert a new claim.  (In re PT-1
27
   Communications, Inc. (Bkrtcy. E.D.N.Y. 2003) 292 B.R. 482, 486; U.S. v. Johnston
28
   (N.D. Texas 201) 267 B.R. 717, 721.)  In this matter the attorneys did not even file an

1    original claim of any type, let alone a timely filed original claim.  They also cannot claim

2    to amend the individual creditors' claims since to do so would change the amount of the

3    claim and change the name of the particular creditor asserting said claim.  Hence it would

4    be a new claim, not an amendment thereto.  (U.S. v. Owens (1988) 84 B.R. 361, 363; In

5    re U.S. Office Products Co. Securities Litig. (D.D.C. 2004) 313 B.R. 73, 86.)

6           Thus the attorneys are not entitled to this amendment procedure.

7    E. The Attorneys Are Not Entitled to the 'Informal Proof of Claim' Doctrine.

8           Under the informal proof of claim doctrine, a timely informal proof of claim may

9    later be amended by the filing of a formal proof of claim after the bar date.  To constitute

10   a timely informal proof of claim, the attorneys must have filed a document containing an

11   explicit demand showing the nature and amount of the claim against the estate and

12   evidencing an intent to hold the debtor liable.  (In re Hayes (Bkrptcy. C.D. Cal. 2005)

13   327 B.R. 453, 460.)  If the attorneys have satisfied this requirement, then they would be

14   allowed to file a formal proof of claim as an amendment thereto.  (Id. at 327 B.R. 461.)

15   However, this is an equitable doctrine and "creditors who ignore the formalistic

16   requirements of the Code do so at their own peril".  (In re U.S. Office Products Co.

17   Securities Litig. (D.D.C. 2004) 313 B.R. 73, 85.)

18          Moreover, this informal proof of claim must "put all parties on sufficient notice

19   that a claim is asserted by a particular creditor".  (emphasis original) (Id. at 313 B.R. 86.)

20   Additionally, since this doctrine is treated as amending a timely filed claim, it must not

21   assert a new claim.  (In re PT-1 Communications, Inc. (Bkrtcy. E.D.N.Y. 2003) 292 B.R.

22   482, 486; U.S. v. Johnston (N.D. Texas 201) 267 B.R. 717, 721.)  That is it cannot assert

23   a different amount nor change the identity of the "particular creditor".  Here even if the

24   attorneys were deemed to have filed an informal claim in this matter, any amendment

25   thereto would be a new claim, not an amendment.  (U.S. v. Owens (1988) 84 B.R. 361,

26   363; In re U.S. Office Products Co. Securities Litig. (D.D.C. 2004) 313 B.R. 73, 86.)

27          Consequently, the attorneys are not entitled to the equitable doctrine of informal

28   proof of claims.

//

1

## CONCLUSION

2        For the foregoing reasons, the defendants' motion for summary judgment should

3  be granted. The individual creditors' claims and the unsecured creditors' claims can be

4  paid in full. Therefore the individual creditors have suffered no affirmative harm as a

5  result of these alleged transfers of adversary properties, which are properties other than

6  the debtor's Schedule A properties. The individual creditors have not been prejudiced.

7  Hence they have no standing to bring these adversary proceedings under California's

8  UFTA and hence the plaintiff/trustee does not have standing to bring these actions on

9  their behalf.

        Additionally, the attorneys are not creditors, they have not submitted a claim nor a

10  proof of claim. They are not entitled to amend the individual creditors' claims nor are

11  they entitled to the equitable doctrine of informal proof of claim.

12

13  November 8, 2006          /S/ JONATHAN CHANCE, ESQ.

14                        JONATHAN CHANCE,
                        Attorney for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                     )
12         Debtor.                   ) Chapter 7
                                     )
13 _____  )
   CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
14                                   )  05-3240; 05-3241; 05-3242; and
           Plaintiff,                )  05-3243
15                                   )
       vs.                           ) DEFENDANTS' EVIDENTIARY
16                                   ) OBJECTIONS TO EVIDENCE
                                     ) OFFERED RE PLAINTIFF'S
17 FRAN YEGANEH, KEN                 ) OPPOSITION TO DEFENDANTS'
   YEGANEH, ET AL,                   ) MOTION FOR SUMMARY
18                                   ) JUDGMENT
                                     )
19                                   )
                                     )
20                                   )
                                     ) Date: November 15, 2006
21                                   ) Time: 9:30 AM
                                     ) Dept: 23
22         Defendant.                )
   _____  )
23

24      PLEASE TAKE NOTICE that Defendants Ken Yeganeh, Fran Yeganeh, et al,

25 submit these evidentiary objections to the plaintiff's documentary evidence offered in his

26 opposition to Defendants' Motion for Summary Judgment.

27

28

Defendants' Objection to Evidence              -1-

1    Federal Rules of Civil Procedure, Rule 56(e) provides that only "facts as would be

2  admissible in evidence" may be considered in connection with a motion for summary

3  judgment. The Courts have construed Rule 56(e) as a prerequisite to the granting of a

4
   motion for summary judgment, so that if speculative or otherwise inadmissible evidence
5

6  is offered in support of a motion for summary judgment, the motion should be denied.

7  (Cristobal v. Siegel (9th Cir. 1994) 26 F.3d 1488, 1494.)

8

9            EMILY MAXWELL'S DECLARATION AND EXHIBITS
10

11    Defendants object to paragraph 3 and Exhibit A on the grounds that said exhibit is

12  the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit

13  are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

14    Defendants object to paragraph 4 and Exhibit B on the grounds that said exhibit is

15
   the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit
16

17  are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

18    Defendants object to paragraph 5 and Exhibit C on the grounds that said exhibit is

19  the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit

20  are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

21
   Defendants object to paragraph 6 and Exhibit D on the grounds that said exhibit is
22

23  the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit

24  are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

25

26

27

28

1

## RENEE GLOVER-CHANTLER DECLARATION AND EXHIBITS

2

Defendants object to paragraph 4 and Exhibit A on the grounds that said exhibit is

3

the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit

4

are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

5

6

Defendants object to paragraph 5 and Exhibit B on the grounds that said exhibit is

7

the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit

8

are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

9

Defendants object to paragraph 6 and Exhibit C on the grounds that said exhibit is

10

the subject of an offer to settle or compromise. Hence both the paragraph and the exhibit

11

are inadmissible. (FRE, Rule 408; Cal Evid C { 1152.)

12

13

14

15

November 8, 2006               /S/ JONATHAN CHANCE, ESQ.

16                             JOHATHAN CHANCE,
                               Attorney for Defendants
17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Objection to Evidence                -3-

1  JONATHAN CHANCE
   Attorney at Law
2  205 East Third Ave., Suite 411
   San Mateo, CA 94401
3  (650) 342-6200

4  Attorney for Defendants

5

6

7

8            IN THE UNITED STATES BANKRUPTCY COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  In re RAMIN YEGANEH,              ) Case No. 05-30047 TEC
                                      )
12            Debtor.                 ) Chapter 7
                                      )
13  _____ )
    CHARLES E. SIMS, Trustee,         ) Adversary Proceeding Nos.
14                                    ) 05-3240; 05-3241; 05-3242; and
              Plaintiff,              ) 05-3243
15                                    )
        vs.                           ) REQUEST FOR JUDICIAL
16                                    ) NOTICE RE DEFENDANTS' REPLY
                                      ) TO PLAINTIFF'S OPPOSITION TO
17  FRAN YEGANEH, KEN                 ) DEFENDANTS' MOTION FOR
    YEGANEH, ET AL,                   ) SUMMARY JUDGMENT
18                                    )
19                                    )
                                      ) Date: November 15, 2006
20                                    ) Time: 9:30 AM
                                      ) Dept: 23
21            Defendant.              )
    _____ )
22

23        Defendants Ken Yeganeh, Fran Yeganeh, et al, hereby respectfully request that

24  the Court take judicial notice of the underlying state civil judgment regarding the

25  attorneys' fees award in this matter, submitted by the defendants as Exhibit 42 in their

26

27  opposition to plaintiff's Motion for Summary Judgment Based on Actual Fraud.  This

28  Exhibit was filed in this Court on November 3, 2006.

1
2
## JUDICIAL NOTICE OF THESE DOCUMENTS IS APPROPRIATE

3      Judicial notice of this document is appropriate under Federal Rules of Evidence,
4  Rule 201. This document is not subject to reasonable dispute because they are capable of
5  accurate and ready determination by resort to this Bankruptcy Court's records and file in
6  this action, by resort to this Bankruptcy Court's PACER website for this action, and by
7  resort to the United States District Court for the Northern District of California's PACER
8  website for Case No. C06-2788 CW, the appeal from this Court's "Order Authorizing
9  Compromise" in this matter. (FRE, Rule 201(b).) Court's regularly take judicial notice
10 of documents filed and orders or decisions entered in federal and state courts. (Kramer v.
   Time Warner, Inc. (2nd Cir. 1991) 937 F.2d 767, 774; Wible v. Aetna Life Ins. Co.
11 (C.D.Cal. 2005) 375 F.Supp.2d 956, 965-966; In re Homestore.com, Inc. Sec. Litig.
12 (C.D. Cal. 2004) 347 F.Supp.2d 814, 816; Magnes v. Seattle-First Nat'l Bank (5th Cir.
13 1994) 29 F.3d 1034, 1042.)
14      Furthermore, defendants have requested that the Court take judicial notice of this
15 document and has provided the Court with the necessary information to take judicial
16 notice. Accordingly, under Federal Rules of Evidence, Rule 201(d), judicial notice of
17 these documents is mandatory and should be granted by the Court. (FRE, Rule 201(d).)
18
19 November 8, 2006          /S/ JONATHAN CHANCE, ESQ.
                             JOHATHAN CHANCE,
20                           Attorney for Defendants
21
22
23
24
25
26
27
28

Defendants' Request for Judicial Notice          -2-

JONATHAN CHANCE
Attorney at Law
205 East Third Ave., Suite 411
San Mateo, CA 94401
(650) 342-6200

Attorney for Defendants

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RAMIN YEGANEH, | ) Case No. 05-30047 TEC |
| | ) |
| Debtor. | ) Chapter 7 |
| _____ | ) |
| CHARLES E. SIMS, Trustee, | ) Adversary Proceeding No. 05-3240, |
| | ) No. 05-3241, No. 05-3242, |
| | ) No. 05-3243. |
| Plaintiff, | ) |
| | ) **PROOF OF SERVICE** |
| | ) |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| FARIN YEGANEH, | ) |
| KEN YEGANEH, ET AL, | ) |
| | ) Date: <u>November 15, 2006</u> |
| | ) Time: <u>9:30 AM</u> |
| | ) Dept: <u>23</u> |
| Defendant. | ) |
| _____ | ) |

I, the undersigned, state that I am a citizen of the United States and employed in

the City of San Mateo, that I am over the age of eighteen (18) years and not a party to the

within cause; that my business address is 205 E. Third Ave., Suite 411, San Mateo,

California; and that on the date set out below I deposited a true copy of the attached documents, listed below, on the parties to the action by one or more of the following methods:

[XX]  First Class Mail

--by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Mateo, California;

Documents Served: <u>DEFENDANTS' REPLY POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; OBJECTION TO PLAINTIFF'S EVIDENCE; REQUEST FOR JUDICIAL NOTICE</u>

Parties Served:

JEFFREY FILLERUP, ESQ.
Luce, Forward, Hamilton & Scripps, LLP
Rincon Center II, 121 Spear St., Suite 200
San Francisco, CA 94105

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Mateo, California on November 8, 2006.

<u>/S/ JONATHAN CHANCE, ESQ.</u>

Proof of Service                    -2-